**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**KENNETH FITCH**
**ESTATE OF DIANNE L. FITCH**

    **VS.**               **Civil Action No.**

**FEDERAL HOUSING FINANCE**
**AGENCY,**
**FEDERAL NATIONAL**
**MORTGAGE ASSOCIATION,**
**WELLS FARGO BANK, N.A.,**
**HARMON LAW OFFICES,  P.C.**
**266 PUTNAM AVENUE, LLC**

## COMPLAINT

1.    Plaintiffs, Estate of Dianne L. Fitch and Kenneth Fitch, are or were the owners of real property located at 73 Kay Street, Cumberland, Rhode Island.

2.    After Dianne L. Fitch died, this property was conveyed to him. This property has been and continues to be the primary residence for Kenneth Fitch.

3.    Through this action Plaintiffs challenge the lawfulness of the foreclosure sale of the residence of Kenneth Fitch, which was conducted on July 28, 2017, by certain Defendants: The Federal National Mortgage Association ("FNMA" or "Fannie Mae"), an agency or instrumentality of the federal government; Fannie Mae's conservator and regulator, the Federal Housing Finance Agency ("FHFA"), a federal agency; Wells Fargo Bank, N.A., a national bank and loan servicer ("Wells Fargo") acting as an agent of Fannie Mae and FHFA and its attorney, Harmon Law Offices P.C.("Harmon")

4.    The Defendants Fannie Mae, FHFA, and Wells Fargo refused to engage in mediation in good faith as required by state law, and conducted a foreclosure sale on the Property on July 28, 2017. Plaintiff seeks declaratory relief, injunctive relief, damages, and other relief from this Court, because Defendants Fannie Mae, FHFA, and Wells Fargo acted jointly to deprive Plaintiff of his interest in the Property by conducting a foreclosure sale without providing him

1

with adequate notice and an opportunity for a meaningful hearing, as required by the Due Process clause of the Fifth Amendment to the Constitution of the United States, and other laws, and caused harm to him in various other ways hereinafter stated.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over this action and all defendants pursuant to 28 U.S.C. § 1331, because this case arises under the Constitution and laws of the United States.

6.    This Court also has jurisdiction over this action and all defendants pursuant to 28 U.S.C. § 1332 because the parties in this case are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest or costs.

7.    This Court also has jurisdiction over this case pursuant to the Real Estate Settlement and Procedures Act, 12 U.S.C. §2605.

8.     This Court also has jurisdiction over this case pursuant to the Fair Debt Collection Practices 15 U.S.C. §1692.

9.    This Court also has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

10.    The principal events giving rise to the claims stated herein occurred in this district and venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391 (c)(2).

11.    This Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. Rule 57.

12.    The Plaintiff Kenneth Fitch is a citizen of the United States who resides at 73 Kay Street, Cumberland, RI 02917 ("Property").

13.    The Estate of Dianne L. Fitch is the Estate of decedent, Dianne L. Fitch, who died on April 7, 2014. Kenneth Fitch is the lawfully appointed Administrator of this Estate, appointed by the Cumberland Probate Court.

14.    The Federal Housing Finance Agency ("FHFA") is an independent agency of the United States Federal Government established pursuant to 12 U.S.C. § 4511 *et seq.*

15.    The Federal National Mortgage Association ("FNMA" and "Fannie Mae") is a corporation organized under the laws of the United States by special charter, to serve the important governmental objectives of providing stability in the secondary mortgage market, responding appropriately to the private capital market, providing ongoing assistance to the secondary market for residential mortgages, promoting access to mortgage credit throughout the nation by increasing the liquidity of mortgage investments and improving the distribution of investment capital available for residential mortgage financing, and managing and liquidating federally owned mortgage portfolios in an orderly manner, with a minimum of adverse effect upon the residential mortgage market and minimum loss to the Federal Government. See 12 U.S.C. § 1716.

16.    Wells Fargo National Bank, N.A. ("Wells Fargo") is a National Bank,  with a principal place of business in  South Dakota.

17.    Harmon Law Offices, P.C. is a law firm with a principal place of business located in Newton, Massachusetts.

18. 266 Putnam Avenue, LLC ("266 Putnam") is a Rhode Island Limited Liability Corporation.

## GENERAL FACTUAL ALLEGATIONS

### *The Conservatorship of FHFA over Fannie Mae*

19.    In accordance with the Housing and Economic Recovery Act of 2008 ("HERA"), the federal government established FHFA as a federal agency to supervise and regulate Fannie Mae and affiliated entities, the Federal Home Loan Mortgage Corporation ("Freddie Mac") and affiliated entities, and any Federal Home Loan Bank. See 12 U.S.C. §§ 4502 (20), 4511(b)(2).

20.    Among the powers the federal government granted to the FHFA pursuant to HERA was the power of its Director to place Fannie Mae into conservatorship under the FHFA and the power of the FHFA to operate and control all of Fannie Mae's operations as its conservator.

21.    On or about September 7, 2008, the Director of the FHFA placed Fannie Mae under the conservatorship of the FHFA. See Statement of FHFA Director James B. Lockhart, http://www.treasury.gov/press-center/press-releases/Documents/fhfa_statement_090708hp1128.pdf , accessed May 12, 2014.

22.    In January 2010, the Congressional Budget Office (hereafter "CBO") concluded that the actions taken by FHFA to place Fannie Mae under conservatorship "[made Fannie Mae . . . part of the government and [implied] that [its] operations should be reflected in the federal budget." Budgetary Treatment of Fannie Mae and Freddie Mac, (Congressional Budget Office Background Paper, 2010), available at www.cbo.gov/publications/41887 at pages 1, 6.

23.    In 2010, the CBO estimate projected cost of the Federal Governments investment in Fannie Mae between 2009 and 2019 at $389 billion.

24.    In 2013, the CBO again concluded, "the federal government is now the effective owner of [Fannie Mae], any gain or loss arising from a change in the way the distressed mortgages are handled by [Fannie Mae] would ultimately accrue to taxpayers." See Options for Principal Forgiveness in Mortgages Involving Fannie Mae and Freddie Mac (Congressional Budget Office, Mitchell Remy & Damien Moore, Working Paper No. 2013-02) available at www.cbo.gov/publication/44114   at page 1.

25.    As conservator, FHFA controls all of the powers of the shareholders and board of directors of Fannie Mae. See Federal National Mortgage Association, Annual Report, Form 10-K, for the fiscal year ended December 31, 2014 http://www.fanniemae.com/resources/file/ir/pdf/quarterly-annual-results/2014/10k_2014.pdf ,  , at page 25, 162, 166. Shareholders no longer vote for members of Fannie Mae's board of directors, or on any other matters

26.    On November 24, 2008, FHFA reconstituted Fannie Mae's Board of Directors, appointed all nine (9) members of the Board as well as the Board Chairman, and delegated certain powers to the Board while reserving certain powers to itself.

