**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**KENNETH FITCH**
**ESTATE OF DIANNE L. FITCH**

    **VS.**                **Civil Action No.  18-CV-214 JJM-PAS**

**FEDERAL HOUSING FINANCE**
**AGENCY,**
**FEDERAL NATIONAL**
**MORTGAGE ASSOCIATION,**
**WELLS FARGO BANK, N.A.,**
**HARMON LAW OFFICES,  P.C.**
**266 PUTNAM AVENUE, LLC**
**RUSHMORE LOAN MANAGEMENT SERVICES, LLC**
**US BANK NATIONAL ASSOCIATION AS TRUSTEE**
**FOR RMAC TRUST, SERIES 2016-CTT**

## AMENDED COMPLAINT

1.     Plaintiffs, Estate of Dianne L. Fitch and Kenneth Fitch, are or were the owners of real property located at 73 Kay Street, Cumberland, Rhode Island.

2.     Dianne L. Fitch died on April 7, 2014, intestate. Pursuant to operation of law, the property was vested in her heirs at law with Kenneth Fitch obtaining a life estate in the property.  Subsequently this property was conveyed to him leaving him as the sole owner of the property.

3.     This property has been and continues to be the primary residence for Kenneth Fitch.

4.     Through this action Plaintiffs challenge the lawfulness of the foreclosure sale of the residence of Kenneth Fitch, which was conducted on July 28, 2017, by certain Defendants: The Federal National Mortgage Association ("FNMA" or "Fannie Mae"), an agency or instrumentality of the federal government; Fannie Mae's conservator and regulator, the Federal Housing Finance Agency ("FHFA"), a federal agency; Wells Fargo Bank, N.A., a national bank and loan servicer ("Wells Fargo") acting as an agent of Fannie Mae and FHFA and its attorney, Harmon Law Offices P.C.("Harmon")

5.    The Defendants Fannie Mae, FHFA, and Wells Fargo refused to engage in mediation in good faith as required by state law, and conducted a foreclosure sale on the Property on July 28, 2017.

6.    Plaintiff seeks declaratory relief, injunctive relief, damages, and other relief from this Court, because Defendants Fannie Mae, FHFA, and Wells Fargo acted jointly to deprive Plaintiff of his interest in the Property by conducting a foreclosure sale without providing him with adequate notice and an opportunity for a meaningful hearing, as required by the Due Process clause of the Fifth Amendment to the Constitution of the United States, and other laws, and caused harm to him in various other ways hereinafter stated.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over this action and all defendants pursuant to 28 U.S.C. § 1331, because this case arises under the Constitution and laws of the United States.

8.    This Court also has jurisdiction over this action and all defendants pursuant to 28 U.S.C. § 1332 because the parties in this case are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest or costs.

9.    This Court also has jurisdiction over this case pursuant to the Real Estate Settlement and Procedures Act, 12 U.S.C. §2605.

10.    This Court also has jurisdiction over this case pursuant to the Fair Debt Collection Practices 15 U.S.C. §1692.

11.    This Court also has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

13.    The principal events giving rise to the claims stated herein occurred in this district and venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391 (c)(2).

14.    This Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. Rule 57.

15.   The Plaintiff Kenneth Fitch is a citizen of the United States who resides at 73 Kay Street, Cumberland, RI 02917 ("Property").

16.   The Estate of Dianne L. Fitch is the Estate of decedent, Dianne L. Fitch, who died on April 7, 2014.

17.   Kenneth Fitch is the lawfully appointed Administrator of this Estate, appointed by the Cumberland Probate Court.

18.   The Federal Housing Finance Agency ("FHFA") is an independent agency of the United States Federal Government established pursuant to 12 U.S.C. § 4511 *et seq.*

19.   The Federal National Mortgage Association ("FNMA" and "Fannie Mae") is a corporation organized under the laws of the United States by special charter, to serve the important governmental objectives of providing stability in the secondary mortgage market, responding appropriately to the private capital market, providing ongoing assistance to the secondary market for residential mortgages, promoting access to mortgage credit throughout the nation by increasing the liquidity of mortgage investments and improving the distribution of investment capital available for residential mortgage financing, and managing and liquidating federally owned mortgage portfolios in an orderly manner, with a minimum of adverse effect upon the residential mortgage market and minimum loss to the Federal Government. See 12 U.S.C. § 1716.

20.   Wells Fargo National Bank, N.A. ("Wells Fargo") is a National Bank,  with a principal place of business in  South Dakota.

21.   Harmon Law Offices, P.C. ("Harmon") is a law firm with a principal place of business located in Newton, Massachusetts.

22.   266 Putnam Avenue, LLC ("266 Putnam") is a Rhode Island Limited Liability Corporation.

23.   Rushmore Loan Management Services, LLC ("Rushmore") is a loan servicer with a principal office located at 15480 Laguna Canyon Road, Irvine, California, 92618.

24.   U.S. Bank National Association is a trustee for an entity known as the RMAC Trust, Series 2016-CTT("US Bank").

25.     On or about July 26, 2017 Fannie Mae sold Plaintiffs' mortgage loan to Rushmore Loan Management Services, LLC along with 1928 other loans pursuant to a winning bid by Rushmore.

26.     This winning bid by Rushmore for a pool of loans described as Group 3 Pool and sale was announced by Fannie Mae on June 9, 2017 in a press release.

## GENERAL FACTUAL ALLEGATIONS

### *The Conservatorship of FHFA over Fannie Mae*

27.     In accordance with the Housing and Economic Recovery Act of 2008 ("HERA"), the federal government established FHFA as a federal agency to supervise and regulate Fannie Mae and affiliated entities, the Federal Home Loan Mortgage Corporation ("Freddie Mac") and affiliated entities, and any Federal Home Loan Bank. See 12 U.S.C. §§ 4502 (20), 4511(b)(2).

28.     Among the powers the federal government granted to the FHFA pursuant to HERA was the power of its Director to place Fannie Mae into conservatorship under the FHFA and the power of the FHFA to operate and control all of Fannie Mae's operations as its conservator.

29.On or about September 7, 2008, the Director of the FHFA placed Fannie Mae under the conservatorship of the FHFA. See Statement of FHFA Director James B. Lockhart, http://www.treasury.gov/press-center/press-releases/Documents/fhfa_statement_090708hp1128.pdf , accessed May 12, 2014.

30.In January 2010, the Congressional Budget Office (hereafter "CBO") concluded that the actions taken by FHFA to place Fannie Mae under conservatorship "[made Fannie Mae . . .  part of the government and [implied] that [its] operations should be reflected in the federal budget." Budgetary Treatment of Fannie Mae and Freddie Mac, (Congressional Budget Office Background Paper, 2010), available at www.cbo.gov/publications/41887 at pages 1, 6.

31.In 2010, the CBO estimate projected cost of the Federal Government's investment in Fannie Mae between 2009 and 2019 at $389 billion.

32.In 2013, the CBO again concluded, "the federal government is now the effective owner of [Fannie Mae], any gain or loss arising from a change in the way

the distressed mortgages are handled by [Fannie Mae] would ultimately accrue to taxpayers." See Options for Principal Forgiveness in Mortgages Involving Fannie Mae and Freddie Mac (Congressional Budget Office, Mitchell Remy & Damien Moore, Working Paper No. 2013-02) available at www.cbo.gov/publication/44114 at page 1.

33. As conservator, FHFA controls all of the powers of the shareholders and board of directors of Fannie Mae. See Federal National Mortgage Association, Annual Report, Form 10-K, for the fiscal year ended December 31, 2014 http://www.fanniemae.com/resources/file/ir/pdf/quarterly-annual-results/2014/10k_2014.pdf , , at page 25, 162, 166. Shareholders no longer vote for members of Fannie Mae's board of directors, or on any other matters

34. On November 24, 2008, FHFA reconstituted Fannie Mae's Board of Directors, appointed all nine (9) members of the Board as well as the Board Chairman, and delegated certain powers to the Board while reserving certain powers to itself.

35. FHFA may modify or terminate the delegation of authority to the Board at FHFA's discretion.

36.   Fannie Mae's Directors serve on behalf of the conservator FHFA and exercise their authority as directed by and with the approval, where required of the conservator.

37.   The Directors have no fiduciary duties to any person or entity except to the conservator FHFA.

38.   Accordingly, the Directors are not obligated to consider the interest of the company, the holders of equity or debt securities unless specifically directed to do so by the conservator FHFA.

39.   As a result of the conservatorship, Fannie Mae is not managed with a strategy to maximize shareholder returns.

40.   FHFA, as both conservator and regulator, and the United States Treasury, pursuant to the senior preferred stock purchase agreement, prohibits Fannie Mae from paying any dividends to common shareholders.

41.  The net income of Fannie Mae is not available to common stockholders.

42.     According to the FHFA's September 7, 2008 explanation of the
conservatorship, there is "no exact time frame that can be given as to when this
conservatorship may end." FHFA's conservatorship of Fannie Mae will end,
according to said explanation, when the Director of FHFA issues an order
terminating the conservatorship, after the Director determines that FHFA's "plan to
restore the Company to a safe and solvent condition has been completed
successfully." See FHFA, Questions and Answers on Conservatorship, (Sept. 7,
2008), available at http://www.treasury.gov/press-center/press-
releases/Documents/fhfa_consrv_faq_090708hp1128.pdf.   at page 2;   ("Our
conservatorship has no specified termination date, and we do not know when or
how the conservatorship with terminate, whether we will continue to exist
following conservatorship, what changes to our business structure will be made
during or following the conservatorship, or what ownership interest, if any, our
current common and preferred stockholders will hold in us after the
conservatorship is terminated.").

43.     As a result of FHFA's conservatorship of Fannie Mae, since September 6,
2008, and continuing now and for the foreseeable future, FHFA directly controls
and operates Fannie Mae with all the powers of the shareholders, directors, and
officers of Fannie Mae, owns title to all the assets of Fannie Mae, and conducts all
business of Fannie Mae.

44.  HERA does contain a provision automatically terminating FHFA's
conservatorship of Fannie Mae, namely if FHFA's director appoints FHFA as
receiver of Fannie Mae.  See 12 U.S.C. 4617(a)(4)(D).

45.     However, FHFA's control over Fannie Mae will not be terminated upon its
being appointed as receiver.

46.     There is no other law, regulation, policy or directive that provides either a
date or specifies conditions by which FHFA's control over Fannie Mae will
terminate.

47.      Even if the conservatorship were terminated by means other than the
appointment of FHFA as receiver of Fannie Mae, Fannie Mae will remain subject
to the control of the United States Treasury through the senior preferred stock
purchase agreement, senior preferred stock, and warrant to purchase common
stock, which can only be canceled or modified with the consent of the United
States Treasury.

48.     From 2009 through the first quarter of 2012, Fannie Mae received a total of $116.1 billion from Treasury under the senior preferred stock purchase agreement to maintain a zero net worth.

49.     Because the senior preferred stock had an initial liquidation preference of $1 billion, the current aggregate liquidation preference.

50.     The United States Treasury owns 100% of the senior preferred stock of Fannie Mae, and holds warrants to purchase 79.9% of the common stock of Fannie Mae at a nominal price on a fully diluted basis on the date of exercise. See   at page 26, 27; see also Fact Sheet: Treasury Senior Preferred Stock Purchase Agreement http://www.fhfa.gov/Conservatorship/Documents/Senior-Preferred-Stock-Agree/2008-8-7_SPSPA_FactSheet_508.pdf

51.     By virtue of the senior preferred stock purchase agreement, as amended, the United States Treasury is entitled to receive quarterly dividends equal to the entire net worth of Fannie Mae, which results in every dollar of earnings being paid to the United States Treasury Similarly, Fannie Mae is not permitted to retain earnings, rebuild a capital position, or pay dividends or other distributions to stockholders other than the United States Treasury.

52.     Including the 2014 dividend payments to the United States Treasury, Fannie Mae will have paid a total of $134.5 billion in dividends to Treasury on the senior preferred stock.

53.     However, under the terms of the senior preferred stock purchase agreement, dividend payments do not offset prior Treasury draws, and, therefore, the Treasury's ownership interest in Fannie Mae is not diminished by reason of the dividends.

54.     The CBO considers the payments from Fannie Mae to the Treasure "intragovernmental payments, which to not affect net federal outlays."

55.     Pursuant to the senior preferred stock purchase agreement, Fannie Mae is not permitted to redeem the senior preferred stock prior to the termination of the United States Treasury's funding commitment, which commitment will not terminate until all of Fannie Mae's liabilities have been satisfied.

56.     Because Fannie Mae was chartered by Congress to further governmental objectives related to the secondary mortgage market and national housing policies,

because the federal government maintains a substantial ownership interest in Fannie Mae, because Fannie Mae is substantially funded by the federal government, because the Board of Directors of Fannie Mae is entirely appointed by FHFA, and because Fannie Mae is under the control of FHFA and/or the United States Treasury, Fannie Mae is an agency or instrumentality of the United States for the purpose of individual rights guaranteed against the federal government by the United States Constitution.

### *The Agency Relationship between FHFA and Fannie Mae and Wells Fargo.*

57.     Fannie Mae purchases mortgages that meet its underwriting standards from originators such as banks or thrifts. Fannie Mae holds these mortgages in its retained portfolios or packages them into mortgage-backed securities that it sells to investors. See FHFA Office of Inspector General Evaluation Report, FHFA's Oversight of the Servicing Alignment Initiative, February 12, 2014, available at http://fhfaoig.gov/Content/Files/EVL-2014-003.pdf  at page 6.

58.     For the mortgages that Fannie Mae purchases, Fannie Mae enters into contracts with mortgage servicers, including the "Servicing Guide" and other agreements.

59.      Under the terms of these agreements, the servicer collects mortgage payments, sets aside taxes and insurance premiums in escrow, forwards interest and principal payments to the contractually designated party, and responds to payment defaults.

60.     Through the "Servicing Guide" and other agreements, Fannie Mae established certain requirements for its servicers to follow when it performs its servicing duties, which include specific instructions on mitigating losses after borrowers default and conducting foreclosures on behalf of Fannie Mae.

