**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**KENNETH FITCH**
**ESTATE OF DIANNE L. FITCH**

     **VS.**             **Civil Action No. 18-cv-214**

**FEDERAL HOUSING FINANCE AGENCY**
**FEDERAL NATIONAL MORTGAGE ASSOCITION**
**WELLS FARGO BANK, N.A.**
**266 PUTNAME AVENUE, LLC**
**RUSHMORE LOAN MANAGEMENT SERVICES, LLC**
**US BANK NATIONAL ASSOCIATION**
**AS TRUSTEE FOR RMAC TRUST**
**SERIES 2016-CTT**

**MEMORANDUM OF LAW IN RESPONSE TO MOTION TO**
**DISMISS BY WELLS FARGO BANK, N.A.**

This matter is before the Court on  the Motion to Dismiss pursuant to

F.R.C.P. 12(b)(1) and the case of *Spokeo v. Robbins* of Defendant Wells

Fargo Bank, N.A. ("Wells Fargo"). This case while referencing Wells Fargo

as an actor in various matters only has eight counts filed against this

Defendant, Counts VII through XIV( numbered as XIII).  Each of these

counts  asserts separate violations of the Real Estate Settlement Procedures

Act, 12 U.S.C. § 2601 et seq. ("RESPA") and Regulation X enacted

thereunder for failure to correct errors asserted in eight Notices of Error.

Wells Fargo has  alleged in its Motion that the in RESPA counts that the

Plaintiffs have not alleged a sufficient injury to maintain a RESPA count

1

warranting a dismissal based on the *Spokeo* argument. It also moves to dismiss the matter all claims, including a claim against Wells Fargo for violation of the Truth In Lending Act, ("TILA") even though Wells Fargo was not a named defendant in that count and no damages were sought against it other than the eight RESPA claims. This action was brought by Plaintiffs after a purported foreclosure, in which a Notice of Mediation was not sent to the spouse an heir at law and successor in interest of the decedent homeowner prior to the purported foreclosure by Federal National Mortgage Association. Plaintiffs have alleged that on the day of the purported foreclosure sale,  Federal National Mortgage Association no longer was the owner of the mortgage loan and was not the agent for the owner of the mortgage note and in fact was not the mortgagee. In addition, the purported default letter which was sent to the homeowner and his decedent spouse was defective pursuant to the case of *Martins v. Federal National Mortgage Association.*

Subsequently, the Rhode Island Supreme Court decided on June 2, 2020, the case of *Woel v. Christiana Trust, as Trustee*, 228 A. 3d 339 (R.I., 2020).   This case extensively discusses Rhode Island contract and foreclosure  law and specifically holds that strict compliance without a demonstration of prejudice applies to any mortgage foreclosure cases. It also

distinguished between cure and default.  Plaintiffs alleged in the only portion

of the complaint against Wells Fargo, in Counts VII to Count XIV ( referred

to as XIII),  that eight notices of error had been mailed to defendant and that

that Wells Fargo had not responded to these notices of error nor had

corrected the errors. These allegations are deemed to be true for purpose of

the Motion to Dismiss.

Kenneth Fitch signed the mortgage and when the Notice of Error were

mailed he was the successor in interest to the decedent, Dianne L. Fitch and

also was the Administrator  of her Estate, having been appointed on

December 14, 2017. Amended Regulation X, 12 C.F.R. 1024.36(i), which

was effective April 19, 2018 and provided that Kenneth Fitch was the

borrower's successor in interest.  This amended section provides:

 (i) Potential successors in interest.
(1) With respect to any written request from a person that indicates that the
person may be a successor in interest and that includes the name of the
transferor borrower from whom the person received an ownership interest
and information that enables the servicer to identify the mortgage loan
account, a servicer shall respond by providing the potential successor in
interest with a written description of the documents the servicer reasonably
requires to confirm the person's identity and ownership interest in the
property and contact information, including a telephone number, for further
assistance. With respect to the written request, a servicer shall treat the
potential successor in interest as a borrower for purposes of the requirements
of paragraphs (c) through (g) of this section.
(2) If a written request under paragraph (i)(1) of this section does not
provide sufficient information to enable the servicer to identify the
documents the servicer reasonably requires to confirm the person's identity
and ownership interest in the property, the servicer may provide a response

that includes examples of documents typically accepted to establish identity and ownership interest in a property; indicates that the person may obtain a more individualized description of required documents by providing additional information; specifies what additional information is required to enable the servicer to identify the required documents; and provides contact information, including a telephone number, for further assistance. A servicer's response under this paragraph (i)(2) must otherwise comply with the requirements of paragraph (i)(1). Notwithstanding paragraph (f)(1)(i) of this section, if a potential successor in interest subsequently provides orally or in writing the required information specified by the servicer pursuant to this paragraph (i)(2), the servicer must treat the new information, together with the original request, as a new, non-duplicative request under paragraph (i)(1), received as of the date the required information was received, and must respond accordingly.

(3) In responding to a request under paragraph (i)(1) of this section prior to confirmation, the servicer is not required to provide any information other than the information specified in paragraphs (i)(1) and (2) of this section. In responding to a written request under paragraph (i)(1) that requests other information, the servicer must indicate that the potential successor in interest may resubmit any request for information once confirmed as a successor in interest.

 (4) If a servicer has established an address that a borrower must use to request information pursuant to paragraph (b) of this section, a servicer must comply with the requirements of paragraph (i)(1) of this section only for requests received at the established address.


The Defendant responded to Mr. Fitch, who was both successor in interest and Executor of his wife. He lived in the house, had signed the mortgage as a non-vested spouse and there was no dispute that he had the authority to transmit RESPA requests.

Defendant has moved to dismiss pursuant to the Supreme Court's decision in *Spokeo v Robbins*, 136 S. Ct. 1540 (2016) claiming that the Plaintiffs have not established an actual injury in fact. However the Plaintiffs

have established actual injury in fact as the assertions of the Defendant cite just a portion of the allegations of these counts, incorrectly stating that the Plaintiffs' damages consisted only of the following allegations:

a.      Costs for gasoline to visit his attorney

b.      The expenses of using electricity to recharge his cell phone to call and receive calls from his attorney

c.      Postage and copying costs

d.      Time from his work schedule to discuss this matter with his attorney regarding this NOE

e.      Time from his usual activities

f.      Attorney fees and costs for the prosecution of this action

However the Motion to dismiss ignored the actual allegations of damages as to each of the counts which were much more specific and related to the damages arising from the failure to correct the error.  These actual damages were the following specific allegations directly related to and arising from Wells Fargo's failure to respond to each Notice of Error , which were alleged in each of the eight RESPA counts at paragraph 276 for Count VII, at paragraph 300 for Count VIII,  at paragraph 317 for Count IX,  at paragraph 342 for Count X,  at paragraph 368 for Count XI,  at paragraph

395 for Count XII and at paragraph 444 for Count XIV (incorrectly numbered as XIII).

a. He has incurred costs for gasoline to visit his attorney on at least five occasions, driving to his attorney's office for a round trip totaling 19.8 miles to discuss this Notice of Error and the failure of Wells Fargo to correct this error and rescind this foreclosure. The IRS standard mileage allowance provides for .56 per mile.

b. He has had to incur the expense of using electricity to recharge his cell phone to call and receive calls from his attorney to discuss this Notice of Error and discuss this Notice of Error and the failure of Wells Fargo to correct this error and rescind this foreclosure.

c. He has incurred postage and copying costs in transmitting this Notice of Error.

d. He has taken time from his work schedule to discuss this matter with his attorney regarding this Notice of Error and the failure of Wells Fargo to correct this error and rescind this foreclosure.

e. He has taken time from his usual activities and been distracted from his usual activities to discuss this matter with his attorney regarding this Notice of Error and the failure of Wells Fargo to correct this error and rescind this foreclosure.

f. He has incurred attorney fees and costs for the prosecution of this action. His fee agreement with his attorney provides that he will be responsible for legal fees expenses incurred in regard to this action.

