IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| KENNETH FITCH and<br>ESTATE OF DIANNE L. FITCH<br><br>Plaintiffs,<br><br>V.<br><br>FEDERAL HOUSING FINANCE<br>AGENCY, FEDERAL NATIONAL<br>MORTGAGE ASSOCIATION,<br>WELLS FARGO BANK, N.A.,<br>HARMON LAW OFFICES, P.C., and<br>266 PUTNAM AVENUE, LLC<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 1:18-cv-00214 |

**DEFENDANT 266 PUTNAM AVENUE, LLC'S**
**MEMORANDUM IN SUPPORT OF ITS MOTION FOR**
**PARTIAL SUMMARY JUDGMENT CONCERNING DUE PROCESS THEORY**

Plaintiffs Estate of Dianne Fitch (the "Estate") and Kenneth Fitch (collectively, "Plaintiffs") filed this case seeking to void a foreclosure sale of property located at 73 Kay Street in Cumberland, Rhode Island (the "Property"), which was sold to Defendant 266 Putnam Avenue, LLC ("Putnam"). Plaintiffs assert two counts implicating Putnam's interest in the Property. First, Plaintiffs request a declaratory judgment (Count IV) that the sale to Putnam is void because the foreclosure sale allegedly (1) violated Plaintiffs' due process rights because it was a nonjudicial foreclosure, (2) was conducted pursuant to an invalid default notice, (3) took place without providing Plaintiffs an opportunity to mediate, (4) was performed by the wrong entity, and (5) was subject to an invalid assignment of the bid accepted at the foreclosure auction. (Docket No. 60, Amended Complaint ("Compl."), ¶¶ 212-22.) Second, Plaintiffs request an order enjoining Putnam from evicting Mr. Fitch from the Property based on their claim that the sale to

Putnam is void (Count V). (*Id.*, ¶¶ 223-31.)

Putnam previously moved for summary judgment under Fed. R. Civ. P. 56 as to all of the legal theories asserted in the Amended Complaint regarding the validity of the foreclosure sale to Putnam with the exception of Plaintiffs' due process claim.[1] That motion remains pending and Plaintiffs' opposition is due on July 12, 2021. Putnam's instant motion seeks the dismissal of Plaintiffs' due process theory based on a recent First Circuit decision, *Montilla v. Fed. Nat'l Mortgage Ass'n*, No. 20-1673, 2021 WL 2326955 (1st Cir. June 8, 2021),[2] that addressed the exact same issue argued by Plaintiffs here—whether a nonjudicial foreclosure by the Federal National Mortgage Association ("Fannie Mae") or the Federal Housing Finance Agency ("FHFA") violates a mortgagor's Fifth Amendment due process rights—and requires that Plaintiffs' due process theory be dismissed as a matter of law.

Accordingly, for the reasons stated herein and those set forth in Putnam's previously filed motion for partial summary judgment, Plaintiffs' due process theory should be dismissed as a matter of law, Plaintiffs' claim that the foreclosure sale to Putnam should be declared void should be dismissed, Plaintiffs' request for injunctive relief as to Putnam should be denied, and judgment should enter in Putnam's favor on all claims asserted against it in the Amended Complaint.

**I.  STATEMENT OF MATERIAL FACTS**

Putnam refers the Court to the Statement of Material Facts set forth in its previously filed Memorandum of Law in Support of Motion for Partial Summary Judgment (*see* Docket No. 96-1), which is incorporated by reference herein. Because this memorandum concerns the narrow

---

[1] Putnam did not previously move for summary judgment as to Plaintiffs' due process theory because the viability of the theory, which is purely a legal issue, was pending before the First Circuit in another matter.

[2] A copy of the decision is attached hereto as <u>Exhibit A</u>.

legal issue of Plaintiffs' due process theory, Putnam only recites the allegations relevant to that theory below.

Plaintiffs bring two claims against Putnam in this case: one for a declaratory judgment that the foreclosure sale to Putnam is void (Count IV), and one for injunctive relief (Count V) seeking to enjoin Mr. Fitch's eviction from the Property. Both counts hinge on various purported defects in the foreclosure process, including that it constituted a "violation of due process of law by failing to conduct a Judicial Foreclosure" and that the "violation of due process voids the alleged foreclosure by Statutory Power of Sale." (Compl., ¶¶ 214, 226.) Plaintiffs' Amended Complaint alleges, in sum, that the nonjudicial foreclosure process pursuant to which Putnam purchased the Property violated their Fifth Amendment due process rights because, in foreclosing on the Property, Fannie Mae and FHFA were operating as government actors. (Compl., ¶¶ 27-65, 96-97, 101-115.) All of the other alleged defects with the foreclosure process are addressed in Putnam's previously filed motion for partial summary judgment. (*See* Docket No. 96.) Based on the foregoing, in addition to the reasons addressed in Putnam's previously filed motion for partial summary judgment (*see* Docket No. 96), Plaintiffs seek an order declaring that the sale to Putnam is void. (*Id.* at ¶¶ 222, 231.)

## II. PUTNAM IS ENTITLED TO SUMMARY JUDGMENT DISMISSING THE ESTATE'S DUE PROCESS THEORY AS A MATTER OF LAW

"Summary judgment is warranted when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Prospect E. Holdings, Inc. v. United Nurses & Allied Pros., Inc.*, No. CV 18-671-JJM-PAS, 2019 WL 2929707, at *2 (D.R.I. July 8, 2019) (citing Fed. R. Civ. P. 56). Accordingly, summary judgment is appropriate when the Court is presented with pure issues of law. *See, e.g., Kachanis v. United States*, 844 F. Supp. 877, 880 (D.R.I. 1994).

