UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

KENNETH FITCH
ESTATE OF DIANNE L. FITCH

      VS.                           Civil Action No. 18-cv-214


FEDERAL HOUSING FINANCE AGENCY
FEDERAL NATIONAL MORTGAGE ASSOCITION
WELLS FARGO BANK, N.A.
266 PUTNAME AVENUE, LLC
RUSHMORE LOAN MANAGEMENT SERVICES, LLC
US BANK NATIONAL ASSOCIATION
AS TRUSTEE FOR RMAC TRUST
SERIES 2016-CTT

       **OBJECTION TO ORDER OF MAGISTRATE JUDGE ON
       MOTION TO COMPEL PURSUANT TO LOCAL RULE 72
       WITH INCORPORATED MEMORANDUM OF LAW**

Plaintiffs object to the Ruling of the Magistrate Judge on the Motion to

Compel pursuant to Local Rule 72. The  objections are specified in this

Objection and Memorandum.   This Order provided:

**The Court hereby rules on the matters remaining in issue (<u>see</u> June 21,**

**2021, Text Order) with respect to the motion to compel the production**

**of further documents from Defendants Federal National Mortgage**

**Association ('FNMA') and Federal Housing Finance Agency ('FHFA').**

**As to FHFA and FNMA, the motion is DENIED, based, <u>inter alia</u>, on**

**the representation of FHFA and FNMA during the hearing that such of**

1

**the requested documents as may conceivably be 'essential to justify' Plaintiff's opposition to Defendant 265 Putnam Avenue, LLC's motions for summary judgment pursuant to Rule 56(d) are not within their custody or control. Notwithstanding the foregoing, by July 23, 2021, Defendant Rushmore Loan Management is ordered to produce to Plaintiff and the other parties an affidavit, with authenticated documents or portions of documents attached as may be appropriate, sufficient to show (1) such content of the so-called interim servicing agreement as is pertinent to what entity had the right to foreclose; and (2) whether in the collateral loan file for the mortgage in issue there is an assignment of the mortgage pertaining to any time from March 22, 2021 through the date of foreclosure. Based on this Order, the Court has extended Plaintiff's deadline for opposing the 266 Putnam motions for summary judgment in a separate text order. So Ordered by Magistrate Judge Patricia A. Sullivan on 7/7/2021.**

Plaintiffs, by their Attorney had moved pursuant to FRCp 56(d) for discovery to dispute the Motion for Summary Judgment.  Initially the Magistrate Judge  on  May 14, 2021, ordered Federal National Mortgage Association ("Fannie Mae") provide the Plaintiff the Mortgage Loan Purchase Agreement between Fannie Mae and Rushmore Loan Management

Services, LLC ("Rushmore").   Pursuant to this Order Federal National Mortgage Association was also orderd to provide an affidavit whereby the document was authenticated. However, the copy of the Mortgage Loan Purchase Agreement, which Fannie Mae's attorney provided on May 24, 2021 did not contain any of the multiple exhibits and did not provide documents, which were incorporated by reference by the MLPSA. Fannie Mae's attorney, not Fannie Mae,  in the Response to the Motion to Compel, has asserted without any factual or evidentiary basis that:

**Plaintiffs' demand also includes documents that cannot bear any relevancy to Fannie Mae's authority to foreclose following sale of the mortgage loan**

Fannie Mae thus made the determination that it would defy the Court Order and not provide the complete document.

Contrary to the assertions in Fannie Mae's  Response, the reversal of this Courts Due Process case by the First Circuit, in Montilla v. Federal National Mortgage Association has been explicitly overruled by the United States Supreme Court in Collins v, Yellen, on June 23, 2021 when the Court held that that the Federal Housing Finance Agency, acting as conservator for Fannie Mae was a governmental actor for the purpose of constitutional due

3

process claims of the shareholders of Fannie Mae and Federal Home Loan Mortgage Corporation ("Freddie Mac").

The Plaintiffs were not provided exhibits which would establish that Fannie Mae had no interest in the note or the mortgage as of July 26, 2017 and was not the agent for the owner of the note. The MLPSA indicates that the sale documents included an assignment of the mortgage as to the Fitch loan to Rushmore Loan Management Services, LLC as referenced on page 2 of the agreement. This is crucial for Plaintiffs as they alleged in the Amended Complaint in paragraphs 71-73:

71. Fannie Mae transferred its interest in the Mortgage to Rushmore Loan Management Group, or an affiliate by an assignment before July 26, 2017.

72. This assignment was not recorded.

Fannie Mae did not deny either of these allegations, as indicated by the following:

Answer 71. The written document referred to in Paragraph 71 speaks for itself. To the extent a response is required, Defendants deny any allegation inconsistent with that written document.

Answer 72. Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 72.

This answer regarding a matter as to which Fannie Mae obviously has knowledge, speaks as to the credibility of Fannie Mae in its pleadings and documents submitted to this Court.

