UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

KENNETH FITCH, ESTATE OF DIANNE :
L. FITCH,                           :
              Plaintiffs,           :
                                    :
        v.                          :   C.A. No. 18-cv-214JJM
                                    :
FEDERAL HOUSING FINANCE             :
AGENCY, FEDERAL NATIONAL            :
MORTGAGE ASSOCIATION, WELLS         :
FARGO BANK, N.A., HARMON LAW        :
OFFICES, P.C., 266 PUTNAM AVENUE,   :
LLC, RUSHMORE LOAN                  :
MANAGEMENT SERVICES, LLC,           :
US BANK NATIONAL ASSOCIATION        :
AS TRUSTEE FOR RMAC TRUST,          :
SERIES 2016-CTT,                    :
              Defendants.           :

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

        Now pending before the Court is the renewed motion to dismiss filed by Defendant Wells

Fargo Bank, N.A. ("Wells Fargo") for lack of subject matter jurisdiction pursuant to Fed. R. Civ.

P. 12(b)(1) and/or for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  ECF No. 102.

The motion targets all claims against Wells Fargo – Counts VII through XIII[1] of the Amended

Complaint,[2] which are based on alleged violations by Wells Fargo of the duty of a mortgage

servicer to respond to Notices of Error as required by the Real Estate Settlement Procedures Act,

---

[1] The Amended Complaint has two Counts labeled "Count XII."  ECF No. 60 at 59, 60.  The Court refers to the
second of these as "Count XII (second iteration)."

[2] The Amended Complaint also mentions Wells Fargo in Counts II, III and VI.  At the hearing, Plaintiff clarified that
those Counts do not assert claims against Wells Fargo.  See also ECF No. 114-1 at 1 (confirming that claims against
Wells Fargo are Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 et seq., claims in Counts VII through
XIII).

12 U.S.C. §§ 2601, *et seq*. ("RESPA") and Regulation X, 12 C.F.R. § 1024.[3]  ECF No. 60

("Compl.").  Wells Fargo's motion is premised on Plaintiff's failure plausibly[4] to allege concrete

injury or cognizable damages.  The motion has been referred to me for report and

recommendation.  28 U.S.C. 636(b)(1)(B).  For the reasons that follow, I recommend that the

motion be granted and that Counts VII through XIII be dismissed without prejudice based on

lack of subject matter jurisdiction pursuant to <u>TransUnion LLC v. Ramirez</u>, 141 S. Ct. 2190

(2021) and <u>Spokeo, Inc. v. Robins</u>, 578 U.S. 330 (2016).  Alternatively, I recommended that the

Court grant Wells Fargo's motion and dismiss these Counts based on the Amended Complaint's

failure to state a plausible claim.

## I.     BACKGROUND

Until a foreclosure sale on July 28, 2017, Kenneth Fitch and, until her death, Dianne

Fitch ("Plaintiff")[5] owned 73 Kay Street, Cumberland, Rhode Island ("Real Estate").  Compl.

¶¶ 1-4.  In 2009, Plaintiff borrowed $96,648 from Wells Fargo secured by a mortgage on the

Real Estate.  <u>Id.</u> ¶¶ 66-67, Ex. A.  On April 16, 2016, Wells Fargo sent Plaintiff a letter advising

that the loan was in default and that Wells Fargo would accelerate if the arrearage was not cured.

<u>Id.</u> Ex F.  On June 22, 2016, a Rhode Island Housing mediation coordinator affirmed that Wells

---

[3] In addition to RESPA/Regulation X, Count VII also mentions the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq*<u>.</u>  At the hearing, Plaintiff confirmed that the only bases for claims against Well Fargo are RESPA and Regulation X.  <u>See also</u> ECF No. 114-1 at 1.

[4] During oral argument on the motion, Plaintiff argued that "plausibility" had not been raised by Wells Fargo and asked for an opportunity to reopen the briefing to allow him to address the applicability of the "plausibility" standard.  The premise for this request is inaccurate in that Wells Fargo's brief raised plausibility.  <u>See</u> ECF No. 102-1 at 5.  Mindful that plausibility is a well-established concept in the Fed. R. Civ. P. 12(b) canon, <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009), <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555, 559 (2007), as well as that Wells Fargo's motion was originally filed in June 2020, I declined to permit further delay.  ECF No. 81.

[5] In using "Plaintiff" to refer collectively to the Fitches and/or singularly to each of them, the Court acknowledges that it has glossed over the history of who owned the Real Estate, who was the mortgagor or the borrower at various points in time.  These details are not relevant to the instant motion to dismiss.

Fargo had fully complied with the pre-foreclosure mediation requirement in R.I. Gen. Laws § 34-27-3.2.  Id. Ex. E at 13.

On March 22, 2017, Wells Fargo assigned the mortgage to Defendant Federal National Mortgage Association ("FNMA") but continued to be the servicer on the account.  Compl. ¶¶ 69, 254.[6]  Acting as the servicer for FNMA, Wells Fargo claims that it sent an acceleration letter on March 31, 2017, and a notice of sale letter on April 20, 2017.  Id. Ex. F-1 at 3.  After being advertised between May and July 2017, the foreclosure sale was scheduled for July 28, 2017.  Id. Ex. E at 6.  Two days before the foreclosure sale, on July 26, 2017, Defendant Rushmore Loan Management Service, LLC ("Rushmore")[7] became the owner of the loan, but no assignment of the mortgage was recorded.  Compl. ¶¶ 71-72.  The Amended Complaint alleges that FNMA transferred its interest in the mortgage by an unrecorded assignment on an unknown day prior to July 26, 2017.[8]  Id. ¶¶ 71-72.  The foreclosure auction was conducted on July 28, 2017, by Wells Fargo as servicer for FNMA and the Real Estate was conveyed by a foreclosure deed given by FNMA to Defendant 266 Putnam Ave, LLC ("266 Putnam") in consideration for payment of $188,000.  Id. ¶¶ 86, 92-93, 236; Ex. E.  On October 1, 2017, Wells Fargo ceased to be the servicer for the account; that responsibility was switched to Rushmore.  Id. Ex. F-1 at 2.  On October 20, 2017, 266 Putnam initiated proceedings to evict Plaintiff from the Real Estate.  Id. ¶

---

[6] Paragraph 254 appears twice in the complaint.  ECF 60 at 37-38.  This citation is to the second iteration.

