UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

KENNETH FITCH
ESTATE OF DIANNE L. FITCH

    VS.                                  Civil Action No.  18-CV-214 JJM-PAS

FEDERAL HOUSING FINANCE
AGENCY,
FEDERAL NATIONAL
MORTGAGE ASSOCIATION,
WELLS FARGO BANK, N.A.,
HARMON LAW OFFICES, P.C.
266 PUTNAM AVENUE, LLC
RUSHMORE LOAN MANAGEMENT SERVICES, LLC
US BANK NATIONAL ASSOCIATION AS TRUSTEE
FOR RMAC TRUST, SERIES 2016-CTT

**AFFIDAVIT OF KENNETH FITCH IN SUPPORT OF PLAINTIFFS'
OBJECTION TO MOTION FOR SUMMARY JUDGMENT**

I, Kenneth Fitch being duly sworn, state the following:

1,    Dianne L. Fitch was the owner of real property located at 73 Kay Street, Cumberland, Rhode Island.

2.    Dianne L. Fitch died on April 7, 2014, intestate.

3.    Pursuant to operation of law, the property was vested in her heirs at law subject to a life estate in the property to me as spouse.

4.    After I obtained a life estate in the property, the property was conveyed to me by quitclaim deed dated May 30, 2014 by her mother, her heir at law.

1

5.  At all times this property has been and has continued to be my primary residence.

6.  I was appointed the Administrator of the Estate of Dianne L. Fitch by the Cumberland Probate Court. 7.

7.  On or about December 31, 2009, Dianne L. Fitch borrowed $96,648.00 from Wells Fargo ("Originating Lender"), which was evidenced by a promissory note (the "Note") on the same date.

8.  A copy of the Note is attached as Exhibit 1.

9.  On or about the same date, the Note was secured by a mortgage ("Mortgage") in favor of the Originating Lender. This Mortgage was signed by both me and Dianne L. Fitch.

10. The Mortgage was recorded on January 29, 2007, in the land records of the Town of Cumberland at Book 1485 at Page 256.

11. A copy is attached as Exhibit 2.

12. Wells Fargo mailed only decedent, Dianne L. Fitch a letter dated August 16, 2016, which it claimed to be a default notice. No separate default letter was mailed to me.

13. A copy of this letter is attached as Exhibit 3.

14. I had communicated with Wells Fargo after Dianne L. Fitch's death telling it that she had died.

15. Despite this knowledge Wells Fargo never mailed any documents addressed to me in fact would not speak with me due to the fact that it claimed that I was not the borrower. It also would not accept payments on the mortgage from me.

16. This letter did not comply with Paragraph 22 of the mortgage.

17. The mortgage, which I signed along with Dianne L. Fitch, in Paragraph 22 (c) of our mortgage required a default notice with a specific date to cure:

**(c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured**

18. However this letter deceptively confused me by not specifying a particular date for the cure date.

19. Instead this letter deceptively stated:

To avoid the possibility of acceleration, you must pay this amount on or before September 20, 2016.

20. This letter thus did not strictly comply with the terms of the mortgage, in that a specific cure date was not listed.

21. It also did not strictly comply with the terms of the paragraph 6(C) of the note, which states:

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may requires me to pay immediately the full amount of Principal which has not been paid and all the

interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

22. The use of the phrase "on or before September 20, 2016" in this purported default letter led me to believe that Wells Fargo was demanding that the claimed default be cured at any time after the letter was received through September 20, 2021.

23. This demand made by Wells Fargo was to cure within thirty days of the date of the letter.

24. This letter did not specify a specific and accurate amount which had to be cured on a particular date.

25. The amount stated as $6,655.44 was not an accurate amount of due for principal and interest.

26. The promissory note specifically defined the monthly payment as the amount of principal and interest in paragraph 3 of the note.

27. The monthly payment of principal and interest was $536.34.

28. The demand from Wells Fargo included escrow, late fees, other fees and expenses.

29. The terms of the note did not permit mailing of a default letter to include a demand for anything other than principal and interest due at the time the letter was mailed.

30. Paragraph 19 of the mortgage permits payment of items other than principal and interest to be required only in order to reinstate the note after acceleration.

31. This letter indicates that this amount was not accurate and that I could not rely on this number to cure the default.

32. This letter stated:

To avoid the possibility of acceleration, you must pay this amount on or before September 20, 2016 to Wells Fargo Home Mortgage, 3440 Flair Drive, El Monte, CA, 91731. For the loan to be current and note in default, any additional monthly payment, late charges and other charges that may be due under the note, mortgage and applicable law after the date of this notice must also be paid.

33 Paragraph 22 provided that the borrower had to be provided a specific and accurate amount required to cure the mortgage

34. The letter did not demand a specific amount to cure the mortgage.

35. The reference to $6,655.44 plus other unspecified amounts without a thirty day notice did not provide me a specific amount necessary to cure this default.

