UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| KENNETH FITCH<br>ESTATE OF DIANNE L. FITCH,<br><br>    Plaintiffs,<br><br>v.<br><br>FEDERAL HOUSING FINANCE AGENCY, FEDERAL NATIONAL MORTGAGE ASSOCIATION, WELLS FARGO BANK, N.A., HARMON LAW OFFICES, P.C., 266 PUTNAM AVENUE, LLC, RUSHMORE LOAN MANAGEMENT SERVICES, LLC, US BANK NATIONAL ASSOCIATION AS TRUSTEE FOR RMAC TRUST, SERIES 2016-CTT,<br><br>    Defendants. | CIVIL ACTION NO. 1:18--cv-00214-JJM-PAS |

**COMBINED MEMORANDUM OF LAW IN SUPPORT OF FEDERAL NATIONAL MORTGAGE ASSOCIATION'S OPPOSITION TO PLAINTIFFS' SUMMARY JUDGMENT MOTION AND IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

Plaintiffs, Kenneth Fitch and Estate of Diane L. Fitch ("Plaintiffs"), pursue three defenses to foreclosure in a partial summary judgment motion filed against Federal National Mortgage Association ("Fannie Mae"), which are not supported by the undisputed facts of this case or under Rhode Island law. First, Plaintiffs challenge delivery and the contents of a Notice of Default, which they received and which on review strictly complies with Paragraph 22 of the Mortgage. Second, Plaintiffs challenge compliance with the pre-foreclosure Notice of Mediation under Rhode Island law despite receiving and ignoring the notice and while demanding a second notice once the mortgage was assigned to Fannie Mae. Third, Plaintiffs argue that Fannie Mae's sale of their loan prior to the foreclosure prohibited the sale despite undisputed evidence that Fannie Mae sold the loan while rights in the mortgage were retained so that regular servicing and pursuit of foreclosure

could proceed. Beyond Plaintiffs' claims and defenses, a review of the Notice of Default demonstrates strict compliance with the pre-foreclosure disclosures required in Plaintiffs' Mortgage. At a point in the case where this Court must move beyond mere allegations and claims, the facts in evidence demonstrate that Plaintiffs present no viable challenge to foreclosure and no injury to claim a violation of the Truth in Lending Act, such that Plaintiffs' Motion for Partial Summary Judgment should be denied and the Court should grant Fannie Mae's cross-motion for summary judgment.[1]

## II. STATEMENT OF FACTS

On December 31, 2009, Diane L. Fitch ("Ms. Fitch") borrowed $96,648 dollars from Wells Fargo Bank, N.A. ("Wells Fargo") (Promissory Note, ECF No. 163-1 at pp. 2-3.) Ms. Fitch signed a Promissory Note (the "Note") through which she promised to repay the loan with interest through regularly monthly payments in the amount of $526.24. (*Id.*) Ms. Fitch also entered into a mortgage agreement with Wells Fargo on that same date (the "Mortgage") through which she secured repayment of the loan with a lien on property located at 73 Kay Street, Cumberland, Rhode Island (the "Property"). (Mortgage, ECF No. 163-2 at pp. 3.)

The Mortgage included several terms and conditions that are key to the adjudication of all claims made in this case. First, the Mortgage defined Borrower as Diane L. Fitch. (Mortgage, ECF No. 163-2 at p. 1.) Second, the Mortgage provided that "Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise." (*Id.* at p. 10.) Third, Kenneth Fitch ("Mr. Fitch") signed the Mortgage as a non vested spouse. (*Id.* at p. 14.)

---

[1] Fannie Mae's Cross-Motion for Summary Judgment is limited to Counts II-VI. Fannie Mae reserves the right to pursue a cross-motion if and when Plaintiffs pursue a summary judgment motion on Count I (Deprivation of Property without Due Process). As for Counts VII-XII, the Magistrate's Report and Recommendations indicates that these claims are pursued solely against Wells Fargo and has dismissed all claims under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (ECF No. 157.)

Fourth, and critical to this case, the Mortgage required the Lender to "give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement" in the Mortgage. (*Id.* at p. 13.) This notice must include the following disclosures: "(a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property." (*Id.*) The Mortgage further required the notice to inform the Borrower of the "right to reinstate after acceleration and the right to bring court action to assert he non-existence of a default or any other defense of Borrower to acceleration and sale." (*Id.*)

