UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| KENNETH FITCH<br>ESTATE OF DIANNE L. FITCH,<br><br>       Plaintiffs,<br><br>v.<br><br>FEDERAL HOUSING FINANCE AGENCY, FEDERAL NATIONAL MORTGAGE ASSOCIATION, WELLS FARGO BANK, N.A., HARMON LAW OFFICES, P.C., 266 PUTNAM AVENUE, LLC, RUSHMORE LOAN MANAGEMENT SERVICES, LLC, US BANK NATIONAL ASSOCIATION AS TRUSTEE FOR RMAC TRUST, SERIES 2016-CTT,<br><br>       Defendants. | CIVIL ACTION NO. 1:18--cv-00214-JJM-PAS |

**FEDERAL NATIONAL MORTGAGE ASSOCIATION'S RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS AND STATEMENT OF ADDITIONAL FACTS**

In accordance with Fed. R. Civ. P. 56 and Local Rule for the District of Rhode Island 56, Federal National Mortgage Association ("Fannie Mae") responds to Plaintiffs' Statement of Undisputed Facts and provides additional facts in response to Plaintiffs' Summary Judgment Motion and Fannie Mae's cross-motion.[1]

1.    Dianne L. Fitch was the owner of real property located at 73 Kay Street, Cumberland, Rhode Island. See Affidavit of Kenneth Fitch.

**Response:**    Admitted.

2.    Dianne L. Fitch died on April 7, 2014, intestate. See Affidavit of Kenneth Fitch.

---

[1] All documents that support of Fannie Mae's response to Plaintiffs' Statement of Undisputed Facts and Statement of Additional Undisputed Facts are taken from Plaintiffs' Amended Complaint, Plaintiffs' Addendum with Exhibits, and from the Master Loan Purchase and Sale Agreement and Interim Servicing Agreement filed with the Court under seal. Fannie Mae cites to each document relied upon in this filing by ECF No.

**Response:**    Admitted.

3.   Pursuant to operation of law, the property was vested in her heirs at law subject to a life estate in the property to Kenneth Fitch as spouse. R.I.G.L. 33-1-1 and 33-1-6.

**Response:**    Admitted.

4.   The property was conveyed to Kenneth Fitch by quitclaim deed dated May 30, 2014 by the mother of Dianne Fitch, her heir at law. See Affidavit of Kenneth Fitch.

**Response:**    Admitted.

5.   At all times this property has been and has continued to be KennethFitch's primary residence. See Affidavit of Kenneth Fitch.

**Response:**    Admitted.

6.   On or about December 31, 2009, Dianne L. Fitch borrowed $96,648.00 from Wells Fargo ("Originating Lender"), which was evidenced by a promissory note (the "Note") on the same date. See Affidavit of Kenneth Fitch, Exhibit 1 and Exhibit 2.

**Response:**    Admitted.

7.   On or about the same date, the Note was secured by a mortgage ("Mortgage") in favor of the Originating Lender. This Mortgage was signed by both Kenneth Fitch and Dianne L. Fitch. See Affidavit of Kenneth Fitchand Exhibit 2.

**Response:**    Diane L. Fitch is identified as and signed the Mortgage as Borrower. Kenneth Fitch signed the Mortgage as "non vested spouse." (Mortgage, ECF No. 163-2 at pp. 1, 14.)

8.   Wells Fargo mailed only decedent, Dianne L. Fitch a letter dated August 16, 2016, which it claimed to be a default notice. See Affidavit of Kenneth Fitch and Exhibit 3.

**Response:**    Admitted.

9. No separate default letter was mailed to Kenneth Fitch. See Affidavit of Kenneth Fitch.

**Response:** Kenneth Fitch was not entitled to receive the default letter because he is not a borrower under the Mortgage. (Mortgage, ECF No. 163-2 at p. 1.) Moreover, even if Kenneth Fitch argued that he was entitled to notice of default as a non vested spouse, the Mortgage provides: "Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise." (*Id.* at p. 10.)

10. Kenneth Fitch had communicated with Wells Fargo after Dianne L. Fitch's death telling it that she had died. See Affidavit of Kenneth Fitch.

**Response:** Admitted.

11. Despite this knowledge Wells Fargo never mailed any documents addressed to Kenneth Fitch. See Affidavit of Kenneth Fitch.

**Response:** Wells Fargo mailed the notice of default to the borrower at the address specified in accordance with the Mortgage. (Mortgage, ECF No. 163-2 at p. 10.)