27.    FHFA may modify or terminate the delegation of authority to the Board at FHFA's discretion.

28.    Fannie Mae's Directors serve on behalf of the conservator FHFA and exercise their authority as directed by and with the approval, where required of the

conservator. The Directors have no fiduciary duties to any person or entity except to the conservator FHFA. Accordingly, the Directors are not obligated to consider the interest of the company, the holders of equity or debt securities unless specifically directed to do so by the conservator FHFA. As a result of the conservatorship, Fannie Mae is not managed with a strategy to maximize shareholder returns.  . FHFA, as both conservator and regulator, and the United States Treasury, pursuant to the senior preferred stock purchase agreement, prohibits Fannie Mae from paying any dividends to common shareholders.   The net income of Fannie Mae is not available to common stockholders.

29.    According to the FHFA's September 7, 2008 explanation of the conservatorship, there is "no exact time frame that can be given as to when this conservatorship may end." FHFA's conservatorship of Fannie Mae will end, according to said explanation, when the Director of FHFA issues an order terminating the conservatorship, after the Director determines that FHFA's "plan to restore the Company to a safe and solvent condition has been completed successfully." See FHFA, Questions and Answers on Conservatorship, (Sept. 7, 2008), available at http://www.treasury.gov/press-center/press-releases/Documents/fhfa_consrv_faq_090708hp1128.pdf.   at page 2;  ("Our conservatorship has no specified termination date, and we do not know when or how the conservatorship with terminate, whether we will continue to exist following conservatorship, what changes to our business structure will be made during or following the conservatorship, or what ownership interest, if any, our current common and preferred stockholders will hold in us after the conservatorship is terminated.").

30.    As a result of FHFA's conservatorship of Fannie Mae, since September 6, 2008, and continuing now and for the foreseeable future, FHFA directly controls and operates Fannie Mae with all the powers of the shareholders, directors, and officers of Fannie Mae, owns title to all the assets of Fannie Mae, and conducts all business of Fannie Mae.

31.  HERA does contain a provision automatically terminating FHFA's conservatorship of Fannie Mae, namely if FHFA's director appoints FHFA as receiver of Fannie Mae.  See 12 U.S.C. 4617(a)(4)(D).  However, FHFA's control over Fannie Mae will not be terminated upon its being appointed as receiver. There is no other law, regulation, policy or directive that provides either a date or specifies conditions by which FHFA's control over Fannie Mae will terminate.

32. Even if the conservatorship were terminated by means other than the appointment of FHFA as receiver of Fannie Mae, Fannie Mae will remain subject to the control of the United States Treasury through the senior preferred stock purchase agreement, senior preferred stock, and warrant to purchase common stock, which can only be canceled or modified with the consent of the United States Treasury.

33.    From 2009 through the first quarter of 2012, Fannie Mae received a total of $116.1 billion from Treasury under the senior preferred stock purchase agreement to maintain a zero net worth. Because the senior preferred stock had an initial liquidation preference of $1 billion, the current aggregate liquidation preference in

34.  The United States Treasury owns 100% of the senior preferred stock of Fannie Mae, and holds warrants to purchase 79.9% of the common stock of Fannie Mae at a nominal price on a fully diluted basis on the date of exercise. See   at page 26, 27; see also Fact Sheet: Treasury Senior Preferred Stock Purchase Agreement http://www.fhfa.gov/Conservatorship/Documents/Senior-Preferred-Stock-Agree/2008-8-7_SPSPA_FactSheet_508.pdf

35.    By virtue of the senior preferred stock purchase agreement, as amended, the United States Treasury is entitled to receive quarterly dividends equal to the entire net worth of Fannie Mae, which results in every dollar of earnings being paid to the United States Treasury Similarly, Fannie Mae is not permitted to retain earnings, rebuild a capital position, or pay dividends or other distributions to stockholders other than the United States Treasury.

36.    Including the 2014 dividend payments to the United States Treasury, Fannie Mae will have paid a total of $134.5 billion in dividends to Treasury on the senior preferred stock. However, under the terms of the senior preferred stock purchase agreement, dividend payments do not offset prior Treasury draws, and, therefore, the Treasury's ownership interest in Fannie Mae is not diminished by reason of the dividends.

37.    The CBO considers the payments from Fannie Mae to the Treasure "intragovernmental payments, which to not affect net federal outlays."

38.    Pursuant to the senior preferred stock purchase agreement, Fannie Mae is not permitted to redeem the senior preferred stock prior to the termination of the United States Treasury's funding commitment, which commitment will not terminate until all of Fannie Mae's liabilities have been satisfied.

39.     Because Fannie Mae was chartered by Congress to further governmental objectives related to the secondary mortgage market and national housing policies, because the federal government maintains a substantial ownership interest in Fannie Mae, because Fannie Mae is substantially funded by the federal government, because the Board of Directors of Fannie Mae is entirely appointed by FHFA, and because Fannie Mae is under the control of FHFA and/or the United States Treasury, Fannie Mae is an agency or instrumentality of the United States for the purpose of individual rights guaranteed against the federal government by the United States Constitution.

### The Agency Relationship between FHFA and Fannie Mae and Wells Fargo.

40.     Fannie Mae purchases mortgages that meet its underwriting standards from originators such as banks or thrifts. Fannie Mae holds these mortgages in its retained portfolios or packages them into mortgage-backed securities that it sells to investors. See FHFA Office of Inspector General Evaluation Report, FHFA's Oversight of the Servicing Alignment Initiative, February 12, 2014, available at http://fhfaoig.gov/Content/Files/EVL-2014-003.pdf  at page 6.

41.     For the mortgages that Fannie Mae purchases, Fannie Mae enters into contracts with mortgage servicers, including the "Servicing Guide" and other agreements. Under the terms of these agreements, the servicer collects mortgage payments, sets aside taxes and insurance premiums in escrow, forwards interest and principal payments to the contractually designated party, and responds to payment defaults.  .

42.     Through the "Servicing Guide" and other agreements, Fannie Mae established certain requirements for its servicers to follow when it performs its servicing duties, which include specific instructions on mitigating losses after borrowers default and conducting foreclosures on behalf of Fannie Mae.

43.     After FHFA placed Fannie Mae into conservatorship, FHFA has engaged in continuous supervision over its servicers, including Wells Fargo. See FHFA Office of Inspector General, FHFA's Supervision of Freddie Mac's Control's over Mortgage Servicing Contractors, March 7, 2012, available at http://fhfaoig.gov/Content/Files/AUD%202012-001_0.pdf  . FHFA's Office of Inspector General describes "continuous supervision" as "a wide range of ongoing activities designed to monitor and analyze [Fannie Mae's] overall business profile, including any trends or associated emerging risks."