61.     After FHFA placed Fannie Mae into conservatorship, FHFA has engaged in continuous supervision over its servicers, including Wells Fargo. See FHFA Office of Inspector General, FHFA's Supervision of Freddie Mac's Control's over Mortgage Servicing Contractors, March 7, 2012, available at http://fhfaoig.gov/Content/Files/AUD%202012-001_0.pdf  . FHFA's Office of Inspector General describes "continuous supervision" as "a wide range of ongoing activities designed to monitor and analyze [Fannie Mae's] overall business profile, including any trends or associated emerging risks."

8

62.     Among other supervisory actions, in April, 2011, FHFA created the Servicer Alignment Initiative, as amended by four additional initiatives beginning in January 2012 (collectively, "SAI"), by which the FHFA directs the actions taken by Fannie Mae's mortgage servicers when servicing a delinquent mortgage loan, in order to maximize the financial benefits to Fannie Mae, and ultimately to the taxpayers.

63.     Through the SAI, the FHFA directed Fannie Mae to update its servicing guidelines by adding new standards and timelines by which servicers were to manage delinquent mortgages.

64.     Through the SAI, the FHFA created specific requirements for servicers to follow including state-level timelines for the processing of foreclosures from the date of referral to the attorney/trustee through the date of the foreclosure sale.

65.     Through the SAI, the FHFA has directed Fannie Mae's servicers to use non-judicial foreclosure procedures, which authorize the seizure of property without a pre-deprivation hearing as required by the Due Process Clause of the Fifth Amendment.

66.      On or about December 31, 2009, Dianne L. Fitch borrowed $96,648.00 from Wells Fargo ("Originating Lender"), which was evidenced by a promissory note (the "Note") on the same date.

67.      On or about the same date, the Note was secured by a mortgage ("Mortgage") in favor of the Originating Lender.

68.     The Mortgage was recorded on January 29, 2007, in the land records of the Town of Cumberland at Book 1485 at  Page 256. A copy is attached as Exhibit A.

69.      On March 22, 2017,Wells Fargo, purported to assign its interest in the Mortgage to Federal National Mortgage Association by an assignment recorded in the land records for the Town of Cumberland. A copy is attached as Exhibit B.

70.     Wells Fargo had no interest in the mortgage or the note on March 22, 2017 as it owned neither, which were owned by Fannie Mae.

71.     Fannie Mae transferred its interest in the Mortgage to Rushmore Loan Management Group, or an affiliate by an assignment before July 26, 2017.

72.    This assignment was not recorded.

73.    On July 26, 2017, U.S. Bank National Association, not in its individual capacity, but solely as trustee the RMAC Trust, series 2016-CTT  became owner of the mortgage loan.

74.    A copy of the notice of sale of the mortgage loan sent to the Plaintiffs is attached as Exhibit C

75.    On or about March 31, 2017 , Wells Fargo had referred the Plaintiff's Mortgage account to Harmon Law Offices, P.C. to exercise the statutory power of sale and foreclose on Kenneth Fitch and Dianne Fitch's home.

76.    On April 20, 2017, on behalf of the Defendants, Harmon Law Offices, P.C. sent a notice of foreclosure sale ("Notice") to the Plaintiffs.

77.    This  Notice is attached as Exhibit D.

78.    In the Notice, Harmon Law Offices P.C. stated its intention to sell the property described in the Mortgage, on June 13, 2017 at 4:00 PM.

79.    Wells Fargo contended that this sale was subsequently continued to July 28, 2017.

80.    There is no provision in the Rhode Island General Laws, by which a foreclosure sale is continued.

81.    Such sales can only be adjourned.

82.    After the assignment of mortgage to Fannie Mae and prior to receiving the Notice, Plaintiffs did not receive any correspondence from the Federal National Mortgage Association or any servicer acting on its behalf advising him of a Mediation Conference as described in Rhode Island General Laws § 34-27-3.2.

83.    Under the terms of the provisions of R.I.G.L. 34-27-3.2, Kenneth Fitch as surviving spouse of Dianne Fitch was entitled to be notified of the right to mediation by Fannie Mae.

84.    Rhode Island Housing and Mortgage Finance Corporation, ("Rhode Island Housing"), as mediation coordinator, was  required  to  mail the Plaintiffs a notice advising them that they were entitled to mediation due to the Notice of Sale mailed to them by Fannie Mae, through its attorney.

85. Plaintiffs never received a Notice of Mediation from Rhode Island Housing or any other agency regarding mediation for this mortgagee, Fannie Mae.

86.    On or about July 28, 2017, Fannie Mae claims to have conducted a purporture foreclosure sale of the Property.

87.    At this sale, a person named Paul Balay purportedly made a bid in the amount of $188,000.00 for the property.

88.    Paul Balay, on information and belief signed the term sheet for the purported sale.

89.    Paul Balay did not provide any consideration to Fannie Mae and did not complete the purported sale.

90.    There is no such conveyance in regard to a foreclosure as an assignment of bid.

92.    Despite this fact, Wells Fargo on behalf of Fannie Mae indicated in a purported foreclosure deed that Paul Balay had assigned 266 Putnam Avenue his bid to purchase the property in the amount of $188,000.00.

93.    After the purported sale, this  amount was transmitted to Fannie Mae, through its attorney Harmon.

94.    On August 24, 2017, Fannie Mae, by Wells Fargo as Attorney in Fact, signed a document (hereinafter referred to as "the Foreclosure Deed" without prejudice as to its legal effect), which was recorded on October 15, 2017 in the land records for the Town of Cumberland at Book 1755 at  Page 128.

95.    The purported Foreclosure Deed is attached as Exhibit E.

96.    Neither Wells Fargo, Fannie Mae, nor FHFA have  provided the Plaintiff an opportunity for an evidentiary hearing with Fannie Mae or FHFA at which the Plaintiff could have an opportunity to: confront and cross-examine persons who

supplied information upon which the foreclosure action is grounded; present arguments and evidence to dispute the allegations of Wells Fargo, Fannie Mae, and FHFA prior to the termination of Plaintiff's interest in the Property; be represented by counsel during a hearing prior to the termination of their interest in the Property; and to have a neutral hearing officer make a determination based on applicable law and the evidence adduced at a hearing prior to the termination of the Plaintiff's interest in the Property.

97.     Had the Plaintiff had an opportunity for a hearing, he  could have presented evidence to challenge the foreclosure in one or more of the following ways:

      a.     Fannie Mae was not the mortgagee on the date of the foreclosure sale.

      b.     Fannie Mae failed to provide the required foreclosure notices to the Plaintiff, to comply with Rhode Island foreclosure statutes including § 34-27-3.2.

      c.     Fannie Mae failed to act in good faith as required and defined by § 34-27-3.2.

      d.     Fannie Mae failed to mail a default notice pursuant to the terms of the mortgage.

98.     On or about October 20, 2017 , the Defendant 266 Putnam Avenue filed a complaint for eviction against the Plaintiff in Sixth Division District Court, Providence County, Rhode Island in case number 6CA-2017-11437.

99.     If this eviction action is not enjoined, Plaintiff will suffer irreparable harm, in that the Plaintiff, will lose possession of his primary residence due to the fact that he currently has no other place to reside.

## COUNT I – DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS

100.    Plaintiff realleges and incorporates paragraphs 1-64 by reference.

101.    Fannie Mae, and FHFA acted jointly to deprive the Plaintiff of his ownership rights in the Property by conducting a foreclosure sale pursuant to Rhode Island General Laws Chapter 34-27, entitled "Mortgage Foreclosure and Sale," which authorizes mortgagees to foreclose the rights of an equitable title holder without judicial process or the opportunity to be heard before the foreclosure sale.

101.   When used by a federal government actor, the procedures of Rhode Island General Laws Chapter 34-27 do not satisfy the Due Process Clause of the Fifth Amendment before depriving an owner of his or her property. Specifically, Chapter 34-27 does not provide for adequate notice, an opportunity to be heard before the deprivation of his property, or the opportunity to recover appropriate damages for an improper deprivation of property.

102.   Pursuant to the Due Process Clause of the Fifth Amendment to the United States Constitution, Fannie Mae and FHFA, as agencies and/or instrumentalities of the federal government, owed a higher degree of notice and hearing to Plaintiff than is provided by Rhode Island General Laws chapter 34-27 before depriving the Plaintiff of his property.

103.   The Plaintiff has a significant property interest at stake. The foreclosure, if allowed to stand, permanently deprives the Plaintiff of his ownership, possession, and use of the Property, which he uses as his primary residence; clouds the title to the Property; impairs his ability to sell, rent, or otherwise alienate the Property; reduces the chance of him obtaining a future loan or mortgage; subjected him to eviction; and jeopardizes his security in a dwelling place.

104.   There is a significant risk of an erroneous deprivation of the Plaintiff's interest through the procedures used by Fannie Mae, and FHFA pursuant to RI General Law's chapter 34-27. To prevent an erroneous deprivation of property, the Due Process Clause of the Fifth Amendment to the United States Constitution requires Fannie Mae, and FHFA to provide Plaintiff with an opportunity to be heard at a meaningful time on, *inter alia,* any challenge to the true ownership of the Note; any challenge to Fannie Mae's and/or FHFA's authority to foreclose on behalf of the owner of the Note; any challenge to Fannie Mae's and/or FHFA's determination of default under the Note and Fannie Mae's and/or FHFA's calculation of deficiency; to challenge Fannie Mae's and/or FHFA's determination that the Plaintiff is not eligible for a loan modification, a repayment, or other homeowner assistance option; the opportunity to refinance or reinstate through other sources of funding; whether Fannie Mae and/or FHFA acted in good faith; and any challenge to Fannie Mae's and/or FHFA's compliance with applicable notice procedures.

105.   The government's financial interest in obtaining ownership, possession, and use of the Property is minimal.

106.   There are no exigent circumstances that would justify the lack of a pre-deprivation hearing, nor would a meaningful hearing before a neutral party impose significant fiscal or administrative burdens.

107.   Fannie Mae and FHFA violated the Plaintiff's Fifth Amendment procedural due process rights by conducting a non-judicial foreclosure sale pursuant to Rhode Island General Laws Chapter 34-27 without first providing adequate notice, a meaningful hearing prior to the deprivation of property, and an opportunity to recover adequate damages.

108.   Fannie Mae received $188,000.00 for the purchase of the Plaintiff's home at the purported foreclosure sale.

109   The alleged principal obligation due to Fannie Mae at the time of the purported foreclosure sale was $86,889.43 with an alleged arrearage of $21,987.97.

110.   Plaintiff Estate of Dianne L. Fitch had a second mortgage obligation to Santander Bank in the approximate $15,000.00.

112.   After the alleged foreclosure sale, Harmon held over $80,000.00 from the sales proceed after distributing a payoff to Freddie Mac and FHFA for the purported payoff of the loan.

113.   The attorney for Fannie Mae and FHFA has indicated that these funds are currently being held by Rushmore.

114.   No disbursement  has been made by Harmon on behalf of Fannie Mae or any other entity of any of the sale proceeds.

115.            Thus  Rushmore possesses the proceeds to reimburse 266 Putnam Avenue for the bid it made at the foreclosure sale.

Wherefore Plaintiff demands the following relief:

A. A declaration that the Fannie Mae's and FHFA's use of non-judicial foreclosure process in Rhode Island General Laws Chapter 34-27-4 (b), or any foreclosure process that does not provide for adequate notice, a meaningful evidentiary hearing prior to the deprivation of property, and an opportunity to recover damages, violated the Plaintiff's due process rights under the Fifth Amendment to the Constitution of the United States;

B. A declaration that the foreclosure sale of the Plaintiff's Property on July 28, 2017, was invalid and void;

C. A declaration that the foreclosure deed recorded on October 5, 2017, in the land records for the Town of Cumberland at Book 1755 Page 128, is invalid and void;

D. Order Rushmore and Fannie Mae to pay back to 266 Putnam Avenue, the sum of $188,000.00.

E. An order quieting title and declaring the rights and interests of all parties in the Property;

F. Costs; and

G.  Such other and further relief as the court considers appropriate.

KENNETH FITCH
ESTATE OF DIANNE L. FITCH
By their Attorney

January 14, 2020                    /s/ John B. Ennis
                                    JOHN B. ENNIS, ESQ. #2135
                                    1200 Reservoir Avenue
                                    Cranston, Rhode Island 02920
                                    (401) 943-9230
                                    Jbelaw75@gmail.com

## COUNT II – VIOLATION OF THE PROVISIONS OF  RHODE ISLAND GENERAL LAWS § 34-27-3.2

116.   Paragraphs 1-115 are incorporated by reference.

117.   Rhode Island General Laws § 34-27-3.2 requires a mortgagee, or its servicing agent, to obtain a certificate of compliance before it mails a notice of foreclosure sale under § 34-27-4 (b). See § 34-27-3.2 (d) (P.L. 2013, ch. 325,.

118.   The mortgagee obtains a certificate of compliance from the mediation coordinator at Rhode Island Housing either by sending a required notice of a mediation conference to a mortgagor and not receiving a response from the mortgagor; See § 34-27-3.2 (h); or by participating in a mediation conference in good faith; See § 34-27-3.2 (i).

119.   Fannie Mae did not comply with § 34-27-3.2 before sending the Notice of Mortgage Foreclosure Sale pursuant to § 34-27-4 (b).

120.   Fannie Mae did not mail to the Plaintiffs the required notice of mediation conference.

121.   Fannie Mae did not mail a Notice of Mediation to Rhode Island Housing along with a check for the mediation fee.

122.   Fannie Mae and did not participate in a mediation conference conducted by Rhode Island Housing as mediation coordinator in good faith.

123.   The foreclosure deed contains a certificate dated June 23, 2016 that Wells Fargo was the mortgagee.

124.   However once Fannie Mae became the mortgagee on March 22, 2017, it was obliged to send the Plaintiff a Notice of Mediation before sending a Notice of Sale.

125.   Pursuant to 34-27-3.2 (n), because Fannie Mae and Wells Fargo on behalf of Fannie Mae failed to comply with § 34-27-3.2, the foreclosure sale that occurred on July 26, 2018, was void, "without limitation of the right of the mortgagee thereafter to re-exercise its power of sale or other means of foreclosure upon compliance with this section."