As to paragraph (f) Plaintiff suggests that this allegation of damages will be amended to provide that Plaintiff's attorney incurred legal fees to review the response of Wells Fargo to the Notice of Error and to draft the Notice of Error , which would not have been incurred if Wells Fargo had complied with its obligations.  Another damage alleged as to the Count VII is that the failure to rescind the foreclosure sale constitutes actual damages of the loss of the Plaintiffs' home and equity in that property.

In Count VII, Plaintiffs alleged that Wells Fargo had failed to correct an error by refusing to rescind a foreclosure and remove any legal fees from the mortgage loan account.   In this Count Plaintiffs alleged that a Notice of Error was mailed to Wells Fargo at its designated address for purposes of RESPA communications and received by Wells Fargo, which did not timely respond to the Notice of Error by correcting the error or making a reasonable investigation to resolve the error and indicate to the Plaintiffs, the reasons that there was no error.   A copy of the Notice was attached to the complaint as Exhibit G. It specifically alleged in paragraph 266 that the Notice of Error referenced failure to correct an error by which Defendant had added legal

fees, advertising costs and other improper fees relating to an attempted foreclosure of Plaintiff's home without sending the Plaintiff a Notice of Mediation pursuant to R.I.G.L 34-27-3.2 or a default letter pursuant to the terms of the mortgage. It also alleged an error in that the sale was conducted two days after the mortgage loan had been sold to another entity. Thus at the time of the sale, Fannie Mae had no ownership interest in the mortgage or the note.

The Plaintiffs also alleged that the Defendant did not correct the error within thirty business days and did not make a reasonable investigation concerning the error asserted and notify the consumer in writing that it had determined that no error had occurred and provide the reasons for its assertion that no error had occurred. (Paragraphs 269-270). Wells Fargo, as alleged in paragraph 271, responded by a letter dated November 30, 2017, attached to the amended complaint as Exhibit F-1 by in a conclusory manner by stating that the foreclosure was allowed by the mortgage documents and did not address any of the issues raised in the Notice of Error. It refused to correct the error and as alleged in paragraph 273,  refused to remove any fees for the purported foreclosure and refused to void the foreclosure sale and remove any fees  from the mortgage loan account.

In Count VIII Plaintiff alleged that Wells Fargo had filed to respond to a Notice of Error to correct and error by failing to provide the Plaintiffs periodic statements mailed by Wells Fargo to the Plaintiffs.  Defendant responded to the original Request for Information contending that there and alleged in paragraph 287 that Defendant had refused to provide these documents on the grounds that the documents were confidential, privileged and/or proprietary. However the documents requested were neither confidential, privileged and/or proprietary and this assertion was a generic assertion regularly asserted by Wells Fargo in response to requests for information relating to this type of request for information. In paragraphs 290-291 Plaintiffs plausibly alleged that Wells Fargo  did not make a reasonable investigation concerning the error asserted and notify the consumer in writing that it had determined that no error had occurred and provide the reasons for its assertion that no error had occurred and that instead of correcting the error, it instead it responded by a letter dated July 20, 2018, attached to this complaint as Exhibit F-2, in which it stated:

**We received an inquiry in our office, however the account is in active litigation. Here is the litigation information for your reference. . . We won't be providing a response to your inquiry because the issues raised**

**are the same or very closely related to the issues in the pending litigation.**

Plaintiffs alleged in paragraphs that this response was erroneous under RESPA because that there is no litigation privilege under RESPA and that this was their pattern and practice when a case is in litigation. Plaintiff specifically alleged in paragraph 295 that:

 Had Wells Fargo adequately responded to Plaintiff's Notice of Error or Requests for Information as alleged, Plaintiff would not have needed to send NOEs regarding Wells Fargo's erroneous assertion of an "active litigation" exception to its obligations under RESPA and Regulation X.

In paragraph 296, Plaintiffs further alleged that:

 As such, Plaintiff was further harmed by Wells Fargo's failure to adequately respond to the Request for Information as it required him to incur the expenses associated with sending these subsequent Notice of Error, such as their time, postage, etc.

In each of the subsequent six counts, the complaint alleges that Wells Fargo refused to respond to each Notice -of Error, asserting the same argument of litigation exception. In Count IX Wells Fargo refused to correct the error by providing the Plaintiffs records regarding all legal fees charged to the mortgage loan account on the grounds that there was a litigation privilege which does not require responding to a Notice of Error. Initially they had contended that the documents were confidential , privileged and/or proprietary. Plaintiffs alleged that they were not confidential , privileged

and/or proprietary and that this was Wells Fargo's generic response. Instead of responding to the Notice of Error, Wells Fargo stated again:

We received an inquiry in our office, however the account is in active litigation. Here is the litigation information for your reference. . . We won't be providing a response to your inquiry because the issues raised are the same or very closely related to the issues in the pending litigation.

In Count X Wells Fargo refused to correct an error by providing the Plaintiffs all property inspections charged to the mortgage loan account, initially claiming that these records were confidential, privileged and/or proprietary. After receipt of the Notice of Error it again asserted the "Litigation Privilege". Plaintiffs thus adequately pleaded this count as a violation of RESPA.

In Count XI Plaintiffs requested the Life of the Loan Transactional History as required by RESPA:

**An exact reproduction of the life of loan mortgage transactional history for this loan on the system of record used by the servicer from origination of the loan to the date of this letter. For purposes of identification, the life of loan transactional history means any software program or system by which the servicer records the current mortgage balance, the receipt of all payments, the assessment of any late fees or charges, and the recording of any corporate advances for any fees or charges including but not limited to property inspection fees, broker price opinion fees, legal fees, escrow fees, processing fees, technology fees, or any other collateral charge. Also, to the extent this life**

**of loan transactional history includes in numeric or alpha-numeric codes, please attach a complete list of all such codes and state in plain English a short description for each such code.**

Wells Fargo refused to provide the documents asserting again confidential, proprietary and privileged. Plaintiffs filed a Notice of Error and in response to the Notice of Error, Wells Fargo again asserted the "Litigation Exception". Thus this count was plausibly pleaded.

In Count XII, the Plaintiffs mailed a Request for Information seeking:

**Any and all documentation which indicates any letters sent to Rhode Island Housing to commence mediation pursuant to RIGL 34-27-3.2 along with any application for RIGL 34-27-3.2 mediation sent to Rhode Island Housing, a copy of any check sent to Rhode Island Housing for the fee for any RIGL 34-27-3.2 mediation and any invoice or acknowledgment sent from Rhode Island housing regarding any application for mediation.**

Wells Fargo refused to provide the documents asserting again confidential, proprietary and privileged, In response to the Notice of Error, Wells Fargo again asserted the "Litigation Exception". Thus this count was plausibly pleaded.