Here, Putnam is entitled to summary judgment as a matter of law on Plaintiffs' declaratory judgment claim (Count IV) and request for injunctive relief (Count V) to the extent they are grounded on the theory that the nonjudicial foreclosure process that resulted in the sale to Putnam violated Plaintiffs' right to due process under the Fifth Amendment.

### A. **Plaintiffs' Assertion That A Nonjudicial Foreclosure By Fannie Mae And/Or FHFA Violates Plaintiffs' Fifth Amendment Right To Due Process Has Been Rejected, As A Matter Of Law, By The First Circuit And Mandates The Dismissal Of Plaintiffs' Due Process Theory In This Case**

Plaintiffs' claim that the foreclosure sale to Putnam is void because the nonjudicial foreclosure process violated their Fifth Amendment due process rights must be rejected as a matter of law. The precise due process claim raised by Plaintiffs here was recently rejected by the First Circuit in *Montilla v. Fed. Nat'l Mortgage Ass'n*, No. 20-1673, 2021 WL 2326955 (1st Cir. June 8, 2021), and mandates the dismissal of Plaintiffs' due process theory in this case.

In *Montilla*, the parties' mortgage agreements gave the lenders the right to conduct nonjudicial foreclosures. *Id.* at *1. The subject loans were sold to Fannie Mae while FHFA, a federal agency, was acting as Fannie Mae's conservator. *Id.* The appellant-borrowers defaulted on their loans and Fannie Mae, through loan servicers, conducted nonjudicial foreclosure sales of the mortgaged properties. *Id.* at *1-2. At issue before the First Circuit was the appellants' claim that "Fannie Mae and FHFA are government actors and that the nonjudicial foreclosure sales violated their Fifth Amendment procedural due process rights." *Id.* at *1.

The First Circuit concluded in *Montilla* that "FHFA is not acting as the government in its capacity as [Fannie Mae's] conservator." *Id.* at *5. The Court further held that "FHFA's temporary conservatorship over [Fannie Mae] does not constitute permanent authority" such that Fannie Mae is a government actor for purposes of conducting foreclosures. *Id.* Accordingly, the Court in *Montilla* held that nonjudicial foreclosures of mortgages held by Fannie Mae do not, as

4

a matter of law, implicate due process rights under the Fifth Amendment of the United States Constitution. *Id.* at *1.

Based on the First Circuit's decision in *Montilla*, Plaintiffs' claim that the nonjudicial foreclosure in this case violated their due process rights under the Fifth Amendment fails as a matter of law. Plaintiffs' mortgage authorized the mortgagee to invoke the statutory power of sale upon a default. (*See* Docket No. 96-2 at ¶ 8.) For the reasons set forth in *Montilla*, Fannie Mae was not, as a matter of law, operating as a government actor in invoking the statutory power of sale and in proceeding with a nonjudicial foreclosure of the Property under Rhode Island law. Therefore, Plaintiffs' assertion that the foreclosure sale to Putnam should be declared void due to a violation of their Fifth Amendment due process rights must be rejected by this Court.

### III.   CONCLUSION

For the reasons set forth herein, Putnam is entitled to partial summary judgment concerning Plaintiffs' legal theory that the foreclosure sale is void due to violations of their Fifth Amendment right to due process. Additionally, all of Plaintiffs' claims against Putnam should be dismissed in their entirety for the reasons set forth herein in conjunction with the reasons set forth in Putnam's previously filed motion for partial summary judgment.

266 PUTNAM AVENUE, LLC

By its attorney,

*/s/ Zachary W. Berk*
Zachary W. Berk (RI Bar No. 7453)
Paige V. Schroeder (RI Bar No. 9165)
SAUL EWING ARNSTEIN & LEHR LLP
131 Dartmouth Street, Suite 501
Boston, MA 02116
T: (617) 912-0927
F: (617) 723-4151
Zachary.Berk@saul.com
Paige.Schroeder@saul.com

DATED: June 28, 2021

## **CERTIFICATE OF SERVICE**

    I, Zachary W. Berk, counsel for Defendant 266 PUTNAM AVENUE, LLC, hereby certify that I served a true copy of the within document upon all counsel of record through the Court's electronic filing system.

| 06/28/21 | */s/ Zachary W. Berk* |
|---|---|
| Date | Zachary W. Berk |



2021 WL 2326955
Only the Westlaw citation is currently available.
United States Court of Appeals, First Circuit.

Neris MONTILLA, on behalf of herself and all others so similarly situated; Michael Kyriakakis, on behalf of himself and all others so similarly situated, Plaintiffs, Appellants,
Roselia Montufar, on behalf of herself and all others so similarly situated; Ruben Velasquez, on behalf of himself and all others so similarly situated, Plaintiffs,
v.
FEDERAL NATIONAL MORTGAGE ASSOCIATION; Federal Housing Finance Agency, Defendants, Appellees,
Mr. Cooper, f/k/a Nationstar Mortgage, LLC; Seterus, Inc.; C.I.T. Bank, N.A., Defendants.

No. 20-1673
|
June 8, 2021

**Synopsis**
**Background:** Mortgagors who had obtained loans secured by mortgages on their real property in Rhode Island, and whose loans and mortgages were later sold to the Federal National Mortgage Association (Fannie Mae) while the Federal Housing Finance Agency (FHFA), a federal agency, was acting as Fannie Mae's conservator, brought putative class action alleging that Fannie Mae and FHFA were government actors and that Fannie Mae's post-default nonjudicial foreclosure sales of their mortgaged properties violated their Fifth Amendment procedural due process rights. Defendants moved to dismiss. The United States District Court for the District of Rhode Island, William E. Smith, J., 2020 WL 9934769, granted motions, and mortgagors appealed.