Fannie Mae in its response speciously indicated that Plaintiffs did not need the assignment because it was attached in the complaint. However the document sought by the Plaintiffs, which is part and parcel of the MLPSA was the actual assignment of mortgage by Fannie Mae to Rushmore, which is contained in the non-provided exhibits. This document would establish that the Fitch Mortgage was assigned to Rushmore. The Court's attention is directed to Exhibit C of the Amended Complaint, in which Rushmore notified the Plaintiffs that the mortgage loan had been sold to the new creditor on July 26, 2017. It also identified the new creditor as US Bank National Association as Trustee for RMAC Trust Series 2016-CTT. Fannie Mae's answer to this allegation in paragraph provides an indication of its refusal to provide credible information in the pleadings:

Answer 73. The written document referred to in Paragraph 73 speaks for itself. To the extent a response is required, Defendants deny any allegation inconsistent with that written document.

Another document, which is part of the MLPSA is the Bailee letter, dated June 7, 2017, between Fannie Mae and Wells Fargo , by which the collateral files of Plaintiffs' loan were delivered to Wells Fargo as bailee for inspection by the purchaser, Rushmore Loan Management Services ("Rushmore") prior to the sale date. This document is relevant, because it

5

indicates that Plaintiffs' note and mortgage and all documents contained in the collateral were part of the sale with no retained rights in Fannie Mae. Fannie Mae without any real analysis merely states that this document is not relevant. However this document would indicate that as part of the sale, Wells Fargo, the custodian of the loan for Fannie Mae, as part of the sale process, became a bailee on behalf of Fannie Mae for the purchaser of the mortgage and note, namely Rushmore. This will provide evidence that Fannie Mae retained no rights to this loan.

Similarly, the Bid Terms Acknowledgment, dated June 5, 2017 as referenced on page 2, contains the terms of the sale for this loan, which contains the terms of the sale and the consideration for this loan. This again establishes that Fannie Mae retained no rights to this loan and that Rushmore actually purchased the note and mortgage. Fannie Mae merely unilaterally decided that  that this document is not relevant, and therefore it could decide not to provide this document.

It made a similar claim to the Broker's Price Opinion for this property referenced on page 3, which indicates that the value of this property and was provided to Rushmore in conjunction with the sale of this loan. It is further indicia of the fact that the note and mortgage were actually sold by Fannie Mae and provides evidence in support of that assertion.

Extremely crucial evidence is contained in Exhibit C, the Collateral Collateral Documents.  This Exhibit references various documents, relating to the Plaintiff's loan which have not been provided and which clearly provide factual basis and evidence that the loan has been sold. The first was the Mortgage Note or Lost Note Affidavit in the form referenced in Exhibit C-1 and any intervening Endorsements on the note.  The transfer of the Note to Rushmore and the Rushmore Trust that same date, clearly indicate that Fannie Mae had no interest in the note on July 26, 2017 and was not the agent for the owner of the note on that date due to the sale to a third party. In fact, Rushmore subsequently conveyed this note and mortgage into a securitized trust after July 26, 2017.

The transfer of the collateral file which includes the assignment to Rushmore, any intervening assignments, the title insurance policy and any Attorney Bailee letter are also indicia of the sale of the note and mortgage, evidencing a complete break from Fannie Mae. Thus Fannie Mae did not have the right to unilaterally fail to provide these integral portions of the agreement, despite the Court Order to provide the MLPSA.

Another document referenced in the MLPSA not provided by Fannie Mae was  the applicable custodial report  for the Plaintiffs' loan prepared by the Seller's Servicer, which was Wells Fargo,. This document identified the

7

Collateral Documents in the Collateral File for each Mortgage loan, referenced on page 3 and is clearly relevant and an indicia of the fact that the note and mortgage were sold. Likewise the Credit File, if and to the extent available  as to each Mortgage Loan and file containing the documents relating to the original Mortgage Loan, also provide an indicia of evidence that Rushmore purchased this loan. Likewise the funding schedule indicating the payment for this loan, contained in Schedule I provides additional evidence that Rushmore purchased this loan.

Additional documents contained in the package transmitted to Rushmore which evidence the sale of the mortgage and note were withheld by Fannie Mae:

A.    The Offering Memorandum dated May 10, 2017 and any supplement or amendment, referenced on page 5.

B.    The entire Mortgage Loan Schedule referenced as Exhibit A, not a summary of this Excel Spreadsheet.

C.    The Bid Terms Acknowledgment Letter, which can be redacted as to the  percentages and actual payment for this loan.

D.    The Section 404 Notice sent to the Plaintiff.

E.    The Executed copy of Exhibit D, the Bill of Sale. The copy provided was  not executed.

F.    Schedule II, which was not provided.

G.    Any power of attorney executed in conjunction with this sale of

Plaintiff's mortgage and note.