[7] The Amended Complaint alleges that the owner of the loan became Defendant U.S. Bank National Association ("U.S. Bank").  Compl. ¶ 73; see id. ¶ 192 ("[s]ubsequently and prior to the date of the purported foreclosure this loan was securitized and sold by Rushmore Loan Management Group, resulting in the transfer of the mortgage and note to US Bank National Association as trustee for an entity known as the RMAC Trust, Series 2016-CTT").  Both U.S. Bank and Rushmore are joined as defendants.

[8] The factual supportability of Plaintiff's claim that there was an unrecorded assignment of the mortgage and the legal question whether, if this fact is assumed to be true, it gives Plaintiff the right to rescind the foreclosure are the subject of a pending (and hotly contested) motion for summary judgment.  ECF No. 96.

98.   Soon after, on October 26, 2017, Plaintiff began to send Wells Fargo the blizzard[9] of letters that are the foundation for Plaintiff's RESPA/Regulation X claims.   That is, all of Plaintiff's RESPA/Regulation X letters were written *after* the Real Estate had been sold at foreclosure and *after* Wells Fargo no longer was responsible for servicing or had any other interest in the Real Estate, the mortgage or the loan.

Six of the first set of letters, all dated October 26, 2017, were Regulation X requests for information ("October 2017 RFIs").[10]   See 12 C.F.R. § 1024.36.   The seventh letter,[11] also dated October 26, 2017, is the sole basis for the first and the foundation for the last of the Amended Complaint's Counts against Wells Fargo – Counts VII and XIII.   Compl. Exs. G, O ("NOE-1").   NOE-1 was sent to Wells Fargo by Plaintiff's attorney and was designated as a Notice of Error "under 12 C.F.R. section 1024.35 of Regulation X of the Mortgage Servicing Act under RESPA."   Id.   According to NOE-1, Wells Fargo had committed servicing errors, see 12 C.F.R. § 1024.35(b), in failing to send a default letter and an acceleration letter, in failing to comply with Rhode Island's mediation requirement (R.I. Gen. Laws § 34-27-3.2) and in allowing the foreclosure to proceed on behalf of FNMA after it had "no interest in the note or the mortgage." Id.   NOE-1 demanded that Wells Fargo correct the errors by removing all legal fees, costs, charges and expenses arising from the notice of sale and the foreclosure.   Id.   According to the

---

[9] Dated between October 2017 and August 2018, more than twenty letters invoking RESPA and/or Regulation X were sent to Wells Fargo by John Ennis, Plaintiff's attorney of record for this case.   These letters are attached to the Amended Complaint in Exhibits G through O (there is no Exhibit N).

[10] Each of the six October 2017 RFIs sought different information as follows: "[a]ll periodic monthly statements"; all documents conceivably related to legal fees charged to the account; all documents related to fees for property inspection (and anything remotely related to property inspection); "an exact reproduction of the life of the mortgage transactional history for this loan"; documentation regarding compliance with R.I. Gen. Laws § 34-27-3.2; and "the entire mortgage loan servicing file."   See Compl. Ex. H through M.

[11] Plaintiff's confusing presentation of the RESPA/Regulation X letters includes this letter both as Exhibit G and as part of Exhibit O.

Amended Complaint (but not mentioned in NOE-1), to comply with RESPA and Regulation X, NOE-1 required Wells Fargo to "void the foreclosure."  Compl. ¶ 273.  Pursuant to 12 C.F.R. § 1024.35, Wells Fargo's written response to NOE-1 was due on December 20, 2017.  Id. ¶¶ 267-68.

On November 15, 2017, Wells Fargo responded to Plaintiff's October 2017 RFIs by informing Plaintiff that Wells Fargo was working on gathering the information requested and advising Plaintiff that the "[s]ervicing and collection notes, inspection and legal fees, documents" had been sent to Rushmore (the new servicer).  Compl. Exs. H, I, K, M.  Soon after, on November 30, 2017, well in advance of the NOE-1 deadline, Wells Fargo responded to NOE-1 and further to the October 2017 RFIs with a substantive letter, which provided Plaintiff with a detailed "Customer Account Activity Statement" and purported to enclose[12] a long list of documents that seemingly correspond to what had been sought by the six RFIs, coupled with the advisory that Wells Fargo had determined (as permitted by Regulation X, 12 C.F.R. § 1024.36(f)(1)(ii) and (iv)) that, apart from what was being provided, Plaintiff's letters were overbroad and sought confidential, privileged and/or proprietary material.  Compl. Ex. F-1.  This response appears to address all issues raised in NOE-1, including by supplying copies of the acceleration and default letter and the mediation compliance materials, as well as by advising that Wells Fargo had investigated Plaintiff's claim that FNMA should not have been the mortgagee at the foreclosure and concluded that the foreclosure had been conducted consistent with the mortgage and applicable law.  Compl. Ex. F-1.  The response reminds Plaintiff that Rushmore had become his loan servicer and supplied contact information for Rushmore.  Id.  In

---

[12] Except for the detailed account history, which Plaintiff included in Exhibit K, but omitted from all other iterations of Wells Fargo's response letter, Plaintiff did not include Wells Fargo's enclosures in the Exhibits to the Amended Complaint.  However, he has not alleged that the enclosures were omitted from what Wells Fargo supplied.

addition to providing this substantive information, all of Wells Fargo's response letters comply with RESPA's requirement that they include a name and contact information for a person designated to help if Plaintiff had questions.  12 U.S.C. § 2605(e)(2)(B)(ii), Compl. Exs. F-1, H through O.