36. No language in the mortgage or the note required the mortgagor to pay any amount other than the amount due for principal and interest which was specified in the default letter in order to cure the arrearage.

37. The letter did not state that failure to cure may result in acceleration and sale.

38. Instead, this letter deceptively stated:

If funds are not received by the above referenced date, **we will proceed** with acceleration. Once acceleration has occurred, we may take steps to terminate your ownership in the property by a foreclosure proceeding, which could result in the Lender or another person acquiring ownership of the property.

39. This language did not strictly comply with the mortgage because it did not state that failure to cure may result in acceleration and sale.

40. Instead, it deceptively stated that if I did not cure that acceleration will occur.

41. I was thus deceived by this letter into thinking that failure to cure the nonspecific amount of the arrearage would automatically result in acceleration without any further action by Wells Fargo.

42. The letter did not advise me that failure to cure may result in acceleration and exercise of the statutory power of sale.

43. In fact, nowhere in this letter was there any language indicating that Wells Fargo would avail itself of the statutory power of sale, which was contained in the mortgage.

44. Wells Fargo deceptively stated that if the unspecified amount were not cured that a foreclosure proceeding would occur.

45. This led me to believe that a Judicial Foreclosure against me would be filed.

46. I was led to believe that a foreclosure proceeding and not the exercise of the statutory power of sale would be brought against me.

47. A foreclosure proceeding is a Judicial Foreclosure pursuant to R.I.G.L. 34-27-1.

48. Wells Fargo in this letter deceptively indicated to me that if the default were not cured that only a foreclosure proceeding would be initiated in Court.

49. This deceptive language made it clear that Wells Fargo did not warn me of the possibility of its use of the statutory power of sale.

50. Due to this deceptive language, I who was the successor in interest and who also executed the mortgage, was led to believe that Wells Fargo would not exercise the statutory power of sale but would commence a judicial foreclosure proceeding.

51. This letter led me to believe that I could not lose any interest in the property unless a foreclosure proceeding occurred.

52. Wells Fargo, deceptively told me in this letter that my right to bring a court action to assert the non-existence of a default could only be asserted in the event that Wells Fargo commenced a foreclosure proceeding.

53. By this deceptive letter, I was led to believe that I could not bring a Court action unless a foreclosure proceeding were initiated.

54. Wells Fargo did not tell me, as required by the mortgage, that I had an unlimited right to file a Court action at any time.

55. Wells Fargo deceptively did not mention in the letter that failure to cure may result in acceleration and exercise of the statutory power of sale.

56. Wells Fargo also deceptively indicated in the letter that these rights were limited to argue in the foreclosure proceeding that the borrower did keep her promises and agreements under the Mortgage Note and Mortgage and to present any other defenses that she had to the foreclosure proceeding.

57. This deceptive failure to notify me of the unlimited right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale did not strictly comply with the terms of the mortgage and precluded the exercise of the statutory power of sale.

58. The letter deceptively advised me that the borrower had a right to reinstate after acceleration without mentioning the limitations on that right to reinstate.

59. Wells Fargo deceptively advised me how to reinstate the loan by contacting Wells Fargo at a particular address and phone number at 1-800-569-4287.

60. However when this information was given, the letter deceptively did not advise me that the right to reinstate the mortgage loan would expire five days before a sale date.

61. The mortgage and note were drafted by Wells Fargo Bank, N.A., the originator of the mortgage loan, with no input from the me or Dianne Fitch as to its terms.

62. Harmon Law Offices, P.C. mailed Dianne Fitch a letter accelerating the note dated March 31, 2017.

63. A copy of this letter is attached as Exhibit 4.

64. This letter deceptively told me that:

"Even though the note has been accelerated, you may still have the right to reinstate the loan. If so and if you desire to reinstate the loan, you will need to pay and amount of money sufficient to bring the loan current.

65. This letter did not advise me of any amount to reinstate, but instead told me to contact Wells Fargo at its phone number.

66. Fannie Mae transferred its interest in the Mortgage to Rushmore Loan Management Services by a Sales Agreement dated July 26, 2017.

67. On July 26, 2017, U.S. Bank National Association, not in its individual capacity, but solely as trustee the RMAC Trust, series 2016-CTT became owner of the mortgage loan.

68. A copy of the notice of sale of the mortgage loan sent to me is attached as Exhibit 5.

69. On or about March 31, 2017, Wells Fargo had referred the Mortgage account to Harmon Law Offices, P.C. to foreclose.

70. On April 20, 2017, on behalf of the Defendants, Harmon Law Offices, P.C. sent a notice of foreclosure sale ("Notice") to me.