On or about August 16, 2016, Wells Fargo sent Ms. Fitch a letter in reference to the mortgage loan (the "Notice of Default"), which noticed default on the loan for failure to make payments due. (Notice of Default, ECF No. 163-3 at p. 3.) The Notice of Default provided action that was required to cure the default: "[t]o cure the default you must pay the total delinquency against your account, which as of today's date is…$6,655.44." (*Id.*) The Notice of Default provide a date of September 20, 2016, more than 30 days after August 16, 2016, on or before which default must be cured. (*Id.*) The Notice of Default further provided that if funds were not received by September 20, 2016, Wells Fargo would proceed with acceleration and once acceleration has occurred may take steps to terminate the borrower's ownership of the property by foreclosure proceeding. (*Id.*) Finally, the Notice of Default provided: "If foreclosure is initiated, you have the right to assert in the foreclosure proceeding, or to bring court action to assert, the non-existence of a default, to argue that you did keep your promises under the Mortgage Note and Mortgage, and to present any other defenses that you may have" and "You have the right to reinstate your Mortgage…after acceleration." (*Id.*)

1010708\309609985.v1

On March 22, 2017, Wells Fargo assigned the Mortgage to Fannie Mae by Corporate Assignment of Mortgage recorded in the Cumberland Land Evidence Records at Book 1738, Pg. 560 on April 3, 2017. (Assignment of Mortgage, Ex. B to Amended Complaint, ECF No. 60-2.) On or about April 20, 2017, Harmon Law Offices ("Harmon"), as attorney for the foreclosing mortgagee, sent the Estate of Diane Fitch a Notice of Mortgage Foreclosure Sale, which informed the Estate that a foreclosure was scheduled to take place on June 13, 2017. (Notice of Sale, ECF No. 163-6 at p. 2.) On July 28, 2017, Fannie Mae foreclosed on the Mortgage and sold the Property to 266 Putnam Ave, LLC ("Putnam") for $188,000. (Foreclosure Deed, ECF No. 163-7 at p 3.) The Foreclosure Deed included an affidavit executed by Harmon in which counsel identified the sale originally scheduled for June 13, 2017 as continued and with publications of continuance on June 22, 2017, June 29, 2017, July 6, 2017, July 13, 2017, July 20, 2017 and July 27, 2017 tin the Pawtucket Times. (*Id.* at p. 11.) The Foreclosure Deed also included a Certificate of Compliance with Mediation Requirement pursuant to R.I. Gen. Laws § 34-27-3.2. (*Id.* at p. 25.) The Certificate of Compliance indicates that a Notice of Mediation Conference was properly served, and that after two attempts made by Rhode Island Housing to contact the mortgagor, the mortgagor failed to respond to Rhode Island Housing to appear for conference or otherwise participate in mediation. (*Id.*)

Prior to the July 28, 2017 foreclosure, Fannie Mae sold Plaintiffs' loan to Rushmore Loan Management Services, LLC ("Rushmore"). (Mortgage Loan Purchase and Sale Agreement ("MLPSA"), filed under seal at ECF No. 111 attachment #1.) The MLPSA appointed Wells Fargo as Interim Servicer as Wells Fargo, defined the Interim Period for servicing commencing on the July 26, 2017 Closing Date and ending on the Servicing Transfer Date, and disclosed an Interim Servicing Agreement ("ISA") independently negotiated between Wells Fargo and Rushmore

pursuant to which Wells Fargo would service Plaintiffs' loan during the Interim Period. (*Id.* at p. 4.) The MLPSA also provided that from the Closing Date to the Servicing Transfer Date, the servicing of the Mortgage Loans shall be performed pursuant to the terms and conditions of the ISA. (*Id.* at p. 25.) The ISA provided for an Interim Period beginning on the closing date of July 26, 2017 and ending on the servicing transfer date of October 1, 2017. (Affidavit of Rushmore Loan Management Services, LLC, filed under seal at ECF No. 131-1 at p. 1.) The ISA further appointed Wells Fargo as servicer to administer the Mortgage Loans and specifically included "manage all pre-sale, judicial and non-judicial foreclosure processes up to the Transfer Date, which shall include forgoing the referral of foreclosure proceedings on all defaulted Mortgage Loans from and after the Closing Date." (*Id.* at pp. 8-10.)

### III. LEGAL ARGUMENT

A.   <u>The Notice of Default Strictly Complies with Paragraph 22 of Plaintiffs' Mortgage</u>.

A comparison of the Notice of Default Plaintiffs received to Paragraph 22 of the Mortgage demonstrates strict compliance with the mortgage's mandatory pre-foreclosure notice requirements. Regardless of whether this Court relies on the Rhode Island Supreme Court's decision in *Woel v. Christiana Trust, as Trustee*, 228 A.3d 339 (R.I. 2020), or the Rhode Island federal court's decision in *Martins v. Federal Housing Finance Agency*, 214 F.Supp. 3d 163 (D.R.I. 2016), strict compliance analysis is the same. In both decisions, the reviewing court required a notice of default to inform the borrower of: (1) the default; (2) the action required to cure the default; (3) the date by which the default must be cured; (4) the fact that failure to cure the default by that date may result in acceleration of the loan and sale of the property; (5) the right reinstate after acceleration; and (6) the right to bring court action to assert the non-existence of a default or any other defense to acceleration and sale. *Woel*, 228 A.3d at 341; *Martins*, 214 F.Supp. 3d at 169-170. In *Martins*, 214 F.Supp. 3d at 169-70, the Rhode Island federal court concluded