12. Wells Fargo would not speak with Kenneth Fitch due to the fact that it claimed that he was not the borrower. See Affidavit of Kenneth Fitch.

**Response:** According to the terms and conditions of the Mortgage (ECF No. 163-2) and the Promissory Note (ECF No. 163-1), Kenneth Fitch was not the borrower.

13. Wells Fargo would not accept payments on the mortgage from Kenneth Fitch after Dianne L. Fitch.

**Response:** This statement is not material to the summary judgment motions because Plaintiffs have not argued cure or reinstatement prior to foreclosure. Moreover, Fannie Mae is

unable to respond to this statement of fact because they are without knowledge or information as to Wells Fargo's acceptance of payments.

14. The mortgage, which Kenneth Fitch signed along with Dianne L. Fitch, in Paragraph 22 (c) required a default notice with a specific date to cure stating:

(c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured. See Exhibit 2.

**Response:** Admitted.

15. Exhibit 3 did not state a specific date to cure. See Exhibit 3.

**Response:** Denied. Exhibit 3 provides a date of September 20, 2016 by which the borrower must cure the default. (Notice of Default, ECF No. 163-3.)

16. Exhibit 3 did not specify a specific and accurate amount which had to be cured on a particular date. See Affidavit of Kenneth Fitch and Exhibit 3.

**Response:** Paragraph 22 of the Mortgage does not require the notice of default to include a specific and accurate amount to cure on a particular date. (Mortgage, ECF No. 163-2 at p. 13.)

17. The amount stated as $6,655.44 was not an accurate amount of due for principal and interest. See Affidavit of Kenneth Fitch. See Exhibits 1, 12 and 3.

**Response:** Plaintiffs rely on a conclusory assertion from Kenneth Fitch that the amount was not accurate without any piece of evidence or document to support the claim, there is no Exhibit 12 in and among plaintiff's filings, and Exhibit 3 (Notice of Default, ECF No. 163-3 at p. 3) reflects that the total delinquency was $6,655.44.

18. The promissory note specifically defined the monthly payment as the amount of principal and interest in paragraph 3 of the note. See Exhibit 1

**Response:**   Admitted.

19.   The monthly payment of principal and interest was $536.34. See Exhibit 1.

**Response:**   Admitted.

20.   The amount in Exhibit 3 included escrow, late fees, other fees and expenses. See Exhibit 1 and Exhibit 3.

**Response:**   Admitted.

21.   Exhibit 3 did not state that failure to cure may result in acceleration and sale. See Exhibit 3.

**Response:**   Denied. Exhibits 3 states: "If funds are not received by the above referenced date, we will proceed with acceleration. Once acceleration has occurred, we may take steps to terminate your ownership in the property by a foreclosure proceeding, which could result in Lender or another person acquiring ownership of the property." (Notice of Default, ECF No. 163-3 at p. 3.)

22.   Exhibit 3 stated:

If funds are not received by the above referenced date, **we will proceed** with acceleration. Once acceleration has occurred, we may takesteps to terminate your ownership in the property by a foreclosure proceeding, which could result in the Lender or another person acquiring ownership of the property. See Exhibit 3.

**Response:**   Admitted.

23.   Exhibit 3 did not state that failure to cure may result in acceleration and exercise of the statutory power of sale. See Exhibit 3.

**Response:**   Denied. See Defendants' Response to Statement 21.

24. Exhibit 3 did not stated that Wells Fargo would avail itself of the statutory power of sale, which was contained in the mortgage. See Exhibit 3.

**Response:** Admitted.

25. Exhibit 3 stated that if the unspecified amount were not cured that a foreclosure proceeding would occur. See Exhibit 3.

**Response:** Denied. Exhibit 3 states: "If funds are not received by the above referenced date, we will proceed with acceleration. Once acceleration has occurred, we may take steps to terminate your ownership in the property by a foreclosure proceeding…." (Notice of Default, ECF No 163-3 at p. 3.)

26. This language led Kenneth Fitch to believe that a Judicial Foreclosure would be filed.

**Response:** Mr. Fitch's belief is unreasonable and not based in fact because Paragraph 22 does not require the lender to disclose to the borrower that a statutory power of sale foreclosure would proceed (Mortgage, ECF No. 163-2 at p. 13), and no part or provisions within the Notice of Default indicated or identified the intent or expectation of proceeding with a judicial foreclosure.

27. Exhibit 3 indicated that any right to bring a court action to assert the non-existence of a default could only be asserted in the event that Wells Fargo commenced a foreclosure proceeding. See Exhibit 3.