44.     Among other supervisory actions, in April, 2011, FHFA created the Servicer Alignment Initiative, as amended by four additional initiatives beginning in January 2012 (collectively, "SAI"), by which the FHFA directs the actions taken by Fannie Mae's mortgage servicers when servicing a delinquent mortgage loan, in order to maximize the financial benefits to Fannie Mae, and ultimately to the taxpayers.

45.     Through the SAI, the FHFA directed Fannie Mae to update its servicing guidelines by adding new standards and timelines by which servicers were to manage delinquent mortgages.

46.     Through the SAI, the FHFA created specific requirements for servicers to follow including state-level timelines for the processing of foreclosures from the date of referral to the attorney/trustee through the date of the foreclosure sale.

47.     Through the SAI, the FHFA has directed Fannie Mae's servicers to use non-judicial foreclosure procedures, which authorize the seizure of property without a pre-deprivation hearing as required by the Due Process Clause of the Fifth Amendment.

48.      On or about December 31, 2009, Dianne L. Fitch borrowed $96,648.00 from Wells Fargo ("Originating Lender"), which was evidenced by a promissory note (the "Note") on the same date.  On or about the same date, the Note was secured by a mortgage ("Mortgage") in favor of the Originating Lender.  The Mortgage was recorded on January 29, 2007, in the land records of the Town of Cumberland at Book 1485 at  Page 256.A copy is attached as Exhibit A.

49.      On March 22, 2017,Wells Fargo, purported to assign its interest in the Mortgage to Federal National Mortgage Association by an assignment recorded in the land records for the Town of Cumberland. A copy is attached as Exhibit B.

50.     Upon information and belief, Fannie Mae transferred its interest in the Mortgage to Rushmore Loan Management Group, or an affiliate by an assignment which is not recorded before July 26, 2018.

51.     On July 26, 2017, U.S. Bank National Association, not in its individual capacity, but solely as trustee the RMAC Trust, series 2016-CTT  became owner of the mortgage loan. A copy of the notice of sale of the mortgage loan sent to the Plaintiff is attached as Exhibit C

52.     On or about March 31, 2017 , Wells Fargo had referred the Plaintiff's Mortgage account to Harmon Law Offices, P.C. to exercise the statutory power of sale and foreclose on the Plaintiff's home.

53.     On April 20, 2017, on behalf of the Defendants, Harmon Law Offices, P.C. sent a notice of foreclosure sale ("Notice") to the Plaintiffs. The Notice is attached as Exhibit D. In the Notice, Harmon Law Offices P.C. stated its intention to sell the property described in the Mortgage, on June 13, 2017 at 4:00 PM. This sale was subsequently continued to July 28, 2017.

54.     After the assignment of mortgage to Fannie Mae and prior to receiving the Notice, Plaintiff did not receive any correspondence from the Federal National Mortgage Association or any servicer acting on its behalf advising him of a Mediation Conference as described in Rhode Island General Laws § 34-27-3.2.

55. Plaintiffs never received a Notice of Mediation from Rhode Island Housing or any other agency regarding mediation for this mortgagee, Fannie Mae.

56.     On or about July 28, 2014, Fannie Mae conducted a foreclosure sale of the Property, in which a person named Paul Balay purportedly made a bid in the amount of $188,000.00. There is no such conveyance in regard to a foreclosure as an assignment of bid. Despite this, Wells Fargo on behalf of Fannie Mae indicated in a purported foreclosure deed that Paul Balay had assigned 266 Putnam Avenue his bid to purchase the property in the amount of $188,000.00. After the purported sale, this amount was transmitted to Fannie Mae, through its attorney Harmon

57.     On August 24, 2017, Fannie Mae, by Wells Fargo as Attorney in Fact, signed a document (hereinafter referred to as "the Foreclosure Deed" without prejudice as to its legal effect), which was recorded on October 15, 2017 in the land records for the Town of Cumberland at Book 1755 at  Page 128. The purported Foreclosure Deed is attached as Exhibit E.

58.     Neither Wells Fargo, Fannie Mae, nor FHFA have not provided the Plaintiff an opportunity for an evidentiary hearing with Fannie Mae or FHFA at which the Plaintiff could have an opportunity to: confront and cross-examine persons who supplied information upon which the foreclosure action is grounded; present arguments and evidence to dispute the allegations of Wells Fargo, Fannie Mae, and FHFA prior to the termination of her interest in the Property; be represented by counsel during a hearing prior to the termination of their  interest in the Property;

and to have a neutral hearing officer make a determination based on applicable law and the evidence adduced at a hearing prior to the termination of the Plaintiff's interest in the Property.

59.     Had the Plaintiff had an opportunity for a hearing, he  could have presented evidence to challenge the foreclosure in one or more of the following ways:

        a.     Fannie Mae was not the mortgagee on the date of the foreclosure sale.

        b.     Fannie Mae failed to provide the required foreclosure notices to the Plaintiff, to comply with Rhode Island foreclosure statutes including § 34-27-3.2.

        c.     Fannie Mae failed to act in good faith as required and defined by § 34-27-3.2.

60.     On or about October 20, 2017 , the Defendant 266 Putnam Avenue filed a complaint for eviction against the Plaintiff in Sixth Division District Court, Providence County, Rhode Island in case number 6CA-2017-11437.

61.     If this eviction action is not enjoined, Plaintiff will suffer irreparable harm, in that the Plaintiff, will lose possession of his primary residence and  he currently has no other place to reside.

## COUNT I – DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS

62.     Plaintiff realleges and incorporates paragraphs 1-64 by reference.

63.     Fannie Mae, and FHFA acted jointly to deprive the Plaintiff of his ownership rights in the Property by conducting a foreclosure sale pursuant to Rhode Island General Laws Chapter 34-27, entitled "Mortgage Foreclosure and Sale," which authorizes mortgagees to foreclose the rights of an equitable title holder without judicial process or the opportunity to be heard before the foreclosure sale.

64.     When used by a federal government actor, the procedures of Rhode Island General Laws Chapter 34-27 do not satisfy the Due Process Clause of the Fifth Amendment before depriving an owner of his or her property. Specifically, Chapter 34-27 does not provide for adequate notice, an opportunity to be heard before the deprivation of his property, or the opportunity to recover appropriate

damages for an improper deprivation of property.

65.     Pursuant to the Due Process Clause of the Fifth Amendment to the United States Constitution, Fannie Mae and FHFA, as agencies and/or instrumentalities of the federal government, owed a higher degree of notice and hearing to Plaintiff than is provided by Rhode Island General Laws chapter 34-27 before depriving the Plaintiff of his property.