126.   Pursuant to 34-27-3.2 (n), because Fannie Mae and Wells Fargo on behalf of Fannie Mae failed to comply with § 34-27-3.2, the foreclosure sale that occurred on July 26, 2018, was void, "without limitation of the right of the mortgagee thereafter to re-exercise its power of sale or other means of foreclosure upon compliance with this section."

127.   Plaintiff has filed this action within one year of the first notice of advertising of the notice of sale.

128.    Plaintiff has incurred damages as a result of the actions of Fannie Mae and FHFA as alleged in this complaint.

129.    Plaintiff has incurred legal fees for the prosecution of this action and for defense of the eviction action in the Rhode Island 6th Division Court.

Wherefore Plaintiff demands the following relief:

A.  A declaration that the foreclosure sale of the Plaintiff's Property on July 28, 2017, was invalid and void;

B.  A declaration that the foreclosure deed recorded on October 5, 2017, in the land records for the Town of Cumberland at Book 1755 Page 128, is invalid and void;

C.  Order Fannie Mae and Rushmore to pay back to 266 Putnam Avenue, the sum of $188,000.00.

KENNETH FITCH
ESTATE OF DIANNE L. FITCH
By their Attorney

January 14, 2020                /s/ John B. Ennis_____
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com

## COUNT III BREACH OF CONTRACT AND BREACH OF THE COVENANT OF GOOD FAITH AND DEALING

130.    Paragraphs 1-129 are incorporated by reference.

131.    Neither Harmon, Wells Fargo or Fannie Mae have mailed the Plaintiffs a notice in the form required pursuant to the provisions of paragraph 22 of the mortgage.

132.   Fannie Mae and FHFA were parties in the case of *Martins v. FHFA et al*, decided by this Court and were aware of the need for strict compliance with the terms of the mortgage before attempting to exercise the statutory power of sale, since that case was decided on October 11, 2016.

133.   Before an acceleration of the loan was declared, the Lender was required to send Plaintiff a notice to his home address which specified:

a.   the default;

b.   the action required to cure the default, stating a date, not less than 30 days from the date the default must be cured;

c.   that failure to cure the default on or before the date specified in the Notice may result in the acceleration and sale of our home

d.   the right to bring a court action to asset the non-existence of a default of Borrower to acceleration and sale.

134.   Paragraph 22 of Plaintiff's mortgage, which contains conditions for the exercise of the statutory power of sale, reads as follows:

**Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The  notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section**

**22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15.  Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

135.   The provisions in paragraph 22 of the mortgage were a condition precedent to the exercise of the power of sale of the mortgage.

136.   There was no compliance with the terms of the mortgage to exercise the statutory power of sale as indicated above. Any alleged exercise of the statutory power of sale to Plaintiff was defective because a default notice and a valid acceleration notice were never sent as required by paragraph 22 of the mortgage.

137.    Wells Fargo mailed Plaintiff; Dianne L. Fitch a letter dated August 16, 2016 which it claimed to be a default notice.  A copy is attached as Exhibit F.

138    This letter did not comply with Paragraph 22 of the mortgage.

139    Paragraph 22 (c) of Plaintiff's mortgage required a default notice which specified:

**(c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured**

140.    However this letter deceptively did not specify a particular date for the cure date.  Instead it stated:

To avoid the possibility of acceleration, you must pay this amount on or before September 20, 2016.

141.   This letter thus was not consistent with the terms of the mortgage, in that a specific cure date was not listed.

142.   The use of the phrase "on or before September 20, 2016" in this purported default letter demanded that the Plaintiff cure the default at any time from August 16, 2016 to September 20, 2016, which included dates within thirty days of the date of the letter.

143.   The mortgage in paragraph 22(c) specifically states that a specific date must be provided, not a date on or before a particular date, which includes dates within thirty days of the mailing of the letter.

144.   As a result there was no strict compliance with the terms of the mortgage due to the fact that the letter, deceptively and not in strict compliance with the terms of the mortgage, falsely stated that the consumer was required to cure the default within thirty days of the date of the letter.

145.   This letter did not specify a specific and accurate amount which had to be cured on a particular date.

146.   The amount stated as $6,655.44 was not an accurate amount of the purported default.

147.   In fact the letter on its face indicates that this amount was not accurate and that the Plaintiff could not rely on this number to cure the default. It stated:

To avoid the possibility of acceleration, you must pay this amount on or before September 20, 2016 to Wells Fargo Home Mortgage,, 3440 Flair Drive, El Monte, CA, 91731. For the loan to be current and note in default, any additional monthly payment, late charges and other charges that may be due under the note, mortgage and applicable law after the date of this notice must also be paid.

148.   Paragraph 22 provided that the borrower had to be provided a specific and accurate amount required to cure the mortgage

149.   The letter did not demand a specific amount to cure the mortgage.

150.   The reference to $6.655.44 was not a specific amount necessary to cure this default.

151.   Instead the letter deceptively demanded that the borrower also had to pay other unspecified amounts without a thirty day notice.

151.   No language in the mortgage required the mortgagor to pay any amount other than the amount which was specified in the default letter in order to cure the arrearage.

152.   Paragraph 22 required as a condition to acceleration and exercise of the statutory power of sale that the Plaintiff be provided a specific amount to cure an arrearage.

153.   Paragraph 22 required as a condition to acceleration and exercise of the statutory power of sale that the Plaintiff be provided  specific date at least 30 days from the date that notice was given to cure an accurate and specified arrearage.

154.   There was no language in the mortgage which authorized the note holder to accelerate the mortgage loan other than based on the failure of the mortgagee to pay the specific amount designated in the default letter on a date at least thirty days after the default letter was given to the Plaintiff.

155.   As a result there was no strict compliance with the terms of the mortgage due to the fact that  the letter,  deceptively and not in strict compliance with the terms of the mortgage, falsely stated that the consumer was required to cure the default by making payments other than those specified in the letter.

156.   The letter did not state that failure to cure may result in acceleration and sale.

Instead it stated:

If funds are not received by the above referenced date, we will proceed with acceleration. Once acceleration has occurred, we may take steps to terminate your ownership in the property by a foreclosure proceeding, which could result in the Lender or another person acquiring ownership of the property.

157.   This language did not strictly comply with the mortgage because it did not state that failure to cure may result in acceleration and sale.

158.   Instead it deceptively stated that if he did not cure that acceleration will occur.

159.   He thus was deceived by this letter into thinking that failure to cure the nonspecific amount of the arrearage would automatically result in acceleration without any further action by Wells Fargo.

160.   As a result, Wells Fargo did not strictly comply with the terms of the mortgage and was not authorized to exercise the statutory power of sale.

161.   The letter did not advise the Plaintiff that failure to cure may result in acceleration and exercise of the statutory power of sale.

162.   In fact, nowhere in this letter was there any language indicating that Wells Fargo would avail itself of the statutory power of sale, which was contained in the mortgage.

163.   Wells Fargo deceptively stated that if the unspecified amount were not cured that a foreclosure proceeding would occur.

164.   A foreclosure proceeding is not the exercise of the statutory power of sale.

165.   A foreclosure proceeding is a Judicial Foreclosure pursuant to R.I.G.L. 34-27-1.

166.   Wells Fargo in this letter deceptively indicated to the Plaintiff that if the default were not cured that only a foreclosure proceeding would be initiated in Court.

167.   This deceptive language made it clear that Wells Fargo was not availing itself of the statutory power of sale.

168.   Due to this deceptive language, Kenneth Fitch, who was successor in interest who executed the mortgage, was led to believe that Wells Fargo would not exercise the statutory power of sale, but would commence a judicial foreclosure proceeding.

169.   This letter led him to believe that he could not lose any interest in the property unless a foreclosure proceeding occurred.

170.   As a result there was no strict compliance with the terms of the mortgage, which precluded Wells Fargo from exercising the statutory power of sale.

171.   This letter thus was not consistent with the terms of the mortgage, in that it deceptively stated that it would commence a foreclosure proceeding and that:

If funds are not received by the above referenced date, we will proceed with acceleration. Once acceleration has occurred, we may take steps to terminate your ownership in the property by a foreclosure proceeding, which could result in the Lender or another person acquiring ownership of the property. If foreclosure is initiated, you have the right to assert in the foreclosure proceeding, or to bring a court action  to assert the non-existe3nce of a default, to argue that you did keep your promises and agreements under the Mortgage Note and Mortgage, and to present any other defenses that you may have.

172.   Wells Fargo, thus deceptively indicated to the Plaintiff that any rights under the mortgage to bring a court action to assert the non-existence of a default could only be asserted in the event that Wells Fargo commenced a foreclosure proceeding.

173.   Kenneth Fitch was deceptively led to believe by this letter that he could not bring a court action since no Judicial Foreclosure was commenced by Wells Fargo or Fannie Mae.

174.   Kenneth Fitch was deceptively led to believe by this letter that he could not bring a Court action unless a Judicial Foreclosure proceeding was commenced by Wells Fargo or Fannie Mae.

175.   Wells Fargo did not indicate in the letter that it would exercise the statutory power of sale.

176.   Wells Fargo  did not state that the borrower had the right to assert in the foreclosure proceeding the non-existence of a default and/or the right to bring a court action to assert the non-existence of a default or any other defense to acceleration, foreclosure and/or sale of the property.

177.   Wells Fargo deceptively did not mention in the letter that failure to cure may result in acceleration and exercise of the statutory power of sale.

178.   Wells Fargo also deceptively indicated in the letter that these rights were limited to argue in the foreclosure proceeding that he  did keep his romises and agreements under the Mortgage Note and Mortgage and to present any other defenses that he had to the foreclosure proceeding.

179.   This deceptive failure to notify Kenneth Fitch of the unlimited right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale did not strictly comply with the terms of the mortgage and precluded the exercise of the statutory power of sale.

180.   The letter deceptively advised Kenneth Fitch that he had a right to reinstate after acceleration without mentioning the limitations on that right to reinstate.

181.   Wells Fargo deceptively advised him how to reinstate the loan by contacting Wells Fargo at a particular address and phone number at 1-800-569-4287.

182.   However when this information was given, the letter deceptively did not advise him that the right to reinstate the mortgage loan would expire five days before a  sale date.

183.   The deceptive nature of this letter by not advising the Plaintiff of the limitations on the right to reinstate did not strictly comply with the terms of the mortgage and as a result was defective, which precluded the exercise of the statutory power of sale.

184.   The mortgage was drafted by Wells Fargo Bank, N.A., the originator of the mortgage loan, with no input from the Plaintiff or Dianne Fitch as to its terms.

185.   Any ambiguities regarding any obligations and rights under the terms of the mortgage thus must be strictly construed against the drafter, Wells Fargo and its successors and assigns.

186.     The terms of the mortgage authorized the exercise of the statutory power of sale, which could only be exercised by the mortgagee if it strictly complied with the terms of the mortgage.

187.   The failure of Wells Fargo in the August 16, 2016 letter to strictly comply with the terms of the mortgage precluded Fannie Mae or Wells Fargo from sending the consumer a Notice of Sale, pursuant to the provisions of R.I.G.L. 34-27-4.

188.   The failure of the Defendants to strictly comply with the terms of the mortgage rendered void any attempt to commence the alleged foreclosure by Statutory Power of Sale.

189.   The statutory power of sale could only be exercised pursuant to the Plaintiff being sent a default letter pursuant to the terms of the mortgage, followed by an acceleration letter, a Mediation Notice from Fannie Mae, followed by a Certificate from Rhode Island Housing certifying that it mailed  mediation notices in regard to the Fannie Mae mediation to Kenneth Fitch were not responded to and a Notice of Sale pursuant to R.I.G.L.34-27-4.

190.   Due to this failure to comply with the terms of the mortgage and R.I.G.L. 34-27-3.2, , Fannie Mae  was not contractually authorized to exercise the statutory power of sale and foreclose on the Plaintiff's property at any time.

191.   Prior to July 26, 2017, Fannie Mae had already sold the Plaintiff's Mortgage and Note to Rushmore Loan Management Group.

192.   Subsequently and prior to the date of the purported foreclosure this loan was securitized and sold by Rushmore Loan Management Group, resulting in the transfer of the mortgage and note to US Bank National Association as trustee for an entity known as the RMAC Trust, Series 2016-CTT.

193.   Thus on July 28, 2017, Fannie Mae no longer was the owner of the mortgage or the holder of the mortgage.

194.   Wells Fargo and Fannie Mae knew  before July 28, 2017  that neither Fannie Mae nor Wells Fargo possessed the right to exercise the statutory power of sale.

195.   Wells Fargo and Fannie Mae knew that US Bank owned the mortgage note and mortgage on July 28, 2017 and that Fannie Mae had no interest in the mortgage on that date.

196.   Despite this knowledge that Fannie Mae had no interest in the note or the mortgage on July 28, 2017, Wells Fargo and Fannie Mae caused to be executed a purported foreclosure deed.

197.   This deed contained a false affidavit dated August 12, 2017 by an employee of Wells Fargo, Rodney Lorrell Young, who falsely  stated in the affidavit the following misstatements of material fact:

a.    That the foreclosing mortgagee was Federal National Mortgage Association

b.    That Notices of Default were given prior to acceleration and the content of the Notice of Default was in strict compliance with the notice requirements set forth in the mortgage.

198.   These statements were false as alleged above in this complaint.

199.   Without these misstatements of material fact by the agent of Fannie Mae the purported foreclosure deed could not have been recorded.

200.   The mortgage contract between PlaintiffS and the mortgagee and its successor or assignee contained an implied covenant of good faith and dealing between the parties so that the contractual obligation of the contract might be achieved.

201.   Fannie Mae  violated the covenant of good faith and dealing by scheduling a foreclosure sale in violation of the terms of the mortgage by seeking to exercise the statutory power of sale without the lender having first sent a default notice to the Plaintiff, which contained language required by the terms of the mortgage,  without sending a Notice of Mediation, by authorizing a purported foreclosure sale to go forward on July 26, 2017 despite the fact that it had sold the note and the mortgage previously to Rushmore Loan Management and authorizing the execution of a foreclosure deed.