In Count XIII,( referenced as a second Count XII) Plaintiffs sent Wells Fargo a Request for Information seeking the servicing file for the mortgage loan:

**The consumer requests that you provide the consumer the entire mortgage loan servicing file including all servicing notes, collection notes, recordings of all phone calls you or any agent acting on your behalf made to the consumer or to the consumer's attorney, and any**

**calls from the consumer or the consumer's attorney to you or an agent which you recorded and all loss mitigation documents sent to you by the consumer and all loss mitigation responses sent from you to the consumer from the time that you obtained servicing rights to the present.**

Wells Fargo refused to provide the documents asserting again confidential, proprietary and privileged, In response to the Notice of Error, Wells Fargo again asserted the "Litigation Exception". Thus this count was plausibly pleaded.

In Count XIV (referenced as Count XIII), Plaintiffs mailed Wells Fargo a Notice of Error for refusing to respond to the Notice of Error regarding the failure to rescind the foreclosure.  In view of Wells Fargo's refusal to correct the error, Plaintiffs mailed another Notice of Error for its refusal to correct that error.  Instead Wells Fargo again asserted the non-existence "Litigation Exception". Thus this count was plausibly pleaded.

Thus there were 8 plausibly pleaded counts relating to the failure of Wells Fargo to comply with its obligations under RESPA in responding to Notices of Error.  Plaintiffs for each count,  plausibly alleged the basis for statutory damages claiming that this was the pattern and practice of Wells Fargo to refuse to respond to any RESPA requests during litigation. Plaintiffs alleged that Wells Fargo's conduct has been the subject of a prior class action lawsuit filed in this Northern District of Ohio against Wells

Fargo, as well as other individual lawsuits across the country. E.g., *Lieber v. Wells Fargo Bank, N.A.*, Case No. 16-cv-02868-PAG (N.D. Ohio); *Schmidt,* 2:17-cv-01708 (D. N.J.). Thus the complaint pleaded that as a result of this lack of compliance by the Defendant as to each count, Wells Fargo is liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees for failure to correct the error.

The cases cited by Wells Fargo can be distinguished from the specific allegations in this case. In the Bankruptcy Case of *In Re Jackson*, 622 B.R. 32, (Bankr. D. MA, 2020) the Court did not rule on a Motion to Dismiss, but granted Summary Judgment on the RESPA claim because the Plaintiff claimed damages solely for the costs in forwarding the initial Qualified Written Request. The Court rightly noted:

The language of the Statute allowing recovery for "any actual damages to the borrower *as a result* of the failure," precludes the recovery for costs related to preparing the initial QWR. 12 U.S.C. § 2605(f)(1)(A) (emphasis added). Ms. Jackson would have borne the cost of preparing the initial QWR regardless of whether Rushmore had responded properly. *See Giordano,* 160 F. Supp. 3d at 782 ("Expenses that would be incurred regardless of a violation do not occur `as a result' of the violation."). *But see In re Bryce,* 491 B.R. 157, 181 (Bankr. W.D. Wash. 2013) (finding "[t]he actual damages for the RESPA violations are the amount paid by the Plaintiffs to [their attorney] to prepare the Qualified Written Request, or $180").

In *Jackson*, the Plaintiff did not mail a Notice of Error to the loan servicer, Rushmore Loan Management Services, LLC, which is a prerequisite to liability and damages under RESPA.   The Plaintiff in this

case has pleaded that Notices of Error were mailed to Wells Fargo, to which

Wells Fargo refused to respond.

The standard of the First Circuit precludes this Motion to Dismiss.

The First Circuit has interpreted the holding of the United States Supreme

Court in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) for analysis of FRCP

12(b)(6) motions.  The Supreme Court in *Iqbal* had stated:

> To survive a motion to dismiss, a complaint must contain
> sufficient factual matter, accepted as true, to "state a claim to
> relief that is plausible on its face." *Id.,* at 570, 127 S.Ct. 1955. A
> claim has facial plausibility when the plaintiff pleads factual
> content that allows the court to draw the reasonable inference
> that the defendant is liable for the misconduct alleged. *Id.,* at
> 556, 127 S.Ct. 1955. The plausibility standard is not akin to a
> "probability requirement," but it asks for more than a sheer
> possibility that a defendant has acted unlawfully.

The First Circuit in *Rodriguez-Vives v. Puerto Rico Firefighters*

(1[st]Cir., January 8, 2014) held:

We emphasize that this case is on appeal of a 12(b)(6)motion,
not a motion for summary judgment. *HN12* "Although a
plaintiff must plead enough facts to make entitlement to relief
plausible in light of the evidentiary standard that will pertain at
trial . . . she need not plead facts sufficient to establish a prima
facie case." Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d
49, 54(**1st Cir.** 2013).

The First Circuit thus confirmed that even if a Plaintiff makes a

specific factual allegation, that merely lacks some surrounding

context, the claim will be sufficient to survive a motion to dismiss.

Thus for purposes of the Motion, all factual allegations in Plaintiffs' complaint must be accepted by the Court as true. The Court also reiterated the principle that the First Circuit had previously stated in similar principles in Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 54 (1st Cir. 2013):

The prima facie case is an evidentiary model, not a pleading
standard. For this reason, the interaction between the prima
facie case and the plausibility standard crafted by the  [**2]
Supreme Court in Bell Atlantic Corp. v.
Twombly, created some confusion. We now resolve that
confusion and hold that the prima facie case is not the
appropriate benchmark for determining whether a complaint
has crossed the plausibility threshold.
Accordingly, that aspect of the district court's decision must be
annulled and the case remanded for further proceedings.

The Defendant has not challenged or disputed any of the allegations in the complaint, relying only on its assertion that there were no actual damages and only a bare procedural violation.  However, the case law is clear that Plaintiff's complaint cannot be dismissed under *Spokeo* due to the particular and specific  damages pleaded in the complaint. Defendant seeks to have this Court dismiss Plaintiffs' complaint filed pursuant to the Real Estate Settlement and Procedures Act. Plaintiffs referenced several Notices

16

of Error and demanded Judgment due to Wells Fargo failing to correct errors

by not providing documents which were the subject of Requests for

Information pursuant to 12 CFR 1024.36. Subsequently Plaintiff, through his

attorney mailed  Notices of Error, dated October 29, 2018 pursuant to 12

CFR 1024.35.   These Regulations are referred to as Regulation X, which

can be enforced by a party for the failure of the loan servicer to provide the

information requested.  The Borrower begins the process by mailing a

request for information to the loan servicer, which has 5 business days to

acknowledge receipt and thirty business days to respond to the Request for

Information. If the servicer does not provide the information, the servicer

must acknowledge receipt within five business days and has thirty business

days to respond to the Notice of Error. Failure to respond is a violation of

RESPA, for which Plaintiffs have a private cause of action as noted above.

There is no dispute in the pleading that Wells Fargo did not correct the

eight errors. Wells Fargo claims that there are no alleged damages, misstating

and omitting the complete text of the allegations for damages in the complaint.