**Holdings:** The Court of Appeals, Lynch, Circuit Judge, held that:

[1] FHFA, as Fannie Mae's conservator, was not a government actor subject to mortgagors' Fifth Amendment due process claims, and

[2] neither Fannie Mae nor the Federal Home Loan Mortgage Corporation (Freddie Mac) was a government actor subject to Fifth Amendment due process claims.

Affirmed.

See also 2021 WL 2326948.

West Headnotes (12)

[1] **United States**
The Federal National Mortgage Association (Fannie Mae) and the Federal Home Loan Mortgage Corporation (Freddie Mac) are private, publicly traded corporations created by federal charter to support the development of the secondary mortgage market; among other activities, these government-sponsored enterprises buy and sell residential mortgages. 12 U.S.C.A. §§ 1716b, 1719.

[2] **Mortgages and Deeds of Trust**
Rhode Island permits nonjudicial foreclosures through a statutory power of sale when that power is specified in the mortgage contract. R.I. Gen. Laws Ann. § 34-11-22.

[3] **Federal Courts**
Court of Appeals reviews order granting motion to dismiss de novo.

[4] **Federal Civil Procedure**

To avoid dismissal, plaintiff's complaint must include factual allegations sufficient to state plausible claim to relief.

### [5] United States

Federal Housing Finance Agency (FHFA), a federal agency established by the Housing and Economic Recovery Act (HERA) that sometimes acts as the government, was not a government actor in its role as conservator for the Federal National Mortgage Association (Fannie Mae), and thus was not subject to mortgagors' claims that Fannie Mae's post-default nonjudicial foreclosure sales of their mortgaged properties violated their Fifth Amendment procedural due process rights; under HERA's "succession clause," when FHFA became conservator, it "stepped into the shoes" of Fannie Mae, a private government-sponsored enterprise, and succeeded to its private contractual right to nonjudicially foreclose on mortgators' mortgages, and it was not alleged that FHFA relied on any power other than those contractual rights in carrying out the nonjudicial foreclosures. U.S. Const. Amend. 5; 12 U.S.C.A. §§ 4511(a), 4617(b)(2)(A).

### [6] Administrative Law and Procedure

That federal agency exercising portion of its statutory powers in one role is government actor does not as matter of law mean that it is government actor for all purposes or in all exercises of its statutory powers.

### [7] Federal Courts

In action by mortgagors against the Federal National Mortgage Association (Fannie Mae) and the Federal Housing Finance Agency (FHFA) arising from the nonjudicial foreclosure sales of mortgaged properties, the Court of Appeals had subject matter jurisdiction over claims against FHFA based on its actions as conservator for Fannie Mae; although the Housing and Economic Recovery Act (HERA), which established FHFA, contained no "sue-and-be-sued" clause applicable to FHFA, FHFA "stepped into the shoes" of Fannie Mae when acting as its conservator, and so FHFA also succeeded to Fannie Mae's "sue-and-be-sued" clause. 12 U.S.C.A. §§ 1723a(a), 4511.

### [8] United States

Neither the Federal National Mortgage Association (Fannie Mae) nor the Federal Home Loan Mortgage Corporation (Freddie Mac), both of which were government-sponsored enterprises (GSE), was a government actor subject to claims that post-default nonjudicial foreclosure sales of mortgaged properties violated the Fifth Amendment; it was undisputed that the government created the GSEs by special law, that the GSEs were created for furtherance of governmental objectives, and that, pre-conservatorship, the GSEs were private actors not subject to claims under the Fifth Amendment, and, through Federal Housing Finance Agency's (FHFA) conservatorship over the GSEs, the government did not retain for itself permanent authority over them, notwithstanding that conservatorship had been maintained for some 13 years when underlying action was brought, as conservatorship was temporary and FHFA controlled the GSEs for the limited purpose of reorganizing, rehabilitating, or winding up their affairs. U.S. Const. Amend. 5; 12 U.S.C.A. §§ 4511, 4617(a)(2).

### [9] Constitutional Law

Under three-part test articulated by the Supreme Court in *Lebron v. National R.R. Passenger Corp.*, 115 S.Ct. 961, which is used to determine when a private corporation is a government actor for purposes of certain constitutional claims, if (1) the government creates a corporation by special law, (2) for the furtherance of governmental objectives, and (3) retains for itself permanent authority to appoint a majority of the directors of that corporation, then corporation's actions are subject to the constraints of the Constitution.

[10] Courts 🔑

The Supreme Court does not normally overturn, or dramatically limit, earlier authority sub silentio.

[11] Federal Courts 🔑

Court of Appeals ordinarily does not consider arguments that were not made by parties but, instead, were made by amici.

[12] Constitutional Law 🔑

State action theories, specifically, the "coercive power" theory, the "joint participation" theory, the "entwinement" theory, and the "government control" theory, attempt to determine whether there is such a close nexus between the state and the challenged action that seemingly private behavior may be fairly treated as that of the state itself, for purposes of certain constitutional claims.

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND, [Hon. William E. Smith, U.S. District Judge]

**Attorneys and Law Firms**

Todd S. Dion, Pawtucket, RI, for appellants.

Michael A.F. Johnson, with whom Dirk C. Phillips, Washington, DC, and Arnold & Porter Kaye Scholer LLP were on brief, for appellee Federal Housing Finance Authority.

Noah A. Levine, New York, NY, with whom Wilmer Cutler Pickering Hale & Dorr LLP, and Samuel C. Bodurtha, Boston, MA, and Hinshaw & Culbertson LLP were on brief, for appellees Federal Housing Finance Authority and Federal National Mortgage Association.

Steven Fischbach for amici curiae Direct Action for Rights and Equality, National Center for Law and Economic Justice, National Housing Law Project, and Virginia Poverty Law Center.

Before Lynch and Kayatta, Circuit Judges, and Woodcock,[*] District Judge.