These documents were part of the MLPSA and as integrated parts of this agreement, constitute evidence that the Plaintiffs' mortgage was sold to Rushmore. Fannie Mae has no basis for not providing these documents. Any monetary terms can be the subject of a protective Order, as it appears that none of this agreement contains confidential terms.

Crucial to this case is any Notice of Breach of this agreement with respect to any warranties. If there was a Notice of Breach by Rushmore, it could only be attributable to a lost note or some other deficiency in the documents provided. As indicated in the Memorandum in Support of the Motion to Compel, any lost note, if lost by Wells Fargo, would render the foreclosure void. The Collateral Files were provided to Rushmore in June 2017 for review to engage in its due diligence to determine if the loan could be purchased. Thus any Notice of Breach would be highly relevant to this matter.

Furthermore, the Federal Housing Finance Agency filed as a public record, the June 2018 NPA Sales Report and on page 40 referenced the July 26, 2017 sale of loans. This sale included 1493 loans, of which Fannie Mae

9

repurchased .6% of the loans, which equals thirty loans. The agreement

provides for warranties of Fannie Mae, the breach of which would allow

Rushmore to require Fannie Mae to repurchase:

(e) Mortgage Loan or Deed Legal and Binding. The Mortgage Note (or lost note affidavit, if applicable), the related Mortgage, and other agreements required to be executed by the Mortgagor at the closing of the Mortgage Loan (or the deed with respect to REO Property) in connection therewith are genuine, and each is the legal, valid, and binding obligation of the maker thereof, enforceable in accordance with its terms, except as such enforcement may be limited by bankruptcy, insolvency, reorganization, or other similar laws affecting the enforcement of creditors' rights generally and by general equity principles (regardless of whether such enforcement is considered in a proceeding in equity or at law), and Seller has good and marketable \title to any REO Property;

Thus these documents are relevant to the issue of whether Fannie Mae

divested itself of all rights by this sale.

Fannie Mae's attorney has unbelievably stated that for a $337,667,876

loan sale that it does not have a copy of or have any access to the  Interim

Servicing Agreement, referenced on page 4 of the agreement. Attorney

Bodurtha has provided his spin on this document, indicating that Wells

Fargo could foreclose on behalf of Fannie Mae after the sale. No such

testimony has been provided by Fannie Mae, by way of affidavit or

otherwise regarding why such a crucial document, which was integrated into

the terms of the MLPSA, is not available. No documents support this

position and the agreement clearly states on page 30 that "The Exhibits to

10

this Agreement are hereby incorporated and made a part hereof and are an integral part of this Agreement." In  *High Rock Westminster Street, LLC v. Bank of America*, 13-cv-500 (D. R.I., February 9, 2016)  Judge Smith noted that under Rhode Island law:

BOA is correct that, under Rhode Island law, "instruments executed at the same time, for the same purpose and in the course of the same transaction * * * are to be considered as one instrument and are to be read and construed together." Rhode Island Depositors Econ. Prot. Corp. v. Coffey & Martinelli, Ltd., 821 A.2d 222, 226-27 (R.I. 2003) (quoting Old Kentucky Distributing Corp. v. Morin, 146 A. 403, 404 (R.I. 1929) (emphasis added))

This MLPSA agreement indicated that the law of New York would govern the agreement. In  ,386 F. Supp. 2d 421, 425 ( S.D. NY., 2005), the Court stated the same principal as Rhode Island as to contracts and documents executed at the same time:

In New York, it is the general rule that written contracts executed simultaneously and for the same purpose must be read and interpreted together. *Nau v. Vulcan Rail & Constr. Co.,* 286 N.Y. 188, 36 N.E.2d 106 (1941); *Manufacturers & Traders Trust Co. v. Erie County Indus. Dev. Agency,* 269 A.D.2d 871, 872, 703 N.Y.S.2d 636 (4th Dep't 2000); *see also* 22 N.Y. Jur 2d, Contracts § 258 ("In the absence of anything to indicate the contrary intention, instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction will be read and interpreted together, it being said that they are, in the eyes of the law, one instrument."); *see also* BWA Corp. v. Alltrans Exp. U.S.A., Inc., 112 A.D.2d 850, 493 N.Y.S.2d 1, 3 (1st Dep't 1985) (holding that in the absence of anything to indicate a contrary intention, "[w]here several instruments constitute part of the same transaction, they must be interpreted together.")

11

Thus all the exhibits are part of the contract to sell the loans and are needed to fully understand and interpret the terms of the sales agreement under the law of New York.

The final documents which prove that the mortgage was sold are the Offering Memorandum dated May 10, 2017 and any supplement or amendment, referenced on page 5, the entire  Mortgage Loan Schedule referenced as Exhibit A, not a summary of this Excel Spreadsheet, which was provided, the Bid Terms Acknowledgment Letter, which can be redacted as to the actual percentages and actual payment for this loan, the Section 404 Notice sent to the Plaintiff, most importantly the Executed copy of Exhibit D, the Bill of Sale. The copy provided was  not executed.Also not provided were Schedule II, any power of attorney executed in conjunction with this sale of Plaintiff's mortgage and note and any Notice of Breach of this agreement with respect to any warranties made as referenced  on page 5 as to Plaintiffs' loan. These documents were part of the sale and their execution will indicate that on July 26, 2017, Fannie Mae had no further interest in the note or the mortgage.