Ignoring Wells Fargo's substantive response to NOE-1, Count VII alleges that Wells Fargo violated RESPA/Regulation X in that it "did not address <u>any</u> of the issues raised in the [NOE-1]" and that "[i]t refused to correct the error," refused to "remove any fees for the purported foreclosure" and "refused to void the foreclosure sale and remove any mortgage loans from the mortgage loan account."  <u>Id.</u> ¶¶ 272-73 (emphasis added).  These conclusory allegations are contradicted by Exhibit F-1, which Plaintiff attached to the Amended Complaint and which specifically addresses every issue raised in NOE-1.  For damages, the Amended Complaint alleges that this supposed violation harmed Plaintiff in that it required him to drive to visit his attorney at least five times (spending money for gasoline); to talk to his attorney by cell phone (spending electricity); to spend unspecified time away from work and other activities; to incur postage and copying costs in transmitting NOE-1; and to incur attorney's fees and costs "for the prosecution of this action."[13]  Compl. ¶ 276.

Almost five months after receiving Wells Fargo's facially complete response, Plaintiff filed this case (on April 19, 2018).  ECF No. 1.  The original complaint accused Wells Fargo of violating RESPA solely because of Plaintiff's dissatisfaction with its response to NOE-1.  It also asserted claims against FNMA, the Federal Housing Finance Agency, and 266 Putnam

---

[13] During the hearing, Plaintiff purported to supplement his pleading of damages caused by Wells Fargo's alleged failure to respond to NOE-1 with the argument that Wells Fargo violated RESPA by failing to rescind the foreclosure, so that Plaintiff was damaged by the loss of his home.  This element of damage is missing from the damages listed in ¶¶ 276 and 444 of the Amended Complaint.  It also is not cognizable under RESPA.  <u>Caldwell v Nationstar Mortg.</u>, 857 F. App'x 478, 482 (11th Cir. 2021) (per curiam) ("Rescinding a foreclosure sale is not an authorized 'action'" under RESPA).

challenging the foreclosure, arguing that FNMA was constitutionally barred from using Rhode Island's non-judicial foreclosure procedure and seeking damages and injunctive relief because FNMA did not comply with Rhode Island's mediation requirement, had breached Paragraph 22 of the mortgage, and was not authorized to foreclose because it had executed an unrecorded assignment of the mortgage before the foreclosure.  Plaintiff did not name Wells Fargo as a party to any of the claims for relief arising from the foreclosure.

        After initiating the case, Plaintiff resumed sending RESPA/Regulation X letters to Wells Fargo.  The second wave of letters, dated June 15, 2018, are premised on Wells Fargo's alleged failure to respond to NOE-1 and the six October 2017 RFIs ("June 2018 NOEs").  Largely ignoring Wells Fargo's facially complete response sent six months before, the seven June 2018 NOEs invoke 12 C.F.R. § 1024.35 and duplicate the substantive content of NOE-1 and the six October 2017 RFIs.  With one exception,[14] they allege as "error" that Wells Fargo's "refus[al] to respond" to NOE-1 and the October 2017 RFIs because it had invoked the "confidential, privileged and/or proprietary" character of the requested materials and otherwise supplied nothing.  Compl. Exs. H, I, J, L, M, O; Id. ¶¶ 287, 302 (second iteration), 328, 353, 380, 404.  As the Exhibits to the Amended Complaint make clear, this assertion also is simply untrue.  In fact, Wells Fargo's actual response provided detailed information and enclosed a long list of documents, all of which was ignored by the June 2018 NOEs.  By way of just one example, in

---

[14] Buried in the June wave of NOEs is an exception; the June 2018 NOE in Exhibit K complains that the spreadsheet Wells Fargo sent (providing three years of detailed account information) is missing unspecified information and did not go back to December 31, 2009. Compl. Ex. K.  This NOE ignores Wells Fargo's permissible assertion of the overbreadth of the request and makes no attempt to explain why such additional information is needed.  12 C.F.R. § 1024.36(f)(iv).  Ironically, Plaintiff's NOE includes what appears to be a link to the "Official Bureau Interpretations" of RESPA/Regulation X, Compl. Ex. K at 11, see 12 C.F.R. Pt. 1024, Supp. I, ¶ 36(f)(i)(iv), which makes clear that Wells Fargo's overbreadth assertion is entirely appropriate.  See https://files.consumerfinance.gov/f/201301_cfpb_final-rule_servicing-respa-interpretations.pdf, at 18-19 ("[E]xamples of requests for information that are overbroad . . .: [r]equests for information that seek documents relating to substantially all aspects of . . . mortgage servicing . . .; [r]equests for information that purport to require information in specific formats . . . ; and [r]equests for information that are not reasonably likely to assist a borrower with the borrower's account.").

two of the June 2018 NOEs (ECF No. 60-14 at 9; ECF No. 60-16 at 9), Plaintiff asserts as error

Wells Fargo's supposed failure to comply with Rhode Island's mediation statute and its refusal

to supply documents related to mediation compliance.  Compl. ¶¶ 379-380.  In fact, Wells

Fargo's November 30, 2017, response specifically addressed compliance with the mediation

statute, stating, "[p]lease find enclosed the requested mediation letters and or documents with the

Rhode Island Housing."  Id. Ex. F-1.  That each of Wells Fargo's substantive response letters

also appropriately declined to provide more material based on the evident overbreadth of the

requests and the confidential, privileged and/or proprietary nature of unproduced material is

permissible pursuant to Regulation X and does not amount to an across-the-board refusal to

respond.  See 12 C.F.R. § 1024.36(f)(1)(ii, iv).