71. A copy of this Notice is attached as Exhibit 6.

72. In the Notice, Harmon Law Offices P.C. stated its intention to sell the property described in the Mortgage, on June 13, 2017 at 4:00 PM.

73. This Notice was mailed within thirty days of the initial Notice of Acceleration.

74. The promissory note specifically states that if the Lender exercises the right to demand immediate payment in full of all amounts owed under the Note, that Lender shall five Borrower notice of acceleration. This notice sall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15.

75. Wells Fargo did not strictly comply with the note and the mortgage by ordering the mailing the Notice of Sale within thirty days of ordering the mailing the Notice of Acceleration.

76. Wells Fargo contended that this sale was subsequently postponed to July 28, 2017.

77. This sale was not adjourned as provided in R.I.G.L. 34-11-22.

78. R.I.G.L. 34-11-22 states that the mortgagee had:

power to adjourn such sale from time to time, provided that publishing of the notice shall be continued, together with a notice of the adjournment or adjournments, at least once each week in that newspaper

79. The purported Foreclosure Deed attached as Exhibit 7, specifically does not reference any adjournment of the sale.

80. This Foreclosure Deed was purportedly executed on behalf of Federal National Mortgage Association.

81. However, after the assignment of mortgage to Fannie Mae and prior to receiving the Notice, I did not receive any correspondence from the Federal National Mortgage Association or any servicer acting on its behalf advising me of a Mediation Conference as described in Rhode Island General Laws § 34-27-3.2.

82. Under the terms of the provisions of R.I.G.L. 34-27-3.2, I as surviving spouse of Dianne L. Fitch and signer of the mortgage was entitled to be provided Notice of the Mediation by Federal National Mortgage Association Mae and two Notices from Rhode Island Housing prior to Federal National Mortgage Association mailing a Notice of Sale.

83. I never received such notices for mediation from Federal National Mortgage Association.

84. No Notices were ever mailed by Wells Fargo or Rhode Island Housing which were directed to and addressed to me as signer of the mortgage, occupant of the property and owner of the property, which offered me any mediation.

85. R.I.G.L. 34-27-3.2 defines the mortgagor as:

"Mortgagor" means the person who has signed a mortgage in order to secure a debt or other duty, or the heir or devisee of such person provided that:

(i) The heir or devisee occupies the property as his or her primary residence; and

(ii) The heir or devisee has record title to the property, or a representative of the estate of the mortgagor has been appointed with authority to participate in a mediation conference.

86. I signed the mortgage, was the heir of Dianne L. Fitch and had record title to the property.

87. Wells Fargo and Federal National Mortgage Association were aware that I signed the mortgage, lived in the property and was titled owner to the property since 2014.

88. The failure of Wells Fargo and Federal National Mortgage Association to provide me this mediation rendered this purported foreclosure sale void.

89. On or about July 28, 2017, Fannie Mae claims to have conducted a purported foreclosure sale of the Property.

90. The purported Foreclosure Deed made no reference to me as signer of the mortgage.

91. The Notice of Sale did not advise me that the property would be sold pursuant to a mortgage which I signed.

92. Only Dianne L. Fitch was referenced in the Foreclosure Deed, the default letter, the acceleration notice and the Notice of Sale.

93.     I signed the mortgage and subsequently obtained ownership of the property. No foreclosure of my interest in the property occurred as to my interest in the property.

94.     Neither Wells Fargo, Fannie Mae, nor FHFA have provided the me an opportunity for an evidentiary hearing with Fannie Mae or FHFA at which the I could have an opportunity to: confront and cross-examine persons who supplied information upon which the foreclosure action is grounded; present arguments and evidence to dispute the allegations of Wells Fargo, Fannie Mae, and FHFA prior to the termination of my interest in the Property; be represented by counsel during a hearing prior to the termination of their interest in the Property; and to have a neutral hearing officer make a determination based on applicable law and the evidence adduced at a hearing prior to the termination of my interest in the Property.

95.     Had I had an opportunity for a hearing, I could have presented evidence to challenge the foreclosure in one or more of the following ways:

    a.     Fannie Mae was not the mortgagee on the date of the foreclosure sale.

    b.     Fannie Mae failed to provide the required foreclosure notices to me, to comply with Rhode Island foreclosure statutes including § 34-27-3.2.

    c.    Fannie Mae failed to act in good faith as required and defined by § 34-27-3.2.

    d.    Fannie Mae failed to mail a default notice and acceleration notice pursuant to the terms of the mortgage and the note.

KENNETH FITCH

Subscribed and sworn to before me on September 21, 2021.

_/s/ illegible_
NOTARY PUBLIC

_John B. Ennis_

[Notary Seal: JOHN B. ENNIS, NOTARY PUBLIC, STATE OF RHODE ISLAND, My Comm. Expires 06-28-2021, Commission # 4813]