that both notices of default did not strictly comply with Paragraph 22 of the mortgage because neither "stated with specificity the last day by which Ms. Martins was required to pay in order to avoid foreclosure and sale of the Property." *Martins* emphasized the necessity of providing a specific date to cure with the understanding that this was the "last day" by which a borrower could pay to avoid foreclosure. *Id.* In *Woel*, 228 A.3d at 346, the Rhode Island Supreme Court concluded that the notice of default did not strictly comply with Paragraph 22 because the default notice failed to inform the borrower of the right to reinstate after acceleration.

A comparison of the disclosures Wells Fargo provided to Plaintiffs in the August 16, 2016 Notice of Default with Paragraph 22 of the Mortgage demonstrates strict compliance. Paragraph 22 of the Mortgage required the Lender to provide notice that specified:

> (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.

(Mortgage, ECF No. 163-2 at p. 13.) The August 16, 2016 Notice of Default provided the following disclosures: (a) "Our records indicate that your loan is in default for failure to make payments due;" (b) "To cure the default you must pay the total delinquency against your account…;" (c) "To avoid possible acceleration, you must pay this amount on or before September 20, 2016, to Wells Fargo Home Mortgage, 3440 Flair Drive, El Monte, CA 91731….;" and (d) "If funds are not received by the above referenced date, we will proceed with acceleration. Once acceleration has occurred, we may take steps to terminate your ownership in the property by a foreclosure proceeding, which could result in Lender or another person acquiring ownership of the property." (Notice of Default, ECF No. 163-3 at p. 3.) The Notice of Default further informed

Plaintiffs of their right to court action: "If foreclosure is initiated you have the right to assert in the foreclosure proceeding, or to bring action to assert, the non-existence of a default, to argue that you did keep your promises and agreements under the Mortgage Note and Mortgage, and to present any other defenses that you may have. (*Id.*) The Notice of Default further informed the Plaintiffs of their right to reinstate: "You have the right to reinstate your Mortgage Note and Mortgage or Deed of Trust after acceleration…." (*Id.*) The disclosures issued to Plaintiffs in the Notice of Default match the required disclosures under Paragraph 22 of the Mortgage.

      B.    <u>Plaintiffs Present No Valid Objections to the Notice of Default</u>.

Plaintiffs pursue a series of objections to the Notice of Default that misinterpret and mischaracterize the outcome and import of the Rhode Island Supreme Court's decision in *Woel*. First, Plaintiffs challenge the amount necessary to cure by arguing that *Woel* demands the removal of expenses and fees charged on the mortgage loan from the Notice of Default. (Plaintiffs' Memorandum, ECF No. 160-1 at pp. 4-6.) Plaintiffs claim that the *Woel* court's explanation of all payments a borrower is required to make in order to reinstate somehow removes and excludes their obligation to pay costs, fees and expenses owed on the loan in order to cure the default prior to acceleration. (*Id.*) No part of the *Woel* decision demands that a mortgagee remove itemized fees from the overdue principal and interest in a pre-foreclosure notice of default. Recently, Judge McIlroy of this Court rejected the very same legal theory in part because this interpretation of *Woel* "would deny the mortgagee's contractual right to collect funds advance out of escrow (to pay taxes and insurance), late fees assessed on the account when the plaintiffs missed their monthly payment, and fees and expenses charged to the account and recoverable under the express terms of the mortgage contract." *Faira v. Citizens Bank, N.A.*, C.A. No. 19-CV-00426, 2021 U.S. Dist. LEXIS 208206 at *7-*8 (D.R.I. Oct. 28, 2021); *see also U.S. Bank Nat'l Ass'n v. Torres*, C.A. No. 20-CV-00227, 2021 U.S. Dist. LEXIS 176836 at *8-*9 (D.R.I. Sept. 13, 2021).