**Response:** Paragraph 22 of the Mortgage requires the lender to inform the borrower of the "right to bring court action to assert the non-existence of a default or any other defense the of Borrower to acceleration and sale." (Mortgage, ECF No. 163-2 at p. 13.) The right to bring court action is limited to defenses in response to foreclosure, namely acceleration and sale.

28. Exhibit 3 did not mention in the letter that failure to cure may result in acceleration and exercise of the statutory power of sale. See Exhibit 3.

**Response:** Paragraph 22 of the Mortgage does not require a lender to inform the borrower of the exercise of the statutory power of sale. (Mortgage, ECF No. 163-2 at p. 13.) The Exhibit 3 informs borrower: "If funds are not received by the above referenced date, we will proceed with acceleration." (Notice of Default, ECF No. 163-3 at p. 3.)

29. Exhibit 3 stated that any rights were limited to argue in the foreclosure proceeding that the borrower did keep her promises and agreements under the Mortgage Note and Mortgage and to present any other defenses that she had to the foreclosure proceeding. See Exhibit 3.

**Response:** Denied. Exhibit 3 also provides notice of the borrower's right to reinstate after acceleration and the right to bring court action to assert the non-existence of a default. (Notice of Default, ECF No. 163-3 at p. 3.)

30. Harmon Law Offices, P.C. mailed Dianne Fitch a letter accelerating the note dated March 31, 2017. See Exhibit 4.

**Response:** Denied to the extent that Harmon Law Offices informed Dianne Fitch that the notice has been accelerated. (ECF No. 163-4 at p. 1)

31. Exhibit 4 stated:

"Even though the note has been accelerated, you may still have the right to reinstate the loan. If so and if you desire to reinstate the loan, you will needto pay and amount of money sufficient to bring the loan current.

**Response:** Admitted.

32.     Fannie Mae transferred its interest in the Mortgage and note to Rushmore Loan Management Services by a Sales Agreement dated July 26, 2017. See Affidavit of Kenneth Fitch and Confidential Purchase and Sales Agreement and Exhibit 5.

**Response:**     Denied on grounds that the Purchase and Sale Agreement reflects that the loan was sold, but the Agreement does not memorialize, acknowledge or otherwise demonstrate that Fannie Mae had transferred its interest in the Mortgage.

33.     On April 20, 2017, on behalf of the Defendants, Harmon Law Offices, P.C. sent a notice of foreclosure sale ("Notice"). See Affidavit of Kenneth Fitch. See Exhibit 6.

**Response:**     Admitted.

34.     Exhibit 6 was mailed within thirty days of the initial Notice of Acceleration.

**Response:**     Admitted.

35.     Exhibit 1 specifically states that if the Lender exercises the right to demand immediate payment in full of all amounts owed under the Note, that Lender shall five Borrower notice of acceleration. This notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15. See Exhibit 1.

**Response:**     Defendants admit this language is found within the Note at Paragraph 10, but Plaintiff omits additional language in Paragraph 10 of the Note that limits the applicability of the provision: "If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender May require immediate payment in full…." (Notice, ECF No. 163-1 at p. 4.) There are no facts in this case that demonstrate sale of the property that would enact or require compliance with this provision.

36.     Wells Fargo contended that this sale was subsequently postponed to July 28, 2017. See Affidavit of Kenneth Fitch and Exhibit 7.

**Response:**     The Foreclosure Deed includes an Affidavit acknowledging continuance of the foreclosure sale to July 28, 2017. (ECF No. 163-7 at p. 11.)

38.     [sic]This sale was not adjourned as provided in R.I.G.L. 34-11-22. See Affidavit of Kenneth Fitch. See Exhibit 7.

**Response:**     Denied. The Foreclosure Deed reflects adjournments of the sale until July 28, 2017 with notice published in the Pawtucket Times. (ECF No. 163-7 at p. 11.)

39.     R.I.G.L. 34-11-22 states that the mortgagee had:

power to adjourn such sale from time to time, provided that publishing of the notice shall be continued, together with a notice of the adjournment or adjournments, at least once each week in that newspaper R.I.G.L 34-11-22.

**Response:**     Admitted.

40.     Exhibit 7, specifically does not reference any adjournment of the sale. See Affidavit of Kenneth Fitch. See Exhibit 7.

**Response:**     Denied. The Foreclosure Deed includes an affidavit that attests to the adjournment of sale and publication of that adjournment in the Pawtucket Times. (ECF No. 163-7 ay p. 11.)