66.     The Plaintiff has a significant property interest at stake. The foreclosure, if allowed to stand, permanently deprives the Plaintiff of his ownership, possession, and use of the Property, which he uses as his primary residence; clouds the title to the Property; impairs his ability to sell, rent, or otherwise alienate the Property; reduces the chance of him obtaining a future loan or mortgage; subjected him to eviction; and jeopardizes his security in a dwelling place.

67.     There is a significant risk of an erroneous deprivation of the Plaintiff's interest through the procedures used by Fannie Mae, and FHFA pursuant to RI General Law's chapter 34-27. To prevent an erroneous deprivation of property, the Due Process Clause of the Fifth Amendment to the United States Constitution requires Fannie Mae, and FHFA to provide Plaintiff with an opportunity to be heard at a meaningful time on, *inter alia,* any challenge to the true ownership of the Note; any challenge to Fannie Mae's and/or FHFA's authority to foreclose on behalf of the owner of the Note; any challenge to Fannie Mae's and/or FHFA's determination of default under the Note and Fannie Mae's and/or FHFA's calculation of deficiency; to challenge Fannie Mae's and/or FHFA's determination that the Plaintiff is not eligible for a loan modification, a repayment, or other homeowner assistance option; the opportunity to refinance or reinstate through other sources of funding; whether Fannie Mae and/or FHFA acted in good faith; and any challenge to Fannie Mae's and/or FHFA's compliance with applicable notice procedures.

68.     The government's financial interest in obtaining ownership, possession, and use of the Property is minimal.

69.     There are no exigent circumstances that would justify the lack of a pre-deprivation hearing, nor would a meaningful hearing before a neutral party impose significant fiscal or administrative burdens.

70.     Fannie Mae and FHFA violated the Plaintiff's Fifth Amendment procedural due process rights by conducting a non-judicial foreclosure sale pursuant to Rhode

Island General Laws Chapter 34-27 without first providing adequate notice, a meaningful hearing prior to the deprivation of property, and an opportunity to recover adequate damages.

71.  Fannie Mae received $188,000.00 for the purchase of the Plaintiff's home at the purported foreclosure sale.

72.   The alleged principal obligation due to Fannie Mae at the time of the purported foreclosure sale was $86,889.43 with an alleged arrearage of $21,987.97.

73.    Plaintiff Estate of Dianne L. Fitch had a second mortgage obligation to Santander Bank in the approximate $15,000.00.

74.    After the alleged foreclosure sale, Harmon held over $80,000.00 from the sales proceed after distributing a payoff to Freddie Mac and FHFA for the purported payoff of the loan.

75.  No disbursement has been made by Harmon on behalf of Fannie Mae of any of the sale proceeds.

76.        Thus Fannie Mae possesses the proceeds to reimburse 266 Putnam Avenue for the bid it made at the foreclosure sale.

Wherefore Plaintiff demands the following relief:

A. A declaration that the Fannie Mae's and FHFA's use of non-judicial foreclosure process in Rhode Island General Laws Chapter 34-27-4 (b), or any foreclosure process that does not provide for adequate notice, a meaningful evidentiary hearing prior to the deprivation of property, and an opportunity to recover damages, violated the Plaintiff's due process rights under the Fifth Amendment to the Constitution of the United States;

B. A declaration that the foreclosure sale of the Plaintiff's Property on July 28, 2017, was invalid and void;

C. A declaration that the foreclosure deed recorded on October 5, 2017, in the land records for the Town of Cumberland at Book 1755 Page 128, is invalid and void;

D. Order Fannie Mae to pay back to 266 Putnam Avenue, the sum of $188,000.00.

E. An order quieting title and declaring the rights and interests of all parties in the Property;

F. Costs; and

G. Such other and further relief as the court considers appropriate.


KENNETH FITCH
ESTATE OF DIANNE L. FITCH
By their Attorney


April 19, 2018                    /s/ John B. Ennis_____
                                 JOHN B. ENNIS, ESQ. #2135
                                 1200 Reservoir Avenue
                                 Cranston, Rhode Island 02920
                                 (401) 943-9230
                                 Jbelaw75@gmail.com


## COUNT II – VIOLATION OF THE PROVISIONS OF RHODE ISLAND GENERAL LAWS § 34-27-3.2

77.    Paragraphs 1-76 are incorporated by reference.

78.    Rhode Island General Laws § 34-27-3.2 requires a mortgagee, or its servicing agent, to obtain a certificate of compliance before sending a notice of foreclosure sale under § 34-27-4 (b). See § 34-27-3.2 (d) (P.L. 2013, ch. 325, The mortgagee obtains a certificate of compliance from the mediation coordinator at Rhode Island Housing either by sending a required notice of a mediation conference to a mortgagor and not receiving a response from the mortgagor; See § 34-27-3.2 (h); or by participating in a mediation conference in good faith; See § 34-27-3.2 (i).

79.    Fannie Mae did not comply with § 34-27-3.2 before sending the Notice of Mortgage Foreclosure Sale pursuant to § 34-27-4 (b). Fannie Mae did not send the

Plaintiffs the required notice of mediation conference to the Plaintiffs, and did not participate in a mediation conference with Rhode Island Housing in good faith. The foreclosure deed contains a certificate dated June 23, 2016 that Wells Fargo was the mortgagee. However once Fannie Mae became the mortgagee on March 22, 2017, it was obliged to send the Plaintiff a Notice of Mediation before sending a Notice of Sale.

80.     Pursuant to 34-27-3.2 (n), because Fannie Mae and Wells Fargo on behalf of Fannie Mae failed to comply with § 34-27-3.2, the foreclosure sale that occurred on July 26, 2018, was void, "without limitation of the right of the mortgagee thereafter to re-exercise its power of sale or other means of foreclosure upon compliance with this section."

81.  Pursuant to 34-27-3.2 (n), because Fannie Mae and Wells Fargo on behalf of Fannie Mae failed to comply with § 34-27-3.2, the foreclosure sale that occurred on July 26, 2018, was void, "without limitation of the right of the mortgagee thereafter to re-exercise its power of sale or other means of foreclosure upon compliance with this section." Plaintiff has filed this action within one year of the first notice of advertising of the notice of sale.

82.     Plaintiff has incurred damages as a result of the actions of Fannie Mae and FHFA as alleged in this complaint.

83.     Plaintiff has incurred legal fees for the prosecution of this action and for defense of the eviction action in the Rhode Island 6th Division Court.