202.   This conduct consisted of actions taken contrary to the contractual and statutory obligations of the parties.

203.   As a result, Plaintiff has incurred the following damages in relation to the eviction proceeding brought against him due to the purported foreclosure:

      a.    Plaintiff has incurred the cost of filing this action in the form of filing fees and service fees, incurred in order to set aside this purported foreclosure, which was in violation of the terms of the mortgage and the Rhode Island mediation statute.

      b.    Plaintiff has incurred the legal  costs of defending an eviction action in the 3rd Division District Court and the legal costs and filing fee for the cost of an appeal to the Providence Superior Court.

c.     Plaintiff's mortgage loan account has been charged fees and costs which were not permitted without a valid default letter having being sent to him.

d.     Plaintiff has incurred damages for Plaintiffs' aggravation, humiliation, embarrassment, loss of privacy, strain on personal relationships, loss of enjoyment of life, sleepless nights, worry and anxiety. He has incurred stress with mail advising him that his home will be sold at a public auction and in fact was purportedly sold and was advised that he had to leave the premises after the purported termination notice from the attorney for Defendant, 266 Putnam Avenue, LLC. a in

204.   The conduct of Fannie Mae was willful, wanton and reckless, warranting the imposition of punitive damages.

205.   Fannie Mae ignored the clearly stated terms of the mortgage and case law in this Court holding that a mortgage contract involves strict compliance in order to exercise the statutory power of sale.

206.   Instead Fannie Mae has gone forward and have sought to exercise the statutory power of sale without a valid default notice, without mediation and despite not owning the mortgage and mortgage note.

207.   The actions of the Fannie Mae constituted a breach of contract, resulting in damages to the Plaintiff, who hired an attorney to commence this case.

208.   The Plaintiff's mortgage loan account has been charged unreasonable fees and expenses for the prior foreclosure attempt and for this attempt to foreclose.

209.   Kenneth Fitch has suffered emotional damages for embarrassment and humiliation by the advertising of a foreclosure of his home and an eviction action by a purported purchaser.

210.   He has incurred legal fees for the defense of the eviction action as alleged above.

211.   FHFA as conservator of Fannie Mae is responsible for its actions.

27

WHEREFORE, Plaintiff demands the following relief:

a.      Damages against Fannie Mae and FHFA for failure to comply with the terms of the mortgage.

b.      Damages against Fannie Mae and FHFA for legal fees and actual damages arising from the breach of contract.

c.      Damages against Fannie Mae for charging the Plaintiff fees and costs charged to the mortgage loan account arising from the purported foreclosure attempt.

d.      Legal fees from  Fannie Mae and FHFA  pursuant to the provisions of R.I.G.L § 9-1-45.

e.      All other just and proper relief.

                                        KENNETH FITCH
                                        ESTATE OF DIANNE L. FITCH
                                        By their Attorney


January 14, 2020                        /s/ John B. Ennis_____
                                        JOHN B. ENNIS, ESQ. #2135
                                        1200 Reservoir Avenue
                                        Cranston, Rhode Island 02920
                                        (401) 943-9230
                                        Jbelaw75@gmail.com


## COUNT IV
## DECLARATORY JUDGMENT

212.   Paragraphs 1- 211 are incorporated by reference.

213.   This Court has jurisdiction to issue Declaratory Judgments pursuant to the Declaratory Judgment Act, 28 U.S.C §2201.

214.   The failure of Fannie Mae to comply with the terms of the mortgage, by virtue of a valid default notice, for violation of due process of law by failing to conduct a Judicial Foreclosure, to provide mediation and by exercising the statutory power of sale rendered the purported foreclosure void.

215.   The purported exercise of the statutory power of sale by Fannie Mae on July 28, 2017, despite having no ownership interest of the mortgage or mortgage note on July 28, 2017 rendered the purported foreclosure void.

216.   As a result the purported deed recorded in the Town of Cumberland should be vacated and rescinded.

217.   This Court has the power to declare that the aforementioned deed to be void and without any effect.

217.   The transaction referenced as an Assignment of Bid is not a part of the Statutory Power of Sale referenced in the Rhode Island General Laws.

218.    There is no such conveyance as an Assignment of Bid, which is not valid.

219.   The mortgagee can only convey the property to the bidder, not to an assignee of the bidder.

220.   The provisions of R.I.G.L 34-11-22 and 34-27-4 do not provide for assignments of bids.

221.   Rushmore currently holds the proceeds from the sale of the property on behalf of US Bank.

222.   Plaintiff has incurred legal fees for the prosecution of this action.

Wherefore Plaintiff demands the following relief:

A. A declaration that the foreclosure sale of the Plaintiff's Property on July 28, 2017, was invalid and void;

B. A declaration that the foreclosure deed recorded on October 5, 2017, in the land records for the Town of Cumberland at Book 1755 Page 128, is invalid and void;

C. A declaration that there is no conveyance as an assignment of bid and that any purported assignment of bid is void.

D. Order Rushmore, US Bank and  Fannie Mae, to the extent that any of them hold the funds from the proceeds of the foreclosure sale  to pay back to 266 Putnam Avenue, LLC the sum of $188,000.00 plus interest and costs.

E. Grant all other just and proper relief including legal fees and costs to the Plaintiff.

<br>

KENNETH FITCH

By his Attorney

January 14, 2020

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, RI 02920
(401) 943-9230
Jbelaw75@gmail.com

## COUNT V

### CLAIM FOR INJUNCTIVE  RELIEF AND A PRELIMINARY AND PERMANENT INJUNCTION

223. Paragraphs  1-222  are incorporated by reference.

224. Plaintiff will be irreparably harmed if Defendant's improper exercise of the statutory power of sale without complying with the terms of the mortgage is not voided and  Defendant, 266 Putnam is allowed to obtain title to Plaintiff's home and is allowed to evict Plaintiff from his home despite the improper foreclosure sale of the Plaintiff's home.

225. Plaintiff has a substantial likelihood of success in the pending action, would otherwise suffer irreparable harm and can claim the greater hardship in the absence of an order, which will not disserve the public interest if imposed.

226. The failure of Fannie Mae to comply with the terms of the

mortgage renders, its lack of ownership of the mortgage and mortgage note on July 28, 2017 and its violation of due process voids the alleged foreclosure by Statutory Power of Sale

227.   Plaintiff lives in this property, as his sole residence.

228.   These facts demonstrate that Plaintiff has a substantial likelihood of success. Likewise a foreclosure of Plaintiff's property by a party not entitled to foreclose on the property will cause Plaintiff irreparable harm, which hardship is greater than any hardship, which may be claimed by defendant.

229.   Such relief sought by Plaintiff will not disserve the public interest if imposed.

230.   Since there has been no compliance with the terms of the mortgage, any alleged foreclosure is void

231.   Plaintiff has incurred legal fees and expenses due to the conduct of the Defendant in not complying with the terms of the mortgage.

WHEREFORE, Plaintiff demands that this Court:

a.      Declare that all actions of Fannie Mae in attempting to foreclose on the Plaintiff's property, without complying with the terms of the mortgage are void.

b.      Grant a Preliminary Injunction Restraining and Enjoining  266 Putnam Avenue and any other entity acting on its behalf from taking any action to evict the Plaintiff from their home at 73 Kay Street, Cumberland pending a hearing on a Permanent  Injunction.

c.      Grant a Mandatory Injunction ordering Fannie Mae, Rushmore and/or US Bank to reimburse 266 Putnam Avenue, LLC for the payment it made of $188,000.00 plus interest and costs.

d.      Grant all other just and proper relief.

e.      Award Plaintiff attorney fees for the prosecution of this action.

KENNETH FITCH
By his Attorney


/s/ John B. Ennis

January 14, 2020

JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, RI 02920
(401) 943-9230
Jbelaw75@gmail.com


## COUNT VI

**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE TRUTH IN LENDING ACT BY FANNIE MAE FAILURE TO SEND THE PLAINTIFF A MONTHLY MORTGAGE STATEMENT EACH MONTH PURSUANT TO THE PROVISIONS OF 12 C.F.R. 1026.41 AND 15 U.S.C. 1638**

232.   Paragraphs 1-231 are incorporated by reference.

233.   This is an action for damages brought by the Plaintiffs, Estate of Dianne L. Fitch and Kenneth Fitch as successor in interest to decedent, Diane L. Fitch who are consumers,  for Fannie Mae's violations of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA").

234.   Specifically, Plaintiffs seek the remedies provided in TILA for Defendant's failure to send the Plaintiff monthly mortgage statements as required by 15 U.S.C. §§ 1638 and 12 C.F.R. 1026.41 respectively.

235.   This Court has jurisdiction pursuant to 15 U.S.C. §1640 to provide private remedies for failure to respond to provide a borrower monthly statements.  15 U.S.C. § 1640 provides for statutory damages of the type alleged in this Complaint to a range of not less than $400.00 nor greater than $4,000.00.  Jurisdiction is further conferred on this Court by 15 U.S.C. §1640(e).

236.   The Defendant, Wells Fargo Bank, N.A.is a National Bank that services residential mortgage loans.  Wells Fargo claims to be the servicer of the mortgage loan, which is the subject of this complaint

237.   Fannie Mae was the owner of the mortgage note and mortgage loan from from April 20, 2017 through July 26, 2017.

238.   The mortgage loan is a "federally related mortgage loan" as defined in 12 U.S.C. § 2602(1).

239.   Wells Fargo did not mail an accurate periodic monthly statement  in compliance with 12 C.F.R. 1026.41 since April 20, 2017.

240.   Pursuant to 12 C.F.R. 1026.41, the loan servicer on behalf of the creditor, Fannie Mae was required to send the Plaintiff a monthly mortgage statement that provides the following information:

(**d**)  *Content and layout of the periodic statement.*  The periodic statement required by this section shall include:

(**1**)  *Amount due.*  Grouped together in close proximity to each other and located at the top of the first page of the statement:

(**i**)  The payment due date;

(**ii**)  The amount of any late payment fee, and the date on which that fee will be imposed if payment has not been received; and

(**iii**)  The amount due, shown more prominently than other disclosures on the page and, if the transaction has multiple payment options, the amount due under each of the payment options.

(**2**)  *Explanation of amount due.*  The following items, grouped together in close proximity to each other and located on the first page of the statement:

(**i**)  The monthly payment amount, including a breakdown showing how much, if any, will be applied to principal, interest, and escrow and, if a mortgage loan has multiple payment options, a breakdown of each of the payment options along with information on whether the principal balance will increase, decrease, or stay the same for each option listed;

(**ii**)  The total sum of any fees or charges imposed since the last statement; and

(**iii**)  Any payment amount past due.

(**3**)  *Past Payment Breakdown.*  The following items, grouped together in close proximity to each other and located on the first page of the statement:

(**i**)  The total of all payments received since the last statement, including a breakdown showing the amount, if any, that was applied to principal, interest, escrow, fees and charges, and the amount, if any, sent to any suspense or unapplied funds account; and

(**ii**)  The total of all payments received since the beginning of the current calendar year, including a breakdown of that total showing the amount, if any, that was

applied to principal, interest, escrow, fees and charges, and the amount, if any, currently held in any suspense or unapplied funds account.

(**4**) *Transaction activity.* A list of all the transaction activity that occurred since the last statement. For purposes of this paragraph (d)(4), *transaction activity* means any activity that causes a credit or debit to the amount currently due. This list must include the date of the transaction, a brief description of the transaction, and the amount of the transaction for each activity on the list.

(**5**) *Partial payment information.* If a statement reflects a partial payment that was placed in a suspense or unapplied funds account, information explaining what must be done for the funds to be applied. The information must be on the front page of the statement or, alternatively, may be included on a separate page enclosed with the periodic statement or in a separate letter.

(**6**) *Contact information.* A toll-free telephone number and, if applicable, an electronic mailing address that may be used by the consumer to obtain information about the consumer's account, located on the front page of the statement.

(**7**) *Account information.* The following information:

(**i**) The amount of the outstanding principal balance;

(**ii**) The current interest rate in effect for the mortgage loan;

(**iii**) The date after which the interest rate may next change;

(**iv**) The existence of any prepayment penalty, as defined in§ 1026.32(b)(6)(i), that may be charged;

(**v**) The Web site to access either the Bureau list or the HUD list of homeownership counselors and counseling organizations and the HUD toll-free telephone number to access contact information for homeownership counselors or counseling organizations; and

(**8**) *Delinquency information.* If the consumer is more than 45 days delinquent, the following items, grouped together in close proximity to each other and located on the first page of the statement or, alternatively, on a separate page enclosed with the periodic statement or in a separate letter:

(**i**) The date on which the consumer became delinquent;

(**ii**) A notification of possible risks, such as foreclosure, and expenses, that may be incurred if the delinquency is not cured;

(**iii**) An account history showing, for the previous six months or the period since the last time the account was current, whichever is shorter, the amount remaining past due from each billing cycle or, if any such payment was fully paid, the date on which it was credited as fully paid;

(**iv**) A notice indicating any loss mitigation program to which the consumer has agreed, if applicable;

(**v**) A notice of whether the servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, if applicable;

**(vi)**  The total payment amount needed to bring the account current; and

**(vii)**  A reference to the homeownership counselor information disclosed pursuant to paragraph (d)(7)(v) of this section.

241.   None of these statements have been sent to the Plaintiff, inconformity with Regulation Z since April 20, 2017.

242.   The mortgage loan account of the Plaintiffs has been charged advertising costs and attorney and foreclosure costs and improper property maintenance charges in various amounts from totalling $2347.10 relating to an advertised foreclosure sale on the decedent's mortgage loan account which was charged to the mortgage loan account and were reflected on the mortgage statements sent to the consumers for May, June and July, 2017.  These charges were not appropriate due to the fact that the consumers were not provided a mediation notice pursuant to R.I.G.L. 34-27-3.2r a proper default notice pursuant to the terms of the mortgage and Fannie Mae violated due process of law by seeking to exercise the statutory power of sale, rather than filing a Judicial Foreclosure.

243.   Due to the improper charges for the foreclosure expenses each of the three statements mailed by Wells Fargo did not comply with TILA as these charges or portions of theme were included in all statements sent to the consumers by Wells Fargo.