However the Plaintiffs has pleaded damages on both Regulation X Counts ,

particularly that he incurred the costs of mailing the Notices of Error and

incurred time with his attorney relating to notice of error. He alleged damages

for the cost of gasoline to visit his attorney on at least five occasions, driving to

his attorney's office for a round trip totaling 19.8 miles **to discuss this Notice of Error and the failure of Wells Fargo to correct this error and rescind this foreclosure.** The IRS standard mileage allowance provides for .56 per mile. This is a compensable damage. He alleged damages for incurring the expense of using electricity to recharge his cell phone to call and receive calls from his attorney to discuss this Notice of Error and discuss this Notice of Error and the failure of Wells Fargo to correct this error and rescind this foreclosure. He alleged actual damages of the cost for postage and copying costs in transmitting each Notice of Error. He alleged actual damages for taking time from his work schedule and his usual activities to discuss this matter with his attorney regarding this Notice of Error and the failure of Wells Fargo to correct this error and rescind this foreclosure. He alleged actual damages for taking time from his usual activities and been distracted from his usual activities to discuss this matter with his attorney regarding this Notice of Error and the failure of Wells Fargo to correct this error and rescind this foreclosure. As to Count VII he alleged that Wells Fargo did not rescind the foreclosure sale with a loss of equity in the property (which may be the subject of an amended complaint). He alleged actual damages for the incurring of attorney fees and costs in reviewing the nonresponsive response to the Request for Information and preparing the Notice of Error and reviewing the

nonresponsive response to the Notice of Error. Plaintiff recognizes that this

allegation may need to be repleaded more specifically and requests the

opportunity to replead since this is the first response from Wells Fargo

regarding this complaint.

The Defendant cites four previous cases of this Court. However in

none of those cases did the pleadings contain the allegations as alleged in

this case. However, in the two RESPA cases, *Cordeiro* and *Curtis*, the

allegations in the damages were specifically different from the allegation of

damages in this case.  In *Curtis*, the specific allegations made relating the

damages to the Notice of Error were not specifically pleaded. In *Cordeiro,*

the damages were less specifically pleaded than this case. In addition, that

case is currently open subject to a Motion to Alter/Amend Judgment on this

issue. *St. Amour* and *Pemental* were TILA cases, which were not pleaded as

specifically as this case. Thus those cases are distinguishable from this case.

In *Sanchez v. Johnston, Blumberg & Associates and Seterus*, Inc. No.

16-cv-7056 (N.D. Illinois, Eastern Division, August 14, 2018), the Court

held that any enforcement of the Regulation X was an enforceable violation

of RESPA.  As in this case, the loan servicer Defendant,  contended that

since the foreclosure sale had not occurred that there was no violation of

regulation and thus the RESPA action should be dismissed on that ground.

The Court held:

> The caselaw regarding ripeness of claims for violations of
> 12 C.F.R. § 1024.41 is sparse. But another court in this District
> did consider the issue in *Stephens v. Capital One, N.A.,* No. 15-
> cv-9702, 2016 WL 4697986 (N.D. Ill. Sept. 7, 2016).
> In *Stephens,* the defendant filed a foreclosure complaint
> alleging that the plaintiffs had missed payments on his
> mortgage. *Id.* at *1. . . the defendant voluntarily dismissed the
> foreclosure complaint. *Id.* But the plaintiffs still sued the
> defendant, alleging, among other things, a violation of 12
> C.F.R. § 1024.41(f). *Id.* at *2. The defendant moved to dismiss
> the complaint, arguing that the plaintiffs' RESPA claim was not
> ripe due to the defendant's voluntary dismissal of the
> foreclosure complaint and the fact that foreclosure was only a
> future possibility. *Id.* at *4. Upon considering the argument,
> the *Stephens* court held that the taking (or loss) of property was
> not required for the claimed RESPA violation to be ripe. *Id.* at
> *5. The court found no such requirement in 12 C.F.R. §
> 1024.41(a), and further reasoned that under 12 U.S.C. § 2605(f)
> damages may be recovered when a party fails to comply with
> any provision of RESPA and there is no language indicating
> that taking property is the only way to fail to comply with
> RESPA's provisions. *Id.* The court also noted that RESPA is a
> consumer protection statute and, as such, should be interpreted
> broadly. *Id.*
>
> This Court agrees with the reasoning in *Stephens.* There is no
> indication in the language of the statute or regulations that a
> plaintiff must wait until his or her property is foreclosed upon
> to bring an action. To the contrary, 12 C.F.R. § 1024.41(f)(2)
> expressly states that the prohibited action is a servicer making
> "*the first notice or filing* required by applicable law for any
> judicial or non-judicial foreclosure process." 12 C.F.R. §
> 1024.41(f)(2) (emphasis added). And 12 U.S.C. § 2605(f)
> provides that "[w]hoever *fails to comply with any provision of*

*this section* shall be liable to the borrower for each such failure."
12 U.S.C. § 2605(f) (emphasis added).

   This statute is a  remedial consumer statute and the regulation
promulgated is designed for consumer relief.  Under 12 U.S.C. § 2605(f),
damage occurs when a party fails to comply with any provision of the Real
Estate Settlement Procedures Act. The express terms of the Real Estate
Settlement Procedures Act clearly indicate that the Real Estate Settlement
Procedures Act is, in fact, a consumer protection statute." *Johnstone*, 173 F.
Supp. 2d at 816. Numerous courts have held that "consumer protection
statutes are to be interpreted broadly in order to give effect to their remedial
purposes." *Katz v. Dime Sav. Bank, FSB*, 992 F. Supp. 250, 255-256
(W.D.N.Y. 1997). Thus the purpose of Regulation X is to require servicers
to follow certain rules. The failure to follow those rules can be enforced by
an action commenced under 12 U.S.C. 2605(k), which provides that
whoever fails to comply with any provision of this section shall be  liable for
actual damages, statutory damages upon a showing of pattern and practice
and attorney fees and costs.

   In *Cameron v Ocwen Loan Servicing*, LLC CA No. 2:18-cv-428,(SD,
Ohio, 2020) the Court held the Defendant liable for failure to respond to a
Notice of Error which the servicer did not correct . The Court found that the
actual damages consisted of the cost of preparing the notice of error, which

was neither responded to nor corrected. Thus Summary Judgment was granted for the Plaintiff in that case with the issue of statutory damages to remain for trial.