**Opinion**

LYNCH, Circuit Judge.

**\*1** Plaintiffs-appellants obtained loans secured by mortgages on their real property in Rhode Island. These agreements gave their lenders the right to nonjudicially foreclose on the mortgages. The loans and mortgages were later sold to the Federal National Mortgage Association ("Fannie Mae") while the Federal Housing Finance Agency ("FHFA"), a federal agency, was acting as Fannie Mae's conservator. Appellants defaulted on their loans, and Fannie Mae, consistent with Rhode Island law, conducted nonjudicial foreclosure sales of the mortgaged properties.

Appellants brought suit in federal court alleging that Fannie Mae and FHFA are government actors and that the nonjudicial foreclosure sales violated their Fifth Amendment procedural due process rights. They appeal from the district court's holding that Fannie Mae and FHFA are not subject to their Fifth Amendment claims and its order dismissing those claims. See Montilla v. Fed. Hous. Fin. Agency, No. 18-cv-00632, slip op. at 9-11, 2020 WL 9934769 (D.R.I. May 26, 2020), ECF No. 40. We affirm.

**I. Facts**

A. Fannie Mae, Freddie Mac, and FHFA

[1] Fannie Mae and the Federal Home Loan Mortgage Corporation ("Freddie Mac") (collectively, the "government-sponsored enterprises" or "GSEs") are "private, publicly traded corporations ... created by federal charter to support the development of the secondary mortgage market." Town of Johnston v. Fed. Hous. Fin. Agency, 765 F.3d 80, 82 (1st Cir. 2014); see 12 U.S.C. § 1716b; id. § 1452. Among other activities, the GSEs buy and sell residential mortgages. See 12 U.S.C. § 1719; id. § 1454.[1]

In July 2008, as the housing market crashed and the value of the GSEs' loan portfolios declined, Congress established FHFA through the Housing and Economic Recovery Act of 2008 ("HERA"). See 12 U.S.C. § 4511. HERA gave the director of FHFA the discretionary authority to appoint FHFA as conservator or receiver for Fannie Mae or Freddie Mac

"for the purpose of reorganizing, rehabilitating, or winding up the[ir] affairs." Id. § 4617(a)(2).

In September 2008, FHFA's director exercised this authority and placed both entities into conservatorship. As conservator, FHFA "immediately succeed[ed] to" the "rights, titles, powers, and privileges" of Fannie Mae, Freddie Mac, and the entities' shareholders and boards of directors. Id. § 4617(b)(2)(A).

HERA also amended the GSEs' charters to allow the Secretary of the Treasury to "purchase any obligations and other securities issued by the corporation[s]." Pub. L. No. 110–289, 122 Stat. 2654, 2683 (codified at 12 U.S.C. § 1719(g)(1)(A)); id. at 2684-85 (codified at 12 U.S.C. § 1455(l)(1)(A)). Under this authority, Treasury entered into agreements to infuse capital into Fannie Mae and Freddie Mac. In exchange, it received $1 billion in senior preferred stock in both entities and warrants for the purchase of common stock that, if exercised, would give Treasury 79.9% of the entities' common stock. Treasury has never exercised these warrants and owns no common stock in either Fannie Mae or Freddie Mac.

B. Foreclosures on Appellants' Properties

 *2  In 2011, acting as the GSEs' conservator, FHFA established the Servicing Alignment Initiative ("SAI") to improve loan servicer performance and to limit the GSEs' financial losses. Plaintiffs allege that the SAI "directed [the GSEs' loan] servicers to use non-judicial foreclosure procedures when foreclosing on residential properties in Rhode Island."

 [2]  Rhode Island permits nonjudicial foreclosures through a statutory power of sale when that power is specified in the mortgage contract. See Bucci v. Lehman Bros. Bank, FSB, 68 A.3d 1069, 1084-85 (R.I. 2013); 34 R.I. Gen. Laws § 34-11-22; id. § 34-27-4. The GSEs' standard mortgage agreement, which was used by the plaintiffs in this case, explicitly gives the lender a statutory power of sale.

Appellant Neris Montilla executed a mortgage in July 2008 on a property in Providence. This mortgage was assigned to Fannie Mae in April 2015 and serviced by C.I.T. Bank, N.A. ("CIT"). On September 10, 2016, CIT began nonjudicial foreclosure proceedings under Rhode Island law against Montilla's property. The mortgage was foreclosed on October 14, 2016. Similarly, appellant Michael Kyriakakis's mortgage on his property was assigned to Fannie Mae in May 2016. The loan servicer conducted a nonjudicial foreclosure sale in December 2017 and recorded a foreclosure deed in March 2018.

II. Procedural History

Montilla filed a putative class action against Fannie Mae, FHFA, and CIT on November 19, 2018 in federal district court in Rhode Island.[2] The complaint was amended in December 2018 to include Kyriakakis's claims. It alleged that FHFA and Fannie Mae deprived Montilla, Kyriakakis, and others similarly situated of property without "adequate notice and opportunity for meaningful hearings" in violation of the Fifth Amendment. The plaintiffs sought "declaratory relief, injunctive relief, actual, monetary, punitive and exemplary damages, restitution, an accounting, attorney's fees and costs, and all other relief as provided by law."

FHFA and Fannie Mae moved to dismiss the case in February 2019. FHFA argued that it and Fannie Mae are not government actors for the purposes of the plaintiffs' Fifth Amendment claims. Fannie Mae joined FHFA's arguments and alternatively argued that, even if it and FHFA were subject to the Fifth Amendment, the plaintiffs' claims failed because there was no due process violation.