Exhibit B references the Servicing Agreement for the new servicer for the loan, which indicates that certain loss mitigation options must be

12

provided to the homeowners by the purchaser of the loans. The applicability of these terms to the Plaintiffs' loan makes this document highly relevant.

Fannie Mae rehashes the same argument it made in the Motion for a Protective Order, which this Court denied. Plaintiffs are not seeking to obtain additional records, only the documents attached to and incorporated by reference to the MLPSA.  Fannie Mae has provided an unauthenticated copy of the agreement and has willfully refused to provide a witness with actual knowledge of this agreement as the affiant stated that he was familiar with certain contracts, not this contract. For these reasons the exhibits, the Servicing Agreement and the Interim Servicing Agreement should have been provided.

SPECIFIC OBJECTIONS

1.    The Magistrate Judge refused to order Fannie Mae or its custodian to provide the contents of the collateral file to the Plaintiff. This would include as indicated above, the note, the mortgage, any mortgage assignments and the title policy.  These documents as indicated above are essential to the defense of this action.

2.    The Magistrate Judge relied on the naked assertions of the attorneys for Fannie Mae and FHFA, Wells Fargo and Rushmore.   The Court instead merely ordered that Rushmore provide an affidavit an affidavit, with

13

authenticated documents or portions of documents attached as may be appropriate, sufficient to show (1) such content of the so-called interim servicing agreement as is pertinent to what entity had the right to foreclose; and (2) whether in the collateral loan file for the mortgage in issue there is an assignment of the mortgage pertaining to any time from March 22, 2021 through the date of foreclosure.

3.      The Magistrate Judge focused only on the issue of which party had the right to sign the foreclosure deed which was not the issue raised by Plaintiffs in this case. Rather, the issue was whether the mortgage and note were sold to Rushmore and that at the time of the foreclosure Fannie Mae was not the agent for the owner of the note and in fact was not the mortgagee since the mortgage loan purchase agreement indicates that there is an assignment for each mortgage conveyed to Rushmore. The Court originally seemed to accept Plaintiff's argument on page 17 Lines 21-22.

THE COURT: But in terms of an inquiry for documents that are relevant to your argument, it sounds to me like the remaining stone to uncover is what does Wells Fargo have in its collateral file for this loan?
MR. ENNIS: Well, assuming they're still the custodian, because they have transmitted it.
THE COURT: Right. Well, then we'll find out they don't have it and that's that.

Plaintiffs noted that these documents were essential to his argument:

14

MR. ENNIS: But we suggest that -- the agreement suggests there's consideration, there's collateral file transmitted which contains a whole bunch of things including the note, the mortgage assignment, the mortgage itself, the title policy, and if they get receipt of the money, if Fannie Mae got receipt of the money on or before July 26, 2017, and they transmitted it to Rushmore, at that point on July 26, 2017, Fannie Mae had no longer any interest in the note or the mortgage. And if they're gone, that's contrary to the assertions in the foreclosure deed.

However  she would not allow any documents from the agreement, which i

indicated that Rushmore had in fact purchased the loan as indicated on page

page 18 Lines 14-15:

THE COURT: So I would assume we can -- we don't need to run down discovery rabbit holes to establish that there was consideration for the master plan. I mean, I don't want to sort of go into the closing and get the wire from U.S. Bank to Fannie Mae. I don't think we need to do that. It seems to me that there is consideration as recited in the document. That's an argument that it seems to me you've got. You're going to assert it in response to 266 Putnam's motion.

5.      The Court analyzed the allegations of the Plaintiff as a voidable

transaction, despite the fact that the Rhode Island Supreme Court has held

that assignments of mortgages are void when the entity assigning them has

not interest in the mortgage or is not the agent for the owner of the note. In

*Bucci v. Lehman Bros. Bank, FSB,* 68 A.3d 1069, 1084, 1085 (R.I. 2013).the

Supreme Court clearly held that agency is a question of fact and that a

mortgagee can foreclose only if it is the owner of the note or an agent for the

owner of the note.  Since this Court has held that assignments did not need

to be recorded to be effective, the entire transactional documents between

Fannie Mae and Rushmore as to this mortgage should be provided, including the note, mortgage, assignments, lost note affidavits if any, and the proof of consideration along with the custodial logs indicating what was in the custodial file and when it was removed. However the Magistrate Judge accepted the analysis of the attorney for Wells Fargo on page 22:

And the only factual holes I think are twofold. One is can we find the collateral file and what's in it? And that's a question for Wells. The foreclosure was, in fact, completed by Wells Fargo which executed the foreclosure deed as Fannie Mae's attorney in fact pursuant to a recorded power of attorney. So the question is, should that foreclosure deed have been essentially executed by Rushmore on behalf of U.S. Bank? THE COURT: Right.