      Instead of asserting that the June 2018 NOEs were duplicative,[15] Wells Fargo responded

to them with a letter dated July 20, 2017, advising that it would not respond further because the

"account is in active litigation."[16]  Compl. Ex. F-2.  Plaintiff fired back with a third set of seven

NOE letters dated August 7, 2018 ("August 2018 NOEs"), again duplicating the same requests

and the same alleged errors, but now adding a new claim of error based on Wells Fargo's refusal

to respond further based on "active litigation."  Id. Exs. H though O.

---

[15] Regulation X permits a servicer to protect itself from duplicative requests, which (except for Ex. K, see n.14 *supra*) Plaintiff's June 2018 NOEs clearly are.  See 12 C.F.R. §§ 1024.35(g)(1)(i), 1024.36(f)(1)(i) (if notice of error or request for information is "[d]uplicative" or "substantially the same" as what servicer had already provided, servicer is not required to comply with Regulation X).

[16] Regulation X does not specify that "active litigation" is a reason justifying a servicer's failure to respond; at least two courts in other circuits were skeptical that such a reason is compliant with RESPA.  See Izmirligil v. Select Portfolio Serv. Inc., 18-CV-7043 (PKC)(LB), 2020 WL 1941319, at *6 (E.D.N.Y. April 22, 2020) (RESPA does not contain pending litigation exception); Schmidt v. Wells Fargo Bank, N.A., 2:17-cv-01708, 2019 WL 4943756, at *2 (D.N.J. Oct. 8, 2019) (active litigation is not listed in Regulation X as justification for servicer failing to respond to RESPA request).  I assume without deciding that the invocation of "active litigation" is a technical RESPA/Regulation X violation.

As far as the Amended Complaint tells the tale, the trail ends there.  Wells Fargo's

invocation of "active litigation" in response to the seven largely duplicative June 2018 NOEs,

followed by its failure to respond at all to the seven August 2018 NOEs, forms the basis for

Counts VIII, IX, X, XI, XII (second iteration) and XIII of the Complaint.  During oral

argument on the motion, in response to the Court's expression of concern that the final set of

NOE letters seem to have been sent for the strategic purpose of drawing Wells Fargo into an

unambiguous RESPA/Regulation X violation, and not for the purpose of gathering information

from his former servicer, Plaintiff argued that the motivation of the sender of an NOE is not

material to whether a pleading plausibly states a RESPA violation.

In reliance on the sheer number (alleged to be nine, but actually seven) of unresponded-to

NOEs, the Amended Complaint alleges that Wells Fargo's conduct is part of a "pattern and

practice" in failing to correct the error.  E.g., Compl. ¶ 277.  For damages, Plaintiff contends that

Well Fargo's failure to respond appropriately to each of the August 2018 NOEs inflicted actual

injury in that each failure required him to drive to visit his attorney at least five times (spending

money for gasoline); to talk to his attorney by cell phone (spending electricity); to spend

unspecified time away from work and other activities; to incur postage and copying costs in

transmitting the NOE; and to incur attorney's fees and costs "for the prosecution of this action."

Compl. ¶¶ 300, 317, 342, 368, 395, 419, 444.

## II.   APPLICABLE LAW – RESPA AND REGULATION X

RESPA sets forth specific procedures that a mortgage loan servicer must follow in

responding to a borrower's request for information.  12 U.S.C. § 2605; Diedrich v. Ocwen Loan

Servicing, LLC, 839 F.3d 583, 586 (7th Cir. 2016).  As set forth in 12 U.S.C. § 2605(e),

RESPA's purpose is to promote transparency and communication between borrowers and

servicers of mortgage loans by requiring that servicers must respond to certain types of written inquiries from borrowers regarding the servicing of their loans within a set amount of time.  Id. To comply with a REPSA request from a borrower who has provided a statement of reasons for his belief that the account is in error, the servicer must either correct the error or provide a statement of reasons why the account is correct.  Id.; see McGahey v. Fed. Nat'l Mortg. Ass'n, 266 F. Supp. 3d 421, 438 (D. Me. 2017).  That is, RESPA requires that servicers provide borrowers with information, not that they necessarily accept a borrower's assertion of error and correct it.  McGahey, 266 F. Supp, 3d at 442.