Second, Plaintiffs employ *Woel* to argue that a separate notice of acceleration is required in order for a lender to proceed with foreclosure. (Plaintiffs' Memorandum, ECF No. 160-1 at pp. 5-9.) Not only is this requirement absent from any holding, opinion or discussion of Rhode Island law within the *Woel* decision, the Mortgage itself does not include any separate requirement to notice acceleration. Instead, Paragraph 22 of the Mortgage provides that "[i]f the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand…." (Mortgage, ECF No. 163-2 at p. 13.) The plain and express terms of the Plaintiffs' Mortgage demonstrate that an acceleration letter is not required. The Rhode Island federal court has analyzed both *Woel* and notices of default, acceleration and power of sale foreclosure provisions standard in residential mortgages to conclude that a secondary notice of acceleration is not required. *Faria v. Citizens Bank, N.A.*, 2021 U.S. Dist. LEXIS 208206 at *8-*9; *U.S. Bank Nat'l Ass'n v. Torres*, 2021 U.S. Dist. LEXIS 173836 at *9-*10.

Plaintiffs ignore the plain and ordinary language of the Mortgage in order to argue that Paragraph 10 of the Note requires a notice accelerating the mortgage loan. The acceleration notice requirement in Paragraph 10, however, only applies where any part of the Property or any interest in the Property is sold or transferred without Lender's prior written consent. (ECF No. 163-1 at p. 4.) No facts in this case support a sale or transfer of the Property without the lender's prior written consent. Plaintiffs also argue a second 30-day period to cure default based upon an interpretation of Paragraph 6(c) of the Note. (Plaintiffs' Memorandum, ECF No. 160-1 at p. 9). Plaintiffs' argument ignores the overlap in terms between the Notice of Default provision within the Note and the notice of default disclosures required in under Paragraph 22 of the Mortgage in order to demand 2 separate 30 day periods to cure default.

Third, Plaintiffs challenge the date to cure in the Notice of Default by arguing that the notice deceptively confused Mr. Fitch by not specifying a particular date to cure. (Plaintiffs' Memorandum ECF No. 160-1 at pp. 11-12.) Contrary to Plaintiffs' assertion, there is no dispute in this case that the Notice of Default provided the following deadline to cure:

> To avoid the possibility of acceleration, you must pay this amount on or before September 20, 2016, to Wells Fargo Home Mortgage, 3440 Flair Drive, El Monte, CA 91731.

(Notice of Default, ECF No. 163-3 at p. 3.) Plaintiffs maintain that there was no date specified because they believe that the "on or before" language included every date from receipt of the letter up to September 20, 2016.

Plaintiffs' argument is nonsensical on review of the analysis and holdings of *Woel* and *Martins*. In *Martins*, 214 F.Supp. 3d at 169-70, the Rhode Island federal court concluded that both notices of default did not strictly comply with Paragraph 22 of the mortgage because neither "stated with specificity the last day by which Ms. Martins was required to pay in order to avoid foreclosure and sale of the Property." *Martins* emphasized the necessity of providing a specific date to cure with the understanding that this was the "last day" by which a borrower could pay to avoid foreclosure. *Id.* The *Woel* decision does not expand the strict compliance requirements from *Martins*; the same requirement remains that a notice of default provide a specific date as opposed to the number of days from delivery. 228 A.3d at 345-46. *Hedco, LTD. v. Blanchette*, 763 A.2d 639, 642-43 (R.I. 2000) similarly required that an evicting landlord provide an actual date, as opposed to a demand to quit "within ten (10) days of the date that this Notice was mailed to you." Unlike *Martins* or *Hedco*, where no date was provided at all, here Plaintiffs believe no date was provided because the Defendants demanded cure on or before a specified date of June 6, 2018. Applying *Martins*, September 20, 2016 was the last day Plaintiffs could have cured the default to avoid foreclosure. Moreover, the "on or before" language recognizes the specific disclosure

9

required under mortgage Paragraph 22(d): "that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured…." (Mortgage, ECF No. 163-2 at p. 13.) Rhode Island law and the express terms of the Mortgage reject Plaintiffs' theory.

This Court, while reviewing the same notice date claim in *Bradbury v. Deutsche Bank Nat'l Trust Co.*, C.A. No. 18-690, 2020 U.S. Dist. LEXIS 63679, *17-*18 (D.R.I. April 10, 2020) dismissed Plaintiffs' theory on a motion to dismiss:

> The Bradburys' other contract argument makes even less sense. They attack the language in the Notice of Default – "on or before 06/06/2018" – as failing to provide the contractually mandated "date…by which the default must be cured." Compl. Ex. A at 12. They argue that, although this phrase clearly does specify a date ("06/06/2018"), it also set a range leading up to the date and therefore is inconsistent with Paragraph 22 of the Mortgage. Their argument omits the very next phrase in Paragraph 22, which specifies that it is the "failure to cure the default <u>on or before</u>" this specific "date" that may result in acceleration. As Defendants point out, if the Bradburys' argument were sustained, it would mean that a mortgagee's communications with the mortgagor can be found to be in breach even though the mortgagee conformed to the language of the mortgage, as courts have consistently required.