41.     However, after the assignment of mortgage to Fannie Mae and prior to receiving the Notice of Sale, Kenneth Fitch did not receive any correspondence from the Federal National Mortgage Association or any servicer acting on its behalf advising him of a Mediation Conference as described in Rhode Island General Laws § 34-27-3.2. See Affidavit of Kenneth Fitch.

9

**Response:**   Denied in that Plaintiff admits to receiving notices of mediation in Statement 42.

42. Under the terms of the provisions of R.I.G.L. 34-27-3.2, I as surviving spouse of Dianne L. Fitch and signer of the mortgage was entitled to be provided Notice of the Mediation by Federal National Mortgage Association Mae and two Notices from Rhode Island Housing prior to Federal National Mortgage Association mailing a Notice of Sale. R.I.G.L 34-27-3.2.

**Response:**   Admitted that Plaintiffs received notice of mediation.

43. Kenneth Fitch never received such notices for mediation from FederalNational Mortgage Association. See Affidavit of Kenneth Fitch.

**Response:**   Denied in that Plaintiff admits to receiving notices of mediation in Statement 42.

44. No Notices were ever mailed by Wells Fargo or Rhode Island Housing which were directed to and addressed to Kenneth Fitch as signer ofthe mortgage, occupant of the property and owner of the property, which offered him any mediation. See Affidavit of Kenneth Fitch.

**Response:**   Denied in that Plaintiff admits to receiving notices of mediation in Statement 42.

45. R.I.G.L. 34-27-3.2 defines the mortgagor as:

"Mortgagor" means the person who has signed a mortgage in order to secure a debt or other duty, or the heir or devisee of such person provided that:

    i.    The heir or devisee occupies the property as his or her primary residence; and

    ii.    The heir or devisee has record title to the property, or a representative of the estate of the mortgagor has been appointed with authority to participate in a mediation conference.

**Response:**   Admitted.

46. Kenneth Fitch signed the mortgage, was the heir of Dianne L. Fitch and had record title to the property. See Affidavit of Kenneth Fitch. See Exhibit 2.

**Response:** Kenneth Fitch signed mortgage as a "non vested spouse," Mr. Fitch was not an heir under Rhode Island law but received title to the property by quitclaim deed. (Mortgage, ECF No. 163-2 at p. 14.)

47. Wells Fargo and Federal National Mortgage Association were aware that Kenneth Fitch signed the mortgage, lived in the property and was titledowner to the property since 2014. .See Affidavit of Kenneth Fitch.

**Response:** Fannie Mae was aware that Kenneth Fitch signed the mortgage as a non vested spouse. (Mortgage, ECF No. 163-2 at p. 14.)

48. On or about July 28, 2017, Fannie Mae claims to have conducted a purported foreclosure sale of the Property. See Exhibit 7. See Affidavit ofKenneth Fitch.

**Response:** Admitted.

49. The purported Foreclosure Deed made no reference to Kenneth Fitch as signer of the mortgage.  See Affidavit of Kenneth Fitch. See Exhibit 7.

**Response:** Admitted because Kenneth Fitch signed the mortgage as a non vested spouse. (Mortgage, ECF No. 163-2 at p. 14.)

50. Only Dianne L. Fitch was referenced in the Foreclosure Deed, the default letter, the acceleration notice and the Notice of Sale. See Affidavitof Kenneth Fitch. See Exhibits 3, 4, 6 and 7.

**Response:** Admitted.

51.     The Foreclosure Deed does not include a Certification from Rhode Island that Federal National Mortgage Association had provided a mediation notice to Kenneth Fitch. See Exhibit 7.  See Affidavit of Kenneth Fitch.

**Response:**     Denied on the face of the Certification. (Certificate of Compliance with Mediation Requirement, ECF No. 163-7 at p. 25.)

52.     On July 28, 2021 Federal National Mortgage Association had no interest in the note or the mortgage. See Confidential Sales Agreement. See Exhibit 5.

**Response:**     Denied to the extent Fannie Mae maintained interests under the terms and conditions of the Mortgage Loan Purchase and Sale Agreement ("MLPSA") and on title to the property recorded in the Cumberland land evidence records. (MLPSA, filed under seal at ECF No. 111, Article I at pp. 4, 7; Assignment of Mortgage, Ex. B to Amended Complaint, ECF No. 60-2.)

53.     On July 28, 2021 Federal National Mortgage Association was not the agent for the owner of the promissory note. See Confidential Sales Agreement. See Exhibit 5.