Wherefore Plaintiff demands the following relief:

A. A declaration that the foreclosure sale of the Plaintiff's Property on July 28, 2017, was invalid and void;

B. A declaration that the foreclosure deed recorded on October 5, 2017, in the land records for the Town of Cumberland at Book 1755 Page 128, is invalid and void;

C. Order Fannie Mae to pay back to 266 Putnam Avenue, the sum of $188,000.00.

KENNETH FITCH
ESTATE OF DIANNE L. FITCH

By their Attorney

April 19, 2018                    /s/ John B. Ennis
                                 JOHN B. ENNIS, ESQ. #2135
                                 1200 Reservoir Avenue
                                 Cranston, Rhode Island 02920
                                 (401) 943-9230
                                 Jbelaw75@gmail.com


## COUNT III BREACH OF CONTRACT AND BREACH OF GOOD FAITH AND DEALING

84.    Paragraphs 1-83 are incorporated by reference.

85.    Neither Harmon, Wells Fargo or Fannie Mae have mailed the Plaintiff a notice in the form required pursuant to the provisions of paragraph 22 of the mortgage.

86.    Fannie Mae and FHFA were parties in the case of *Martins v. FHFA et al*, decided by this Court and were aware of the need for strict compliance with the terms of the mortgage before attempting to exercise the statutory power of sale, since that case was decided on October 11, 2016.

87.    Before an acceleration of the loan was declared, the Lender was required to send Plaintiff a notice to his home address which specified:

        a.     the default;

        b.     the action required to cure the default, stating a date, not less than 30 days from the date the default must be cured;

        c.     that failure to cure the default on or before the date specified in the Notice may result in the acceleration and sale of our home

        d.     the right to bring a court action to asset the non-existence of a default of Borrower to acceleration and sale.

88.     Paragraph 22 of Plaintiff's mortgage, which contains conditions for the exercise of the statutory power of sale, reads as follows:

**Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The  notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15.  Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

89.     The provisions in paragraph 22 of the mortgage were a condition precedent to the exercise of the power of sale of the mortgage.

90.     There was no compliance with the terms of the mortgage to exercise the statutory power of sale as indicated above. Any alleged exercise of the statutory power of sale to Plaintiff was defective because a default notice and a valid acceleration notice were never sent as required by paragraph 22 of the mortgage.

91.      Wells Fargo mailed Plaintiff; Dianne L. Fitch a letter dated August 16, 2016 which it claimed to be a default notice.  A copy is attached as Exhibit F.

92.      This letter did not comply with Paragraph 22 of the mortgage.

93.      Paragraph 22 (c) of Plaintiff's mortgage required a default notice which specified:

**(c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured**

94.      However this letter did not specify a particular date for the cure date. Instead it stated:

To avoid the possibility of acceleration, you must pay this amount on or before September 20, 2016.

95.      This letter thus was not consistent with the terms of the mortgage, in that a specific cure date was not listed.

96.      The letter did not state that failure to cure may result in acceleration and sale.

Instead it stated:

97.      If funds are not received by the above referenced date, we will proceed with acceleration. Once acceleration has occurred, we may take steps to terminate your ownership in the property by a foreclosure proceeding.

98.      This letter thus was not consistent with the terms of the mortgage, in that it referenced a foreclosure proceeding not the exercise of the statutory power of sale.

99.      The failure of the Defendants to comply with the terms of the mortgage renders void any attempt to commence the alleged foreclosure by Statutory Power of Sale, without having the statutory ability to exercise the statutory power of sale.

100.    The statutory power of sale could only be exercised pursuant to the Plaintiff being sent a default letter pursuant to the terms of the mortgage, followed by an acceleration letter, a Mediation Notice followed by a Certificate from Rhode Island

Housing certifying that mediation notices were not responded to and a Notice of Sale pursuant to R.I.G.L.34-27-4.

101.   Due to this failure to comply with the terms of the mortgage, Fannie Mae was not contractually authorized to exercise the statutory power of sale and foreclose on the Plaintiff's property at any time. Prior to July 26, 2017, Fannie Mae had already sold the Plaintiff's Mortgage to Rushmore Loan Management Group. Thus on July 28, 2017, it no longer was the owner of the mortgage or the holder of the mortgage.

102.   The actions of the Defendants constituted a breach of contract, resulting in damages to the Plaintiff, who hired an attorney to commence this case.

104.   Plaintiff's mortgage loan account has been charged unreasonable fees and expenses for the prior foreclosure attempt and for this attempt to foreclose.

105.   He has suffered emotional damages for embarrassment and humiliation by the advertising of a foreclosure of his home and an eviction action by a purported purchaser.

106.   He has incurred legal fees for the defense of the eviction action.


WHEREFORE, Plaintiff demands the following relief:

    a.    Damages against Fannie Mae and FHFA for failure to comply with the terms of the mortgage.

    b.    Damages against Fannie Mae and FHFA for legal fees and actual damages arising from the breach of contract.

    c.    Damages against Fannie Mae for charging the Plaintiff fees and costs charged to the mortgage loan account arising from the purported foreclosure attempt.

    d.    Legal fees from  Fannie Mae and FHFA  pursuant to the provisions of R.I.G.L § 9-1-45.

    e.    All other just and proper relief.

KENNETH FITCH
ESTATE OF DIANNE L. FITCH
By their Attorney

April 19, 2018                    /s/ John B. Ennis
                                  JOHN B. ENNIS, ESQ. #2135
                                  1200 Reservoir Avenue
                                  Cranston, Rhode Island 02920
                                  (401) 943-9230
                                  Jbelaw75@gmail.com


## COUNT IV
## VIOLATIONS OF REGULATION X AND REGULATION Z

107.   Paragraphs 1-106 are incorporated by reference.

108.   This is an action for actual and statutory damages filed by the Plaintiff for violations of the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and specifically of the Regulations enacted pursuant thereto by the Consumer Financial Protection Bureau (CFPB).  This is also an action for actual and statutory damages filed by the Plaintiff for violations of the Real Estate Settlement Procedures Act, ("RESPA") and the Truth in Lending Act, 15 U.S.C. § 1601 et. seq.  ("TILA").

109.   This action is specifically filed to enforce the Regulations that became effective on January 10, 2014, specifically 12 CFR § 1024.36(c) and 12 CFR §1024.36(d)(2)(i)(A) of Regulation X.

110.   Wells Fargo Bank, N.A.  performs its mortgage loan servicing business under the name of Wells Fargo Home Mortgage. It was the former servicer of a Promissory Note and Deed of Trust on the Plaintiff's residential real estate.

111.   In January 2013, the Consumer Financial Protection Bureau issued a number of final rules concerning mortgage markets in the United States, pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), Public Law No. 111-203, 124 Stat. 1376 (2010).

112.   Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z) Mortgage Servicing Final Rules, 78 FR §10901 (Regulation Z) (February 14, 2013) and 78 FR §10695 (Regulation X)(February 14, 2013).  These Regulations became effective on January 10, 2014.