244.   As a result of this failure to comply with 12 C.F.R. 1026.41 and TILA, Defendant, Fannie Mae is liable for actual damages and statutory damages of up to $4,000.00 for each of the three inaccurate statements for the months of May, June and July 2017 which were not in conformity with 12 C.F.R. 1026.41 and TILA.

245.   The Plaintiffs have incurred actual damages, costs and legal fees in regard to this action:

    a.    Kenneth Fitch has incurred has incurred costs for gasoline to visit their attorney on at least three occasions to discuss these statements and their inaccuracy driving to his attorney's office for a round trip totaling 19.8 miles prior to commencing any litigation.  The IRS standard mileage allowance provides for .56 per mile.

    b.    Kenneth Fitch has incurred postage costs, copying costs and stationary and envelope costs for transmission to the Defendant regarding these inaccurate statements prior to commencing any litigation.

    c.       The Plaintiffs have been denied the opportunity to review an accurate periodic statement, thus frustrating the congressional purpose behind TILA to  provide accurate information to consumers regarding their mortgage loan account.

    d.       Because of the receipt of  each inaccurate  statement, Kenneth Fitch has taken time from his work schedule to review each inaccurate statements and the improper charges which were on the statements.

    e.       Because of the receipt of  each inaccurate  statement, Kenneth Fitch has taken time from his personal schedule to review each inaccurate statements and the improper charges which were on the statements.

    f.       The improper charges on each of the periodic statements has resulted in the mortgage loan account being charged improper and inflated charges.

    g.       He has incurred attorney fees and costs for the prosecution of this action. His fee agreement with their attorney provides that they will be responsible for legal fees expenses incurred in regard to this action.

WHERFORE, Plaintiffs demand Judgment against Fannie Mae

for statutory damages of at least $4,000.00, for each failure to send a monthly

mortgage statement in conformity with TILA since April 20, 2017plus actual

damages, plus attorney fees and costs and all other just and proper relief.

                                     ESTATE OF DIANNE L. FITCH
                                      KENNETH FITCH

January 14, 2020                      By their Attorney

                                     /s/ John B. Ennis
                                     JOHN B. ENNIS, ESQ. #2135
                                     1200 Reservoir Avenue
                                     Cranston, Rhode Island 02920
                                     (401) 943-9230
                                     Jbelaw75@gmail.com

**COUNT VII**

**VIOLATIONS OF REGULATION X FOR FAILURE TO CORRECT AN ERROR BY RESCINDING A FORECLOSURE AND REMOVING ANY LEGAL FEES FROM THE MORTGAGE LOAN ACCOUNT OF THE PLAINTIFFS**

246.   Paragraphs 1-245 are incorporated by reference.

247.   The Estate of Dianne L. Fitch is represented by Kenneth Fitch as Administrator.

248.   The Decedent, Dianne L. Fitch was the borrower who executed the mortgage to Wells Fargo referenced in this complaint.

249.   Kenneth Fitch also executed this mortgage.

250.   The Estate of Dianne L. Fitch has standing to bring this action.

251.   Kenneth Fitch as successor in interest to Dianne L. Fitch also has standing to bring this action.

252.   This is an action for actual and statutory damages filed by the Plaintiffs for violations of the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and specifically of the Regulations enacted pursuant thereto by the Consumer Financial Protection Bureau (CFPB).

253.   This is also an action for actual and statutory damages filed by the Plaintiffs for violations of the Real Estate Settlement Procedures Act, ("RESPA") and the Truth in Lending Act, 15 U.S.C. § 1601 et. seq.  ("TILA").

254.   This action is specifically filed to enforce the Regulations that became effective on January 10, 2014, specifically 12 CFR § 1024.36(c) and 12 CFR §1024.36(d)(2)(i)(A) of Regulation X.

254.   Wells Fargo Bank, N.A.  performs its mortgage loan servicing business under the name of Wells Fargo Home Mortgage. It was the former servicer of a Promissory Note and Deed of Trust on the Plaintiff's residential real estate.

255.   In January 2013, the Consumer Financial Protection Bureau issued a number of final rules concerning mortgage markets in the United States, pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), Public Law No. 111-203, 124 Stat. 1376 (2010).

256.   Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z) Mortgage Servicing Final Rules, 78 FR §10901 (Regulation Z) (February 14, 2013) and 78 FR §10695 (Regulation X)(February 14, 2013).  These Regulations became effective on January 10, 2014.

257.   The residential mortgage loan in this case is a "federally related mortgage loan" as that term is defined by Regulation 1024.2 (b) of the said Regulations.

258.   The Defendant in this case is subject to the said Regulations and does not qualify for any of the exceptions noted in the said Regulations for "small servicers." Neither is Defendant a "qualified lender," as defined in 12 CFR § 617.7000.

259.   The Plaintiffs are asserting a claim for relief against the Defendant for breach of the specific Rules under Regulation X as set forth below.

260.    The Plaintiffs have a private right of action under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(f) for these breaches and such an action includes actual damages, costs, statutory damages and attorney's fees.

261.   On or about November 3, 2017, the Plaintiffs sent a written notice of error to the Defendant that included the name of the borrower, the identity of the account, the property description and stated the information requested. This request was made pursuant to 12 CFR § 1024.36(a).

261.   The Notice of Error was mailed by certified mail, return receipt requested, having an article number 9407110898765000773143.

262.    The Notice of Error was mailed to the address noticed by the Defendant on its website as the designated address for sending a Notice of Error as provided for by 12 CFR § 1024.35.

263.    The address designated by Wells Fargo for Qualified Written Requests, Notices of Error and Requests for Information was  and still is Wells Fargo Home Mortgage, PO Box 10335, Des Moines, 50306-0335.

264.    The Notice of Error was received by the Defendant on November 6, 2017 at PO Box 10335, Des Moines, 50306-0335.

265.    A copy of the Notice of Error is attached as Exhibit  G.

266.    The Plaintiff's Notice of Error referenced failure to correct an error by which Defendant had added legal fees, advertising costs and other improper fees relating to an attempted foreclosure of Plaintiff's home without sending the Plaintiff a Notice of Mediation pursuant to R.I.G.L 34-27-3.2 or a default letter pursuant to the terms of the mortgage. It also alleged an error in that the sale was conducted two days after the mortgage loan had been sold to another entity. Thus at the time of the sale, Fannie Mae had no ownership interest in the mortgage or the note.

267.    Under 12 CFR 1024.35 the Notice of Error had to be responded to by the Defendant within thirty (30) business days of the date of the receipt of the Request. The Regulations provide that in computing this time period public holidays, Saturdays and Sundays are excluded.

268.    As a result, in this case, the written response was due no later than December 20, 2017.

269.    Defendant did not correct the error within thirty business days.

270.    It did not make a reasonable investigation concerning the error asserted and notify the consumer in writing  that it had determined that no error had occurred and provide the reasons for its assertion that no error had occurred.

271.    Instead it responded by a letter dated November 30, 2017, attached to this amended complaint as Exhibit F-1.

272.   In this letter it stated that the foreclosure was allowed by the mortgage documents and did not address any of the issues raised in the Notice of Error. It refused to correct the error.

273.   It refused to remove any fees for the purported foreclosure   It refused to void the foreclosure sale and remove any mortgage loans from the mortgage loan account.

274.   The Defendant has exhibited a pattern and practice of failing to comply with the Regulations as it failed to respond to or correct the error as indicated in this complaint and in other responses to Notices of Error relating to failure to provide mediation or for failure to provide a valid default notice prior to foreclosing.

275.   As a result of this lack of compliance by the Defendant, Wells Fargo is liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees for failure to correct the error.

276.   The Plaintiff has incurred actual damages, costs and legal fees in regard to this action relating to this Notice of Error:

a.      He has incurred costs for gasoline to visit his attorney on at least five occasions, driving to his attorney's office for a round trip totaling 19.8 miles to discuss this Notice of Error and the failure of Wells Fargo to correct this error and rescind this foreclosure.  The IRS standard mileage allowance provides for .56 per mile.

b.      He has had to incur the expense of using electricity to recharge his cell phone to call and receive calls from his attorney to discuss this Notice of Error and discuss this Notice of Error and the failure of Wells Fargo to correct this error and rescind this foreclosure.

c.      He has incurred postage and copying costs in transmitting this Notice of Error.

d.      He has taken time from his work schedule to discuss this matter with his attorney regarding  this Notice of Error and the failure of Wells Fargo to correct this error and rescind this foreclosure.

e. He has taken time from his usual activities and been distracted from his usual activities to discuss this matter with his attorney regarding this Notice of Error and the failure of Wells Fargo to correct this error and rescind this foreclosure.

f.      He has incurred attorney fees and costs for the prosecution of this action. His fee agreement with his attorney provides that he will be responsible for legal fees expenses incurred in regard to this action.

277.   The failure of the Defendant to correct the nine Notices of Error in this case is consistent with the pattern and practice of Wells Fargo to ignore this type of Regulation X Notice of Error.

WHEREFORE, Plaintiff demands judgment for actual damages as alleged,

plus statutory damages of $2,000.00 per violation for this Regulation X violation,

plus attorney fees and costs.


KENNETH FITCH
ESTATE OF DIANNE L. FITCH
By their Attorney


January 14, 2020                    /s/ John B. Ennis____
                                    JOHN B. ENNIS, ESQ. #2135
                                    1200 Reservoir Avenue
                                    Cranston, Rhode Island 02920
                                    (401) 943-9230
                                    Jbelaw75@gmail.com

## COUNT VIII

## VIOLATIONS OF REGULATION X FOR FAILURE TO RESPOND TO A NOTICE OF ERROR TO CORRECT AN ERROR BY PROVIDING THE PLAINTIFFS PERIODIC STATEMENTS SENT BY THE WELLS FARGO TO THE CONSUMER ON THE GROUNDS THAT THERE IS A LITIGATION PRIVILEGE WHICH DOES NOT REQUIRE RESPONDING TO ANOTICE OF ERROR

278.   Paragraphs 1-277 are incorporated by reference.

279.   On or about August 7, 2018, the Plaintiffs sent a written notice of error to the Defendant that included the name of the borrower, the identity of the account, the property description and stated the information requested. This request was made pursuant to 12 CFR § 1024.36(a).

280.   The Notice of Error was mailed by certified mail, return receipt requested, having an article number 9407110898765016061715.

281.   The Notice of Error was mailed to the address noticed by the Defendant on its website as the designated address for sending a Notice of Error as provided for by 12 CFR § 1024.35.

282.   The address designated by Wells Fargo for Qualified Written Requests, Notices of Error and Requests for Information was and still is Wells Fargo Home Mortgage, PO Box 10335, Des Moines, 50306-0335.

283.   The Notice of Error was received by the Defendant on August 10, 2018 at PO Box 10335, Des Moines, 50306-0335.

284.   A copy of the Notice of Error is attached as Exhibit  H.

285.   The Plaintiffs' Notice of Error referenced failure to respond to a Notice of Error which alleged a failure to  correct an error by which Defendant failed to respond to a Request for Information dated October 26, 2017 and received by Wells Fargo on November 6, 2017. The Plaintiff had mailed a Notice of Error dated June 15, 2018 which was received by Wells Fargo on June 22, 2018.

286.   In the original Request for Information Plaintiffs had requested that Wells Fargo provide all periodic statements for the the following information:

**All periodic monthly statements which were prepared by you for the consumer's mortgage loan account from the time you commenced servicing of the consumer's mortgage loan to the present. Please include all statements which were generated but which were not sent to the consumer.**

287.   The Defendant had refused to provide these documents on the grounds that the documents were confidential , privileged and/or proprietary. However the documents requested were neither confidential, privileged and/or proprietary.  This assertion was a generic assertion regularly asserted by Wells Fargo in response to requests for information relating to this type of request for information.

288.   Under 12 CFR 1024.35 the original Notice of Error had to be responded to by the Defendant within thirty (30) business days of the date of the receipt of the Request.  The Regulations provide that in computing this time period public holidays, Saturdays and Sundays are excluded.      As a result, in this case, the written response was due no later than August 6, 2018

289.   Defendant did not correct the error within thirty business days.

290.   It did not make a reasonable investigation concerning the error asserted and notify the consumer in writing  that it had determined that no error had occurred and provide the reasons for its assertion that no error had occurred.

291.   Instead it responded by a letter dated July 20, 2018, attached to this complaint as Exhibit F-2,  in which it stated:

**We received an inquiry in our office, however the account is in active litigation. Here is the litigation information for your reference. . .**
**We won't be providing a response to your inquiry because the issues raised are the same or very closely related to the issues in the pending litigation.**

292.   Wells Fargo failed to correct this error.

293.   There is no litigation privilege.

294.   It is the pattern and practice of Wells Fargo not to respond to any RESPA requests for information or notices of error when litigation is pending.

295.   Had Wells Fargo adequately responded to Plaintiff's Notice of Error or Requests for Information as alleged,  Plaintiff  would not have needed to send NOEs regarding Wells Fargo's erroneous assertion of an "active litigation" exception to its obligations under RESPA and Regulation X.

296.   As such, Plaintiff was further harmed by Wells Fargo's failure to adequately respond to the Request for Information as it required him to incur the expenses associated with sending these subsequent Notice of Error, such as their time, postage, etc.

297 Wells Fargo's practice of sending Active Litigation Letters and failing to provide substantive responses to borrowers' QWRs, RFIs, and NOEs, is part of a sustained pattern and practice of noncompliance with RESPA and Regulation X.

298.   Indeed, Wells Fargo's conduct has been  the subject of a prior class action lawsuit filed in this Northern District of Ohio against Wells Fargo, as well as other individual lawsuits across the country. E.g., Lieber v. Wells Fargo Bank, N.A., Case No. 16-cv-02868-PAG (N.D. Ohio); Schmidt, 2:17-cv-01708 (D. N.J.).

299.   As a result of this lack of compliance by the Defendant, Wells Fargo is liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees for failure to correct the error.