In *Pimentel v. Ocwen Loan Servicing*, NO. 16-CV-62089 (S.D. Florida, November 8, 2016) the Court dismissed the case but noted that had the Plaintiff alleged actual damages for costs of mailing Notice of Error following a loan servicer's failure to respond in accordance with RESPA requirements there would have been actual damages:

An individual may bring a claim for "any actual damages to the borrower as a result of the failure" of the defendant to meet its obligations to the borrower under § 2605.1 12 U.S.C. § 2605(f)(1)(A). "This language suggests there must be a 'causal link' between the alleged violation and the damages." *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016); *see also McLean v. GMAC Mortg. Corp.*, 595 F. Supp. 2d 1360, 1365 (S.D. Fla. 2009), aff'd, 398 Fed.Appx. 467 (11th Cir. 2010) (explaining that plaintiff bears burden to prove that damages were "proximately caused" by loan servicer's failure to respond in accordance with RESPA requirements**). Consequently, costs incurred after an incomplete or insufficient response are recoverable under RESPA, but costs incurred before the violation occurred, such as the expenses of preparing an initial RFI, cannot serve as the basis for actual damages.** *See Miranda*, **148 F. Supp. 3d at 1355** (citations omitted).(emphasis added)

In *Miranda v Ocwen Loan Servicing*, 48 F.Supp.3d 1349 (S.D. Florida, 2015) the Court denied a Motion to Dismiss and held:

**However, alleged photocopying costs, postage costs, and reasonable attorney's fees incurred after an incomplete or insufficient response to a QWR are actionable under RESPA**. *Rodriguez v. Seterus, Inc.*, No. 15–61253–CIV, 2015 WL 5677182, at *2–3 (S.D.Fla. Sept. 28, 2015); *Russell*

*v. Nationstar Mortg., LLC,* No. 4–61977–CIV, 2015 WL 541893, at *2
(S.D.Fla. Feb. 10, 2015).
The Complaint seeks actual damages for "(1) photocopying costs
and postage costs incurred in mailing Plaintiff's RFI; and (2) photocopying
costs, postage costs, and reasonable attorney's fees incurred as a result of
having to send additional correspondences due to OCWEN's failure to
adequately respond to Plaintiff's RFI." DE 1 ¶ 69. Plaintiffs are mistaken
that they can seek damages for costs incurred in preparing and mailing the
RFI. *See Long,* 2015 WL 4983507, at *1. However, Plaintiffs may seek
damages for the costs that they incurred after Defendant's allegedly
inadequate response, and the Complaint provides sufficient facts to support a
claim for such damages. Loan Lawyers, on behalf of Plaintiffs, clearly sent
the March 6, 2015, letter after the thirty days in which Defendant was
required to fully respond to the RFI. The letter also clearly arose out of
Defendant's alleged failure to comply with its statutory obligations, because
the letter identifies the specific inquiries contained in the RFI that Defendant
allegedly had not answered by that time. *See* DE 1, Ex. C. **Therefore, while
Plaintiffs are not entitled to costs incurred in mailing the initial RFI,
they may seek photocopying costs, postage costs, and reasonable
attorney's fees incurred as a result of having to send additional
correspondence due to Defendant's alleged failure to respond.**
(emphasis added).

In *Russell v Nationstar Mortgage,* No. 14-cv61977, (SD, Fl, 2015)

another Court held that the costs of postage and copying for mailing a Notice

of Error after an inadequate response from the servicer constituted a

plausible allegation of actual damages:

Here, the alleged actual damages of photocopying costs and postage costs

were alleged to have been incurred after Defendant's response to the QWR.

These costs are actionable under RESPA. Though the term "actual damages"
is not defined within RESPA, Plaintiffs have, taking the allegations in the
Complaint as true, sufficiently alleged entitlement to "an amount awarded to
a complainant to compensate for a proven injury or loss; damages that repay

23

actual losses," *Marais v. Chase Home Fin., LLC*, 24 F.Supp.3d 712, 728 (S.D.Ohio 2014) (quoting Black's Law Dictionary (9th ed.2009)), as a result of Defendant's failure to adequately respond to Plaintiffs' QWR. *See* 12 U.S.C. § 2605(f)(1)(A). Plaintiffs clearly indicated the reason for needing a life of loan statement, and in response, though Defendant represented they submitted copies of "Prior Servicer Payment History," Plaintiffs never received them. Defendant does not argue in support of its Motion that this response was adequate, and the Court finds that it was not. *Compare Marais*, 24 F.Supp.3d at 724–25 (finding partial satisfaction of request for information an insufficient response to a QWR because it did not "fairly meet the substance of the QWR") *with Hittle v. Residential Funding Corp.*, No. 2:13–CV–353, 2014 WL 3845802 (S.D.Ohio Aug.5, 2014) (finding partial satisfaction of request for information a sufficient response to a QWR because QWR "did not coherently set forth the reasons the [plaintiffs] believed their account to be in error."). The Court finds that, for purposes of deciding the instant Motion, the failure to comply with Plaintiffs' request resulted in costs necessary to continue to pursue compliance with their request. Defendant's Motion with respect to actual damages is, accordingly, denied.

In *Rodriguez v. Seterus*, 15-61253-Civ (SD, FL, 2015), the Court

denied a Motion to Dismiss where the Plaintiff alleged actual damages in the

form of postage costs and copying costs incurred after an inadequate response

to a Request for Information was made:

Defendant argues that Plaintiff's alleged actual damages of "(1) photocopying costs and postage costs incurred in mailing Plaintiff's RFI; and (2) photocopying costs, postage costs, and reasonable attorney's fees incurred as a result of having to send additional correspondence due to Seterus's failure to respond to Plaintiff's RFI" are insufficient to state a claim under RESPA. While I agree with Defendant as to Plaintiff's claim for costs incurred in mailing his initial RFI, I disagree with Defendant as to Plaintiff's claim for costs incurred in mailing additional correspondence as a result of Defendant's non-response to Plaintiff's initial RFI. . . . therefore, after considering the facts in the light most favorable to Plaintiff, while Plaintiff is not entitled to photocopying costs and postage costs incurred in mailing his

initial RFI, **he may seek as actual damages photocopying costs, postage costs, and reasonable attorney's fees incurred as a result of having to send additional correspondence due to Defendant's failure to respond.**
(Emphasis Added)

Thus the Court also held that attorney fees, not to bring the litigation but which were incurred in mailing additional correspondence due to Defendant's failure to respond were sufficiently alleged as actual damages to establish a RESPA violation.

In *O'Brien v Seterus*, 9:15–CV–80300, (SD, FL, 2015) the Court dismissed the case on the merits finding that the response to the Request for Information was adequate, unlike this case where Wells Fargo refused to respond at all.  The Court in *O'Brien* reiterated the basis premise for RESPA damages that the costs incurred in mailing a second Qualified Written Request (in this case a Notice of Error) after an inadequate response constituted actual damages:

Plaintiffs' claim is that they were required to send a *second* qualified written request for information because Defendant improperly responded to the first such request. Damages associated with a *second* qualified written request, because of an improper response by a defendant, have been found to qualify as actual damages under RESPA.

In *Kilpatrick v. Ocwen Loan Servicing*,   16-80317, (SD. FL, February 10, 2017)  the Court held that costs of postage incurred in mailing Notices of

Error and attorney fees incurred in reviewing inadequate responses to a

Request for Information in preparing a Notice of Error were actual damages:

The postage costs relating to the NOE, though, could be the result of Defendant's alleged RESPA violation if they came about after, and as a result of, Defendant's alleged failure to respond to the RFI. "By alleging this type of damage, the Complaint has alleged actual damages incurred and related to an alleged RESPA violation; *i.e.,* fees related to the review of an alleged insufficient response by Defendant." *Baez v. Specialized Loan Servicing, LLC*, Case No. 15-81676, 2016 WL 1546445 at *2. Based upon the allegations of Plaintiff's complaint, had Defendant properly responded to Plaintiff's RFI, Plaintiff would not have incurred postage fees associated with the NOE.