In May 2020, the district court granted FHFA and Fannie Mae's motions to dismiss. See Montilla, slip op. at 1, 2020 WL 9934769. It held that because FHFA stepped into Fannie Mae's shoes as its conservator and its ability to foreclose was a "contractual right inherited from Fannie Mae by virtue of its conservatorship," FHFA was not acting as the government when it foreclosed on the plaintiffs' mortgages and was not subject to the plaintiffs' Fifth Amendment claims. Montilla, slip op. at 9-10, 2020 WL 9934769. In so holding, the court disagreed with an earlier Rhode Island district court's contrary holding in Sisti v. Fed. Hous. Fin. Agency, 324 F. Supp. 3d 273, 284 (D.R.I. 2018).

The court, applying Lebron v. Nat'l R.R. Passenger Corp., 513 U.S. 374, 115 S.Ct. 961, 130 L.Ed.2d 902 (1995), also held that FHFA's conservatorship over Fannie Mae did not make Fannie Mae a government actor for the purposes of the plaintiffs' constitutional claims because the government does not exercise sufficient control over Fannie Mae. See Montilla, slip op. at 6-9, 2020 WL 9934769; see also Lebron, 513 U.S. at 398-99, 115 S.Ct. 961 (holding that a corporation is subject to constitutional claims if, among other things, the government "retains for itself permanent authority to appoint

a majority of the directors of [the] corporation"). The court again disagreed with Sisti, which had held that because the "decision to end [FHFA's] conservatorship is left entirely to the discretion of the government," its control over the GSEs is "effectively permanent." Sisti, 324 F. Supp. 3d at 280-81.

**\*3** Montilla and Kyriakakis timely appealed. FHFA, Fannie Mae, and Freddie Mac timely appealed the decision in Sisti which had reached the contrary result.[3] We heard oral argument in these appeals on May 4, 2021.

### III. Analysis

[3] [4] We review an order granting a motion to dismiss de novo. See Sterling Suffolk Racecourse, LLC v. Wynn Resorts, Ltd., 990 F.3d 31, 35 (1st Cir. 2021). To avoid dismissal, a plaintiff's complaint must include factual allegations sufficient to state a plausible claim to relief. See Abdisamad v. City of Lewiston, 960 F.3d 56, 59 (1st Cir. 2020).

A. FHFA, as the GSEs' Conservator, Is Not a Government Actor Subject to Appellants' Due Process Claims

[5] Adopting the district court's reasoning in Sisti, 324 F. Supp. 3d at 281-84, appellants argue that because FHFA is a government agency, any action it takes as conservator, like directing the GSEs to nonjudicially foreclose on appellants' mortgages, is government action subjecting it to appellants' constitutional claims. That analysis is simply wrong and contrary to law. We hold that, in its role as the GSE's conservator, FHFA is not a government actor because it has "stepped into the shoes" of the private GSEs.

[6] First, it is undisputed that FHFA is a federal agency that sometimes acts as the government. 12 U.S.C. § 4511(a). But this fact is not dispositive. That a federal agency exercising a portion of its statutory powers in one role is a government actor does not as a matter of law mean that it is a government actor for all purposes or in all exercises of its statutory powers. See Faiella v. Fed. Nat'l Mortg. Ass'n, 928 F.3d 141, 148 (1st Cir. 2019). We must determine if FHFA acted as the government in its role as the GSEs' conservator.

Under HERA's "succession clause," when FHFA became the GSEs' conservator, it succeeded to "all rights, titles, powers, and privileges of the regulated entity, and of any stockholder, officer, or director of such regulated entity with respect to the regulated entity and the assets of the regulated entity." 12 U.S.C. § 4617(b)(2)(A). One of these rights was the GSEs' private contractual right to nonjudicially foreclose on appellants' mortgages, which FHFA instructed the GSEs' loan servicers to exercise. Appellants do not allege that FHFA relied on any power other than the GSEs' contractual rights in carrying out the nonjudicial foreclosures.

The Supreme Court has interpreted a succession clause in the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") with nearly identical language[4] to the one in HERA to mean that when a government agency acts as receiver for an entity, it " 'steps into the shoes' of the failed [institution]" and exercises that entity's rights. O'Melveny & Myers v. FDIC, 512 U.S. 79, 86, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994). Other circuits have interpreted HERA to mean that when acting as the GSEs' conservator and exercising their rights, FHFA steps into the GSEs' shoes. See Herron v. Fed. Nat'l Mortg. Ass'n, 861 F.3d 160, 169 (D.C. Cir. 2017) (holding that when FHFA "step[ped] into Fannie Mae's private shoes," it became a private actor); Meridian Invs., Inc. v. Fed'l Home Loan Mortg. Corp., 855 F.3d 573, 579 (4th Cir. 2017) ("[T]hough FHFA is a federal agency, as conservator it steps into Freddie Mac's shoes, shedding its government character and also becoming a private party."); see also U.S. ex rel. Adams v. Aurora Loan Servs., Inc., 813 F.3d 1259, 1261 (9th Cir. 2016) (holding that FHFA's conservatorship "places [it] in the shoes of Fannie Mae and Freddie Mac, and gives the FHFA their rights and duties"). We agree that, after stepping into the GSEs' shoes under HERA and exercising their private contractual rights to nonjudicially foreclose on appellants' properties, FHFA did not act as the government.