THE COURT: Thank you, Mr. Jusczyk. That's the argument that I was struggling to articulate because it seemed like -- let me put this differently. If Mr. Ennis assumes the existence of an unfiled assignment in the collateral file, the position articulated by Wells is that as a matter of law it doesn't matter. There's a voidable error here.Plaintiff has no standing to raise it. And if 266 Putnam cares that it has a title defect because the wrong name is on the deed into it, okay, or into its predecessor -- I guess there were a couple transfers -- but as a matter of law the summary judgment motion can proceed and that we can assume the existence of Mr. Ennis's best-day fact without spending the time, money and energy to search for what probably will be very hard to find. Maybe Rushmore has it. Probably Rushmore has somebody else doing its servicing who is not a party in this case, which means we're now in, you know, a very different territory in terms of the Court's ability to say, okay, let's just fix this discovery hole.

This erroneous reference to this transaction is contrary to *Bucci.* In short, after having conveyed the mortgage and note to Rushmore, Fannie Mae had no further interest in the matter and could not act, through its servicer.

16

without a mortgage and entitlement to any payment pursuant to the note. Once the note was transferred to Rushmore, assuming that it existed, only Rushmore had any rights and had to start up the foreclosure process again. An interim servicing contract which merely changed the servicer could not negate established Rhode Island case law and the terms of the note and mortgage, absent evidence that Fannie Mae was somehow an agent for Rushmore.

The Magistrate Judge initially seemed to suggest that the contents of the collateral file would be produced. However this changed after she accepted the assertions of the attorneys for Fannie Mae, Wells Fargo and Rushmore, particularly the assertion that Fannie Mae, despite having Wells Fargo as a servicer and custodian did not have access to the custodial file and the note and the content of the servicing file.

She accepted the unverified assertion of Fannie Mae as to the collateral file:

MR. BODURTHA: I can almost guarantee you that we never had the collateral file because Fannie Mae operates through its servicers. If anyone's going to have the collateral file, it's going to be the servicer.

THE COURT: Yes. Let me ask you a question.
MR. BODURTHA: Sure.
THE COURT: If Fannie Mae had executed this assignment that Mr. Ennis thinks he's going to find in the collateral file, is there any way for you to figure that out now?
MR. BODURTHA: No.
THE COURT: That's what I thought.

The Fannie Mae Servicing and Fannie Mae Selling Guide are public records

online and can be accessed to provide the Fannie Mae Custodial Agreements

with Custodians, not servicers. The Fannie Mae Servicing Guide is located

at the following weblink:

https://servicing-guide.fanniemae.com/

This guide can be searched for Custodians and Custodial Agreements. In

fact provides certain information at this weblink, indicating that the Fannie

Mae Selling Guide should be consulted for custodial requirements:

F-4-03: List of Contacts (07/14/2021)
*F-4-03: List of Contacts (07/14/2021)*

## A1-3-07: Custodial Document Requirements (05/15/2019)

Share this answer
*A1-3-07: Custodial Document Requirements (05/15/2019)*
See the *Selling Guide* for the following requirements:

- *Selling Guide* A3-3-04, Document Custodians for the requirements for document custodians
- *Selling Guide* A3-3-05, Custody of Mortgage Documents for the requirements for the custody of mortgage documents

The Fannie Mae Selling Guide is located at the following weblink:

https://selling-guide.fanniemae.com/Selling-Guide/Origination-thru-Closing/

By searching that site for the above mentioned documents, the following

documents were obtained:

18

DOCUMENT TRANSFERS Job Aid for Document Custodians

Form 629 Transfer of Servicing

Fannie Mae Selling Guide Document Custodians

Required Custodial Documents

A3-3-05, Custody of Mortgage Documents (05/01/2019)

Fannie Mae Requirements for Document Custodians, which  indicates that Fannie Mae has control of the process by which the custodian maintains the custodial file. It also has access to these documents through the custodian after a request from its servicer. It has an agency relationship with its servicer, which was Wells Fargo and could have requested the note from Wells Fargo as custodian at any time in view of its argument that it retained rights as to this loan.