To establish the right to recover for a RESPA violation, the borrower must show that that servicer failed to comply with these requirements and that the borrower suffered actual damages caused by the violation.  12 U.S.C. § 2605(f); see O'Connor v. Nantucket Bank, 992 F. Supp. 2d 24, 35 (D. Mass. 2014).  As long as there are actual damages caused by a failure to comply with RESPA, the injured borrower may also seek to recover statutory damages if the borrower establishes a "pattern or practice of noncompliance with the requirements of this section."  12 U.S.C. § 2605(f)(1)(B).  Actual damages must arise "as a result of" the servicer's alleged violation.  12 U.S.C. § 2605(f)(1)(A).  That is, there must be a "causal link" between the alleged violation and the damages.  Renfroe v. Nationstar Mortg., LLC, 822 F.3d 1241, 1246 (11th Cir. 2016) (internal quotation marks omitted); see Wadsworth v. Kross, Lieberman & Stone, Inc., 124 F.4th 665, 668 (7th Cir. Aug. 31, 2021) (plaintiff has concrete injury only if defendant's breach of statutory rights causes real harm, such as paying money not properly owed).  It is the plaintiff's burden to establish that a claimed injury was proximately caused by a RESPA violation.  In re Jackson, 622 B.R. 321, 327 (Bankr. D. Mass. 2020).  An injury concocted to support a damage claim by continuing to send RESPA requests after a technical or unspecified

10

violation is not sufficient.  See Lebeau v. U.S. Bank, N.A. as Tr. for Citigroup Mortg. Loan

Trust, Inc., CA No. 17-329-JJM-PAS, 2019 WL 1077285, *4 (D.R.I. Mar. 7, 2019) (case

dismissed for failure plausibly to state claim of RESPA damages where servicer provided

response that did not violate terms or spirit of RESPA, yet borrower's attorney continued to send

duplicative requests framed as NOEs resulting in costs and fees); Pimental v. Ocwen Loan

Servicing, LLC, Case No. 16-CV-62089-DIMITROULESAS, 2016 WL 6678523, at *3 (S.D.

Fla. Nov. 8, 2016) (case dismissed for failure plausibly to state claim of RESPA damages where

servicer provided response that plaintiff did not identify as inadequate except for timing, yet

borrower's attorney sent NOE resulting in costs and fees; "the Court does not believe that 'actual

damages' may be construed so broadly as to encompass unnecessary costs intentionally incurred

solely for the purpose of bringing a lawsuit").

    To implement RESPA, the Consumer Financial Protection Bureau promulgated a set of

regulations known as "Regulation X."  Benner v. Wells Fargo Bank, N.A., Docket No. 2:16-cv-

00467-NT, 2018 WL 1548683, at *7 (D. Me. Mar. 29, 2018).  As relevant to this case, 12 C.F.R.

§ 1024.35 provides additional details governing error resolution procedures, while 12 C.F.R. §

1024.36 addresses requests for information.  The law is unsettled whether there is a private right

of action arising from a violation of Regulation X.  Mindful that Wells Fargo has not presented

the lack of a private right of action as a reason to grant its motion, the Court assumes without

deciding that there is such a right.  See Lucas v. New Penn Fin., LLC, No. 17-cv-11472-ADB,

2019 WL 404033, at *4 (D. Mass. Jan. 31, 2019) (because 12 U.S.C. § 2605(f) provides private

cause of action, court concludes that Regulation X also supports private right of action).

## III.    FED. R. CIV. P. 12(b)(1)

### A.    Standard of Review

Pursuant to Fed. R. Civ. P. 12(b)(1), Wells Fargo has challenged whether the Court has subject matter jurisdiction to address this controversy based on Plaintiff's failure to establish standing.  See TransUnion, 141 S. Ct. 2190; Spokeo, 578 U.S. 330.  When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(1), the Court applies a standard of review similar to that deployed for consideration of a motion for dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), which requires the plaintiff to shoulder the burden of plausibly alleging a viable cause of action.  Menge v. N. Am. Specialty Ins. Co., 905 F. Supp. 2d 414, 416 (D.R.I. 2012); see Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-559 (2007).  That is, to survive a Fed. R. Civ. P. 12(b)(1) salvo, each element of standing must be plausibly supported in the same way as any other matter on which the plaintiff bears the burden of proof.  Hochendoner v. Genzyme Corp., 823 F.3d 724, 730 (1st Cir. 2016).

As with a Fed. 12(b)(6) motion, for standing, the Court must "accept as true all well-pleaded factual averments in the plaintiff's . . . complaint and indulge all reasonable inferences therefrom in his favor."  Katz v. Pershing, LLC, 672 F.3d 64, 70 (1st Cir. 2012) (internal quotation marks omitted).  Likewise, for standing, the Court may consider exhibits attached to the complaint, including that such exhibits govern over inconsistent allegations in the pleading to the extent that they "render [those allegations] utterly implausible."  Colesanti v. Becton Dickinson, C.A. No. 18-491WES, 2019 WL 4043957, at *9 (D.R.I. July 19, 2019), adopted sub nom. Colesanti v. Dickinson, 2019 WL 4039529 (D.R.I. Aug. 27, 2019); see Renfroe, 822 F.3d at 1245 ("[W]hen the exhibits [attached to the complaint] contradict the general and conclusory allegations of the pleading, the exhibits govern.") (internal quotation marks omitted).  Unlike a Fed. R. Civ. P. 12(b)(6) motion, a standing motion brought pursuant to Fed. R. Civ. P. 12(b)(1) permits the Court to consider material outside the pleadings.  Gonzalez v. United States, 284

F.3d 281, 288 (1st Cir. 2002); see Pemental v. Bank of New York Mellon, C.A. No. 16-483S, 2017 WL 3279015, at *5 (D.R.I. May 10, 2017), adopted, 2017 WL 3278872 (D.R.I. Aug. 1, 2017).