Notwithstanding Kenneth Fitch's purported confusion with the deadline to cure, the face of the Notice of Default provides a specific date to cure, and the "on or before" language employed mirrors the disclosures required under Paragraph 22 of Plaintiffs' Mortgage.

Beyond misinterpretations of the *Woel* decision, Plaintiffs pursue a series of challenges to the Notice of Default that fail as a matter of law. While Plaintiffs admit to receiving the Notice of Default, Plaintiffs object on grounds that no separate letter was mailed to Kenneth Fitch. (Plaintiffs' Memorandum, ECF No. 160-1 at pp. 10-11.) This argument ignores several provisions within the Mortgage. Paragraph 22 of the Mortgage requires the lender to give notice to the Borrower. (Mortgage, ECF No. 163-2 at p. 13.) The Mortgage defines Borrower as Dianne L. Fitch. (*Id.* at p. 1.) Ms. Fitch signed the Mortgage as Borrower, and Kenneth Fitch signed the Mortgage as a non-vested spouse. (*Id.* at p. 14.) The terms and signatures of the Mortgage

demonstrate that Kenneth Fitch was not a borrower under this agreement and, as a result, was not entitled to notice of default. Even if Mr. Fitch could plausibly argue that he was entitled to notice as a borrower in addition to the Notice of Default sent to Mrs. Fitch, Paragraph 15 of the Mortgage provides that "Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law express requires otherwise." (*Id.* at p. 10.) There is no requirement of Rhode Island law that each and every borrower receive notice of default, the Mortgage deems notice to one borrower as notice to all, and most importantly, the Plaintiffs admit to receipt of the Notice of Default. On review of the Mortgage contract alone, Plaintiffs present no basis to challenge delivery of the Notice of Default.

Plaintiffs also object to the Notice of Default on grounds that the notice excluded any reference to a statutory power of sale and did not advise of the possibility of acceleration and foreclosure. Once again, a review of the Mortgage and the Notice of Default rejects both arguments. Paragraph 22's mandatory disclosures do not include any notice of the specific type of foreclosure that a lender may pursue. (Mortgage, ECF No. 163-2 at p. 13.) Instead, Paragraph 22 provides that if the borrower does not cure default, the lender at its option may invoke the statutory power of sale and any other remedies permitted by applicable law. (*Id.*) Moreover, if the lender elects to pursue a statutory power of sale, the Mortgage then requires the lender to mail a notice of sale to the borrower. Plaintiffs concede receipt of the April 20, 2017 Notice of Sale. (ECF No. 163-6.) The Notice of Default includes clear and express terms that informed Plaintiffs that the mortgage lender may accelerate the loan unless default is cured. First, the Notice of Default states "Unless the payments on your loan can be brought current by September 20, 2015, it will become necessary to require immediate payment in full (also called acceleration)." The Notice of Default later states: "To avoid the possibility of acceleration, you must pay this amount on or before

September 20, 2016." And finally, the Notice states that "If funds are note received by the above referenced date, we will proceed with acceleration." In three separate sentences on the first page of the Notice of Default, Wells Fargo informed the Plaintiffs that acceleration was possible if they did not cure the default. The face of the Notice of Default conclusively demonstrates disclosure that the loan may be accelerated if default is not cured.

Finally, Plaintiffs argue that the now vacated decision in *Thompson v. JPMorgan Chase*, 915 F.3d 801 (1st Cir. 2019) ("*Thompson I*") invalidates the Notice of Default because the Rhode Island Supreme Court has imposed strict compliance on foreclosure notices. (Plaintiffs' Memorandum, ECF No. 160-1 at pp. 17-19.) In *Woel*, 228 A.3d at 346 fn. 12, the Rhode Island Supreme Court footnoted the First Circuit's citation to *Pinti v. Emigrant Mortgage Company, Inc.*, 472 Mass. 226, 33 N.E.3d 1213 (Mass. 2015) in *Thompson I*, noted that the First Circuit vacated *Thompson I* and certified a question to the Massachusetts Supreme Court to review whether a Massachusetts banking regulation required the mortgagee to use language in a notice of default in *Thompson v. JPMorgan Chase, N.A.*, 931 F.3d 109, 110, 111 (1st Cir. 2019) ("*Thompson II*"). Ultimately, the Massachusetts Supreme Judicial Court concluded that a notice of default issued in accordance with a mortgage need not include every single term, including the 5 day limitation on the right to reinstate in Paragraph 19, which Plaintiffs demand in challenge to the Notice of Default in this case. *Thompson v. JPMorgan Chase Bank, N.A.*, 486 Mass. 286, 292-2905 (2020). Regardless of the Massachusetts court's ultimate decision dismissing a borrower's demand for reinstatement disclosures, the Rhode Island Supreme Court determined that *Thompson* "does not apply to this case" in *Woel*, 228 A.3d at 346 fn. 12.