**Response:**     Admitted because Fannie Mae's servicer, Wells Fargo, was responsible for the servicing of the mortgage loan under the terms and conditions of the MLPSA and the Interim Servicing Agreement ("ISA"). (MLPSA, filed under seal at ECF No. 111, Article I at pp. 4, 7; ISA Affidavit of Rushmore Loan Management Services, LLC, filed under seal at ECF No. 131-1, at Article 2.1.)

54.     On July 28, 2021 Federal National Mortgage Association was not the agent for the owner of the mortgage. See Confidential Sales Agreement. SeeExhibit 5.

**Response:**     Admitted because Fannie Mae's servicer, Wells Fargo, was responsible for the servicing of the mortgage loan under the terms and conditions of the MLPSA and the Interim Servicing Agreement ("ISA"). (MLPSA, filed under seal at ECF No. 111, Article I at pp. 4, 7; ISA

Affidavit of Rushmore Loan Management Services, LLC, filed under seal at ECF No. 131-1, at Article 2.1.)

55. On July 28, 2021 Wells Fargo Bank, N.A. was not the loan servicer for Federal National Mortgage Association in regard to Plaintiffs' mortgage loan. See Confidential Sales Agreement. See Exhibit 5.

**Response:** Denied. (MLPSA, filed under seal at ECF No. 111, Article I at pp. 4, 7; ISA Affidavit of Rushmore Loan Management Services, LLC, filed under seal at ECF No. 131-1, at Article 2.1.)

56. Pursuant to the Mortgage Loan Purchase and Sales Agreement, Rushmore Loan Management paid consideration to Federal National Mortgage Association for Plaintiffs' mortgage and note on July 27, 2021. See Confidential Sales Agreement.

**Response:** Admitted.

57. On July 27, 2021 Federal National Mortgage Association divested itself of any interest in Plaintiffs' Note and Mortgage. See Confidential Sales Agreement.

**Response:** Denied. (MLPSA, filed under seal at ECF No. 111, Article I at pp. 4, 7; ISA Affidavit of Rushmore Loan Management Services, LLC, filed under seal at ECF No. 131-1, at Article 2.1.)

**FEDERAL NATIONAL MORTGAGE ASSOCIATION'S STATEMENT OF ADDITIONAL UNDISPUTED FACTS**

58. The MLPSA between Fannie Mae and Rushmore Loan Management Services, LLC appointed Wells Fargo as Interim Servicer as Wells Fargo, defined the Interim Period for servicing commencing on the July 26, 2017 Closing Date and ending on the Servicing Transfer Date, and disclosed an Interim Servicing Agreement ("ISA") independently negotiated between Wells Fargo and Rushmore pursuant to which Wells Fargo would service Plaintiffs' loan during the Interim

Period. (Mortgage Loan Purchase and Sale Agreement ("MLPSA"), filed under seal at ECF No. 111 at p. 4.)

59.     The MLPSA provided that from the Closing Date to the Servicing Transfer Date, the servicing of the Mortgage Loans shall be performed pursuant to the terms and conditions of the ISA. (Mortgage Loan Purchase and Sale Agreement ("MLPSA"), filed under seal at ECF No. 111 at p. 25.)

60.     The ISA provided for an Interim Period beginning on the closing date of July 26, 2017 and ending on the servicing transfer date of October 1, 2017. (Affidavit of Rushmore Loan Management Services, LLC, filed under seal at ECF No. 131-1 at p. 1.)

61.     The ISA appointed Wells Fargo as servicer to administer the Mortgage Loans and specifically included "manage all pre-sale, judicial and non-judicial foreclosure processes up to the Transfer Date, which shall include forgoing the referral of foreclosure proceedings on all defaulted Mortgage Loans from and after the Closing Date." (*Id.* Affidavit of Rushmore Loan Management Services, LLC, filed under seal at ECF No. 131-1 at pp. 8-10.)

Respectfully submitted,

FEDERAL NATIONAL MORTGAGE ASSOCIATION

By: Its Attorneys

*/s/ Samuel C. Bodurtha*
Samuel C. Bodurtha, Bar No. 7075
HINSHAW & CULBERTSON LLP
56 Exchange Terrace
Providence, RI 02903
401-751-0842
401-751-0072  (facsimile)
sbodurtha@hinshawlaw.com

Dated:      December 1, 2021

## CERTIFICATE OF SERVICE

      I, Samuel C. Bodurtha, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

      /s/ *Samuel C. Bodurtha*
      Samuel C. Bodurtha, Bar #7075

1010708\309496793.v1