113.   The residential mortgage loan in this case is a "federally related mortgage loan" as that term is defined by Regulation 1024.2 (b) of the said Regulations.

114.   The Defendant in this case is subject to the said Regulations and does not qualify for any of the exceptions noted in the said Regulations for "small servicers."  Neither is Defendant a "qualified lender," as defined in 12 CFR § 617.7000.

115.   The Plaintiff is asserting a claim for relief against the Defendant for breach of the specific Rules under Regulation X as set forth below.  The Plaintiff has a private right of action under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(f) for these breaches and such an action includes actual damages, costs, statutory damages and attorney's fees.

116.   On or about November 3, 2017, the Plaintiff sent a written notice of error to the Defendant that included the name of the borrower, the identity of the account, the property description and stated the information requested. This request was made pursuant to 12 CFR § 1024.36(a).

117.   The Notice of Error was mailed by certified mail, return receipt requested, having an article number 9407110898765000773143.

118.    The Notice was mailed to the address noticed by the Defendant on its website as the designated address for sending a Notice of Error as provided for by 12 CFR § 1024.35.

119.   The Notice was received by the Defendant on November 6, 2017.

120.   A copy of the Notice of Error is attached as Exhibit  G.

121.   The Plaintiff's Notice of Error referenced failure to correct an error by which Defendant had added legal fees, advertising costs and other improper fees relating to an attempted foreclosure of Plaintiff's home without sending the

Plaintiff a Notice of Mediation pursuant to R.I.G.L 34-27-3.2 or a default letter pursuant to the terms of the mortgage. It also alleged an error in that the sale was conducted two days after the mortgage loan had been sold to another entity. Thus at the time of the sale, Fannie Mae had no ownership interest in the mortgage or the note.

122.   Under 12 CFR 1024.35 the Notice of Error had to be responded to by the Defendant within thirty (30) business days of the date of the receipt of the Request. The Regulations provide that in computing this time period public holidays, Saturdays and Sundays are excluded.  As a result, in this case, the written response was due no later than December 20, 2017.

123.   Defendant did not correct the error within thirty business days. When it did respond on November 30, 2017 it failed to correct the error. It refused to remove any fees for the purported foreclosure   It refused to void the foreclosure sale and remove any mortgage loans from the mortgage loan account.

123.   The Defendant has exhibited a pattern and practice of failing to comply with the Regulations as it failed to respond to or correct the error as indicated in this complaint and in other responses to Notices of Error relating to failure to provide mediation or for failure to provide a valid default notice prior to foreclosing.

124.   As a result of this lack of compliance by the Defendant, Wells Fargo is liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees for failure to correct the error.

125.   The Plaintiff has incurred actual damages, costs and legal fees in regard to this action relating to this Notice of Error:

a.      He has incurred costs for gasoline to visit his attorney on at least five occasions, driving to his attorney's office for a round trip totaling 19.8 miles.  The IRS standard mileage allowance provides for .56 per mile.

b.      He has had to incur the expense of using electricity to recharge his cell phone to call and receive calls from his attorney.

c.      He has incurred postage and copying costs in transmitting this Notice of Error.

d.     He has incurred attorney fees and costs for the prosecution of this action. His fee agreement with his attorney provides that he will be responsible for legal fees expenses incurred in regard to this action.

126.    The failure of the Defendant to correct the Notices of Error in this case is consistent with the pattern and practice of Wells Fargo to ignore this type of Regulation X Notice of Error.

WHEREFORE, Plaintiff demands judgment for actual damages plus

statutory damages of $2,000.00 per violation for each of the enumerated

Regulation X violations, plus attorney fees and costs.


                                        KENNETH FITCH
                                        ESTATE OF DIANNE L. FITCH
                                        By their Attorney


April 19, 2018                          /s/ John B. Ennis
                                        JOHN B. ENNIS, ESQ. #2135
                                        1200 Reservoir Avenue
                                        Cranston, Rhode Island 02920
                                        (401) 943-9230
                                        Jbelaw75@gmail.com

## COUNT V
### COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE TRUTH IN LENDING ACT BY FANNIE MAE FAILURE TO SEND THE PLAINTIFF A MONTHLY MORTGAGE STATEMENT EACH MONTH PURSUANT TO THE PROVISIONS OF 12 C.F.R. 1026.41 AND 15 U.S.C. 1638

127.    Paragraphs 1-126 are incorporated by reference.

128.    This is an action for damages brought by the Plaintiff, Estate of Dianne L. Fitch, which is a consumer,  for Fannie Mae's violations of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA").

129.   Specifically, Plaintiff seeks the remedies provided in TILA for Defendant's failure to send the Plaintiff monthly mortgage statements as required by 15 U.S.C. §§ 1638 and 12 C.F.R. 1026.41 respectively.

130.   This Court has jurisdiction pursuant to 15 U.S.C. §1640 to provide private remedies for failure to respond to provide a borrower monthly statements.  15 U.S.C. § 1640 provides for statutory damages of the type alleged in this Complaint to a range of not less than $400.00 nor greater than $4,000.00.  Jurisdiction is further conferred on this Court by 15 U.S.C. §1640(e).

131.   The Defendant, Wells Fargo Bank, N.A.is a National Bank that services residential mortgage loans.  Wells Fargo claims to be the servicer of the mortgage loan, which is the subject of this complaint

132.   Fannie Mae was the owner of the mortgage note and mortgage loan from from April 20, 2017 through July 26, 2017.

133.    The mortgage loan is a "federally related mortgage loan" as defined in 12 U.S.C. § 2602(1).

134.   Plaintiff was not sent an accurate periodic monthly  in compliance with 12 C.F.R. 1026.41 since April 20, 2017.

135.   Pursuant to 12 C.F.R. 1026.41, the loan servicer on behalf of the creditor, Fannie Mae was required to send the Plaintiff a monthly mortgage statement that provides the following information:

(**d**) *Content and layout of the periodic statement.*  The periodic statement required by this section shall include:
(**1**) *Amount due.*  Grouped together in close proximity to each other and located at the top of the first page of the statement:
(**i**) The payment due date;
(**ii**) The amount of any late payment fee, and the date on which that fee will be imposed if payment has not been received; and
(**iii**) The amount due, shown more prominently than other disclosures on the page and, if the transaction has multiple payment options, the amount due under each of the payment options.
(**2**) *Explanation of amount due.*  The following items, grouped together in close proximity to each other and located on the first page of the statement:

**(i)**  The monthly payment amount, including a breakdown showing how much, if any, will be applied to principal, interest, and escrow and, if a mortgage loan has multiple payment options, a breakdown of each of the payment options along with information on whether the principal balance will increase, decrease, or stay the same for each option listed;

**(ii)**  The total sum of any fees or charges imposed since the last statement; and

**(iii)**  Any payment amount past due.

**(3)  *Past Payment Breakdown.***  The following items, grouped together in close proximity to each other and located on the first page of the statement:

**(i)**  The total of all payments received since the last statement, including a breakdown showing the amount, if any, that was applied to principal, interest, escrow, fees and charges, and the amount, if any, sent to any suspense or unapplied funds account; and

**(ii)**  The total of all payments received since the beginning of the current calendar year, including a breakdown of that total showing the amount, if any, that was applied to principal, interest, escrow, fees and charges, and the amount, if any, currently held in any suspense or unapplied funds account.