300.   The Plaintiff has incurred actual damages, costs and legal fees in regard to this action relating to this Notice of Error:

a.       He has incurred costs for gasoline to visit his attorney on at least five occasions, driving to his attorney's office for a round trip totaling 19.8 miles to discuss this Notice of Error and the failure of Wells Fargo to correct this error and provide the information requested.  The IRS standard mileage allowance provides for .56 per mile.

b.       He has had to incur the expense of using electricity to recharge his cell phone to call and receive calls from his attorney to discuss this Notice of Error and the failure of Wells Fargo to correct this error and provide the documents requested.

c.       He has incurred postage and copying costs in transmitting this Notice of Error.

d.      He has taken time from his work schedule to discuss this matter with his attorney regarding  this Notice of Error and the failure of Wells Fargo to correct this error and provide the documents requested.

e. He has taken time from his usual activities and been distracted from his usual activities to discuss this matter with his attorney regarding this Notice of Error and the failure of Wells Fargo to correct this error and provide the documents requested.

f.      He has incurred attorney fees and costs for the prosecution of this action. His fee agreement with his attorney provides that he will be responsible for legal fees expenses incurred in regard to this action.

301.   The failure of the Defendant to correct the nine Notices of Error in this case is consistent with the pattern and practice of Wells Fargo to ignore this type of Regulation X Notice of Error.

WHEREFORE, Plaintiff demands judgment for actual damages as alleged,

plus statutory damages of $2,000.00 per violation for this Regulation X violation,

plus attorney fees and costs.


KENNETH FITCH
ESTATE OF DIANNE L. FITCH
By their Attorney


January 14, 2020                          /s/ John B. Ennis___
                                          JOHN B. ENNIS, ESQ. #2135
                                          1200 Reservoir Avenue
                                          Cranston, Rhode Island 02920
                                          (401) 943-9230
                                          Jbelaw75@gmail.com

## COUNT IX

## VIOLATIONS OF REGULATION X FOR FAILURE TO RESPOND TO A NOTICE OF ERROR TO CORRECT AN ERROR BY PROVIDING THE PLAINTIFFS RECORDS REGARDING ALL LEGAL FEES CHARGED TO THE MORTGAGE LOAN ACCOUNT TO THE CONSUMER ON THE GROUNDS THAT THERE IS A LITIGATION PRIVILEGE WHICH DOES NOT REQUIRE RESPONDING TO ANOTICE OF ERROR

302.   Paragraphs 1-301 are incorporated by reference.

303.   On or about August 7, 2018, the Plaintiffs sent a written notice of error to the Defendant that included the name of the borrower, the identity of the account, the property description and stated the information requested. This request was made pursuant to 12 CFR § 1024.36(a).

304.   The Notice of Error was mailed by certified mail, return receipt requested, having an article number 9407110898765016060763.

305.    The Notice of Error was mailed to the address noticed by the Defendant on its website as the designated address for sending a Notice of Error as provided for by 12 CFR § 1024.35.

306.   The address designated by Wells Fargo for Qualified Written Requests, Notices of Error and Requests for Information was and still is Wells Fargo Home Mortgage, PO Box 10335, Des Moines, 50306-0335.

307.   The Notice of Error was received by the Defendant on August 10, 2018 at PO Box 10335, Des Moines, 50306-0335.

308.   A copy of the Notice of Error is attached as Exhibit  I.

309.   The Plaintiffs' Notice of Error referenced failure to respond to a Notice of Error which alleged a failure to  correct an error by which Defendant failed to respond to a Request for Information dated October 26, 2017 and received by Wells Fargo on November 6, 2017. The Plaintiff had mailed a Notice of Error dated June 15, 2018 which was received by Wells Fargo on June 22, 2018.

301.   In the original Request for Information Plaintiffs had requested that Wells Fargo provide all periodic statements for the following information:

**a. the reason for each Legal Fee**
**b. the law firm which provided the Legal Fee**
**c. the invoice for each Legal Fee**
**d. the payment to the vender or law firm  for each Legal Fee**
**e.  the transmittal of each Legal Fee invoice and information to the loan servicer**
**f. the order for each Legal Fee sent to the law firm or vendor**
**g. the reasonableness of each Legal Fees**
**h. the necessity for each Legal Fees**
**i. the person at the loan servicer who reviewed each Legal Fee submitted for payment**
**j. any written comments by the person who reviewed each Legal Fee**
**The consumer requests that you provide all documents supporting any legal fees charged to  the mortgage account and provide documents which indicate:**
**k. the relationship of each vendor or law firm which provided each  Legal Fee to the loan servicer**

302.   The Defendant had refused to provide these documents on the grounds that the documents were confidential , privileged and/or proprietary.

303. These documents were not confidential, privileged and/or proprietary. The Defendant had refused to provide these documents on the grounds that the documents were confidential , privileged and/or proprietary. However the documents requested were neither confidential, privileged and/or proprietary.  This assertion was a generic assertion regularly asserted by Wells Fargo in response to requests for information relating to this type of request for information.

304.   Under 12 CFR 1024.35 the original Notice of Error had to be responded to by the Defendant within thirty (30) business days of the date of the receipt of the Request.  The Regulations provide that in computing this time period public holidays, Saturdays and Sundays are excluded.

305.   As a result, in this case, the written response was due no later than August 6, 2018

306.   Defendant did not correct the error within thirty business days.

47

307.  It did not make a reasonable investigation concerning the error asserted and notify the consumer in writing that it had determined that no error had occurred and provide the reasons for its assertion that no error had occurred.

308.  Instead it responded by a letter dated July 20, 2018, attached to this complaint as Exhibit F-2, in which it stated:

**We received an inquiry in our office, however the account is in active litigation. Here is the litigation information for your reference. . .**
**We won't be providing a response to your inquiry because the issues raised are the same or very closely related to the issues in the pending litigation.**

309.  Wells Fargo failed to correct this error.

310.  There is no litigation privilege.

311.  It is the pattern and practice of Wells Fargo not to respond to any RESPA requests for information or notices of error when litigation is pending.

32.  Had Wells Fargo adequately responded to Plaintiff's Notice of Error or Requests for Information as alleged, Plaintiff would not have needed to send NOEs regarding Wells Fargo's erroneous assertion of an "active litigation" exception to its obligations under RESPA and Regulation X.

313.  As such, Plaintiff was further harmed by Wells Fargo's failure to adequately respond to the Request for Information as it required him to incur the expenses associated with sending these subsequent Notice of Error, such as their time, postage, etc.

314.   Wells Fargo's practice of sending Active Litigation Letters and failing to provide substantive responses to borrowers' QWRs, RFIs, and NOEs, is part of a sustained pattern and practice of noncompliance with RESPA and Regulation X.

315.  Indeed, Wells Fargo's conduct has been the subject of a prior class action lawsuit filed in this Northern District of Ohio against Wells Fargo, as well as other individual lawsuits across the country. E.g., Lieber v. Wells Fargo Bank, N.A., Case No. 16-cv-02868-PAG (N.D. Ohio); Schmidt, 2:17-cv-01708 (D. N.J.).

316.   As a result of this lack of compliance by the Defendant, Wells Fargo is liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees for failure to correct the error.

317.   The Plaintiff has incurred actual damages, costs and legal fees in regard to this action relating to this Notice of Error:

a.    He has incurred costs for gasoline to visit his attorney on at least five occasions, driving to his attorney's office for a round trip totaling 19.8 miles to discuss this Notice of Error and the failure of Wells Fargo to correct this error and provide the information requested.  The IRS standard mileage allowance provides for .56 per mile.

b.    He has had to incur the expense of using electricity to recharge his cell phone to call and receive calls from his attorney to discuss this Notice of Error and the failure of Wells Fargo to correct this error and provide the documents requested.

c.    He has incurred postage and copying costs in transmitting this Notice of Error.

d.    He has taken time from his work schedule to discuss this matter with his attorney regarding  this Notice of Error and the failure of Wells Fargo to correct this error and provide the documents requested.

e. He has taken time from his usual activities and been distracted from his usual activities to discuss this matter with his attorney regarding this Notice of Error and the failure of Wells Fargo to correct this error and provide the documents requested.

f.    He has incurred attorney fees and costs for the prosecution of this action. His fee agreement with his attorney provides that he will be responsible for legal fees expenses incurred in regard to this action.

318.   The failure of the Defendant to correct the nine Notices of Error in this case is consistent with the pattern and practice of Wells Fargo to ignore this type of Regulation X Notice of Error.

WHEREFORE, Plaintiffs demand judgment for actual damages as alleged, plus statutory damages of $2,000.00 per violation for this Regulation X violation, plus attorney fees and costs.

KENNETH FITCH
ESTATE OF DIANNE L. FITCH
By their Attorney

January 14, 2020                    /s/ John B. Ennis
                                    JOHN B. ENNIS, ESQ. #2135
                                    1200 Reservoir Avenue
                                    Cranston, Rhode Island 02920
                                    (401) 943-9230
                                    Jbelaw75@gmail.com

## COUNT X

## VIOLATIONS OF REGULATION X FOR FAILURE TO RESPOND TO A NOTICE OF ERROR TO CORRECT AN ERROR BY PROVIDING THE PLAINTIFFS RECORDS REGARDING ALL PROPERTY INSPECTIONS CHARGED TO THE MORTGAGE LOAN ACCOUNT TO THE CONSUMER ON THE GROUNDS THAT THERE IS A LITIGATION PRIVILEGE WHICH DOES NOT REQUIRE RESPONDING TO A NOTICE OF ERROR

319.   Paragraphs 1-318 are incorporated by reference.

320.   On or about August 7, 2018, the Plaintiffs sent a written notice of error to the Defendant that included the name of the borrower, the identity of the account, the property description and stated the information requested. This request was made pursuant to 12 CFR § 1024.36(a).

321.   The Notice of Error was mailed by certified mail, return receipt requested, having an article number 9407110898765016060763.

322.   The Notice of Error was mailed to the address noticed by the Defendant on its website as the designated address for sending a Notice of Error as provided for by 12 CFR § 1024.35.

323.   The address designated by Wells Fargo for Qualified Written Requests, Notices of Error and Requests for Information was and still is Wells Fargo Home Mortgage, PO Box 10335, Des Moines, 50306-0335.

324.   The Notice of Error was received by the Defendant on August 10, 2018 at PO Box 10335, Des Moines, 50306-0335.

325.   A copy of the Notice of Error is attached as Exhibit  J.

326.   The Plaintiffs' Notice of Error referenced failure to respond to a Notice of Error which alleged a failure to  correct an error by which Defendant failed to respond to a Request for Information dated October 26, 2017 and received by Wells Fargo on November 6, 2017. The Plaintiff had mailed a Notice of Error dated June 15, 2018 which was received by Wells Fargo on June 22, 2018.

327.   In the original Request for Information Plaintiffs had requested that Wells Fargo provide all periodic statements for the following information:

**The consumer request that you provide all documents supporting any Property Inspections fees charged by you and provide documents which indicate:**

**a. the reason for each property inspection**
**b. the company or vendor which did the property inspection**
**c. the invoice for each property inspection**
**d. the payment to the vendor for each property inspection**
**e. the name of the vendor employee which did each property inspection**
**f.  the transmittal of each property inspection information to the loan servicer**
**g. the order for each property inspection sent to the vendor**
**h. the reasonableness of each property inspection**
**i. the necessity for each property inspection**
**j. the person at the loan servicer who reviewed each property inspection**
**k. any written comments by the person who reviewed each property inspection**

**l. the relationship of each vendor which did the property inspection to the loan servicer**
**m. each written property inspection report**
**o.  all photographs of the subject property**

328.   The Defendant had refused to provide these documents on the grounds that the documents were confidential, privileged and/or proprietary.

329. These documents were not confidential, privileged and/or proprietary. The Defendant had refused to provide these documents on the grounds that the documents were confidential , privileged and/or proprietary. However the documents requested were neither confidential, privileged and/or proprietary.  This assertion was a generic assertion regularly asserted by Wells Fargo in response to requests for information relating to this type of request for information.

330.   Under 12 CFR 1024.35 the original Notice of Error had to be responded to by the Defendant within thirty (30) business days of the date of the receipt of the Request.  The Regulations provide that in computing this time period public holidays, Saturdays and Sundays are excluded.

331.   As a result, in this case, the written response was due no later than August 6, 2018

332.   Defendant did not correct the error within thirty business days.

333.   It did not make a reasonable investigation concerning the error asserted and notify the consumer in writing  that it had determined that no error had occurred and provide the reasons for its assertion that no error had occurred.

334.   Instead it responded by a letter dated July 20, 2018, attached to this complaint as Exhibit F-2,  in which it stated:

**We received an inquiry in our office, however the account is in active litigation. Here is the litigation information for your reference. . .**
**We won't be providing a response to your inquiry because the issues raised are the same or very closely related to the issues in the pending litigation.**

334.   Wells Fargo failed to correct this error.

335.   There is no litigation privilege, as claimed by Wells Fargo.

336.   It is the pattern and practice of Wells Fargo not to respond to any RESPA requests for information or notices of error when litigation is pending.

337.   Had Wells Fargo adequately responded to Plaintiff's Notice of Error or Requests for Information as alleged,  Plaintiff  would not have needed to send NOEs regarding Wells Fargo's erroneous assertion of an "active litigation" exception to its obligations under RESPA and Regulation X.

338.   As such, Plaintiff was further harmed by Wells Fargo's failure to adequately respond to the Request for Information as it required him to incur the expenses associated with sending these subsequent Notice of Error, such as their time, postage, etc.

339.    Wells Fargo's practice of sending Active Litigation Letters and failing to provide substantive responses to borrowers' QWRs, RFIs, and NOEs, is part of a sustained pattern and practice of noncompliance with RESPA and Regulation X.

340.   Indeed, Wells Fargo's conduct has been  the subject of a prior class action lawsuit filed in this Northern District of Ohio against Wells Fargo, as well as other individual lawsuits across the country. E.g., Lieber v. Wells Fargo Bank, N.A., Case No. 16-cv-02868-PAG (N.D. Ohio); Schmidt, 2:17-cv-01708 (D. N.J.).

341.   As a result of this lack of compliance by the Defendant, Wells Fargo is liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees for failure to correct the error.