Further, having alleged actual damages incurred as a result of Defendant's asserted failure to respond properly to the RFI, Plaintiff's attorney's fees incurred after the alleged violation in order to compel Defendant's compliance, could constitute actual damages. *See Paz v. Seterus, Inc.*, No 14-62516-CIV, 2015 WL 4389521, at * 3 (S.D. Fla. July 15, 2015) (relying on *Soriano v. Countrywide Home Loans*, No. 09-cv-02415, 2011 WL 1362077, at * 7 (N.D. Cal. Apr. 11, 2011), in stating that for attorney's fees to be actual damages, other actual damages needed to be established, but also recognizing that attorney's fees incurred in following up on a creditor's failure to comply with its obligations under RESPA qualify as actual damages). Plaintiff may attempt to show that had Defendant complied with the RFI, Plaintiff would not have incurred attorney's fees associated with the NOE. *Miranda*, 2015 WL 7767209 at *4 ("reasonable attorney's fees incurred after an incomplete or insufficient response to a QWR are actionable under RESPA"

In *Soriano v. Countrywide Home Loans*,  09–CV–02415 (ND, CA, April 11, 2011)  the Court in a Qualified Written Request case prior to the implementation of Regulation X that legal fees attributable to inadequate responses from the servicer were an element of damages and denied summary judgment to the loan servicer, specifically stating:

However, the Court finds that Plaintiff *has* sufficiently established a causal relationship between the claimed RESPA violation and the attorney's fees Plaintiff incurred when his attorney sent follow-up correspondence to CHL after the initial QWR was sent. Had CHL properly responded in the first instance, Plaintiff would not have incurred those additional fees, as no follow-up would have been required. As discussed above, attorney's fees are generally not available for bringing suit on an alleged RESPA violation unless other actual damages are established, and the Court does not include the fees incurred by Plaintiff in bringing this lawsuit as actual damages. However, the Court finds that Plaintiff has identified a disputed fact as to whether or not he is entitled to reimbursement of just those fees incurred in his attempts to get a response to his QWR. Therefore, the Court GRANTS Defendants' Motion for Summary Judgment regarding Plaintiff's claimed RESPA damages, except for attorney's fees directly associated with obtaining a response to the QWR.3

In *Walker v. Branch Banking and Trust Company*, 237 F.Supp.3d

1326, 1334 (SD, Fl., 2017), the Court followed the established case law and

held that costs of postage and attorney fees incurred in preparing a Notice of

Error constituted plausible damages:

'However, alleged photocopying costs, postage costs, and reasonable attorney's fees incurred after an incomplete or insufficient response to a QWR are actionable under RESPA.' " *Martinez v. Shellpoint Mortg. Servicing*, 2016 WL 6600437, at *3 (S.D. Fla. Nov. 8, 2016) (quoting *Miranda*, 148 F.Supp.3d at 1355 (citing *Rodriguez v. Seterus, Inc.*, 2015 WL 5677182, at *2–3 (S.D. Fla. Sept. 28, 2015))). In this case, Plaintiffs allege that they incurred fees described at 12 U.S.C. § 2605(f)(1) in preparing the NOE as a result of Defendant's failure to adequately respond to the RFI. *See* Complaint ¶¶ 53, 59. Accordingly, Plaintiffs have sufficiently pleaded a claim for actual damages.3

The damages arose from the failure of the servicer to comply with its obligations under RESPA and thus legal fees and costs in preparing the Notice of Error constituted damages.

In *Inorio v Wells Fargo Bank, N.A.*, 20-cv-2157 (ND, IL, March 1, 2021), the Court denied a Motion to Dismiss where the Plaintiff had pleaded actual damages for the costs of preparing and mailing Notices of Error where the loan servicer had not responded to the Requests for Information in conformity with the statute:

Mr. Inorio, in contrast, is claiming the costs of preparing *subsequent* NOEs, which he specifically alleges "would not have been necessary but for Wells Fargo's failure to properly respond" to prior requests. *See* ECF No. 1 ¶ 56. Such damages are sufficient to state a claim under RESPA. *See Tanasi v. CitiMortgage, Inc.,* 257 F. Supp. 3d 232, 271 (D. Conn. 2017) (declining to dismiss RESPA claims asserting "damages stemming from the preparation of later requests, or of notices of error that [plaintiffs] would not have needed to prepare but for [servicer's] alleged violations"); *see also Fowler v. Bank of Am., Corp.,* 747 F. App'x 666, 671 (10th Cir. 2018) ("[I]f [servicer's] nonresponse or inadequate response prompted [plaintiffs] to resend a QWR [qualified written request], then the costs of preparing the subsequent QWR are indeed traceable to the violation [as actual damages].").

In *Tanasi v. Citimortgage, Inc.* 257 F.Supp. 3d, 232, 271 (D.Conn., 2017), the District Court denied a Motion to Dismiss holding that costs of mailing Notices of Error after a servicer failed to comply with RESPA and respond to the Request for Information constituted actual damages:

The Tanasis, therefore, can only claim compensatory damages that relate to costs that they incurred after CitiMortgage allegedly failed to respond to their requests for information. They cannot recover for costs related to "preparing" and "submitting requests for information," Compl. ¶ 63, to the extent that these costs involve the Tanasis' initial requests for information. The Tanasis would have incurred these costs regardless of CitiMortgage's alleged violations. Accordingly, Defendants' motion to dismiss is granted with respect to the Tanasis' claim for compensatory damages relating to their preparation of their initial request for information, but not for damages stemming from the preparation of later requests, or of notices of error that they would not have needed to prepare but for CitiMortgage's alleged violations.

In *Pinson v. JPMorgan Chase Bank,* N.A. No. 16-17107(11th Cir., 2019),  the Eleventh Circuit identified various damages available in RESPA cases:

Mr. Pinson alleged actual, concrete, and particularized injuries: that he lost time communicating with JPMorgan Chase and TransUnion; that he incurred out-of-pocket expenses trying to correct misinformation on his credit report; and that he was denied access to credit and paid higher car insurance premiums as a result of JPMorgan Chase's conduct. We have held that the time spent by a person attempting to correct a false credit report constitutes a concrete injury for purposes of an FCRA claim. See Pedro v. Equifax, Inc., 868 F.3d 1275, 1280 (11th Cir. 2017) ("Pedro also alleged a concrete injury because she alleged that she `lost time . . . attempting to resolve the credit inaccuracies.'").

In addition, economic harm is a quintessential injury in fact. See Sierra Club v. Morton, 405 U.S. 727, 733, 92 S. Ct. 1361, 1365 (1972) ("[P]alpable economic injuries have long been recognized as sufficient to lay the basis for standing . . . ."). Beyond the out-of-pocket expenses, **such as postal expenses, incurred by Mr. Pinson in his repeated communications concerning the information** in his credit report, he also alleges economic harm in the form of lost credit opportunities and higher car insurance premiums. Mr. Pinson says JPMorgan Chase's alleged violations of the FDCPA and FCRA caused this economic harm. At this stage in Mr. Pinson's

case, we accept his allegations as true, and we find them specific enough for us to conclude Mr. Pinson plausibly suffered an injury traceable to JPMorgan Chase's conduct. See id. at 1336 ("Each element of standing . . . must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." (quotation marks omitted)). This is particularly true given our liberal construction of Mr. Pinson's pro se complaint. . . (emphasis added)

In *Marais v. Chase Home Finance, LLC* , 736 F.3d 711, 721 (6th Cir., 2013), the 6th Circuit reversed the District Court which had dismissed the action in a pre-*Spokeo* case:

 her QWR expenses became actual damages when Chase ignored its statutory duties to adequately respond. The district could should consider this argument on remand.