**\*4** Appellants, again relying on Sisti, argue that O'Melveny is inapplicable here because it involved a government agency acting as receiver, not as a conservator. See Sisti, 324 F. Supp. 3d at 282-83. We disagree. O'Melveny was decided based on what the statute's "language appears to indicate." 512 U.S. at 86, 114 S.Ct. 2048. Section 4617(b)(2)(A) says that FHFA succeeds to the GSE's rights when it acts "as conservator or receiver" (emphasis added). Similarly, the statute at issue in O'Melveny says that the FDIC succeeds to the rights of failed depository institutions when it acts "as conservator or receiver." 12 U.S.C. § 1821(d)(2)(A) (emphasis added). There is no reason O'Melveny's textual logic does not apply to both conservators and receivers.[5]

Appellants' final argument is that another Supreme Court case, FDIC v. Meyer, 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994), controls this case and requires a

finding in their favor. Neither contention is accurate. Meyer concerned whether a plaintiff could bring a Bivens claim against the Federal Savings and Loan Insurance Corporation ("FSLIC"), a federal agency acting as receiver for a failed bank.[6] See 510 U.S. at 473-75, 114 S.Ct. 996; see generally Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The Court in Meyer held: (1) that the "sue-and-be-sued" clause in FSLIC's organic statute waived FSLIC's sovereign immunity; and (2) that a plaintiff cannot bring a Bivens claim against a federal agency like FSLIC. Meyer, 510 U.S. at 483-84, 114 S.Ct. 996. Focusing on the "sue-and-be-sued" holding, appellants' argument proceeds as follows: (1) FSLIC was a federal agency acting as receiver; (2) the plaintiff brought a constitutional claim against FSLIC for actions it took as receiver; (3) a federal court could not hear the case if FSLIC had sovereign immunity; (4) only government actors can have (and waive) sovereign immunity; (5) Meyer held that FSLIC waived sovereign immunity through its "sue-and-be-sued" clause; so (6) by deciding the sovereign immunity issue, the Court must have thought that FSLIC is a government actor potentially liable for a constitutional tort when it acts as receiver. Applying that logic here, they say that FHFA, as a government agency, must be acting as the government when it acts as the GSEs' conservators. See Sisti, 324 F. Supp. 3d at 281-82.

[7] Appellants misread Meyer. Meyer decided a threshold jurisdictional question.[7] See 510 U.S. at 475, 114 S.Ct. 996 (explaining that sovereign immunity is "jurisdictional in nature"). It held that FSLIC, through its "sue-and-be-sued" clause, waived any right it may have had to argue that a federal court does not have the power to address the merits of the plaintiff's claim. Id. at 479, 114 S.Ct. 996; see also Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (distinguishing between "the absence of a valid ... cause of action" and "subject-matter jurisdiction, i.e., the courts' statutory or constitutional power to adjudicate the case"). Meyer never addressed the merits of the plaintiff's claim, including the argument that his claim must fail because FSLIC was not acting as the government. See id. at 486 n.12, 114 S.Ct. 996 ("[W]e do not reach the merits of [Meyer's] due process claim."). Indeed, FDIC never made such an argument to the Supreme Court and the Court had no reason to reach it.

*5 Properly viewing Meyer's "sue-and-be-sued" holding as jurisdictional, Meyer did not decide that a federal agency is a government actor whenever it acts as a receiver or conservator. Such a categorical reading of Meyer is inconsistent with post-Meyer Supreme Court cases, including O'Melveny, decided only four months later, making clear that an agency acting as receiver is not necessarily the government for all purposes. See O'Melveny, 512 U.S. at 85, 114 S.Ct. 2048 ("[T]he FDIC is not the United States, and even if it were we would be begging the question to assume that it was asserting its own rights rather than, as receiver, the rights of [the failed bank]."); Atherton v. FDIC, 519 U.S. 213, 225, 117 S.Ct. 666, 136 L.Ed.2d 656 (1997) ("[A]s in O'Melveny, the FDIC is acting only as a receiver of a failed institution; it is not pursuing the interest of the Federal Government ...." (emphasis added)). It is also inconsistent with post-Meyer case law from other circuits holding that an agency is not necessarily the government when it acts as a conservator or receiver. See Collins v. Mnuchin, 938 F.3d 553, 590 (5th Cir. 2019) (en banc), cert. granted, ––– U.S. ––––, 141 S. Ct. 193, 207 L.Ed.2d 1118 (2020) ("Whether an agency exercises government power as conservator or receiver 'depends on the context of the claim.' " (quoting Slattery v. United States, 583 F.3d 800, 827 (Fed. Cir. 2009), vacated then reinstated as modified on reh'g en banc, 635 F.3d 1298 (Fed. Cir. 2011)); United States v. Heffner, 85 F.3d 435, 439 (9th Cir. 1996) ("The [federally-owned Resolution Trust Corporation] in its corporate character as receiver is not the federal sovereign ...."); United States v. Ely, 142 F.3d 1113, 1121 (9th Cir. 1997) ("Meyer did not purport to determine the status of the FDIC when ... taking over a failed bank as receiver ...."). Here, FHFA is not acting as the government in its capacity as the GSEs' conservator. Appellants' constitutional claims against it fail for that reason.

B. Fannie Mae and Freddie Mac Are Not Government Actors Subject to Appellants' Due Process Claims

[8] [9] Appellants next argue that Fannie Mae and Freddie Mac are themselves government actors. In Lebron, the Supreme Court articulated a three-part test to determine when a private corporation is a government actor for purposes of certain constitutional claims against it. It held that if "[1] the Government creates a corporation by special law, [2] for the furtherance of governmental objectives, and [3] retains for itself permanent authority to appoint a majority of the directors of that corporation," then the corporation's actions "are subject to the constraints of the Constitution." Lebron, 513 U.S. at 376, 399, 115 S.Ct. 961. The parties do not dispute that the first two prongs of the Lebron test are satisfied. Appellants also do not dispute that, pre-conservatorship, the GSEs were private actors not subject to their claims. See Am. Bankers Mortg. Corp. v. Fed'l Home Loan Mortg. Corp., 75 F.3d 1401, 1406 (9th Cir. 1996) (applying Lebron before

FHFA's conservatorship began to hold that "Freddie Mac is not a government agency subject to the Fifth Amendment's Due Process Clause"). The issue before us is whether, through FHFA's conservatorship over the GSEs, the government has "retain[ed] for itself permanent authority" over Fannie Mae and Freddie Mac. Lebron, 513 U.S. at 399, 115 S.Ct. 961.