The Requirements for Document Custodians indicates that the collateral file  must contain the following documents:

7. Custody Documents 7.1 Documents Required by Fannie Mae Fannie Mae specifies the Required Documents that the Document Custodian must retain in custody for the Mortgage Loans. The Document Custodian is required to hold only the following documents: ♣ **The original mortgage (or deed of trust) note, or a Lost Note Affidavit** (See Section 8.1). If the Mortgage Loan is being delivered for certification without the original note (e.g., not a recertification), Document Custodian must verify there is a single loan waiver, which must be retained with the loan file. (See Section 9.1 for additional instructions regarding Special Feature Code 159). © 2020 Fannie Mae. Trademarks of Fannie Mae 28 of 56 April 2020 This document is incorporated by reference into the Fannie Mae Selling and Servicing Guides. ♣ Originals of any instruments that modify the terms and conditions of the

19

note – such as a modification agreement, or an ARM rider, etc. To expedite the certification process, the Document Custodian may accept from the Lender a copy of any such instrument that has been submitted for recordation. ♣ The security instrument, which is not typically required, is required ONLY if the security instrument includes the promise to repay the principal amount borrowed and sets forth all other terms of the note. The Seller is responsible for sending the original recorded security instrument to the Document Custodian as soon as it is received back from the recorder's office. (Generally, this will only happen in the case of a Mortgage Loan Modification, or with refinance documents.) ♣ A copy of the notarized power of attorney (someone signing the note for the borrower, but who is not the borrower), if applicable. The name(s) on the power of attorney must match the name(s) on the note and must be dated such that it was valid at the time the note was executed. The power of attorney must be notarized. ♣ A copy of any name affidavit, if applicable. ♣ **The original of an unrecorded assignment of the mortgage to Fannie Mae, in recordable form, unless the mortgage is registered in the Mortgage Electronic Registration System (MERS®), in which case, no assignment of the mortgage to Fannie Mae is required.** ♣ Any special documentation that Fannie Mae specifies for a particular type of mortgage. The following are some examples:  For a refinance mortgage that represents the refinancing of a balloon mortgage, Fannie Mae permits the Seller to document the transaction by (1) the execution of a new fixed-rate note and the execution and recordation of a new mortgage (or deed of trust); (2) the execution of a new fixed-rate note and the execution and recordation of a modification agreement that modifies the existing balloon mortgage (or deed of trust); or (3) the execution and recordation of a Balloon Loan Refinancing Instrument (Form 3269) , which combines into a single document a new fixed-rate note and a modification of the existing balloon mortgage (or deed of trust). A fourth alternative, the Consolidation, Extension, and Modification Agreement (Form 3172) (for use in New York) or equivalent form, may be used where county and/or state law permits. NOTE: If a new note is executed, the Document Custodian must receive the original of the new note. A copy of the Loan Note Guarantee (Form 1980-17) for Rural Housing Program loans.  An executed Loan Participation Certificate (Form 638) or an equivalent document, if the Seller is delivering participation interests loans. **If a Document Custodian becomes aware that any of the above documents which were in its custody can no longer be located, the Document Custodian must contact Fannie Mae Single Family Custody**

20

**Operations promptly. In its sole discretion, Fannie Mae may require a Document Custodian to complete an inventory of required documents.**

The Magistrate Judge accepted the arguments of Fannie Mae, Wells Fargo and Rushmore that these documents were not readily accessible and would require significant time to obtain. This is simply not true as indicated by the Fannie Mae Selling Guide Custodian related documents provided. These documents can be accessed with virtually no burden as the custodian has these documents. If Wells Fargo was retained as custodian, then Fannie Mae or Rushmore could easily request the complete custodial file and the index for same, listing all the documents located in it. Effectively the attorney for Rushmore will be allowed to provide what he wants to provide as indicated on page 41 Lines 22-24:

MR. ENNIS: One of the problems I see, your Honor, is I get to get their interpretation of a document that my brother has already seen. I assume it's been redacted as to numbers and things like that.
But I get to get their interpretation.

THE COURT: He's going to give you the best that he thinks is appropriate, and he's foreclosed from using anything better. Mr. Cloud, if quoting a portion of the document in the affidavit is appropriate, if attaching a redacted section is appropriate, you should go as far as you can to eliminate any mysteries.

The Plaintiff requested an inventory of the collateral file, which was denied at p. 42 pages 3-18   lines as untimely despite the fact that the Plaintiff had

21

requested the promissory note from Fannie Mae, in whose name the

foreclosure purportedly occurred:


MR. ENNIS: And he's going to provide an inventory of what was contained in the collateral file?

THE COURT: No. He's going to focus on looking for assignments in the relevant period.

MR. ENNIS: Your Honor, I still suggest -- I had asked Mr. Bodurtha, like I said, for the note. And I would also note, your Honor, one of the things that never occurred after the amended complaint was there was never a scheduling order involving Rushmore or U.S. Bank. The scheduling order was in conjunction with the initial –

THE COURT: You know what, that ship has sailed, Mr. Ennis. We're done.

MR. ENNIS: Your Honor --
THE COURT: You can make those arguments sadly to the Court of Appeals.

MR. ENNIS: You asked them to provide – you ordered them to provide the sales agreement which contains certain documents which are integral parts of the agreement. And one of them is the collateral file. And I think they've made the decision not to provide that. That collateral file is available, would indicate that everything was transferred over.