   **B.     Standing Law and Analysis**

   The jurisdiction of federal courts is limited to "Cases" and "Controversies" as described in Article III of the Constitution. TransUnion, 141 S. Ct. at 2203. Because of Article III, injury-in-fact is a bedrock constitutional requirement for federal jurisdiction. Curtis v. Embrace Home Loans, Inc., C.A. No. 18-057-JJM-PAS, 2020 WL 2115987, at *2–3 (D.R.I. May 4, 2020). There is no case or controversy if the plaintiff lacks standing to challenge the defendant's alleged misconduct. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); Overton v. Tourruella, 183 F. Supp. 2d 295, 303 (D. Mass. 2001) (unless plaintiff has standing no case or controversy is presented to the court). In order to have standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent, (ii) that the injury was likely caused by the defendant, and (iii) that the injury would likely be redressed by judicial relief." TransUnion, 141 S. Ct. at 2203.

   To satisfy Article III, the plaintiff's injury-in-fact must be "'concrete' – that is, 'real, and not abstract.'" TransUnion, 141 S. Ct. at 2204 (quoting Spokeo, 578 U.S. at 340). Whether the claimed harm is monetary, physical or intangible, TransUnion and Spokeo are crystal clear – if a defendant has transgressed a statutory prohibition, but the conduct has not caused "any physical, monetary, or cognizable harm traditionally recognized as providing a basis for a lawsuit in American courts," the case may not proceed. TransUnion, 141 S. Ct. at 2206; see Spokeo, 578 U.S. at 345 (Thomas, J. concurring). A plaintiff cannot satisfy the demands of Article III by alleging a "bare procedural violation." Spokeo, 578 U.S. at 341-343; compare Meeks v. Ocwen

Loan Servicing LLC, 681 F. App'x 791, 792-93 (11th Cir. 2017) (per curiam) (internal quotation marks omitted) (where borrower disputed RESPA compliance with servicer's obligation to confirm receipt of RFI, but failed to allege plausible injury caused by this "bare procedural violation," Spokeo required dismissal for lack of standing), with Diedrich, 839 F.3d at 590-91 (because servicer's RESPA violation in failing to respond caused borrower to pay more for modification, Article III standing established).

As applied to RESPA/Regulation X, the standing requirement means that, unless the plaintiff can sustain his burden of plausibly alleging a concrete injury-in-fact that is fairly traceable to the violation, the claim must be dismissed.  Diedrich, 839 F.3d at 588.  Thus, "[c]osts for a plaintiff's actions taken *prior* to a defendant's RESPA violation will not be considered actual damages."  Grembowiec v. Select Portfolio Servicing, Inc., Civil Action No. 18-16885, 2019 WL 3183588, at *6 (D.N.J. July 16, 2019).  Similarly, since Spokeo, the RESPA/Regulation X decisions in this District have consistently dismissed claims based on conclusory claims of inadequate RESPA responses, which are not plausibly linked to any consequential servicing error, and which result in nothing more than damages based on conferring with counsel about the NOE, mailing the NOE, and prosecuting the action; such damage allegations are found to be insufficient to establish a plausibly concrete injury-in-fact traceable to the alleged RESPA violation.  Cordeiro v. Carrington Mortg. Servs., LLC, C.A. No. 19-510 WES, 2020 WL 3404742, at *3-4 (D.R.I. June 19, 2020) (Regulation X claim based on vague allegation that servicer failed to respond to RFI and failed to respond to NOE alleging foreclosure error; damage allegation based on "time and money" related to bringing claim deemed insufficient for standing), judgment withdrawn in part and remanded to state court, 2021 WL 673482 (D.R.I. Feb. 22, 2021); Curtis v. Embrace Home Loans, Inc., C.A. No. 18-057-JJM-

14

PAS, 2020 WL 2115987, at *2-3 (D.R.I. May 4, 2020) (RESPA/Regulation X claims dismissed for lack of standing based on sending RFIs and NOEs to which servicer responded, followed by five visits to attorney, cell phone calls to and from attorney, postage and paper for mailing NOEs, fees charged to account, legal fees and costs in prosecuting action and stress about staying in house).  Cases in this District based on analogous statutes have reached the same result based on a similar analysis.  St. Amour v. Fed. Home Loan Mortg. Corp., C.A. No. 18-254-WES, 2019 WL 1453055, at *2 (D.R.I. Apr. 2, 2019) (TILA complaint's sole damages amount to costs and fees incurred by plaintiffs in meeting and conferring with their attorneys and bringing case; these are not a substitute for the injury-in-fact required by Spokeo); Pemental, 2017 WL 3279015, at *8 (attorney's fees and costs incurred in TILA action no substitute for injury-in-fact requirement because "every TILA complaint requires the expenditure of attorneys' fees" and to hold otherwise would allow a claim for attorneys' fees to "subsume the injury-in-fact requirement"); see Viera v. Bank of New York Mellon as Tr. for Certificate Holders of Cwalt, Inc., C.A. No. 17-0523-WES-PAS, 2018 WL 4964545, at *4 (D.R.I. Oct. 12, 2018) (damages consisting of legal fees for allegedly improper foreclosure and costs and attorney's fees incurred in prosecuting state law Fair Debt Collection Practices Act claim not sufficiently concrete to confer Article III standing with ho allegation that plaintiff ever paid allegedly improper charge or why, if paid, charge would be wrongful).  On similar facts, the same result also has obtained when the motion was brought pursuant to Fed. R. Civ. P. 12(b)(6).  Lebeau, 2019 WL 1077285, at *3-4 (RESPA claims dismissed because complaint alleging flurry of RESPA requests followed by NOEs, resulting in visits and calls to attorney, money spent on postage and photocopies and costs to prosecute action, lacked both plausible allegation of violation of terms and spirit of RESPA and plausible allegation of damages).