Not one of the issues Plaintiffs present in response to the Notice of Default presents a valid challenge. Plaintiffs rely upon misinterpretations of case law and partial excerpts from the loan

documents where convenient to present an argument wholly out of context and without any factual support on review of the whole of each agreement. Moreover, not one challenge to the Notice of Default can overcome a comparison of the document with the Mortgage's mandatory disclosures required in Paragraph 22 so that this Court should deny Plaintiffs' partial motion and grant Fannie Mae summary judgment.

      C.      <u>Sale of the Plaintiffs' Loan did not Prohibit Fannie Mae's Foreclosure</u>.

Plaintiffs ignore the documents through which Fannie Mae sold their loan, namely the MLPSA and the ISA, to argue that Fannie Mae's July 26, 2017 sale of Plaintiffs' loan prohibited foreclosure on July 28, 2017. (Plaintiffs' Memorandum, ECF NO. 160-1 at pp. 24-26.) Plaintiffs believe that Fannie Mae's loan sale transferred the entirety of their interest. Fatal to this argument are several facts taken from the sale documents that Plaintiffs have not and cannot dispute. First, the MLPSA discloses an interim servicing period for mortgage loans Fannie Mae sold to Rushmore, defines Wells Fargo as Interim Servicer, and identifies an Interim Period of time commencing on the July 26, 2017 closing date and ending on the servicing transfer date. (MLPSA, filed under seal at ECF No. 111, Article I at pp. 4, 7.) Moreover, the MLPSA provides that the terms of the ISA shall control the servicing of all mortgage loans Fannie Mae sold. (*Id.* at Article IV at pp. 25-29) Second, the ISA provides for the appointment of Wells Fargo as interim servicer to service and administer the mortgage loans Fannie Mae sold to Rushmore on an interim basis, and provides Wells Fargo with full power and authority to do any and all things which, in the exercise of its reasonable discretion, it may deem necessary or in Rushmore's best interest. (Affidavit of Rushmore Loan Management Services, LLC, filed under seal at ECF No. 131-1, ISA Article 2.1.) The ISA specifies that these tasks Wells Fargo may undertake include "manag[ing] all pre-sale, judicial and non-judicial foreclosure processes up to the Transfer Date…." (*Id.* at 2.1.12.) Third, at all times relevant the mortgage remained assigned to Fannie Mae so that Fannie

Mae was the appropriate party of record to pursue foreclosure as mortgagee and convey title to 266 Putnam Ave, LLC. (Foreclosure Deed, ECF No. 163-7 at p. 3.)

There is no dispute that Fannie Mae sold Plaintiffs' loan to Rushmore 2 days prior to the foreclosure. There is, however, also no dispute that the MLPSA between Fannie Mae and Rushmore and the ISA between Rushmore and Wells Fargo allowed Fannie Mae's servicer, Wells Fargo, to foreclose on the Property, to foreclose as attorney-in-fact for Fannie Mae, and to convey title out during the period of interim servicing. There is likewise no dispute that Fannie Mae remained mortgagee of record according to the assignment of mortgage recorded in the Property's chain of title, and there are no other assignments or title transfers produced in this case. Plaintiffs' legal argument simply ignores the MLPSA, the ISA, and the assignment of mortgage. Review of these three documents demonstrates the validity of foreclosure despite the loan's sale so that this Court should deny Plaintiffs and grant Fannie Mae summary judgment.

        D.     <u>Plaintiffs Received Notice of Mediation in Compliance with Rhode Island Law</u>.

Plaintiffs argue that they did not receive a notice of mediation in compliance with R.I. Gen. Laws § 34-27-3.2. This argument relies upon a faulty assumption that Plaintiffs are entitled to receive multiple notices on the same default. The undisputed facts of this case demonstrate that Wells Fargo properly notified Plaintiffs of a mediation conference under R.I. Gen. Law § 34-27-3.2, and that two attempts were made to contact Plaintiffs regarding mediation without any response. (Foreclosure Deed, ECF No. 163-7 at p. 25.) Plaintiffs, however, focus on the fact that a second notice was not sent to them when the Mortgage was assigned to Fannie Mae.