**(4)  *Transaction activity.***  A list of all the transaction activity that occurred since the last statement. For purposes of this paragraph (d)(4), *transaction activity* means any activity that causes a credit or debit to the amount currently due. This list must include the date of the transaction, a brief description of the transaction, and the amount of the transaction for each activity on the list.

**(5)  *Partial payment information.***  If a statement reflects a partial payment that was placed in a suspense or unapplied funds account, information explaining what must be done for the funds to be applied. The information must be on the front page of the statement or, alternatively, may be included on a separate page enclosed with the periodic statement or in a separate letter.

**(6)  *Contact information.***  A toll-free telephone number and, if applicable, an electronic mailing address that may be used by the consumer to obtain information about the consumer's account, located on the front page of the statement.

**(7)  *Account information.***  The following information:

**(i)**  The amount of the outstanding principal balance;

**(ii)**  The current interest rate in effect for the mortgage loan;

**(iii)**  The date after which the interest rate may next change;

**(iv)**  The existence of any prepayment penalty, as defined in§ 1026.32(b)(6)(i), that may be charged;

**(v)**  The Web site to access either the Bureau list or the HUD list of homeownership counselors and counseling organizations and the HUD toll-free telephone number to access contact information for homeownership counselors or counseling organizations; and

**(8)** *Delinquency information.*  If the consumer is more than 45 days delinquent, the following items, grouped together in close proximity to each other and located on the first page of the statement or, alternatively, on a separate page enclosed with the periodic statement or in a separate letter:

**(i)**  The date on which the consumer became delinquent;

**(ii)**  A notification of possible risks, such as foreclosure, and expenses, that may be incurred if the delinquency is not cured;

**(iii)**  An account history showing, for the previous six months or the period since the last time the account was current, whichever is shorter, the amount remaining past due from each billing cycle or, if any such payment was fully paid, the date on which it was credited as fully paid;

**(iv)**  A notice indicating any loss mitigation program to which the consumer has agreed, if applicable;

**(v)**  A notice of whether the servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, if applicable;

**(vi)**  The total payment amount needed to bring the account current; and

**(vii)**  A reference to the homeownership counselor information disclosed pursuant to paragraph (d)(7)(v) of this section.

136.   None of these statements have been sent to the Plaintiff, inconformity with Regulation Z since April 20, 2018.

137.    The Plaintiff has been charged advertising costs and attorney and foreclosure costs and improper property maintenance charges in various amounts from totalling $2347.10 relating to an advertised foreclosure sale on the decedent's mortgage loan account which was charged to the mortgage loan account and were reflected on the mortgage statements sent to the consumer for May, June and July, 2017.  These charges were not appropriate due to the fact that the consumer was not provided a mediation notice pursuant to R.I.G.L. 34-27-3.2 or a proper default notice pursuant to the terms of the mortgage

138.   Due to the improper charges for the foreclosure expenses each of the three statements sent to the Plaintiff were defective as these charges or portions of theme were included in all statements sent to the consumer by Wells Fargo.

139.   As a result of this failure to comply with 12 C.F.R. 1026.41 and TILA, Defendant, Fannie Mae is liable for actual damages and statutory damages of up to $4,000.00 for each of the three inaccurate statements for the months of May, June and July 2017 which were not in conformity with 12 C.F.R. 1026.41 and TILA.

140.   The Plaintiff has incurred actual damages, costs and legal fees in regard to this action:

    a.    He has incurred costs for gasoline to visit their attorney on at least three occasions, driving to his attorney's office for a round trip totaling 19.8 miles.  The IRS standard mileage allowance provides for .56 per mile.

    b.    He has incurred postage costs, copying costs and stationary and envelope costs for transmission to the Defendant.

    c.    He has incurred attorney fees and costs for the prosecution of this action. His fee agreement with their attorney provides that they will be responsible for legal fees expenses incurred in regard to this action.

    d.    His mortgage loan account has been charged inaccurate charges which will be charged against him

        WHERFORE, Plaintiff demands Judgment against Fannie Mae for statutory damages of at least $4,000.00, for each failure to send a monthly mortgage statement in conformity with TILA since April 20, 2017plus actual damages, plus attorney fees and costs and all other just and proper relief.

ESTATE OF DIANNE L. FITCH

April 19, 2018               By its Attorney

                       /s/ John B. Ennis
                       JOHN B. ENNIS, ESQ. #2135
                       1200 Reservoir Avenue
                       Cranston, Rhode Island 02920
                       (401) 943-9230
                       Jbelaw75@gmail.com

## COUNT V
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT BY HARMON LAW OFFICES, P.C.

141.   Paragraphs 1- 140 are incorporated by reference.

142.   Paragraphs   are incorporated by reference.

143.   Harmon Law Offices, P.C. is debt collector as defined by 15 USC 1692 et seq.

144.   The primary business of Harmon is the collection of debts.

145.   Since April 20, 2017 Harmon has committed a violation of the FDCPA and is liable to the Plaintiff for compensatory damages, statutory damages, and attorney fees and costs for violations.

146.   Harmon has used unfair and unconscionable means to collect or attempt to collect a debt against the Plaintiffs.

147.   Harmon on April 20, 2017s threatened to commence and has claimed to have commenced a non-judicial foreclosure to effect dispossession of the Plaintiff of his property even through Wells Fargo and Fannie Mae had no present right to possession of the property claimed as collateral through an enforceable security interest.  Specifically, it committed the following violations in this regard:

   a.   On about April 20, 2017 Harmon on behalf of Wells Fargo and Fannie Mae a Notice of Sale.

   b.   Harmon on behalf of Fannie Mae caused publication of three foreclosure advertisements of the sale of Plaintiff's home and hired an auctioneer to sell the property at a purported foreclosure sale.

   c.   Harmon conducted a purported foreclosure sale of Plaintiff's home on July 28, 2017 purportedly on behalf of Fannie Mae, despite the fact that Fannie Mae did not own Plaintiff's mortgage at that time.

148.   The facts alleged in this complaint establish that Fannie Mae did not have the present right to possession of the property claimed as collateral through an

enforceable security interest. On July 26, 2017 Fannie Mae no longer owned the mortgage.