342.   The Plaintiff has incurred actual damages, costs and legal fees in regard to this action relating to this Notice of Error:

a.       He has incurred costs for gasoline to visit his attorney on at least five occasions, driving to his attorney's office for a round trip totaling 19.8 miles to discuss this Notice of Error and the failure of Wells Fargo to correct this error and provide the information requested.  The IRS standard mileage allowance provides for .56 per mile.

b.       He has had to incur the expense of using electricity to recharge his cell phone to call and receive calls from his attorney to discuss this Notice of Error and the failure of Wells Fargo to correct this error and provide the documents requested.

c.      He has incurred postage and copying costs in transmitting this Notice of Error.

d.      He has taken time from his work schedule to discuss this matter with his attorney regarding  this Notice of Error and the failure of Wells Fargo to correct this error and provide the documents requested.

e. He has taken time from his usual activities and been distracted from his usual activities to discuss this matter with his attorney regarding this Notice of Error and the failure of Wells Fargo to correct this error and provide the documents requested.

f.      He has incurred attorney fees and costs for the prosecution of this action. His fee agreement with his attorney provides that he will be responsible for legal fees expenses incurred in regard to this action.

343.    The failure of the Defendant to correct the nine Notices of Error in this case is consistent with the pattern and practice of Wells Fargo to ignore this type of Regulation X Notice of Error.

WHEREFORE, Plaintiffs demand judgment for actual damages as alleged,

plus statutory damages of $2,000.00 per violation for this Regulation X violation,

plus attorney fees and costs.


KENNETH FITCH
ESTATE OF DIANNE L. FITCH
By their Attorney


January 14, 2020                    /s/ John B. Ennis
                                    JOHN B. ENNIS, ESQ. #2135
                                    1200 Reservoir Avenue
                                    Cranston, Rhode Island 02920
                                    (401) 943-9230
                                    Jbelaw75@gmail.com

## COUNT XI

### VIOLATIONS OF REGULATION X FOR FAILURE TO RESPOND TO A NOTICE OF ERROR TO CORRECT AN ERROR BY PROVIDING THE PLAINTIFFS RECORDS REGARDING ALL THE LIFE OF THE LOAN TRANSACTIONAL HISTORY FOR THE MORTGAGE LOAN ACCOUNT TO THE CONSUMER ON THE GROUNDS THAT THERE IS A LITIGATION PRIVILEGE WHICH DOES NOT REQUIRE RESPONDING TO A NOTICE OF ERROR

344.   Paragraphs 1-343 are incorporated by reference.

345.   On or about August 7, 2018, the Plaintiffs sent a written notice of error to the Defendant that included the name of the borrower, the identity of the account, the property description and stated the information requested. This request was made pursuant to 12 CFR § 1024.36(a).

346.   The Notice of Error was mailed by certified mail, return receipt requested, having an article number 9407110898765 0160661180.

347.    The Notice of Error was mailed to the address noticed by the Defendant on its website as the designated address for sending a Notice of Error as provided for by 12 CFR § 1024.35.

348.   The address designated by Wells Fargo for Qualified Written Requests, Notices of Error and Requests for Information was and still is Wells Fargo Home Mortgage, PO Box 10335, Des Moines, 50306-0335.

349.   The Notice of Error was received by the Defendant on August 10, 2018 at PO Box 10335, Des Moines, 50306-0335.

350.   A copy of the Notice of Error is attached as Exhibit  K.

351.   The Plaintiffs' Notice of Error referenced failure to respond to a Notice of Error which alleged a failure to  correct an error by which Defendant failed to respond to a Request for Information dated October 26, 2017 and received by Wells Fargo on November 6, 2017. The Plaintiff had mailed a Notice of Error dated June 15, 2018 which was received by Wells Fargo on June 22, 2018.

352.   In the original Request for Information Plaintiffs had requested that Wells Fargo provide the following information:

**An exact reproduction of the life of loan mortgage transactional history for this loan on the system of record used by the servicer from origination of the loan to the date of this letter. For purposes of identification, the life of loan transactional history means any software program or system by which the servicer records the current mortgage balance, the receipt of all payments, the assessment of any late fees or charges, and the recording of any corporate advances for any fees or charges including but not limited to property inspection fees, broker price opinion fees, legal fees, escrow fees, processing fees, technology fees, or any other collateral charge. Also, to the extent this life of loan transactional history includes in numeric or alpha-numeric codes, please attach a complete list of all such codes and state in plain English a short description for each such code.**

353.   The Defendant had refused to provide these documents on the grounds that the documents were confidential, privileged and/or proprietary.

354. These documents were not confidential, privileged and/or proprietary. The Defendant had refused to provide these documents on the grounds that the documents were confidential , privileged and/or proprietary. However the documents requested were neither confidential, privileged and/or proprietary.  This assertion was a generic assertion regularly asserted by Wells Fargo in response to requests for information relating to this type of request for information.

355.   Under 12 CFR 1024.35 the original Notice of Error had to be responded to by the Defendant within thirty (30) business days of the date of the receipt of the Request.  The Regulations provide that in computing this time period public holidays, Saturdays and Sundays are excluded.

356.   As a result, in this case, the written response was due no later than August 6, 2018

357.   Defendant did not correct the error within thirty business days.

358.   It did not make a reasonable investigation concerning the error asserted and notify the consumer in writing  that it had determined that no error had occurred and provide the reasons for its assertion that no error had occurred.

359.   Instead it responded by a letter dated July 20, 2018, attached to this complaint as Exhibit F-2,  in which it stated:

**We received an inquiry in our office, however the account is in active litigation. Here is the litigation information for your reference. . .**
**We won't be providing a response to your inquiry because the issues raised are the same or very closely related to the issues in the pending litigation.**

360.   Wells Fargo failed to correct this error.

361.   There is no litigation privilege, as claimed by Wells Fargo.

362.   It is the pattern and practice of Wells Fargo not to respond to any RESPA requests for information or notices of error when litigation is pending.

363.   Had Wells Fargo adequately responded to Plaintiff's Notice of Error or Requests for Information as alleged,  Plaintiff  would not have needed to send NOEs regarding Wells Fargo's erroneous assertion of an "active litigation" exception to its obligations under RESPA and Regulation X.

364.   As such, Plaintiff was further harmed by Wells Fargo's failure to adequately respond to the Request for Information as it required him to incur the expenses associated with sending these subsequent Notice of Error, such as their time, postage, etc.

365.    Wells Fargo's practice of sending Active Litigation Letters and failing to provide substantive responses to borrowers' QWRs, RFIs, and NOEs, is part of a sustained pattern and practice of noncompliance with RESPA and Regulation X.

366.   Indeed, Wells Fargo's conduct has been  the subject of a prior class action lawsuit filed in this Northern District of Ohio against Wells Fargo, as well as other individual lawsuits across the country. E.g., Lieber v. Wells Fargo Bank, N.A., Case No. 16-cv-02868-PAG (N.D. Ohio); Schmidt, 2:17-cv-01708 (D. N.J.).

367.   As a result of this lack of compliance by the Defendant, Wells Fargo is liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees for failure to correct the error.

368.   The Plaintiff has incurred actual damages, costs and legal fees in regard to this action relating to this Notice of Error:

a.      He has incurred costs for gasoline to visit his attorney on at least five occasions, driving to his attorney's office for a round trip totaling 19.8 miles to discuss this Notice of Error and the failure of Wells Fargo to correct this error and provide the information requested.  The IRS standard mileage allowance provides for .56 per mile.

b.      He has had to incur the expense of using electricity to recharge his cell phone to call and receive calls from his attorney to discuss this Notice of Error and the failure of Wells Fargo to correct this error and provide the documents requested.

c.      He has incurred postage and copying costs in transmitting this Notice of Error.

d.      He has taken time from his work schedule to discuss this matter with his attorney regarding  this Notice of Error and the failure of Wells Fargo to correct this error and provide the documents requested.

e. He has taken time from his usual activities and been distracted from his usual activities to discuss this matter with his attorney regarding this Notice of Error and the failure of Wells Fargo to correct this error and provide the documents requested.

f.      He has incurred attorney fees and costs for the prosecution of this action. His fee agreement with his attorney provides that he will be responsible for legal fees expenses incurred in regard to this action.

369.    The failure of the Defendant to correct the nine Notices of Error in this case is consistent with the pattern and practice of Wells Fargo to ignore this type of Regulation X Notice of Error.

WHEREFORE, Plaintiffs demand judgment for actual damages as alleged,

plus statutory damages of $2,000.00 per violation for this Regulation X violation,

plus attorney fees and costs.

KENNETH FITCH
ESTATE OF DIANNE L. FITCH
By their Attorney

January 14, 2020

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com

## COUNT XII

## VIOLATIONS OF REGULATION X FOR FAILURE TO RESPOND TO A NOTICE OF ERROR TO CORRECT AN ERROR BY PROVIDING THE PLAINTIFFS RECORDS REGARDING ANY LETTER S REGARDING MEDIATION FOR THE MORTGAGE LOAN ON THE GROUNDS THAT THERE IS A LITIGATION PRIVILEGE WHICH DOES NOT REQUIRE RESPONDING TO A NOTICE OF ERROR

370.   Paragraphs 1-369 are incorporated by reference.

372.   On or about August 7, 2018, the Plaintiffs sent a written notice of error to the Defendant that included the name of the borrower, the identity of the account, the property description and stated the information requested. This request was made pursuant to 12 CFR § 1024.36(a).

373.   The Notice of Error was mailed by certified mail, return receipt requested, having an article number 94071108987650l6060824.

374.   The Notice of Error was mailed to the address noticed by the Defendant on its website as the designated address for sending a Notice of Error as provided for by 12 CFR § 1024.35.

375.   The address designated by Wells Fargo for Qualified Written Requests, Notices of Error and Requests for Information was and still is Wells Fargo Home Mortgage, PO Box 10335, Des Moines, 50306-0335.

376.   The Notice of Error was received by the Defendant on August 10, 2018 at PO Box 10335, Des Moines, 50306-0335.

377.   A copy of the Notice of Error is attached as Exhibit  L.

378.   The Plaintiffs' Notice of Error referenced failure to respond to a Notice of Error which alleged a failure to  correct an error by which Defendant failed to respond to a Request for Information dated October 26, 2017 and received by Wells Fargo on November 6, 2017. The Plaintiff had mailed a Notice of Error dated June 15, 2018 which was received by Wells Fargo on June 22, 2018.

379.   In the original Request for Information Plaintiffs had requested that Wells Fargo provide the following information:

**Any and all documentation which indicates any letters sent to Rhode Island Housing to commence mediation pursuant to RIGL 34-27-3.2 along with any application for RIGL 34-27-3.2 mediation sent to Rhode Island Housing, a copy of any  check sent to Rhode Island Housing for the fee for any RIGL 34-27-3.2 mediation and any invoice or acknowledgment sent from Rhode Island housing regarding any application for mediation.**

380.   The Defendant had refused to provide these documents on the grounds that the documents were confidential, privileged and/or proprietary.

381. These documents were not confidential, privileged and/or proprietary. The Defendant had refused to provide these documents on the grounds that the documents were confidential , privileged and/or proprietary. However the documents requested were neither confidential, privileged and/or proprietary.  This assertion was a generic assertion regularly asserted by Wells Fargo in response to requests for information relating to this type of request for information.

382.   Under 12 CFR 1024.35 the original Notice of Error had to be responded to by the Defendant within thirty (30) business days of the date of the receipt of the Request.  The Regulations provide that in computing this time period public holidays, Saturdays and Sundays are excluded.

383.   As a result, in this case, the written response was due no later than August 6, 2018

384.   Defendant did not correct the error within thirty business days.

385.   It did not make a reasonable investigation concerning the error asserted and notify the consumer in writing  that it had determined that no error had occurred and provide the reasons for its assertion that no error had occurred.

386.   Instead it responded by a letter dated July 20, 2018, attached to this complaint as Exhibit F-2,  in which it stated:

**We received an inquiry in our office, however the account is in active litigation. Here is the litigation information for your reference. . .**
**We won't be providing a response to your inquiry because the issues raised are the same or very closely related to the issues in the pending litigation.**

387.   Wells Fargo failed to correct this error.

388.   There is no litigation privilege, as claimed by Wells Fargo.

389.   It is the pattern and practice of Wells Fargo not to respond to any RESPA requests for information or notices of error when litigation is pending.

390.   Had Wells Fargo adequately responded to Plaintiff's Notice of Error or Requests for Information as alleged,  Plaintiff  would not have needed to send NOEs regarding Wells Fargo's erroneous assertion of an "active litigation" exception to its obligations under RESPA and Regulation X.

391.   As such, Plaintiff was further harmed by Wells Fargo's failure to adequately respond to the Request for Information as it required him to incur the expenses associated with sending these subsequent Notice of Error, such as their time, postage, etc.

392.    Wells Fargo's practice of sending Active Litigation Letters and failing to provide substantive responses to borrowers' QWRs, RFIs, and NOEs, is part of a sustained pattern and practice of noncompliance with RESPA and Regulation X.

393.   Indeed, Wells Fargo's conduct has been  the subject of a prior class action lawsuit filed in this Northern District of Ohio against Wells Fargo, as well as other individual lawsuits across the country. E.g., Lieber v. Wells Fargo Bank, N.A., Case No. 16-cv-02868-PAG (N.D. Ohio); Schmidt, 2:17-cv-01708 (D. N.J.).

394.   As a result of this lack of compliance by the Defendant, Wells Fargo is liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees for failure to correct the error.

395.   The Plaintiff has incurred actual damages, costs and legal fees in regard to this action relating to this Notice of Error:

a.     He has incurred costs for gasoline to visit his attorney on at least five occasions, driving to his attorney's office for a round trip totaling 19.8 miles to discuss this Notice of Error and the failure of Wells Fargo to correct this error and provide the information requested.  The IRS standard mileage allowance provides for .56 per mile.

b.     He has had to incur the expense of using electricity to recharge his cell phone to call and receive calls from his attorney to discuss this Notice of Error and the failure of Wells Fargo to correct this error and provide the documents requested.

c.     He has incurred postage and copying costs in transmitting this Notice of Error.

d.     He has taken time from his work schedule to discuss this matter with his attorney regarding  this Notice of Error and the failure of Wells Fargo to correct this error and provide the documents requested.

e. He has taken time from his usual activities and been distracted from his usual activities to discuss this matter with his attorney regarding this Notice of Error and the failure of Wells Fargo to correct this error and provide the documents requested.

f.     He has incurred attorney fees and costs for the prosecution of this action. His fee agreement with his attorney provides that he will be responsible for legal fees expenses incurred in regard to this action.