In *Johnson v. Specialized Loan Servicing, LLC*, Dist Court Case No. 3:16-cv-178 (MD, Florida, 2018) the Court granted judgment for the Plaintiff in a RESPA case for not responding to the Notice of Error and awarded actual damages for postage costs for mailing the Notice of Error:

40. Because SLS failed to conduct a reasonable investigation and failed to respond to the notices of error in a transparent manner, Plaintiff suffered direct and actual damages in the amount of $8.55 related to the postage required to send the fourth notice of error. Thus, the Court awards Plaintiff $8.55.

41. The Court also finds credible Plaintiff's testimony that she suffered emotional distress as a direct result of the RESPA violations. The Court finds it appropriate to award Plaintiff $1,500.00 in emotional distress damages.[7]

42. The concludes that a total award of $2,008.55 is appropriate.

In *Lanton v. Ocwen Loan Servicing,* No. 18-3709. (6th Cir. November

26, 2019.), the Sixth Circuit also held that expenses of mailing a Qualifed

Written Request alleging an error were elements of damages when the

servicer did not respond or correct the error:

> Moreover, this circuit has held that, under some circumstances, the cost of
> preparing a QWR that is inadequately responded to may sometimes
> constitute actual damages. *See Marais v. Chase Home Finance LLC,* 736
> F.3d 711, 721 (6th Cir. 2013) (directing the district court to "consider th[e]
> argument" that "costs [the plaintiff] incurred associated with preparing her
> QWR . . . became actual damages when Chase ignored its statutory duties to
> adequately respond").

The Plaintiff has also demonstrated pattern and practice by alleging

that Wells Fargo ignored these eight Notices of Error and chose not to

respond, alleging a purported "Litigation Exception". There however is no

litigation exception. In Schmidt v. Wells Fargo Bank, N.A. No. 2:17-cv-

01708 (D.. New Jersey, October 8, 2019), the District Court rejected Wells

Fargo's assertion that it did not have to respond to RESPA Requests when

litigation was pending:

> Defendant alternatively argues that assuming the March Letter is a QWR, its
> response satisfied RESPA. Defendant explains that Wells Fargo immediately
> acknowledged the March Letter, provided an amortization schedule as
> requested, and advised that its investigation was ongoing. Mot. at 16-17
> (citing Answer Exs. 8-11, ECF No. 64-1); *See Mayer v. Belichick,* 605 F.3d
> 223, 230 (3d Cir. 2010) (permitting consideration of undisputedly authentic
> documents that form the basis of this lawsuit). Defendant "then notified
> Plaintiff that the review had concluded" because Plaintiffs filed this lawsuit.

Mot. at 17. That determination—and the communication thereof— forms the basis of Plaintiffs' claims. *See* AC ¶¶ 29(a), 41. Therefore, the issue is whether Defendant was permitted to stop investigating due to Plaintiffs filing suit.

Once again, the Court agrees with Judge Falk's decision not to read a "litigation exception" into the statute. Op. at 5 (November 30, 2018). Defendants do not cite any statute or regulation providing for such an exception and the Court is unconvinced by the sources referenced.

In *Grembobowiec v. Select Portfolio Servicing, Inc.* CA No. 18-16885

(D.N.J., Jul 16, 2019),the Court  held:

Under RESPA, "[a]ctual damages encompass compensation for any pecuniary loss including such things as ... expenses for preparing, photocopying and obtaining certified copies of correspondence." *Cortez v. Keystone Bank, Inc.,* No. 98-2457, 2000 WL 536666, at *12 (E.D. Pa. May 2, 2000) (citing *Rawlings v. Dovenmuehle Mortg., Inc.,* 64 F. Supp. 2d 1156, 1164 (M.D. Ala. 1999)) . . However, attorneys' fees incurred *to remedy a RESPA violation* "are recoverable as actual damages under RESPA if they are not incurred in connection with brining a suit under the statute." *McGahey v. Fannie Mae,* 266 F. Supp. 3d 421, 441 (D. Me. 2017); *see also* Miranda v. Ocwen Loan Servicing, LLC, 148 F. Supp. 3d 1349, 1355 (S.D. Fla. 2015) (finding that "reasonable attorney's fees incurred as a result of having to send additional correspondence due to Defendant's alleged failure to respond" are actual damages). Here, Plaintiff seeks attorney's fees incurred to remedy Defendant's violations. Compl. ¶¶ 40. Thus, to the extent that these attorney's fees do not include costs of bringing this litigation, Plaintiff plausibly alleged actual damages in Counts I, II, and III, as to attorney's fees associated with remedying Defendant's alleged violations.

The Court held that pattern and practice did not have a magic number but that

more than two was sufficient to establish pattern and practice and entitlement

to statutory damages:

While there is no "magic number," courts have found a plausible pattern or practice when the plaintiff alleged "more than two violations of RESPA." *Kapsis v. Am. Home Mortg. Servicing Inc.,* 923 F. Supp. 2d 430, 445-49 (E.D.N.Y. 2013).

Here, Plaintiff plausibly alleges a pattern or practice. As discussed above, Plaintiff has plausibly pled at least five violations of Regulation X: (1) a violation of Section 1024.41(b) as to the First Application; (2) a violation of Section 1024.41(b) as to the Second Application; (3) a violation of Section 1024.41(c) as to the First Application; (4) a violation of Section 1024.41(c) as to the Second Application; and (5) a violation of Section 1024.35(e) as to the First Notice. Therefore, Plaintiff sufficiently stated a claim for statutory damages under Counts I, II, and III.

In this case the Plaintiff has alleged 8 failures to properly respond to Notices of Errors, which establish entitlement to actual damages based on pattern and practice. Thus the Plaintiff has plausibly alleged causal connection, liability, actual damages and pattern and practice for statutory damages on each count. To the extent that the Court requires more specific pleading on the attorney fees or the damages arising from the sale of the Plaintiff's home or for relating to the review and drafting of the Notice of Error, the Plaintiff requests the opportunity to file a Second Amended Complaint.

In the event that the Court rules that this matter should be dismissed pursuant to *Spokeo*, the dismissal must be without prejudice. The case law is settled that a dismissal or adjudication under *Spokeo* is required because a Federal Court lacks jurisdiction under Article III if the Court finds that the

Plaintiff merely alleged "a bare procedural violation which lacks concrete harm divorced from any concrete harm and satisfy the injury-in-fact requirement of Article III."  This Court made that determination in this case and as a result, any Judgment had to be without prejudice due to the fact that the Court lacked jurisdiction over the case and could not make a determination on the merits.