We hold that FHFA's temporary conservatorship over the GSEs does not constitute permanent authority. FHFA controls the GSEs for the limited purpose of "reorganizing, rehabilitating, or winding up the[ir] affairs." 12 U.S.C. § 4617(a)(2); see also id. § 4617(b)(2)(D)(i) (authorizing FHFA, as conservator, to take actions "necessary to put the regulated entity in a sound and solvent condition"). The statutory language confirms, as other courts have held, that a conservatorship has "an inherently temporary purpose." Herron, 861 F.3d at 169 (quoting Rubin v. Fed. Nat'l Mortg. Ass'n, 587 F. App'x 273, 275 (6th Cir. 2014)); see also Kerpen v. Metro. Wash. Airports Auth., 907 F.3d 152, 158 (4th Cir. 2018) ("Temporary control -- as when the federal government steps in as a conservator -- is not sufficient [under Lebron]."); Sprauve v. W. Indian Co. Ltd., 799 F.3d 226, 233 n.8 (3d Cir. 2015) (noting that control is temporary "where the Government is acting as a conservator"). Given the conservatorship's limited purpose, Congress is not required to assign a definite endpoint to FHFA's conservatorship to make the government's control temporary. See Herron, 861 F.3d at 169. Similarly, appellants' argument that the conservatorship has "continued to exist well past its intended purpose" fails. The housing and mortgage financial markets are highly complex, as are the various indicators of their financial health, so the fact that FHFA has maintained the conservatorship for almost thirteen years does not mean that the government's control is permanent. Appellants have failed to plead a plausible claim, particularly in light of indications that the government is working to eventually bring the conservatorship to an end.[8]

 *6 The fact that Treasury owns senior preferred stock in the GSEs and warrants that, if exercised, would give it 79.9% of the GSEs' common stock does not change the analysis. Lebron says that "a private corporation whose stock comes into federal ownership" can still be "in the temporary control of the Government." 513 U.S. at 398, 115 S.Ct. 961. Here, neither HERA nor Treasury's agreements with the GSEs require the government to permanently retain its interest in them.

Appellants' main argument is that FHFA's conservatorship over the GSEs is temporary in name but permanent in practice. They say that we should focus on the practical reality of the government's control over the GSEs because the "permanent authority" prong of the Lebron test was qualified by the Supreme Court's decision in Department of Transportation v. Association of American Railroads, 575 U.S. 43, 135 S.Ct. 1225, 191 L.Ed.2d 153 (2015).

Both Lebron and American Railroads involved whether the National Railroad Passenger Corporation (commonly known as Amtrak) is a government entity for certain purposes. Lebron held that Amtrak "is part of the Government for purposes of the First Amendment." 513 U.S. at 399, 115 S.Ct. 961. American Railroads held that Amtrak "acted as a governmental entity for purposes of the Constitution's separation of powers provisions." 575 U.S. at 54, 135 S.Ct. 1225. At issue in American Railroads was whether Congress's directive that Amtrak "is not a department, agency, or instrumentality of the United States Government," 49 U.S.C. § 24301(a)(3), precluded Congress from giving it joint authority with the Federal Railroad Administration to issue "metrics and standards" governing passenger railroad services. American Railroads, 575 U.S. at 45, 135 S.Ct. 1225. The Court found that Lebron provided "necessary instruction" on whether Congress's "disclaimer of Amtrak's governmental status" meant that it could not be a federal actor. Id. at 54-55, 135 S.Ct. 1225. It held that the "practical reality of federal control and supervision prevail[ed]" over Congress's directive. Id. at 55, 135 S.Ct. 1225.

Appellants read American Railroads's "practical reality" language to say that the degree of control the government actually exercises over an entity informs whether its control is permanent. They argue that because FHFA has all the powers of the GSEs' boards of directors, see 12 U.S.C. § 4617(b)(2)(A), and has discretion to determine when the conservatorship will end, 12 U.S.C. § 4617(a)(2), it permanently controls the GSEs. See also Sisti, 324 F. Supp. 3d at 280 ("The practical reality here is that the government effectively controls Fannie Mae and Freddie Mac permanently.")

 [10] This argument fails. American Railroads did not alter Lebron's requirement that the government retain "permanent authority" over an entity for it to be governmental. American Railroads says nothing about Lebron's "permanent authority" requirement, and the Supreme Court "does not normally overturn, or so dramatically limit, earlier authority sub silentio." Shalala v. Ill. Council on Long Term Care, Inc.,

529 U.S. 1, 18, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000). Indeed, American Railroads had no reason to address whether the federal government retained "permanent authority" over Amtrak. The Court had already held in Lebron that it did. See 513 U.S. at 399, 115 S.Ct. 961; Herron, 861 F.3d at 168 ("Because the government's permanent control over Amtrak was already established in Lebron, the Court had no occasion to revisit that question in [American Railroads].").

Appellants next argue, again relying on Sisti, that 12 U.S.C. § 4617(a)(2), which authorized FHFA's conservatorship "for the purpose of reorganizing, rehabilitating, or winding up the affairs [of the GSEs]," should be ignored. They say that, like the statute at issue in American Railroads, it is a disclaimer of governmental status entitled to no deference. Sisti, 324 F. Supp. 3d at 280. We disagree that Section 4617(a)(2) can be properly read as a disclaimer or that its statutory command can be bypassed. Section 4617(a)(2) confirms that FHFA's conservatorship has a temporary purpose. It is directly relevant to whether FHFA exercises "permanent authority" over the GSEs.