THE COURT: Mr. Bodurtha doesn't have it so let's just stop that. Mr. Rushmore doesn't know if he has it or not; he hasn't looked.
MR. ENNIS: He wasn't asked. I mean, he has looked at the agreement –

The Federal Rules of Civil Procedure clearly provide that a complaint

can be amended so long as it is not futile and so long as there is no prejudice

to the other party. The reference to the lost note affidavit in the Fannie Mae

22

Selling Guide and the Mortgage Loan Purchase and Sales Agreement, indicates that lost notes are accepted by Fannie Mae, but not by the Rhode Island Supreme Court, as in *Perretta v. Note Capital*, 207 A. 2d 998 (2019). In that case, the Court applied UCC 3-309 to a mortgage foreclosure case, in which it noted that lost notes which were lost by a prior owner could not be foreclosed on by a mortgagee. The transfer of the mortgage and the note to a Rushmore entity were alleged in the original and amended complaint. A demand for the original note was made without any compliance, only a response from Fannie Mae to ask Wells Fargo, its servicer and custodian.

The Fannie Mae Master Custodial Agreement (Form 2003) is also attached to this Objection, which indicates that contrary to the assertions of the defendants, that the collateral file can be readily obtained by a Request to the Custodian. Thus the assertions by Fannie Mae, Wells Fargo and Fannie Mae that this information is not readily available is simply not accurate and such was presented as accurate to the Magistrate Judge, who accepted this lamentation, without evidentiary support.

Plaintiffs had expected that Fannie Mae would comply with the complete Agreement, with all the Exhibits. Such would demonstrate that the note and mortgage were sold to Rushmore and that Fannie Mae, under Bucci, was no longer the agent for the owner of the note, regardless of its

23

purported "record assignee status". This Court  has previously held in *Town of Johnston v MERSCORP*, 950 F.Supp.2d 379 (2013) that a mortgage does not have to be recorded to be valid:

Moreover, courts have held that unrecorded mortgages are valid in Rhode Island. For example, a ruling by this federal district court almost 100 years ago supports such an interpretation. The court stated that a "mortgage as between parties, though unrecorded, is valid." *In re Anderson, 252 F. 272, 273 (D.R.I.1918)*. *See also R.I. Hosp. Trust Nat'l Bank v. Boiteau, 119 R.I. 64, 376 A.2d 323, 326 (1977)* ("A deed, if delivered, is valid and binding against those who have knowledge of it even if not acknowledged or recorded."). In fact, the Rhode Island Supreme Court recently stated, albeit *in dicta,* that because of the way the MERS model works, "[w]henever a note is sold, assigned, or otherwise transferred to another MERSCORP member, MERS remains as the mortgagee of record. As a result, *there is no need to record an assignment of the mortgage in the land evidence records." Bucci, 68 A.3d at 1073* (emphasis added). The validity of unrecorded mortgages as reflected in these decisions demonstrates that the legislature did not intend to mandate that all mortgages be recorded.


This Court dismissed the complaint by the Town of Johnston on the grounds

that it incurred no damages because assignments did not need to be recorded.

 Registration Systems, Inc:

The Town's claims fail, however, because Rhode Island law does not require that all mortgages and mortgage assignments be recorded. Absent a statutory requirement to record, there are no damages, and, therefore, there is no cause of action.

Since assignments are not required to be recorded, the argument of the

Defendant, 266 Putnam that the lack of a recorded mortgage assignment

does not establish that there was no assignment of the mortgage. To obtain

24

the exact ownership of the mortgage, Plaintiffs included in their Rule 56(d) Motion, the Notice of Depositions of both Fannie Mae and FHFA, which scheduled these depositions on ) and Federal Housing Finance Agency ("FHFA") to obtain evidence regarding the actual sale, the party to whom the mortgage and note were sold, the date of the sale and any rights retained by Fannie Mae or FHFA after the sale. 266 Putnam and Rushmore both have asserted that US Bank and a Rushmore entity purchased *only the note* as a basis for a significant portion of its Motion for Summary Judgment. If Fannie Mae had no interest in the note or the mortgage at the time that the foreclosure sale occurred, then it was neither the owner of the note or the mortgage and was not the agent for either. This would operate as a complete defense to the foreclosure. Thus, the Plaintiff requested a short period of time to conduct this deposition and to determine if FHFA as conservator authorized the sale of Plaintiff's note and mortgage and to determine when and to which entity Fannie Mae actually sold this Note and mortgage.