In this case, Plaintiff's Amended Complaint identifies two discrete RESPA/Regulation X violations. Each requires a separate standing analysis.

First, in Count VII, Plaintiff makes the conclusory assertion that Wells Fargo failed to "address any of the issues raised in" NOE-1. Compl. ¶ 272. The Amended Complaint does not plausibly explain what the RESPA/Regulation X violation is, in that the Exhibits contradict its assertions and reveal that Wells Fargo <u>did</u> respond to NOE-1 with a timely letter that appears facially to be compliant with RESPA/Regulation X, rendering Plaintiff's conclusory pleading to the contrary entirely lacking in plausibility. See <u>Lebeau</u>, 2019 WL 1077285, at *4 (RESPA complaint based on servicer's invocation of overbreadth and burden that failed to allege specific issue of concern fails plausibly to allege violation); <u>Colesanti</u>, 2019 WL 4043957, at *9 (when exhibits attached to complaint contradict allegations in complaint, exhibits govern). Nevertheless, even if, for purposes of the standing analysis, the Court assumes that there was a RESPA/Regulation X violation, fatal to Count VII is that Plaintiff's alleged damages do not plausibly flow from it.

For starters, the expenses associated with visiting and talking with his attorney, the postage, copying and other expenses preparing and mailing NOE-1 and the fees and costs associated with the foreclosure (including Plaintiff's loss of his home) are not plausibly traceable to an assumed RESPA/Regulation X violation because these losses had already been incurred when Wells Fargo provided its allegedly noncompliant response. Nor does the Amended Complaint allege any fact permitting the inference of a causal link between these past losses and a subsequent RESPA/Regulation X violation. See, e.g., <u>Baez v. Specialized Loan Servicing, LLC</u>, 709 F. App'x 979, 983 (11th Cir 2017) (per curiam) (cost of preparing and mailing initial RFI not casually connected to subsequent alleged RESPA violation); <u>In re Jackson</u>, 622 B.R. at

327-28 (attorney's fees and postage to prepare initial RESPA inquiry are not damages caused by subsequent RESPA violation); Cameron v. Ocwen Loan Servicing, LLC, Case No. 2:18-cv-428, 2020 WL 104981, at *3 (S.D. Ohio Jan. 9, 2020), amended on reconsideration, 2020 WL 467686 (S.D. Ohio Jan. 29, 2020) ("[c]ourt sees no basis as to how any fees or costs related to the Foreclosure Action incurred prior to the deficient Response Letter could morph into damages"); Pimental, 2016 WL 6678523, at *2 ("costs incurred before the violation occurred, such as the expenses of preparing an initial RFI" are not causally linked to a RESPA violation).  That leaves only Count VII's claim of injury from incurring "attorney fees and costs for the prosecution of this action."  Compl. ¶ 276.  This allegation is precisely what has consistently been found insufficient to support Article III standing in post-Spokeo RESPA cases.  In re Jackson, 622 B.R. at 328 ("attorney's fees related to litigating a case do not constitute actual damages under RESPA"); Curtis, 2020 WL 2115987, at *3 ("attorneys' fees, costs, and expenses in prosecuting" RESPA claim barred by Spokeo); Cordeiro, 2020 WL 3404742, at *4 ("injury-in-fact requirement not satisfied by allegations of litigation-related expenses"); Freeman v. Bayview Loan Servicing, LLC, Case No. 8:16-CV-2038-T-27TGW, 2017 WL 897773, at *5-6 (M.D. Fla. Mar. 3, 2017) (RESPA injury based on attorney's fees incurred after incomplete or insufficient response cannot establish standing).  As this Court held in Pemental, the attorney's fees, costs and expenses incurred in prosecuting the action "are not a substitute for the injury-in-fact required by Spokeo.  If they were, they would subsume the injury-in-fact requirement."  2017 WL 3279015, at *8.

Based on the foregoing, I recommend that Count VII should be dismissed for lack of Article III standing because it does not plausibly establish any injury-in-fact traceable to a RESPA/Regulation X violation.

Plaintiff's second RESPA/Regulation X violation is the group alleged in Counts VIII

through XIII.  Plaintiff claims that Wells Fargo violated RESPA/Regulation X because, having

provided a facially compliant RESPA/Regulation X response after Plaintiff's first wave of

letters, it failed to respond substantively to Plaintiff's second wave of duplicate NOEs (invoking

"active litigation") and failed to respond at all to Plaintiff's third wave of duplicate NOEs.  Thus,

unlike Count VII, these Counts plausibly allege a technical failure to comply with

RESPA/Regulation X in response to the June 2018 and August 2018 NOEs.  The question for the

Court is whether Plaintiff's pleading has plausibly linked this bare procedural violation to an

infliction of "any physical, monetary or cognizable . . . harm."  TransUnion, 141 S. Ct. at 2206;

see also Spokeo, 578 U.S. at 341-343.  For actual damages allegedly arising from each of these

technical violations, the Amended Complaint presents a verbatim iteration in each of Counts VIII

through XIII of the same conclusory allegations that Plaintiff relied on to assert damages caused

by Wells Fargo's response to NOE-1.  That is, Plaintiff alleges that, for each unresponded-to

August 2018 NOE, he had to drive to meet his attorney at least five times, called his attorney

using his cell phone, spent time away from other activities, incurred postage and copying costs to

mail the NOE and incurred attorney's fees in prosecuting this action.