In *Cepeda v. Bank of America, N.A.*, C.A. No. 19-CV-00005, 2020 U.S. Dist. LEXIS 177301, *15-*16 (D.R.I. Sept. 28, 2020), the Rhode Island federal court denied the very same argument Plaintiffs present here in relation to Rhode Island's mediation statute. The borrower in *Cepeda* challenged foreclosure by arguing that even though she received a notice of mediation

from Bank of America ("BOA") at the time BOA was her mortgagee, Wilmington Trust National Association, Solely as Trustee for the MFRA Trust 2014-2 ("Wilmington") was required to send the borrower a second mediation notice once BOA assigned the mortgage to Wilmington. The court rejected borrower's demand for two notices because nothing within § 34-27-3.2 provides for multiple opportunities to mediate within a single foreclosure action, and because the Rhode Island Supreme Court has held that when a mortgage is transferred or assigned the assignee or transferee acquires all rights and powers of the transferor or assignor. *Id.*

In this case, Rhode Island Housing's mediation coordinator certified that Wells Fargo notified all Plaintiffs of a mediation conference in accordance with § 34-27-3.2, the coordinator attempted to contact all Plaintiffs regarding mediation but no one responded. Assignment of the Mortgage to Fannie Mae did not require Fannie Mae to notify or otherwise engage Plaintiffs in a second mediation so that Plaintiffs' demand for a second mediation as an objection to foreclosure fails as matter of law.

E.  Plaintiffs Present no Basis to Challenge the Foreclosure's Adjournment.

Plaintiffs challenge the timing of foreclosure by arguing that the sale was not postponed or adjourned in accordance with Rhode Island law. (Plaintiffs' Memorandum, ECF No. 160-1 at pp. 19-21.) The Foreclosure Deed specifically references adjournment of sale and corresponding publications despite Plaintiffs' allegations of a violation of R.I. Gen. Laws § 34-11-22. The Affidavit in support of Foreclosure Deed indicates that "publication of continuance caused to be published on June 22, 2017, June 29, 2017, July 6, 2017, July 13, 2017, July 20, 2017 and July 27, 2017 in the Pawtucket Times." (Affidavit, ECF No. 163-7 at p. 11.) The face of the Affidavit demonstrate compliance with § 34-11-22 and rejects Plaintiffs' challenge to the adjournment of sale.

  F. <u>Fannie Mae's Alleged Failure to Send Monthly Mortgage Statements Does Not Establish Standing to Sue under the Truth in Lending Act in Count VI</u>

Plaintiffs' Truth in Lending Act ("TILA") claim relies on allegations that Fannie Mae, as a creditor, is responsible for monthly mortgage statements that Plaintiffs claim were sent in error since April 20, 2017, but Plaintiffs provide no actual, imminent, concrete and particularized resulting injury. TILA includes provisions for issuing periodic statements for residential mortgage loans:

> **(1)** In general. The creditor, assignee, or servicer with respect to any residential mortgage loan shall transmit to the obligor, for each billing cycle, a statement setting forth each of the following items, to the extent applicable, in a conspicuous and prominent manner:
>
>  **(A)** The amount of the principal obligation under the mortgage.
>
>  **(B)** The current interest rate in effect for the loan.
>
>  **(C)** The date on which the interest rate may next reset or adjust.
>
>  **(D)** The amount of any prepayment fee to be charged, if any.
>
>  **(E)** A description of any late payment fees.
>
>  **(F)** A telephone number and electronic mail address that may be used by the obligor to obtain information regarding the mortgage.
>
>  **(G)** The names, addresses, telephone numbers, and Internet addresses of counseling agencies or programs reasonably available to the consumer that have been certified or approved and made publicly available by the Secretary of Housing and Urban Development or a State housing finance authority (as defined in section 1301 of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 [12 USCS § 1441a-1]).
>
>  **(H)** Such other information as the Bureau may prescribe in regulations.

In this case, Plaintiffs have not and cannot demonstrate any actual injury or harm that results from the TILA violations pursued against Fannie Mae. In *Pemental v. Bank of N.Y. Mellon*, No. 16-483S, 2017 U.S. Dist. LEXIS 122971 (D.R.I. May 10, 2017), this Court dismissed a similarly pleaded TILA claim for failure to send periodic mortgage loan statements, because the

plaintiff failed to allege facts sufficient to demonstrate an injury in fact. Pemental's TILA claim relied upon statutory damages, attorneys' fees, costs and expenses he incurred in asserting the claim. *Id.* at *17-18. Relying upon the U.S. Supreme Court's decision in *Spokeo,* 136 S.Ct. at 1549-50, the court dismissed for lack of injury:

> Plaintiff's only injury is the attorneys' fees, costs and expenses he incurred in asserting his TILA claim. While these would be recoverable if there has been a TILA violation . . . they are not a substitute for the injury-in-fact required by *Spokeo*. If they were, they would subsume the injury-in-fact requirement since, apart from *pro se* claims, every TILA complaint requires the expenditure of attorneys' fees. With no plausible injury-in-fact other than the attorneys' fees and costs in prosecuting the TILA claim alleged as his only actual injury, it is clear that Plaintiff's TILA claims are barred by *Spokeo*.