149.   As alleged above, Harmon violated 15 U.S.C 1692e(5) by threatening to take legal action which it could not take. It advised the consumer, Estate of Dianne L. Fitch and Plaintiff Kenneth Fitch that a sale would occur on June    , 2017 despite the fact that no mediation notice had been sent by Fannie Mae and that a defective default letter had been sent to the Plaintiffs.

150.    All the actions of Harmon alleged in this complaint were designed to compel the Plaintiff to pay monies to Wells Fargo and Fannie Mae, on behalf of the alleged owner of the note and mortgage under the false threat of foreclosure of his home unless he made such a payment to Fannie Mae, through Harmon on behalf of Wells Fargo.

151.   The Plaintiff has incurred actual damages as a result of the violations of the FDCPA:

　　　a.　　Plaintiff has incurred costs for gasoline to visit his attorney on at least three occasions, driving to his attorney's office for round trips totaling 19.8 miles. The IRS standard mileage allowance provides for .56 per mile.

　　　b.　　Plaintiff has used his cell phone to call and receive calls from his attorney. These calls are charged to him pursuant to his cell phone usage and monthly fees.

　　　c.　　Plaintiff has used electricity to recharge his cell phone for calls when he spoke with his attorney.

　　　d.　　He has incurred attorney fees and costs for the prosecution of this action.

　　　a.　　He has suffered emotional damages for embarrassment and humiliation by the advertising of a foreclosure of his home and a potential loss of his home, through an invalid foreclosure sale.

　　　b.　　He has incurred damages for having to defend an eviction against by 266 Putnam due to the invalid foreclosure sale.

c.      His mortgage loan account has been charged unreasonable fees and costs for uncorroborated and unreasonable and unnecessary property inspections and improper legal fees and costs. Such costs have rendered a modification of the mortgage loan more expensive to the Plaintiff

162.    As a result of the above described acts of Harmon, it  is liable to the Plaintiff for actual damages, statutory damages, attorney's fees and costs.

WHEREFORE, Plaintiff demands that Judgment be entered against

Harmon for the following relief:

A.      Judgment against Harmon for actual damages, and statutory damages of $1,000.00 for each violation of the FDCPA and legal fees and costs

B.      For all other just and proper relief.


KENNETH FITCH
ESTATE OF DIANNE L. FITCH
By their Attorney


April 19, 2018                          /s/ John B. Ennis___
                                        JOHN B. ENNIS, ESQ. #2135
                                        1200 Reservoir Avenue
                                        Cranston, Rhode Island 02920
                                        (401) 943-9230
                                        Jbelaw75@gmail.com


## COUNT VII
## DECLARATORY JUDGMENT

163.    Paragraphs 1- 162 are incorporated by reference.

164.    This Court has jurisdiction to issue Declaratory Judgments pursuant to the Declaratory Judgment Act, 28 U.S.C §2201.

165.   The failure of Fannie Mae to comply with the terms of the mortgage, by virtue of a valid default notice and to provide mediation rendered the purported foreclosure void.

166.   The purported exercise of the statutory power of sale by Fannie Mae on July 28, 2017, despite having no ownership interest of the mortgage on July 28, 2017 rendered the purported foreclosure void.

167.   As a result the purported deed recorded in the Town of Cumberland should be vacated and rescinded.

168.   This Court has the power to declare that the aforementioned deed to be void and without any effect.

169.   The transaction referenced as an Assignment of Bid is not a part of the Statutory Power of Sale referenced in the Rhode Island General Laws. There is no such conveyance as an Assignment of Bid, which is not valid. The mortgagee can only convey the property to the bidder, not to an assignee of the bidder. The provisions of R.I.G.L 34-11-22 and 34-27-4 do not provide for assignments of bids.

170.   Plaintiff has incurred legal fees for the prosecution of this action.

Wherefore Plaintiff demands the following relief:

A. A declaration that the foreclosure sale of the Plaintiff's Property on July 28, 2017, was invalid and void;

B. A declaration that the foreclosure deed recorded on October 5, 2017, in the land records for the Town of Cumberland at Book 1755 Page 128, is invalid and void;

C. Order Fannie Mae to pay back to 266 Putnam Avenue, the sum of $188,000.00.

KENNETH FITCH

By his Attorney

April 19, 2018

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, RI 02920
(401) 943-9230
Jbelaw75@gmail.com

## COUNT VIII

### CLAIM FOR INJUNCTIVE  RELIEF AND A PRELIMINARY AND PERMANENT INJUNCTION

171.    Paragraphs  1-171   are incorporated by reference.

172.    Plaintiff will be irreparably harmed if Defendant's improper exercise of the statutory power of sale without complying with the terms of the mortgage is not voided and  Defendant, 266 Putnam is allowed to obtain title to Plaintiff's home and is allowed to evict Plaintiff from his home despite the improper foreclosure sale of the Plaintiff's home.

173.    Plaintiff has a substantial likelihood of success in the pending action, would otherwise suffer irreparable harm and can claim the greater hardship in the absence of an order, which will not disserve the public interest if imposed.

174.    The failure of Fannie Mae to comply with the terms of the mortgage renders void the alleged foreclosure by Statutory Power of Sale, without having the contractual ability.

175.    Plaintiff lives in this property, as his sole residence.

176.    These facts demonstrate that Plaintiff has a substantial likelihood of success. Likewise a foreclosure of Plaintiff's property by a party not entitled to foreclose on the property will cause Plaintiff irreparable harm, which hardship is greater than any hardship, which may be claimed by defendant.

177.    Such relief sought by Plaintiff will not disserve the public interest if

imposed.

178.    Since there has been no compliance with the terms of the mortgage, any alleged foreclosure is void

179.    Plaintiff has incurred legal fees and expenses due to the conduct of the Defendant in not complying with the terms of the mortgage.

WHEREFORE, Plaintiff demands that this Court:

a.    Declare that all actions of Fannie Mae in attempting to foreclose on the Plaintiff's property, without complying with the terms of the mortgage are void.

b.    Grant a Preliminary Injunction Restraining and Enjoining  266 Putnam Avenue and any other entity acting on its behalf from taking any action to evict the Plaintiff from their home at 73 Kay Street, Cumberland pending a hearing on a Permanent  Injunction.

c.    Grant a Mandatory Injunction ordering Fannie Mae to reimburse 266 Putnam Avenue, LLC for the payment it made of $188,000.00.

d.    Grant all other just and proper relief.

e.    Award Plaintiff attorney fees for the prosecution of this action.

KENNETH FITCH
By his Attorney

/s/ John B. Ennis

JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, RI 02920
(401) 943-9230
Jbelaw75@gmail.com

April 19, 2018

Plaintiffs demand a Trial by Jury on all Claims Triable by a Jury