396.   The failure of the Defendant to correct the nine Notices of Error in this case is consistent with the pattern and practice of Wells Fargo to ignore this type of Regulation X Notice of Error.

WHEREFORE, Plaintiffs demand judgment for actual damages as alleged, plus statutory damages of $2,000.00 per violation for this Regulation X violation, plus attorney fees and costs.

KENNETH FITCH
ESTATE OF DIANNE L. FITCH
By their Attorney

January 14, 2020

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com

## COUNT XII

## VIOLATIONS OF REGULATION X FOR FAILURE TO RESPOND TO A NOTICE OF ERROR TO CORRECT AN ERROR BY PROVIDING THE PLAINTIFFS RECORDS REGARDING THE MORTGAGE LOAN SERVICING FILE FOR THE MORTGAGE LOAN ON THE GROUNDS THAT THERE IS A LITIGATION PRIVILEGE WHICH DOES NOT REQUIRE RESPONDING TO A NOTICE OF ERROR

397.   Paragraphs 1-396 are incorporated by reference.

398.   On or about August 7, 2018, the Plaintiffs sent a written notice of error to the Defendant that included the name of the borrower, the identity of the account, the property description and stated the information requested. This request was made pursuant to 12 CFR § 1024.36(a).

399.   The Notice of Error was mailed by certified mail, return receipt requested, having an article number 9407110898765016060824.

400.    The Notice of Error was mailed to the address noticed by the Defendant on its website as the designated address for sending a Notice of Error as provided for by 12 CFR § 1024.35.

401.   The address designated by Wells Fargo for Qualified Written Requests, Notices of Error and Requests for Information was and still is Wells Fargo Home Mortgage, PO Box 10335, Des Moines, 50306-0335.

402.   The Notice of Error was received by the Defendant on August 10, 2018 at PO Box 10335, Des Moines, 50306-0335.

403.   A copy of the Notice of Error is attached as Exhibit  M.

402.   The Plaintiffs' Notice of Error referenced failure to respond to a Notice of Error which alleged a failure to  correct an error by which Defendant failed to respond to a Request for Information dated October 26, 2017 and received by Wells Fargo on November 6, 2017. The Plaintiff had mailed a Notice of Error dated June 15, 2018 which was received by Wells Fargo on June 22, 2018.

403.   In the original Request for Information Plaintiffs had requested that Wells Fargo provide the following information:

 **The consumer requests that you provide the consumer the entire mortgage loan servicing file including all servicing notes, collection notes, recordings of all phone calls you or any agent acting on your behalf made to the consumer or to the consumer's attorney, and any calls from the consumer or the consumer's attorney to you or an agent which you recorded and all loss mitigation documents sent to you by the consumer and all loss mitigation responses sent from you to the consumer from the time that you obtained servicing rights to the present.**

404.   The Defendant had refused to provide these documents on the grounds that the documents were confidential, privileged and/or proprietary.

405. These documents were not confidential, privileged and/or proprietary. The Defendant had refused to provide these documents on the grounds that the documents were confidential , privileged and/or proprietary. However the documents requested were neither confidential, privileged and/or proprietary.  This

assertion was a generic assertion regularly asserted by Wells Fargo in response to requests for information relating to this type of request for information.

406.   Under 12 CFR 1024.35 the original Notice of Error had to be responded to by the Defendant within thirty (30) business days of the date of the receipt of the Request.  The Regulations provide that in computing this time period public holidays, Saturdays and Sundays are excluded.

407.   As a result, in this case, the written response was due no later than August 6, 2018

408.   Defendant did not correct the error within thirty business days.

409.   It did not make a reasonable investigation concerning the error asserted and notify the consumer in writing  that it had determined that no error had occurred and provide the reasons for its assertion that no error had occurred.

410.   Instead it responded by a letter dated July 20, 2018, attached to this complaint as Exhibit F-2,  in which it stated:

**We received an inquiry in our office, however the account is in active litigation. Here is the litigation information for your reference. . .**
**We won't be providing a response to your inquiry because the issues raised are the same or very closely related to the issues in the pending litigation.**

411.   Wells Fargo failed to correct this error.

412.   There is no litigation privilege, as claimed by Wells Fargo.

413.   It is the pattern and practice of Wells Fargo not to respond to any RESPA requests for information or notices of error when litigation is pending.

414.   Had Wells Fargo adequately responded to Plaintiff's Notice of Error or Requests for Information as alleged,  Plaintiff  would not have needed to send NOEs regarding Wells Fargo's erroneous assertion of an "active litigation" exception to its obligations under RESPA and Regulation X.

415.   As such, Plaintiff was further harmed by Wells Fargo's failure to adequately respond to the Request for Information as it required him to incur the expenses

associated with sending these subsequent Notice of Error, such as their time, postage, etc.

416.    Wells Fargo's practice of sending Active Litigation Letters and failing to provide substantive responses to borrowers' QWRs, RFIs, and NOEs, is part of a sustained pattern and practice of noncompliance with RESPA and Regulation X.

417.    Indeed, Wells Fargo's conduct has been  the subject of a prior class action lawsuit filed in this Northern District of Ohio against Wells Fargo, as well as other individual lawsuits across the country. E.g., Lieber v. Wells Fargo Bank, N.A., Case No. 16-cv-02868-PAG (N.D. Ohio); Schmidt, 2:17-cv-01708 (D. N.J.).

418.    As a result of this lack of compliance by the Defendant, Wells Fargo is liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees for failure to correct the error.

419.    The Plaintiff has incurred actual damages, costs and legal fees in regard to this action relating to this Notice of Error:

a.      He has incurred costs for gasoline to visit his attorney on at least five occasions, driving to his attorney's office for a round trip totaling 19.8 miles to discuss this Notice of Error and the failure of Wells Fargo to correct this error and provide the information requested.  The IRS standard mileage allowance provides for .56 per mile.

b.      He has had to incur the expense of using electricity to recharge his cell phone to call and receive calls from his attorney to discuss this Notice of Error and the failure of Wells Fargo to correct this error and provide the documents requested.

c.      He has incurred postage and copying costs in transmitting this Notice of Error.

d.      He has taken time from his work schedule to discuss this matter with his attorney regarding  this Notice of Error and the failure of Wells Fargo to correct this error and provide the documents requested.

e. He has taken time from his usual activities and been distracted from his usual activities to discuss this matter with his attorney regarding this Notice of Error and

the failure of Wells Fargo to correct this error and provide the documents requested.

f.      He has incurred attorney fees and costs for the prosecution of this action. His fee agreement with his attorney provides that he will be responsible for legal fees expenses incurred in regard to this action.

420.    The failure of the Defendant to correct the nine Notices of Error in this case is consistent with the pattern and practice of Wells Fargo to ignore this type of Regulation X Notice of Error.


        WHEREFORE, Plaintiffs demand judgment for actual damages as alleged,

plus statutory damages of $2,000.00 per violation for this Regulation X violation,

plus attorney fees and costs.



                                        KENNETH FITCH
                                        ESTATE OF DIANNE L. FITCH
                                        By their Attorney



January 14, 2020                        /s/ John B. Ennis___
                                        JOHN B. ENNIS, ESQ. #2135
                                        1200 Reservoir Avenue
                                        Cranston, Rhode Island 02920
                                        (401) 943-9230
                                        Jbelaw75@gmail.com

## COUNT XIII

**VIOLATIONS OF REGULATION X FOR FAILURE TO RESPOND TO A NOTICE OF ERROR TO CORRECT AN ERROR WHICH ALLEGED THAT THE DEFENDANT HAD COMMITTED ERROR BY NOT RESPONDING TO A NOTICE OF ERROR BY CONDUCTING A PURPORTED FORECLOSURE AND CHARGING FEES AND EXPENSES WITHOUT A VALID DEFAULT NOTICE, A MEDIATION NOTICE OR WITHOUT FANNIE MAE OWNING THE MORTGAGE LOAN ON THE DAY OF THE PURPORTED SALE ON THE GROUNDS THAT THERE IS A LITIGATION PRIVILEGE WHICH DOES NOT REQUIRE RESPONDING TO A REQUEST FOR INFORMATION**

421.   Paragraphs 1-420 are incorporated by reference.

422.   On or about August 7, 2018, the Plaintiffs sent a written notice of error that there was no error to the Defendant that included the name of the borrower, the identity of the account, the property description and stated the information requested. This notice of error was made pursuant to 12 CFR § 1024.35.

423.   The Notice of Error was mailed by certified mail, return receipt requested, having an article number 9407110898765016061760.

424.    The Notice of Error was mailed to the address noticed by the Defendant on its website as the designated address for sending a Request for Information as provided for by 12 CFR § 1024.35.

425.   The address designated by Wells Fargo for Qualified Written Requests, Notices of Error and Requests for Information was and still is Wells Fargo Home Mortgage, PO Box 10335, Des Moines, 50306-0335.

426.   The Notice of Error was received by the Defendant on August 10, 2018 at PO Box 10335, Des Moines, 50306-0335.

427.   A copy of the Notice of Error is attached as Exhibit O.

428.   The Plaintiffs' Notice of Error referenced failure to respond to a Notice of Error which alleged a failure to  correct an error by which Defendant failed to respond to a Notice of Errordated October 26, 2017 and received by Wells Fargo

on November 6, 2017. The Plaintiff had mailed a Notice of Error dated June 15, 2018 which was received by Wells Fargo on June 22, 2018.

429.   In the original Notice of Error,  Plaintiffs had requested that Wells Fargo correct the error originally asserted the same error as in Exhibit G in this complaint.

430.   The Defendant had refused to correct this error asserting that there was no error. However as alleged in this complaint, the foreclosure should have be rescinded.

431.  Under 12 CFR 1024.35 the original Notice of Error had to be responded to by the Defendant within thirty (30) business days of the date of the receipt of the Request.  The Regulations provide that in computing this time period public holidays, Saturdays and Sundays are excluded.

432.   As a result, in this case, the written response was due no later than August 6, 2018

433.   Defendant did not correct the error within thirty business days.

434.   It did not make a reasonable investigation concerning the error asserted and notify the consumer in writing  that it had determined that no error had occurred and provide the reasons for its assertion that no error had occurred.

435.   Instead it responded by a letter dated July 20, 2018, attached to this complaint as Exhibit F-2,  in which it stated:

**We received an inquiry in our office, however the account is in active litigation. Here is the litigation information for your reference. . .**
**We won't be providing a response to your inquiry because the issues raised are the same or very closely related to the issues in the pending litigation.**

436.   Wells Fargo failed to correct this error.

437.   There is no litigation privilege, as claimed by Wells Fargo.

438.   It is the pattern and practice of Wells Fargo not to respond to any RESPA requests for information or notices of error when litigation is pending.

439.   Had Wells Fargo adequately responded to Plaintiff's Notice of Error or Requests for Information as alleged,  Plaintiff  would not have needed to send NOEs regarding Wells Fargo's erroneous assertion of an "active litigation" exception to its obligations under RESPA and Regulation X.

440.   As such, Plaintiff was further harmed by Wells Fargo's failure to adequately respond to the Request for Information as it required him to incur the expenses associated with sending these subsequent Notice of Error, such as their time, postage, etc.

441.    Wells Fargo's practice of sending Active Litigation Letters and failing to provide substantive responses to borrowers' QWRs, RFIs, and NOEs, is part of a sustained pattern and practice of noncompliance with RESPA and Regulation X.

442.   Indeed, Wells Fargo's conduct has been  the subject of a prior class action lawsuit filed in this Northern District of Ohio against Wells Fargo, as well as other individual lawsuits across the country. E.g., Lieber v. Wells Fargo Bank, N.A., Case No. 16-cv-02868-PAG (N.D. Ohio); Schmidt, 2:17-cv-01708 (D. N.J.).

443.   As a result of this lack of compliance by the Defendant, Wells Fargo is liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees for failure to correct the error.

444.   The Plaintiff has incurred actual damages, costs and legal fees in regard to this action relating to this Notice of Error:

a.     He has incurred costs for gasoline to visit his attorney on at least five occasions, driving to his attorney's office for a round trip totaling 19.8 miles to discuss this Notice of Error and the failure of Wells Fargo to correct this error and provide the information requested.  The IRS standard mileage allowance provides for .56 per mile.

b.     He has had to incur the expense of using electricity to recharge his cell phone to call and receive calls from his attorney to discuss this Notice of Error and the failure of Wells Fargo to correct this error and provide the documents requested.

c.     He has incurred postage and copying costs in transmitting this Notice of Error.

d.     He has taken time from his work schedule to discuss this matter with his attorney regarding  this Notice of Error and the failure of Wells Fargo to correct this error and provide the documents requested.

e. He has taken time from his usual activities and been distracted from his usual activities to discuss this matter with his attorney regarding this Notice of Error and the failure of Wells Fargo to correct this error and provide the documents requested.

f.     He has incurred attorney fees and costs for the prosecution of this action. His fee agreement with his attorney provides that he will be responsible for legal fees expenses incurred in regard to this action.

445.   The failure of the Defendant to correct the nine Notices of Error in this case is consistent with the pattern and practice of Wells Fargo to ignore this type of Regulation X Notice of Error.

WHEREFORE, Plaintiffs demand judgment for actual damages as alleged,

plus statutory damages of $2,000.00 per violation for this Regulation X violation,

plus attorney fees and costs.

KENNETH FITCH
ESTATE OF DIANNE L. FITCH
By their Attorney


January 14, 2020                    /s/ John B. Ennis___
                                   JOHN B. ENNIS, ESQ. #2135
                                   1200 Reservoir Avenue
                                   Cranston, Rhode Island 02920
                                   (401) 943-9230
                                   Jbelaw75@gmail.com


Plaintiffs demand a Trial by Jury

Plaintiffs demand a Trial by Jury on all Claims Triable by a Jury