In *Curtis v. Embrace Home Loans,* 18-cv0057 (June 29, 2020)    this Court held that a case dismissed under Spokeo would be dismissed without prejudice  because it was dismissed based on jurisdictional grounds, citing *Reddy v. Foster, 845 F.3d 493 (1st Cir. 2017)*

In *Kamal v. J. Crew Group, Inc.* 918 F.3d 102 (3rd Cir., 2019), the Third Circuit addressed this exact point when it reversed a dismissal with prejudice as to a case alleging violation of the Fair and Accurate Credit Transactions Act of 2003 (FACTA) . The District Court had dismissed a Second Amended Complaint alleging such a violation based on *Spokeo,* but made the dismissal with prejudice, based on the failure to allege concrete harm and only a technical violation of FACTA. In reversing this dismissal with prejudice, the Court held:

Nonetheless, the case should be dismissed without prejudice because the District Court lacked jurisdiction. *See Cottrell v. Alcon Labs.,* 874 F.3d 154, 164 n.7 (3d Cir. 2017) (stating that "[b]ecause the absence of standing leaves the court without subject matter jurisdiction to reach a decision on the merits, dismissals `with prejudice' for lack of standing are generally improper"). Accordingly, we will remand for this limited purpose. *Kamal* at p. 119.

34

The First Circuit has clearly indicated that dismissals, due to lack of Article III standing are based on lack of jurisdiction on the part of the Federal Court to hear the case.  In *Reddy v. Foster*, 845 F.3d 493 (1st Cir., 2017) , the Court applied the Spokeo requirement of actual harm for Article III standing:

> The "[f]irst and foremost" concern in standing analysis is the requirement that the plaintiff establish an injury in fact, Spokeo, 136 S.Ct. at 1547 (alteration in original) (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)), which "helps to ensure that the plaintiff has a `personal stake in the outcome of the controversy,'" SBA List, 134 S.Ct. at 2341 (quoting Warth, 422 U.S. at 498, 95 S.Ct. 2197). To satisfy Article III, the injury "must be `concrete and particularized' and `actual or imminent, not "conjectural" or "hypothetical."'" Id. (quoting Lujan, 504 U.S. at 560, 112 S.Ct. 2130). *Reddy* at p. 500.

As a result it affirmed the dismissal of the case without prejudice:

> The district court dismissed without prejudice, for lack of Article III standing, this pre-enforcement challenge to a New Hampshire statute that has not been activated or enforced since its enactment in mid-2014. We agree that the challenge is not ripe and that there is no present Article III case or controversy before the court. We affirm the dismissal without prejudice.

The Court referenced a previous First Circuit opinion which held that dismissals for lack of jurisdiction of the Court would be without prejudice.  In *Hochendoner v. Genzyme Corp*. 823 F. 3d 724(1st. Cir., 2016), the First Circuit remanded a case dismissed under Spokeo for lack of  concrete harm and lack of Article III standing and held that it should be dismissed without prejudice:

The plaintiffs rail against the prejudicial effect of the district court's order of dismissal. There is good reason for this concern: although the district court's order does not specify whether it is to operate with or without prejudice, the normal presumption is that a Rule 12(b)(6) dismissal is with prejudice. *See* Fed.R.Civ.P. 41(b); *Karvelas,* 360 F.3d at 241. After all, such a judgment constitutes "a final decision on the merits." *Karvelas,* 360 F.3d at 241.

By contrast, a dismissal for lack of subject matter jurisdiction normally operates without prejudice. *See Torres-Fuentes v. Motorambar, Inc.,* 396 F.3d 474, 475 (1st Cir.2005). This approach makes eminently good sense since a want of jurisdiction deprives a court of the authority to enter a judgment on the merits of the claims sub judice. *See Mills v. Harmon Law Offices, P.C.,* 344 F.3d 42, 45-46 (1st Cir.2003); *Christopher v. Stanley-Bostitch, Inc.,* 240 F.3d 95, 100 (1st Cir.2001) (per curiam). Courts routinely apply this principle to dismissals for lack of Article III standing. *See, e.g., S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC,* 713 F.3d 175, 185 (4th Cir.2013); *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.,* 524 F.3d 1229, 1232, 1234-35 (11th Cir.2008) (per curiam); *Brereton v. Bountiful City Corp.,* 434 F.3d 1213, 1216 (10th Cir.2006); *County of Mille Lacs v. Benjamin,* 361 F.3d 460, 464-65 (8th Cir. 2004). Following this line of authority, we hold that a dismissal for lack of Article III standing must operate without prejudice.

In view of the established precedent of the First Circuit if a Court found there to be no concrete actual harm, which Plaintiff disputes, this Court would lack Article III jurisdiction to hear the case. The Plaintiff's complaint could only be dismissed without prejudice.   A FRCP 12(b)(6) motion cannot be granted for failure to state a claim if the Court lacks jurisdiction. In addition, in *Cordeiro,* after a Motion to Alter and Amend Judgment was filed, Judge Smith remanded the RESPA and TILA  counts

back to the Superior Court because the dismissal could not be without prejudice.

Wells Fargo violated RESPA by not responding adequately and at all to Requests for Information and Notices of Error.  This failure to respond constitutes a violation of the Statute. One of the Notices of Error alleged that the actual damages were failure to rescind the foreclosure sale. Plaintiffs adequately pleaded actual damages in the form of postage and copying costs for the mailing of the Notices of Error after Wells Fargo failed to respond to the Requests for Information or the Notices of Error. Plaintiffs also pleaded that the Plaintiffs incurred legal fees for the review of and preparation of the Notices of Error.  The Defendant's position would essentially gut RESPA by holding that these related costs to noncompliance with the statute and regulation would not be considered damages. RESPA and Regulation X require information to be provided. Here Plaintiffs have presented cogent argument that actual damages have been pleaded and for all  these reasons, the Motion should be denied.

Plaintiffs recognizes that this Response to the Motion to Dismiss was filed in a non-timely manner. As indicated in the Response to the Motion to Show Cause, the Plaintiffs' attorney was out of the state of Rhode Island and had inadvertently not filed a Motion to Extend Time for two weeks, which

had been agreed to by the attorney for Wells Fargo. No prejudice has been

demonstrated to Defendant, who agreed to the two week extension.  Thus the

Plaintiffs had previously filed a similar response to the nearly similar Motion

to Dismiss, which had been denied without prejudice. Additional caselaw

supporting Plaintiffs' position was provided, which supplemented the cases

previously submitted which clearly held that in RESPA case, where

information is not provided with no valid excuse, after a Request for

Information is submitted, a crucial element of damages is the costs of

preparing the Notices of Error. Otherwise the statute would be a nullity as to

the obligation of a servicer to provide information to a consumer under

Regulation X and RESPA.

<div style="margin-left:40%;">

KENNETH FITCH

ESTATE OF DIANNE L. FITCH
By their Attorney

</div>

June 20, 2021                          /s/ John B. Ennis_____
                                       JOHN B. ENNIS, ESQ. #2135
                                       1200 Reservoir Avenue
                                       Cranston, Rhode Island 02920
                                       (401) 943-9230
                                       Jbelaw75@gmail.com

<u>CERTIFICATION</u>

I hereby certify that I emailed a copy of the above Memorandum of Law to the following on this  20th day of June, 2021 by electronic filing:

Thomas Walsh, Esq.
Stephen Stoeher, Esq.
Samuel Bodurtha, Esq.
Michael Jusczyk, Esq.
Zachary W. Bork, Esq.
Rowdy Cloud, Esq.

<div align="right">/s/ John B. Ennis            </div>