 *7  [11] [12] Finally, amici for appellants argue[9] that Lebron's three-part test is not the only relevant precedent. They say that whether FHFA's conservatorship over the GSEs constitutes federal government action must be analyzed under a series of other state action theories, specifically the "coercive power" theory, the "joint participation" theory, the "entwinement" theory, and the "government control" theory. See Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 296-97, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001) (discussing these theories). All of these theories attempt to determine whether "there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.' " Id. at 295, 121 S.Ct. 924 (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974)); id. (holding that "state action may be found if, though only if" such a "close nexus" exists). As the Supreme Court has stated, "a host of facts ... bear on the fairness of" attributing private action to the government. Id. at 296, 121 S.Ct. 924. Here, because we have held that FHFA[10] acted privately and not as the government in its role as the GSEs' conservator, we do not need to address whether FHFA's private actions on behalf of the private GSEs constituted state action.

### IV. Conclusion

Affirmed.

**All Citations**

--- F.3d ----, 2021 WL 2326955

## Footnotes

\*   Of the District of Maine, sitting by designation.

1   Appellants' claims are solely against Fannie Mae. However, because the issues presented in this case overlap significantly with those in Sisti v. Fed. Hous. Fin. Agency, 324 F. Supp. 3d 273 (D.R.I. 2018), which involved claims against Freddie Mac in addition to claims against Fannie Mae, we discuss both entities together. See Faiella v. Fed. Nat'l Mortg. Ass'n, 928 F.3d 141, 149 (1st Cir. 2019) (describing Freddie Mac and Fannie Mae as "siblings under the skin"). We heard oral argument in this appeal and in Sisti on the same day.

2   Other plaintiffs and defendants were also named in the suit. They were later dismissed either voluntarily or by stipulation.

3   The Sisti opinion addressed two separate cases: one brought by Judith Sisti against Freddie Mac and FHFA and another brought by Cynthia Boss against Fannie Mae and FHFA. Sisti and Boss were consolidated for oral argument.

4   The language at issue in O'Melveny said that if the FDIC becomes a conservator or receiver of an insured depository institution, it succeeds to "all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution." 12 U.S.C. § 1821(d)(2)(A)(i); see also Perry Cap. LLC v. Mnuchin, 864 F.3d 591, 622 (D.C. Cir. 2017) (describing HERA's language as "nearly identical" to FIRREA's).

5   Assuming dubitante there was some basis for contention, O'Melveny was decided on § 1821(d)(2)(A)(i)'s text and not, as appellants argue, on the basis of a receiver's fiduciary duties. There is no basis in O'Melveny to conclude that the fiduciary duties of the FDIC as receiver affected its holding.

6   In Meyer, the FDIC was substituted for FSLIC and made arguments on FSLIC's behalf after FIRREA abolished FSLIC. Id. at 474, 114 S.Ct. 996.

7   Meyer does raise the issue of whether we have subject matter jurisdiction to decide appellants' claims against FHFA. HERA contains no "sue-and-be-sued" clause applicable to FHFA. But because FHFA has "stepped into the shoes" of the GSEs when acting as their conservator, it has also succeeded to their "sue-and-be-sued" clauses, see 12 U.S.C. § 1723a(a) (Fannie Mae); id. § 1452(c)(7) (Freddie Mac), and we have jurisdiction over claims against FHFA based on its actions as conservator.

8   In their briefing to us, appellants called our attention to news articles discussing amendments to certain agreements governing FHFA's conservatorship. See Kelsey Ramirez, FHFA: GSEs Can't Exit Conservatorship on Retained Earnings, HousingWire (January 15, 2021), https://www.housingwire.com/articles/fhfa-gses-cant-exit-conservatorship-on-retained-earnings/; Joe Light, Trump Clears Fannie-Freddie Capital Boost, Leaves Fates to Biden, Bloomberg (January 14, 2021), https://www.bloomberg.com/news/articles/2021-01-14/trump-clears-fannie-freddie-capital-boost-leaves-fates-to-biden. We take judicial notice of the fact that, on January 14, 2021, Treasury and FHFA amended Treasury's Preferred Stock Purchase Agreements with Fannie Mae and Freddie Mac. The amendments added language saying that "Treasury ... [has] begun work to establish a timeline and process to terminate the conservatorship and raise capital" and that "Treasury ... endeavor[s] to transmit a proposal that details this work to both Houses of Congress on or prior to September 30, 2021." See Letter Agreement between Treasury and Fannie Mae (Jan. 14, 2021), https://home.treasury.gov/system/files/136/Executed-Letter-Agreement-for-Fannie-Mae.pdf; Letter Agreement between Treasury and Freddie Mac (Jan. 14, 2021), https://home.treasury.gov/system/files/136/Executed-Letter-Agreement-for-Freddie%20Mac.pdf; see also Fed. R. Evid. 201 (permitting a court to take judicial notice of an adjudicative fact sua sponte "at any stage of the proceeding"); Butler v. Balolia, 736 F.3d 609, 611 (1st Cir. 2013) (stating that, when reviewing an order granting a motion to dismiss for failure to state a claim, this court may consider "facts susceptible to judicial notice" (quoting Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011))).

9   Appellants never made this argument, and we ordinarily do not consider arguments not made by the parties. Molina v. INS, 981 F.2d 14, 20 (1st Cir. 1992) ("Normally, we would not consider ... separate issues [raised by amici] ... not raised by the parties in the case."). However, Boss and Sisti made similar arguments in their briefs to us.

10  FHFA is the only relevant government entity, as the appellants do not argue that Treasury directed or was involved in any of the alleged constitutional violations at issue in this appeal. See Blum v. Yaretsky, 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (stating that the "close nexus" requirement ensures that "constitutional standards are invoked only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains" (second emphasis added)); Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 51, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999).

---