The Plaintiff also notes that this case may very well be impacted by the recent decision of the United States Supreme Court in *Collins v. Yellen,* briefly mentioned previously. In *Collins*, the Supreme Court effectively reversed the logic of <u>*Montilla*</u>, while adopting the reasoning of this Court in *Sisti v. Federal Housing Finance Agency,* 324 F.Supp.3d 273

(D. RI., 2018), by rejecting the basis for *Montilla*, *O'Melveny &*

*Myers v. FDIC*, 512 U. S. 79 (1994). As a result, the scope of the Due

Process claim and Governmental Power lodged in the Executive Branch,

which is the subject of part of this discovery, has been amplified by *Collins*,

in which the Supreme Court held in the opinion and footnote 20:

*Amicus* next contends that Congress may restrict the removal of the FHFA Director because when the Agency steps into the shoes of a regulated entity as its conservator or receiver, it takes on the status of a private party and thus does not wield executive power. But the Agency does not always act in such a capacity, and even when it acts as conservator or receiver, its authority stems from a special statute, not the laws that generally govern conservators and receivers. In deciding what it must do, what it cannot do, and the standards that govern its work, the FHFA must interpret the Recovery Act, and "[i]nterpreting a law enacted by Congress to implement the legislative mandate is the very essence of `execution' of the law." *Bowsher,* 478 U. S., at 733; see also *id.,* at 765 (White, J., dissenting) ("[T]he powers exercised by the Comptroller under the Act may be characterized as `executive' in that they involve the interpretation and carrying out of the Act's mandate").

Moreover, as we have already mentioned, see *supra,* at 5-6, the FHFA's powers under the Recovery Act differ critically from those of most conservators and receivers. It can subordinate the best interests of the company to its own best interests and those of the public. See 12 U. S. C. § 4617(b)(2)(J)(ii). Its business decisions are protected from judicial review. § 4617(f). It is empowered to issue a "regulation or order" requiring stockholders, directors, and officers to exercise certain functions. § 4617(b)(2)(C). It is authorized to issue subpoenas. § 4617(b)(2)(I). And of course, it has the power to put the company into conservatorship and simultaneously appoint itself as conservator. § 4617(a)(1). For these reasons, the FHFA clearly exercises executive power.[20] 3

*Amicus* asserts that the FHFA's structure does not violate the separation of powers because the entities it regulates are Government-sponsored enterprises that have federal charters, serve public objectives, and receive

"`special privileges'" like tax exemptions and certain borrowing rights. Brief for Court-Appointed *Amicus Curiae* 27-28. In *amicus*'s view, the individual-liberty concerns that the removal power exists to preserve "ring hollow where the only entities an agency regulates are themselves not purely private actors." *Id.,* at 29 (internal quotation marks omitted).

This argument fails because the President's removal power serves important purposes regardless of whether the agency in question affects ordinary Americans by directly regulating them or by taking actions that have a profound but indirect effect on their lives. And there can be no question that the FHFA's control over Fannie Mae and Freddie Mac can deeply impact the lives of millions of Americans by affecting their ability to buy and keep their homes.

The Court rejected the applicability of *O'Melveny*, on which *Montilla* relied to hold that FHFA was not a governmental action in a footnote:

[20] *Amicus* claims that *O'Melveny & Myers* v. *FDIC,* 512 U. S. 79 (1994), supports his argument, but that decision is far afield. It held that state law, not federal common law, governed an attribute of the FDIC's status as receiver for an insolvent savings bank. *Id.,* at 81-82. The nature of the FDIC's authority in that capacity sheds no light on the nature of the FHFA's distinctive authority as conservator under the Recovery Act.

Thus there is a reasonable basis for the Plaintiffs to file an Amended Complaint, alleging that FHFA is a Governmental Actor based on the Executive Power imbued in it by the President's Covid Moratorium and the Recovery Act. The Magistrate Judge decided that no additional discovery was warranted, without considering the impact of *Collins*, which Plaintiff is addressing in this Objection.  Prior to *Collins*, FHFA's attorneys and the First Circuit had rejected this Court's holding in *Sisti* on the basis of *O'Melveny*.  The Supreme Court in *Collins* has given significant legal

27

vibrance to the due process argument of the Plaintiffs, who had waited for the First Circuit's opinion in *Montilla*, whose reliance on *O'Melveny* lasted for 15 days before being rejected by the Supreme Court.

For these reasons, the Order of the Magistrate Judge should be modified to allow the Plaintiffs the opportunity to obtain the entire sales agreement, unedited with the exhibits, including the entire collateral file, the inventory for the collateral file and the other integrated documents as referenced in this Memorandum and to be provided the interim servicing agreement, without redactions, without a confidentiality Order. Additional discovery should not be rejected out of hand and Plaintiffs should not be at the mercy of the attorney for Rushmore to obtain information in this case to rebut assertions in the Motion for Summary Judgment. Plaintiffs also note that the agreement on its face indicates that it can be filed with the Securities and Exchange Commission.

KENNETH FITCH

ESTATE OF DIANNE L. FITCH
By their Attorney

July 21, 2021

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com

28

CERTIFICATION

I hereby certify that I emailed a copy of the above Objection to Magistrate Judge's Order with Incorporated Memorandum of Law to the following on this  21st day of July, 2021 by electronic filing:

Thomas Walsh, Esq.
Stephen Stoeher, Esq.
Samuel Bodurtha, Esq.
Michael Jusczyk, Esq.
Zachary W. Bork, Esq.
Rowdy Cloud, Esq.

/s/ John B. Ennis