As to the latter allegation ("fees and costs for the prosecution of this action"), such

alleged damages are insufficient to support Article III standing in Counts VIII through XIII for

the same reasons why they fail to support standing in Count VII.  Otherwise, however, these

Counts differ from Count VII in that the costs of preparing and sending the third wave of NOEs

came after, not before, Wells Fargo's assumed[17] violation in responding to the second wave of

NOEs by invoking "active litigation."  Nevertheless, despite having long since received Wells

---

[17] See n.16, *supra*.

Fargo's facially compliant November 2017 response to NOE-1 and the October 2017 RFIs, Plaintiff has failed to present any facts permitting even an inference of an explanation for why Wells Fargo's November 2017 response was inadequate.  Lebeau, 2019 WL 1077285, at *4 ("[n]othing in his later QWRS or NOEs could have demonstrated to Wells Fargo that he was trying to correct a legitimate servicing error or looking for a specific response from his servicer about his delinquent account").  Similarly, Plaintiff has failed to plead any plausible facts to establish that he was actually injured by Wells Fargo's allegedly noncompliant response to the June 2018 NOEs.  Id. (with no plausible claim that prior response was inadequate, calls and meetings with counsel, postage and other costs of sending subsequent NOEs insufficient to establish causal link between violation and injury).  Therefore, these damage allegations are equally insufficient for Article III standing.  Sanchez v. Johnson, Blumberg & Assoc., LLC, No. 16-cv-07056, 2018 WL 3861562, at *5 (N.D. Ill. Aug. 14, 2018) ("conclusory statements devoid of any factual allegations indicating how the plaintiff was damaged by the alleged unlawful conduct are insufficient" for standing to bring RESPA claim); Chadee v. Ocwen Loan Servicing, LLC, 243 F. Supp. 3d 1283, 1288-90 (M.D. Fla. 2017) (damages borne of having to file subsequent NOE with no explanation why the prior response was inadequate or why the NOE was needed are not causally linked to servicer's conduct); Pimental, 2016 WL 6678523, at *3 (where only damages claimed are those related to NOE prepared after receiving response that provided relevant information, and plaintiff failed to identify how it was inadequate other than untimeliness, not plausible to posit that expenses of preparing and sending subsequent NOE causally linked to violation).  Based on the foregoing, like Count VII, Counts VIII through XIII also fail because they do not plausibly establish Article III standing as required by TransUnion and Spokeo.

To counter the force of <u>Spokeo</u> as confirmed by <u>TransUnion</u>, Plaintiff relies heavily on out-of-circuit pre-<u>Spokeo</u> decisions or decisions that do not reference <u>Spokeo</u>, particularly from the Southern District of Florida.  <u>E.g.</u>, <u>Kilpatrick v. Ocwen Loan Servicing, LLC</u>, Case No. 16-80317-CIV-MARRA, 2017 WL 564376, at *3-4 (S.D. Fla. Feb. 10, 2017); <u>Miranda v. Ocwen Loan Servicing, LLC</u>, 148 F. Supp. 3d 1349, 1355 (S.D. Fla. 2015); <u>O'Brien v. Seterus, Inc.</u>, Case No. 9:15-CV-80300-ROSENBERG, 2015 WL 4514512, at *3 (S.D. Fla. July 24, 2015).  These cases are not persuasive.  <u>See</u> <u>Freeman</u>, 2017 WL 897773, at *5 n.8 (RESPA decisions from Southern District of Florida "are essentially conclusory, include little analysis, and cite only to other district court cases"; their holdings cannot withstand <u>Spokeo</u> scrutiny).  Also unpersuasive is Plaintiff's contention that <u>TransUnion</u> backtracked from <u>Spokeo</u> by emphasizing that "monetary" damages may establish Article III standing.  What Plaintiff ignores is the emphatic holding of both <u>TransUnion</u> and <u>Spokeo</u> – no matter what the character of the claimed injury, Article III requires more than "'bare procedural violation[s], divorced from any concrete harm.'"  <u>TransUnion</u>, 141 S. Ct. at 2213 (quoting <u>Spokeo</u>, 578 U.S. at 341).  When the fog of confusion arising from the "sound and fury"[18] in Plaintiff's eight Count/200 paragraph RESPA pleading (supplemented by 124 pages of RESPA Exhibits) is blown away, what remains are bare procedural violations, divorced from any concrete harm.  This is insufficient to sustain Article III standing.

Based on the foregoing, I find that Plaintiff's claims against Wells Fargo as pled in Counts VII through XIII (including both iterations of Count XII) fail to establish Article III standing.  Because the Court therefore lacks subject matter jurisdiction, these Counts should all be dismissed.

---

[18] <u>In re Brady-Zell</u>, 756 F.,3d 69, 73 (1st Cir. 2014).

IV.    **FED. R. CIV. P 12(b)(6)**

The Court need not linger long over Wells Fargo's alternative argument for dismissal based on the failure of each of Counts VII through XIII to state a plausible claim.  All of the same plausibility flaws identified above are equally fatal pursuant to Fed. R. Civ. P. 12(b)(6). See Lebeau, 2019 WL 1077285, *4.  Therefore, I alternatively recommend dismissal of all claims against Wells Fargo for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

V.    **CONCLUSION**

Based on the foregoing analysis, I recommend that Wells Fargo's Motion (ECF No. 102) to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) be GRANTED and that Counts VII through XIII (including both iterations of Count XII) be dismissed without prejudice.  If  the Court does not adopt this recommendation, I alternatively recommend that Wells Fargo's Motion to Dismiss these Counts for Failing to State a Plausible Claim pursuant to Fed. R. Civ. P. 12(b)(6) should be GRANTED and that these Counts should be dismissed with prejudice.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
October 21, 2021