*Id.* at *18-19. In applying *Spokeo* to TILA claims, when a complaint alleges only a mere technical violation of TILA orphaned from a concrete or particularized injury, that complaint must be dismissed. *Id.* (citing *Davidson v. PNC Bank, N.A.*, No. 1:16-cv-569-WTL-MPB, 2016 U.S. Dist. LEXIS 170523, at *1 n.1 (S.D. Ind. Dec. 9, 2016)). More recently, this Court issued a Report and Recommendations dismissing Wells Fargo from this case on a finding that the Plaintiffs had not established any concrete injury-in-fact that is traceable to alleged violations of the Real Estate Settlement Procedures Act ("RESPA"). (ECF NO. 157 at pp. 13-17.) Specifically, this Court concluded that attorneys fees, costs and expenses in prosecuting a RESPA claim are not a substitute for an injury in fact. (*Id.* at p. 17.)

In this case, Plaintiffs' sole injury consists of the attorneys' fees, costs and expenses he has incurred in pursuit of the TILA claim. Plaintiffs claim the costs of gasoline to visit their attorney, postage costs, copying costs and stationary costs to letters sent to the Defendants in response to the periodic statements, in addition to attorneys fees and costs. (Am. Compl., ECF No. 60 at pp. 35-36.) Plaintiffs have alleged missing time from work, but once again that time was missed in pursuit of this litigation. (*Id.*) The injuries claimed are the costs of filing pursuing legal action.

With no plausible injury in fact other than attorneys' fees and costs in prosecuting the claim, *Spokeo* bars the Plaintiffs' TILA claim, and the Court should grant summary judgment on Count VI in Fannie Mae's favor.

>   G. <u>Plaintiffs Have no Legal Basis to Maintain a Standalone Cause of Action for Injunctive Relief Under Count V</u>

The Court should grant summary judgment on Count V of Plaintiffs' Amended Complaint because injunctive relief is a remedy and not a cause of action. *See*, *e.g.*, *Koufos v. U.S. Bank, N.A.*, 2013 WL 1189502, at *2 (D. Mass. Mar. 21, 2013); *Payton v. Wells Fargo Bank, N.A.*, 2013 WL 782601, at *6 (D. Mass. Feb. 28, 2013); *Marzan v. Bank of America*, 779 F. Supp. 2d 1140, 1146 (D. Haw. 2011); *Jensen v. Quality Loan Service Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010); *In re Wellnx Marketing and Sales Practices Litigation*, 673 F. Supp. 2d 43, 53 (D. Mass. 2009); *State v. Lead Ind. Ass'n, Inc.*, 2001 WL 345830 (R.I. Super. Apr. 2, 2011) (Silverstein, J.). In *State v. Lead Ind. Ass'n, Inc.*, the Rhode Island Superior Court dismissed the State of Rhode Island's cause of action for equitable relief to protect children because Justice Silverstein concluded that "injunctive relief is a remedy and cannot, in itself, be recognized as a substantive claim." *Id.* at *17. Courts in other jurisdictions have dismissed stand-alone causes of action to enjoin foreclosure because injunctive relief is a remedy and not recognized as a separate cause of action. For example, in *Payton v. Wells Fargo Bank, N.A.*, 2013 WL 782601, at *6, a Massachusetts federal court dismissed a borrower's stand-alone cause of action seeking to enjoin foreclosure because Massachusetts law does not recognized this separate cause of action. Here, Plaintiffs assert a stand-alone cause of action seeking injunctive relief. (Am. Compl., ECF No. 60 at ¶¶ 223-231.) Count V of the Complaint demands injunctive relief based upon all of the allegations and claims presented under the other causes of action. (*Id.*) Yet, Count V is a remedy and is not recognized as a separate cause of action under Rhode Island law. Accordingly, The

Court should enter summary judgment in Fannie Mae's favor on the basis that no separate cause of action for injunctive relief exists.

## IV. CONCLUSION

For the reasons stated above, Federal National Mortgage Association requests summary judgment on all claims and denial of Plaintiffs' Motion for Partial Summary Judgment.

Respectfully submitted,

FEDERAL NATIONAL MORTGAGE ASSOCIATION

By: Its Attorneys

*/s/ Samuel C. Bodurtha*
Samuel C. Bodurtha, Bar No. 7075
HINSHAW & CULBERTSON LLP
56 Exchange Terrace
Providence, RI 02903
Phone: 401-751-0842
Fax: 401-751-0072
E-mail: sbodurtha@hinshawlaw.com

Dated:   December 1, 2021

## CERTIFICATE OF SERVICE

I, Samuel C. Bodurtha, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Samuel C. Bodurtha*
Samuel C. Bodurtha, Bar #7075

1010708\309609985.v1