UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

KENNETH FITCH, ESTATE OF DIANNE :
L. FITCH,                            :
   Plaintiffs,           :
                                     :
 v.                              :  C.A. No. 18-214JJM
                                     :
FEDERAL HOUSING FINANCE              :
AGENCY, FEDERAL NATIONAL             :
MORTGAGE ASSOCIATION, WELLS          :
FARGO BANK, N.A., 266 PUTNAM         :
AVENUE, LLC, RUSHMORE LOAN           :
MANAGEMENT SERVICES, LLC,            :
US BANK NATIONAL ASSOCIATION         :
AS TRUSTEE FOR RMAC TRUST,           :
SERIES 2016-CTT,                     :
   Defendants.           :

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

 Now pending before the Court are two motions for partial summary judgment filed by Defendant 266 Putnam Avenue, LLC ("Putnam"). ECF Nos. 96 & 117. Together, they are dispositive of all claims against Putnam in this case.

 The first filed of the two (ECF No. 96) is a motion for partial summary judgment that targets various claims of Plaintiff[1] (Kenneth Fitch and the Estate of Dianne L. Fitch), all premised on the proposition that the July 28, 2017, foreclosure sale of the Fitch residence at 73 Kay Street, Cumberland, Rhode Island ("Real Estate"), to Putnam, a *bona fide* purchaser that paid $188,000, is void. Specifically, the first motion challenges Plaintiff's contentions that (a)

---

[1] In using "Plaintiff" to refer collectively to the Fitches and/or singularly to each of them, the Court adopts a convention it has used previously in this case, acknowledging that this glosses over the history of who owned the Real Estate and who was the mortgagor or the borrower at various points in time. Because these details are relevant to the instant motions, where it matters, this report and recommendation will refer specifically to Kenneth Fitch, Dianne Fitch/Dianne L. Fitch and the Estate of Dianne Fitch.

the mortgage default notice failed strictly to comply with Paragraph 22 of the mortgage; (b) the notice of foreclosure was sent prematurely; (c) the various notices (including the notice of mediation required by R.I. Gen. Laws § 34-27-3.2) were sent to Diane Fitch/Dianne L. Fitch, who had died; and (d) Defendant Federal National Mortgage Association ("Fannie Mae") was not the mortgagee at the time of the foreclosure because the loan that the mortgage securitized had been sold prior to the foreclosure and there might have been an unrecorded assignment of the mortgage.[2]  See ECF No. 147-1.

The second[3] summary judgment motion (ECF No. 117) is focused on the only remaining claim supporting Plaintiff's suit against Putnam – that his due process rights were violated by the non-judicial foreclosure of the Real Estate by Fannie Mae during a period when it was under the conservatorship of Defendant Federal Housing Finance Agency ("FHFA").  Plaintiff argues that the conservatorship made Fannie Mae a governmental actor that was constitutionally barred from depriving a person of property without the procedural due process available in a judicial foreclosure.  See ECF No. 146-1.  Therefore, he contends, the non-judicial foreclosure resulting in the sale to Putnam was void.  Id.  Putnam counters that this argument fails as a matter of law in light of the First Circuit's dispositive decision in Montilla v. Fed. Nat'l Mortg. Ass'n, 999

---

[2] Plaintiff's pleading also alleged that the immediate assignment of the winning bid at the foreclosure sale to Putnam was somehow improper.  Compl. ¶¶ 217-220.  Putnam specifically moved for summary judgment on this allegation, ECF No. 96-1 at 15-16, contending that there is nothing illegal or improper about such an assignment of a contractual right.  Plaintiff failed to respond.  Having reviewed Putnam's unopposed argument, I find that it should be sustained and recommend that the Court enter judgment in Putnam's favor on this allegation.  In any event, by failing to address this aspect of Putnam's motion, Plaintiff "has waived this argument and an award of summary judgment in [Putnam's] favor is appropriate on this claim."  Klunder v. Trs. & Fellows of the Coll. or Univ. in the Eng. Colony of R.I. & Providence Plantations, in New England, in Am., C.A. No. 10-410 ML, 2013 WL 1947121, at *8 (D.R.I. May 9, 2013), aff'd sub nom., Klunder v. Brown Univ., 778 F.3d 24 (1st Cir. 2015).  Plaintiff's challenge to the foreclosure because the winning bidder assigned his contractual rights to Putnam will not be discussed further.

[3] The motions were filed separately because the due process issue addressed in the second motion was the subject of a potentially controlling case pending before the First Circuit.  As soon as that decision issued, the second motion was promptly filed.

F.3d 751 (1st Cir.), petition for rehearing denied, No. 20-1673 (1st Cir. Aug. 9, 2021), petition

for certiorari docketed, No. 21-688 (U.S. Nov. 9, 2021).  Plaintiff responds that Montilla was

overruled by Collins v. Yellen, 141 S. Ct. 1761 (2021), and that his due process claim remains

viable.  ECF No. 146-1 at 3-5.

     The motions have been referred to me for report and recommendation.  28 U.S.C. §

636(b)(1)(B).  For the reasons that follow, I recommend that both motions be granted.

## I.    BACKGROUND[4]

### A.    Dianne L. Fitch Executes the Note and Mortgage as Borrower/Mortgagor

     On December 31, 2009, Dianne Fitch executed a note memorializing a $96,648.00 loan

she borrowed from Defendant Wells Fargo Bank, N.A., ("Wells Fargo"), together with a

mortgage secured by the Real Estate, of which she was the sole owner.  ECF No. 96-2,

Defendant's Statement of Undisputed Facts ("DSUF"), ¶¶ 1, 4; Fitch Aff. ¶¶ 1, 8 & Ex. A-1

("Note").  Dianne Fitch initialed every page and signed the last page of the Note as "Borrower";

her husband, Kenneth Fitch, who resided in the Real Estate but did not then have any ownership

interest, is not a party to and did not sign the Note.  Fitch Aff. ¶ 5; Note at 2-4.[5]  As to the

mortgage,  Fitch Aff. Ex. A-2 ("Mortgage"), Dianne L. Fitch is the defined "Borrower" who, as

mortgagor conveyed the interest in the Real Estate to Wells Fargo: "Borrower does hereby

mortgage, grant and convey to Lender, with Mortgage Covenants upon the Statutory Condition

---

[4] These facts are largely drawn from the parties' Statements of Disputed and Undisputed Facts, as well as from the declarations and affidavits submitted and/or referenced in support of and opposition to the motions, particularly the Affidavit of Kenneth Fitch, ECF No. 151-1 ("Fitch Aff.").  Some come from the Amended Complaint.  Except as indicated in the text, the facts are undisputed.  For further background, interested readers may peruse the Court's reported decisions in this case: Fitch v. Fed. Hous. Fin. Agency, C.A. No. 18-cv-214JJM, 2021 WL 4901909, at *1-2 (D.R.I. Oct. 21, 2021), adopted, 2022 WL 159287 (D.R.I. Jan. 18, 2022); Fitch v. Fed. Hous. Fin. Agency, C.A. No. 18-214JJM, 2021 WL 1985713, at *1 (D.R.I. May 18, 2021); Fitch v. Fed. Hous. Fin. Agency, C.A. No. 18-cv-214-JJM-PAS, 2019 WL 6840768, at *1 (D.R.I. Dec. 16, 2019).

[5] Because the Exhibits on which the parties rely lack consistent pagination, the pin cites are the ECF page numbers.

and with the Statutory Power of Sale, the [Real Estate]." DSUF ¶ 4; Mortgage ¶ B & at 3.

Dianne L. Fitch initialed every page of the Mortgage and signed it on the line for "Borrower."

Mortgage at 14. Below Dianne's signature, Kenneth Fitch signed the Mortgage as a "non vested

spouse." Id.; DSUF ¶ 5; see Fitch, 2019 WL 6840768, at *1 (Dianne Fitch "was the sole owner

of the property; Mr. Fitch was not a party to the loan transaction and did not sign the [N]ote. Mr.

Fitch appears to have executed the mortgage but only in his capacity as a non-vested spouse.")

(citation omitted).

      **B.**      **Kenneth Fitch Becomes Owner of the Real Estate Following Dianne's Death**

On April 7, 2014, Dianne Fitch died intestate. The title to the Real Estate passed by

operation of law to her heir-at-law (her mother), with a life estate in her husband, Kenneth. Fitch

Aff. ¶¶ 2-3; ECF No. 153, Plaintiff's Statement of Undisputed Facts ("PSUF"), ¶¶ 8-9. On May

30, 2014, Ms. Fitch's mother conveyed her interest in the Real Estate to Kenneth Fitch by

quitclaim deed. Fitch Aff. ¶ 4. At that point, Kenneth Fitch became the sole owner of the Real

Estate. PSUF ¶ 13. Kenneth Fitch did not open a probate estate for his deceased wife until well

after the foreclosure, when he was appointed Administrator of the Estate of Dianne Fitch by the

Cumberland probate court.[6] Fitch Aff. ¶ 6; PSUF ¶¶ 10-12. At some point, the loan went into

default for nonpayment. See Fitch, 2019 WL 6840768, at *1.

      **C.**      **Notice of Mediation Pursuant to R.I. Gen. Laws § 34-27-3.2**

---

[6] The summary judgment record reflects only that the probate estate was opened sometime after the foreclosure. Fitch Aff. ¶ 6. The lack of an open probate court estate until after the foreclosure features prominently in Plaintiff's opposition to Putnam's Statement of Undisputed Facts, which uses the word "Estate" to refer to Dianne Fitch after she died. Plaintiff purports to dispute all facts using the word "Estate" because he had not opened an estate in the Cumberland probate court at the time of the events in issue. Putnam's usage is a matter of semantics, that is, a shorthand way to refer to Dianne Fitch after her demise. My analysis of these facts is based on the language that undisputedly was used in the pertinent documents and on the law applicable to providing notice after the mortgagor/borrower has died. The timing of the opening of an estate in the probate court is not material to what is in issue.

4

On June 22, 2016, a mediation coordinator of Rhode Island Housing certified that Wells Fargo was the holder of the Mortgage, that "Dianne L Fitch and KENNETH P FITCH was properly served with the Notice of Mediation Conference pursuant to R.I. Gen. Laws § 34-27-3.2" and that "the Mortgagee is authorized to proceed with the foreclosure action."  Fitch Aff. ¶ 79 & Ex. A-7 at 25 ("Mediation Certificate").  Kenneth Fitch disputes this Certificate by Rhode Island Housing; he avers: "[n]o Notices were ever mailed by [Wells Fargo] or Rhode Island Housing which were directed to and addressed to me as signer of the mortgage, occupant of the property and owner of the property, which offered me any mediation."  Fitch Aff. ¶ 84.

### D.      Notice of Default

On August 16, 2016, Wells Fargo mailed a notice of default to "Dianne L. Fitch" at the address of the Real Estate.  PSUF ¶¶ 14-15; Fitch Aff. ¶¶ 12-13 & Ex. A-3 ("Default Notice").  This Notice advised of the risk of acceleration and the risk that Wells Fargo as mortgagor would pursue the remedies provided for by the Mortgage.  Fitch Aff. Ex. A-3.  It stated the specific amount of the past due payments and the "Total Delinquency," as well as that this total delinquency must be paid "on or before September 20, 2016," (thirty-five days after the mailing of the Notice) to avoid acceleration; it advised that Wells Fargo might take steps to terminate "your" ownership by a foreclosure proceeding; and it also advised of the right to assert defenses in a foreclosure proceeding, to bring a court action to assert defenses, and to reinstate the Note and Mortgage after acceleration.  Id. at 3; DSUF ¶¶ 11-15.  Kenneth Fitch avers that he had "communicated with Wells Fargo . . . telling it that [Dianne Fitch] had died," yet no separate notice with these advisories was mailed addressed specifically to him.  Fitch Aff. ¶¶ 12-15.

### E.      Wells Fargo Assigns the Mortgage to Fannie Mae

On March 22, 2017, Wells Fargo assigned the Mortgage to Fannie Mae.  DSUF ¶ 17. This assignment was duly recorded in the land records of Cumberland, Rhode Island, on April 3, 2017.  Compl.[7] Ex. B.  Fannie Mae became the mortgagee, while Wells Fargo continued to be the servicer of the account.  Compl. ¶¶ 69, 236, 254 & Ex. F-1.

F.      **Notice of Acceleration**

On March 31, 2017, Harmon Law Offices, P.C. ("Harmon"), acting for Wells Fargo as servicer, sent a letter addressed to "Dianne Fitch" at the Real Estate advising that it had been engaged to bring a foreclosure pursuant to the power of sale in the Mortgage in the name of Fannie Mae.  Fitch Aff. ¶¶ 62-63 & Ex. A-4 ("Notice of Acceleration").  This Notice provides that the "[N]ote is hereby accelerated and the entire balance is due and payable," but that "you may still have right to reinstate the loan."  Id. Ex. A-4 at 1. The precise amounts of principal, interest and other charges, and the total outstanding as of the date of the Notice of Acceleration are itemized; the Notice provides that the amount necessary to reinstate "changes daily" and lists a phone number at Wells Fargo to contact to "order a reinstatement or payoff."  Id.  It advises that there is a thirty-day period to dispute the validity of the debt but also that the law does not require the mortgage servicer to delay "until the end of the thirty-day period before proceeding with legal action to collect the debt."  Id. at 2.

G.      **Notice of Foreclosure**

Less than three weeks later, on April 20, 2017, Harmon sent a Notice of Mortgage Foreclosure Sale by certified mail, addressed to "Dianne L. Fitch" at the Real Estate.  DSUF ¶¶ 19-24; Fitch Aff. ¶¶ 70-71 & Ex. A-6 ("Notice of Foreclosure").  As a textual heading on this Notice, it states: "To: Sir/Madam Estate of Dianne Fitch."  Fitch Aff. Ex. A-6 at 2.  The Notice

---

[7] "Compl." refers to the Amended Complaint filed on January 14, 2020.  ECF No. 60.

advises that the foreclosure had been scheduled for 4:00 p.m. on June 13, 2017; it also provides contact information for any "owners, borrowers, mortgagors and authorized parties" to order a reinstatement or payoff.  Id.  As reflected in the foreclosure deed subsequently filed in the Cumberland land records, the foreclosure sale was postponed twice, resulting in it being advertised a total of nine times, with adjournment dates and the final sale date of July 28, 2017, listed in the version of the advertisement copied into the deed.  Fitch Aff. ¶ 79 & Ex. A-7 at 11; see DSUF ¶ 23 (referencing Compl. Ex. E & Larson Aff.).  The first advertisement was published more than thirty days after the date on the Notice of Foreclosure and it refers to the "power of sale contained in a mortgage by Dianne L. Fitch."  DSUF ¶ 23; Compl. Ex. E at 6.

### H.    Fannie Mae Sale of Dianne Fitch Mortgage Loan to Rushmore

On July 26, 2017, Fannie Mae entered into a Mortgage Loan Purchase and Sale Agreement ("Mortgage Loan Sales Agreement"),[8] by which it conveyed to Defendant Rushmore Loan Management Services LLC ("Rushmore") "all of its right, title and interest in and to" certain mortgage loans, including that of "Dianne L. Fitch."  ECF No. 109-4, Ludwig Decl. ¶¶ 2-3 & Ex. A at § 2.01; Ex. B.  The Mortgage Loan Sales Agreement provides that Wells Fargo would continue as the interim servicer until the "Servicing Transfer Date" pursuant to the terms of an "Interim Servicing Agreement."[9]  Id. Ex. A at 7; § 4.01.  As to mortgages for which Fannie Mae is the assignee of record, the Agreement provides that Fannie Mae would prepare and file assignments of such mortgages with the relevant county office "within thirty (30) days following the Servicing Transfer Date," as well as that any such assignments must be placed in

---

[8] The Mortgage Loan Sales Agreement is authenticated by the Declaration of Erich Ludwig ("Ludwig Decl.").  ECF No. 109-4.

[9] The Interim Servicing Agreement is authenticated and explained by the Affidavit of Geoffrey Hader ("Hader Aff.").  ECF No. 131-1.

the "Collateral File."  Id. §§ 2.07, 4.01, Ex. A at Ex. C.  The Affidavit of Anthony Younger of

Rushmore avers that he has access to the Collateral File for the subject loan and reviewed it to

comply with the Court's July 7, 2021, Order; based on his review, "no unrecorded assignment of

mortgage transferring title of the subject Mortgage from Fannie Mae was delivered to Rushmore,

either in physical or electronic form."  ECF No. 131-3, Younger Aff. ¶¶ 2, 6, 7.  Also on July 26,

2017, Wells Fargo and Rushmore entered into the Interim Servicing Agreement.  Hader Aff. Ex.

A.  This Agreement provides that, until the Servicing Transfer Date (October 1, 2017), Wells

Fargo continued to have the power and authority to act with respect to the Mortgage, including

"manag[ing] all pre-sale . . . non-judicial foreclosure processes."  Hader Aff. ¶¶ 6, 7 & Ex. A ¶¶

2.1, 2.1.12.  The Interim Servicing Agreement confirms that there was no assignment of the

Mortgage for the subject loan.[10]  Id. ¶ 8.

### I.     Foreclosure

Two days after the sale of the loan to Rushmore, on July 28, 2017, the foreclosure sale

was held and the Real Estate was sold for $188,000 on a bid that was promptly assigned to

Putnam; the grantor on the foreclosure deed is Fannie Mae and the grantee is Putnam.  DSUF ¶¶

25-26; Fitch Aff. ¶ 79 & Ex. A-7 ("Foreclosure Deed").  The Foreclosure Deed is dated August

24, 2017, and was recorded in the Cumberland land records on October 5, 2017.  Id. Ex. A-7.

### J.     Notice of Sale of the Loan

On August 25, 2017, Rushmore mailed a Notice of Sale of Ownership of Mortgage Loan

to "Dianne L. Fitch" at the Real Estate address advising that "your prior creditor has sold your

loan . . . to us, the new creditor," which is identified in the Notice as Defendant "U.S. Bank

---

[10] All the documents and sworn statements referenced in the preceding two paragraphs of this report and recommendation are confidential and have been sealed by the Court.  Only the provisions that are directly pertinent to this decision are set out in the text.

National Association, not in its individual capacity but solely as trustee for the RMAC Trust, Series 2016-CTT" ("U.S. Bank").[11]  Fitch Aff. ¶¶ 67-68 & Ex. A-5 ("Notice of Sale of Loan"). Wells Fargo is identified as the ongoing servicer.  Id. Ex. A-5.  On November 30, 2017, Wells Fargo sent a letter to Plaintiff's attorney advising that, as of October 1, 2017, Rushmore had become the new servicer.  Compl. Ex. F-1.

### K.   Post-Foreclosure

On October 20, 2017, Putnam initiated proceedings to evict Plaintiff from the Real Estate.  DSUF ¶ 32; ECF 96-3, St. Germain Aff. ¶ 8.  On a date not specified, Kenneth Fitch finally opened a probate estate for Dianne Fitch and was appointed the Estate Administrator. Kenneth Fitch has continuously resided at the Real Estate.  Since its unsuccessful attempt to evict, Putnam has paid all insurance, water bills, and property tax payments in connection with the Real Estate.  St. Germain Aff. ¶ 9; DSUF ¶ 33.  Kenneth Fitch and the Estate of Dianne L. Fitch filed this action on April 19, 2018.

## II.   STANDARD OF REVIEW

"Summary judgment's role in civil litigation is 'to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  St. Amour v. Fed. Home Loan Mortg. Corp., No. 1:18-cv-00254-MSM-PAS, 2020 WL 3964855, at *2 (D.R.I. July 13, 2020) (quoting Garside v. Osco Drug. Inc., 895 F.2d 46, 50 (1st Cir. 1990)).  It should be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

---

[11] The owner of the loan had become Defendant U.S. Bank.  Compl. ¶ 73; see id. ¶ 192 ("[s]ubsequently and prior to the date of the purported foreclosure this loan was securitized and sold by Rushmore Loan Management Group, resulting in the transfer of the mortgage and note to US Bank National Association as trustee for an entity known as the RMAC Trust, Series 2016-CTT").

law." Taylor v. Am. Chemistry Council, 576 F.3d 16, 24 (1st Cir. 2009) (internal quotation

marks omitted).  A fact is material only if it possesses the capacity to sway the outcome of the

litigation; a dispute is genuine if the evidence about the fact is such that a reasonable jury could

resolve the point in the favor of the nonmoving party.  Estrada v. Rhode Island, 594 F.3d 56, 62

(1st Cir. 2010).  The evidence must be in a form that permits the court to conclude that it will be

admissible at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986); Fed. R. Civ. P.

56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be

presented in a form that would be admissible in evidence").  In ruling on summary judgment, the

court must examine the evidence in the light most favorable to the nonmoving party and must not

weigh the evidence or reach factual inferences contrary to that party's competent evidence.

Tolan v. Cotton, 572 U.S. 650, 660 (2014).

## III.     ANALYSIS

### A.     Motion for Partial Summary Judgment (ECF No. 96)

#### 1.     Default Notice Strictly Complies with Paragraph 22 of Mortgage

Plaintiff presents an array of arguments, all pointing to the conclusion that the Default

Notice failed strictly to comply with Paragraph 22 of the Mortgage, rendering the foreclosure

sale to Putnam void.  In support, Plaintiff relies on this Court's decision, Martins v. Fed. Hous.

Fin. Agency, 214 F. Supp. 3d 163 (D.R.I. 2016), holding that the mortgagee had failed to adhere

to Paragraph 22 because the "notices failed, on their face, to specify an exact date by which [the

mortgagor] could cure default, that she could reinstate the loan after acceleration, and that she

has a right to bring court action."  Id. at 170.  He also relies on the Rhode Island Supreme

Court's recent holding in Woel v. Christiana Tr. as Tr. for Stanwich Mortg. Loan Tr. Series

2017-17, 228 A.3d 339 (R.I. 2020).  Woel holds that a foreclosure is void if the default notice

10

failed strictly to comply with Paragraph 22 of the mortgage; <u>Woel</u> found the notice in issue to be fatally deficient for failing to inform the mortgagor of his right to reinstate after acceleration. <u>Id.</u> at 345-48. The Rhode Island Supreme Court's message in <u>Woel</u> is clear: pursuant to Rhode Island law, which permits nonjudicial foreclosures, "[s]trict compliance with paragraph 22 is essential to ensuring that mortgagors are fully informed of their rights and will not be misled by a default notice provided by a mortgagee." <u>Id.</u> at 346.

Plaintiff's litany of challenges to the Default Notice may be briefly summarized. First, Plaintiff charges that the Default Notice fatally deviates from the contractual requirements in Paragraph 22 because it failed to include an accurate amount to cure the default; this argument is based on the inclusion of a "Late Charge Balance" of $105.24 that was added to the past due payments, for the "Total Delinquency" of $6,655.44. Second, he claims that the Default Notice failed to set forth the date by which the default must be cured because it used the phrase "on or before" the specified cure date. Third, he contends that he was deceived by the use of the phrase "<u>will</u> proceed with acceleration" in the Default Notice, instead of "<u>may</u> result in acceleration," which is the wording used by Paragraph 22. ECF No. 147-1 at 14 (emphasis in original and added). Fourth, he alleges that the Default Notice is fatally flawed because it did not state that Wells Fargo would avail itself of the statutory power of sale. And last, he challenges the Default Notice for its omission of a description of the five-day limit (prior to the foreclosure) on the right to reinstate, which is set out in ¶ 19 of the Mortgage. <u>Id.</u> at 16.

Guided by <u>Woel</u>, the Court's analysis begins with Paragraph 22 of the Mortgage, which provides:

> 22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b)

the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.

Fitch Aff. Ex. A-2 ¶ 22. Read against this language, the Default Notice in issue in this case strictly complies with each of its itemized requirements. That is, it:

(a) was sent prior to acceleration;

(b) specifies that "[y]our loan is in default for failure to make payments due" and that, "[t]o cure the default, you must pay the total delinquency . . . which as of today's date is: . . . $6,655.44";

(c) advises that "you must pay this amount on or before September 20, 2016";

(d) specifies that "[u]nless the payment on your loan can be brought current by September 20, 2016, it will become necessary to require immediate payment in full (also called acceleration) of your Mortgage Note and pursue the remedies provided for in your Mortgage . . . which include foreclosure," and "[i]f funds are not received by the above referenced date, we will proceed with acceleration" and that, "[o]nce acceleration has occurred, we may take steps to terminate your ownership in the property by a foreclosure proceeding[]";

(e) informs that "[y]ou have the right to reinstate . . . after acceleration"; and

(f) informs that "you have the right . . . to bring a court action to assert, the non-existence of a default, to argue that you did keep your promises and agreements under the Mortgage Note and Mortgage, and to present any other defenses that you may have."

This Default Notice does not conflate the right to cure and the right to reinstate as condemned in Woel, 228 A.3d at 346-48, nor does it omit a precise date for cure, the right to reinstate and the right to bring a court action as condemned by Martins, 214 F. Supp. 3d at 169-70.

Plaintiff's challenges to these conclusions do not hold water.[12]

---

[12] In passing, Plaintiff also asserts that the subsequent Notice of Acceleration also violated Paragraph 22 in failing to advise of the "amount to reinstate." ECF No. 147-1 at 17. This argument fails because neither Paragraph 22 nor Woel impose any such requirement. Indeed, the secondary notice of acceleration is not contractually mandated at

Plaintiff's first argument – that the Default Notice did not present an accurate amount to cure the default because the total delinquency included late charges – is a nonstarter because there is nothing in Paragraph 22 or in <u>Woel</u> that bars the inclusion of late charges to calculate the net delinquency, because the inclusion of late charges is contractually appropriate pursuant to the express terms of the Note,[13] and because Plaintiff has presented no facts that otherwise create a trial-worthy dispute as to the accuracy of the net delinquency stated in the Default Notice.  <u>See</u> <u>Faria</u>, 2021 WL 5040240, at *3 (rejecting argument that notice of default may not include fees beyond overdue principal and interest in amount to cure delinquency because "[t]he <u>Woel</u> court . . . did not reach any such holding" and because such interpretation would deny mortgagee's contractual right to recover under the express terms of mortgage contract), <u>appeal docketed</u>, No. 21-1976 (1st Cir. Dec. 6, 2021); <u>Torres</u>, 2021 WL 4155080, at *4 (inclusion of late charges in default amount does not render notice noncompliant with Paragraph 22).

Plaintiff's second argument – based on the Default Notice's use of the phrase "on or before" the date to cure the default – fails because it is well settled that "on or before" is consistent with, not in breach of, Paragraph 22.  <u>See, e.g.</u>, <u>Cepeda v. Bank of Am., N.A</u>, No.

---

all.  <u>See</u> <u>Faria v. Citizens Bank, N.A.</u>, C.A. No. 19-CV-00427, 2021 WL 5040240, at *3 (D.R.I. October 28, 2021) ("subsequent notice of acceleration is not contractually required"); <u>U.S. Bank Nat'l Ass'n, as Tr. for Residential Asset Sec. Corp., Home Equity Mortg. Asset-Backed Pass-Through Certificates, Series 2005-EMX1 v. Torres</u>, No. 1:20-cv-00227-MSM-LDA, 2021 WL 4155080, at *4 (D.R.I. Sept. 13, 2021), <u>motion to alter judgment pending</u>, (Paragraph 22 does not require secondary notice of acceleration).  Alternatively, this argument should be rejected because it is undeveloped and should be deemed waived.  <u>United States v. Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990) (issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived).

[13] To buttress his claim that late charges may not be included in the net delinquency, Plaintiff cites to language in the Note that defines the base "monthly payment" as $536.34 per month, comprising principal and interest.  Note ¶ 3; <u>see</u> ECF No. 147 at 12-13.  Plaintiff is simply wrong in arguing that this language contractually precludes the inclusion of late charges as part of the total delinquency.  Paragraph 3 of the Note specifically provides that the obligation to pay includes "any other charges described below"; these expressly include the right to add "a late charge" to the monthly payment if it is overdue, as well as to require the borrower to pay "costs and expenses in enforcing this Note," and to pay "reasonable attorneys' fees."  Note ¶ 6.  These contractual provisions of the Note plainly permit the inclusion of the "Late Charge Balance" as part of the net delinquency.

1:19-CV-00005-MSM-PAS, 2020 WL 5775900, at *5 (D.R.I. Sept. 28, 2020) (notice that used "on or before" to specify date for cure "complied with all the substantive requirements set forth in Paragraph 22"), aff'd, No. 21-1176 (1st Cir. Dec. 30, 2021); Bradbury v. Deutsche Bank Nat'l Tr. Co. as Tr. for GSAMP Tr. 2005-WMC1, C.A. No. 18-690WES, 2020 WL 1815897, at *6 (D.R.I. Apr. 10, 2020) (challenge to use of "on or before" should be rejected because it "makes even less sense"), adopted by text order, (D.R.I. June 25, 2020), amended, (D.R.I. Feb. 22, 2021); Citibank, N.A. as Tr. for Am. Home Mortg. Assets Tr. 2006-3, Mortg. Backed Pass-Through Certificates Series 2006-3 v. Caito, C.A. No. 18-427-JJM-LDA, 2019 WL 6896309, at *3 (D.R.I. Dec. 18, 2019) ("on or before" language used in notice tracks Paragraph 22 and does not render notice defective), appeal docketed, No. 20-1100 (1st Cir. Jan. 22, 2020).

Plaintiff's third assay to void the foreclosure – because the Default Notice advised that, in the event of failure to cure, "we **will** proceed with acceleration," instead of using Paragraph 22's wording: "failure to cure . . . **may** result in acceleration" – is doomed because this minor deviation from the words used in Paragraph 22 results in a nondeceptive advisory that strictly complies with Paragraph 22 in that it clearly conveys that acceleration is a risk that not just "may" happen, but, in the circumstances here, "will" follow the failure to cure.  Plaintiff's contention – that when he received and read the Default Notice, he was somehow deceived by "we **will** proceed with acceleration," instead of "failure to cure **may** result in acceleration," into believing that acceleration would occur with no further action by Wells Fargo – simply makes no sense.  ECF No. 147-1 at 14 (emphasis in original and added).  "[W]e will proceed with acceleration" is crystal clear in communicating that acceleration has not yet happened and that Wells Fargo must "proceed" with it, if it is to occur.  Plaintiff has presented no authority to buttress this argument and no Rhode Island case has addressed whether "will" constitutes strict

14

compliance with Paragraph 22.  Those cases that have grappled with the question, all from outside of Rhode Island, have consistently held that a default notice with this advisory – "we will proceed with acceleration" – is not deceptive and/or meets the requirement of Paragraph 22. See, e.g., Fed. Home Loan Mortg. Corp. v. Anchrum, Case No. 2:14-cv-2129-TMP, 2017 WL 11490210, at *10 (N.D. Ala. Aug. 11, 2017) ("this letter [stating 'we will proceed with acceleration'] met all the requirements of giving notice of intent to accelerate under the terms of Paragraph 22 of the Mortgage"), adopted, 2017 WL 11490178 (N.D. Ala. Oct. 24, 2017), aff'd, 782 F. App'x 782 (11th Cir. 2019); Deutsche Bank Natl. Tr. Co. v. Brown, 2016-Ohio-907, 2016 WL 900308, at *3 (Ohio Ct. App. Mar. 9, 2016) (notice that "we will proceed with acceleration" complies with Paragraph 22 and is not contradictory or ambiguous); Cordoba v. HSBC Bank, Civil Action No. 7:13-CV-516, 2014 WL 12600071, at *2 (S.D. Tex. July 15, 2014) (clear language of this notice ("we will proceed with acceleration") meets the level of clarity which Texas law requires).

Plaintiff's fourth challenge to the Default Notice is based on the failure to include language that is not mandated by Paragraph 22.  In that regard, he contends that the Default Notice fails strictly to comply with Paragraph 22 because it does not advise that the foreclosure might proceed pursuant to the statutory power of sale, which is expressly permitted by the Mortgage.  However, Paragraph 22 does not require such an advisory, nor does Rhode Island law, including R.I. Gen. Laws § 34-11-22, which permits mortgages to reference the statutory power of sale.  Further, the Default Notice advises that the mortgagee will "pursue the remedies provided for in your Mortgage" and the Mortgage expressly provides that the statutory power of sale is one such remedy, consistent with R.I. Gen. Laws § 34-11-22.  Fitch Aff. Ex A-3 at 3; Ex.

A-2 at 13.  Woel creates "a new rule of law"[14] for the failure strictly to comply with Paragraph

22 as essential to avoid misleading mortgagors.  Woel, 228 A.3d at 348.  Woel does not require

that the clarity of Paragraph 22-compliant default notices be fogged by the need to add more

information beyond what is listed in Paragraph 22.  Plaintiff's argument based on the Default

Notice's failure to specify Wells Fargo's intent to invoke the statutory power of sale should be

rejected.

Equally unavailing is Plaintiff's last attack on the Default Notice, which also seeks to

impose a requirement that goes beyond the required language set out in Paragraph 22.  Echoing a

vacated decision of the First Circuit interpreting Massachusetts law,[15] Plaintiff argues that the

foreclosure is void because the Default Notice advises that "[y]ou have the right to reinstate your

Mortgage . . . after acceleration," which precisely tracks the applicable language in Paragraph 22,

but does not add the additional information that the right to reinstate lapses five days prior to

foreclosure pursuant to ¶ 19 of the Mortgage.  Fitch Aff. Ex. A-3 at 3.  Woel holds that a default

notice must strictly comply with Paragraph 22, specifically by informing the mortgagor "of the

---

[14] The Rhode Island Supreme Court was so concerned by the impact of this extraordinary remedy "on the finality of foreclosures" that it limited the holding to prospective effect.  Woel, 228 A.3d at 348.

[15] In his opposition to the Putnam partial summary judgment motion, Plaintiff did not cite Thompson v. JPMorgan Chase Bank, N.A., 915 F.3d 801 (1st Cir. 2019), withdrawn, 931 F.3d 109 (1st Cir. 2019); however, he quotes from it to support the same argument in his motion for summary judgment against Fannie Mae and others.  ECF No. 160-1 at 17-19.  In Thompson, the First Circuit originally held that Massachusetts law required the inclusion of a description of the five-day time limit on reinstatement in the default notice to avoid deception, even though such an advisory is not called for by Paragraph 22.  915 F.3d at 804-05.  After receiving clarification of applicable Massachusetts law through the Supreme Judicial Court's answer to a certified question, Thompson v. JPMorgan Chase Bank, N.A., 158 N.E.3d 35 (Mass. 2020), the final decision in Thompson found that the default notice in issue was not misleading.  Thompson v. JPMorgan Chase Bank, N.A., 982 F.3d 809, 813 (1st Cir. 2020).  The vacated Thompson holding has not been adopted as an articulation of the law that is applicable in Rhode Island.  See Citibank, N.A. as Tr. for Am. Home Mortg. Assets Tr. 2006-3, Mortg. Backed Pass-Through Certificates Series 2006-3 v. Caito, C.A. No. 18-427-JJM-LDA, 2019 WL 6896309, at *3 n.2 (D.R.I. Dec. 18, 2019) ("[Thompson I] was based on interpretation of Massachusetts, not Rhode Island law and the opinion has been withdrawn, the Court declines to consider it here"), appeal docketed, No. 20-1100 (1st Cir. Jan. 22, 2020).  Importantly, in Woel, which dealt specifically with the requirement to advise regarding the right to reinstate, the Rhode Island Supreme Court held, "[Thompson] does not apply to this case."  Woel, 228 A.3d at 346 n.12.  I similarly decline to apply Thompson to the Notice in this case.

right to reinstate [the mortgage] after acceleration," and that, if it does not, the foreclosure sale is void, despite the lack of any actual deception or confusion caused by the breach.  Woel, 228 A.3d at 347.  Plaintiff's argument fails because the advisory in the Default Notice regarding the right to reinstate precisely meets the standard set by Woel for strict compliance with Paragraph 22.

A coda: in support of his attack on the sufficiency of the Default Notice, Plaintiff relies on the averments in his Affidavit asserting that he was subjectively deceived and confused when he received and read the Default Notice by all of the ways in which he now contends that the Notice fails to meet the Woel standard of strict compliance with Paragraph 22.  These contentions do not help him because the right to exercise the power of sale in a mortgage is a matter of contract.  Bucci v. Lehman Bros. Bank, FSB, 68 A.3d 1069, 1084 (R.I. 2013).  Therefore, whatever subjective confusion or deception Plaintiff claims to have experienced when he read the Default Notice, his breach of contract claim fails as a matter of law because Paragraph 22 of the Mortgage is not ambiguous and the Default Notice strictly complies with its requirements.  As Woel makes clear, what matters is "'the intent expressed by the language of the contract' . . . not . . . the subjective intent of the parties."  Woel, 228 A.3d at 345 (quoting Botelho v. City of Pawtucket Sch. Dep't, 130 A.3d 172, 176 (R.I. 2016)).

Because I find that the Default Notice is strictly compliant with the requirements of Paragraph 22 of the Mortgage, I recommend that the Court enter judgment in favor of Putnam and against Plaintiff on this issue.

2.  _Notice of Foreclosure Was Not Sent Prematurely_

Consistent with ¶ 6(C) ("Borrower's Failure to Pay As Required/Notice of Default") of the Note and Paragraph 22 of the Mortgage, the August 16, 2016, Default Notice alerted the

mortgagor to the risk of acceleration and set the cure date more than thirty days after the Default

Notice was sent.  Subsequently, a separate Notice of Acceleration was sent on March 31, 2017; it

advised the mortgagor that there would be a thirty-day period to dispute the validity of the debt,

but also that the law does not require the mortgagee/servicer to delay until the end of that thirty-

day period before proceeding with legal action to collect the debt.  Less than thirty-days later, on

April 20, 2017, the Notice of Foreclosure was sent; it set the foreclosure sale more than fifty

days after the date of the Notice of Acceleration, on June 13, 2017.

Plaintiff argues that the failure to wait out a second thirty-day period before sending the

Notice of Foreclosure renders the foreclosure void.  ECF No. 147-1 at 8-9, 18.  This argument is

derived by stretching Woel's holding that the "right to cure" is not synonymous with the "right to

reinstate," 228 A.3d at 346, into the requirement of a sequence of notices punctuated by waiting

periods that is unhinged from the requirements of Paragraph 22.  Plaintiff bases this contention

on language in ¶ 10 of the Note, which provides that the "notice [of acceleration] shall provide a

period of not less than 30 days from the date the notice is given . . . within which Borrower must

pay all sums secured by this [Mortgage]."  Note ¶ 10.

There are three problems with this argument.  First, the quoted language from ¶ 10 of the

Note references a thirty-day notice period that may be applicable in "some" conditions, as

specified by the accompanying mortgage instrument (such as when acceleration is triggered by a

sale or transfer of the property without the lender's written consent).  Id.  That is, ¶ 10 of the

Note simply refers back to the Mortgage, which, in this instance, does not contain a contractual

requirement for a second thirty-day waiting period following acceleration due to nonpayment.

Second, Woel does not hold that a technical or non-prejudicial failure to comply with a term in

the Note (as opposed to Paragraph 22 of the Mortgage) is grounds to void a foreclosure.  For this

reason, this argument has been twice rejected by this Court.  <u>Faria</u>, 2021 WL 5040240, at *3; <u>see</u>

<u>Torres</u>, 2021 WL 4155080, at *4 (rejecting complaint that mortgagee failed to send separate

notice of acceleration; <u>Woel</u> does not create any such requirement).  And third, the timing of the

Notice of Foreclosure in the circumstances presented in this case would not breach a requirement

for a second thirty-day notice (if one existed) because ¶ 19 of the Mortgage preserves the

mortgagor's right to reinstate until five days before the foreclosure sale, which was initially set

well more than thirty-five days after the Notice of Acceleration.  Thus, the mortgagor <u>did</u> have

more than thirty days to "pay all sums secured by this [Mortgage]" as ¶ 10 of the Note states.

Note ¶ 10.  Consistent with this proposition, the Notice of Foreclosure itself specifically restated

the mortgagor's ongoing right to order a reinstatement or payoff.  Fitch Aff. Ex. A-6 at 2.  Thus,

if the Court were to find that a second thirty-day waiting period is required, the timing in the

circumstances of this case is consistent.

Based on the foregoing, I find no basis in fact or law to support Plaintiff's claim that the

foreclosure is void because the Notice of Foreclosure was sent prematurely or otherwise related

to the timing of the foreclosure sale.[16]  Therefore, I recommend that the Court enter judgment in

favor of Putnam and against Plaintiff on this issue.

3.    *Notices Were Not Improperly Addressed Solely to "Dianne Fitch"*

A.  Contractual Notice under Note and Mortgage

---

[16] With respect to timing, Plaintiff also makes the related argument in passing that the foreclosure is void because the Foreclosure Deed does not reference any of the adjournments of the foreclosure and, therefore, the adjournments did not comply with R.I. Gen. Laws § 34-11-22.  ECF No. 147 at 18.  This argument fails because the statute mandates that such adjournments must be advertised, not that they must be referenced in the foreclosure deed.  The argument also fails because its factual premise is wrong in that the Foreclosure Deed attached to Plaintiff's pleading contains both a copy of the final version of the published advertisement, which specifically references the adjournments, as well as the Affidavit of Tim Larson, which recites that the foreclosure was advertised a total of nine times, including the publications of the continuances.  Foreclosure Deed at 10-15.  For these reasons, this argument should also be rejected.

The Note and the Mortgage each set out the contractual requirements for the giving of notice.  In ¶ 7, the Note provides that "any notice that must be given to me under this Note will be given by delivering it or mailing it by first class mail to me at the [Real Estate] Address." Note ¶ 7.  As it is undisputed that she is the only signatory on the Note, it is clear that "me" refers to the "Borrower," Dianne L. Fitch.  The Mortgage similarly addresses notice in pertinent part as follows:

> All notices given by Borrower or Lender in connection with this [Mortgage] must be in writing.  Any notice to Borrower in connection with this [Mortgage] shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means.  Notice to any one Borrower shall constitute notice to all Borrowers . . . .  The notice address shall be the [Real Estate] Address.

Mortgage ¶ 15.  The Mortgage defines "Dianne L. Fitch" as the "Borrower" to whom all notices must be sent.  Id. ¶ B.  Consistent with this unambiguous language in the Note and the Mortgage, the undisputed facts establish that all the contractually mandated notices were sent to "Dianne Fitch" or "Dianne L. Fitch" at the address of the Real Estate.[17]

Plaintiff nevertheless contends that the foreclosure is void because none of these notices were sent addressed separately to him.  To buttress this contention, Kenneth Fitch alleges that his signature on the Mortgage as a "non-vested spouse" means that he was entitled to be treated as a mortgagor.  PSUF ¶ 2.  He argues that, as mortgagor, he was contractually entitled to have the notices under the Mortgage addressed to him.

The factual premise for this argument does not work because black letter law defeats Kenneth Fitch's contention that a non-owner who signs a mortgage as a "non vested spouse" is a mortgagor.  The applicable principle is clear: because Kenneth Fitch did not own the Real Estate,

---

[17] One of them, the Notice of Foreclosure, was addressed to "Dianne L. Fitch" but the heading of the enclosed letter is directed to "Sir/Madam Estate of Dianne Fitch."  Fitch Aff. Ex. A-6 at 1, 2.

he could not convey title in the Real Estate to Wells Fargo; therefore, he cannot be a mortgagor. Black's Law Dictionary (11th ed. 2019) ("mortgage" is "[a] conveyance of title to property that is given as security for the payment of a debt"; "mortgagor" is "[s]omeone who mortgages property; the mortgage-debtor, or borrower"); see 59 C.J.S. Mortgages § 110 (Feb. 2022 update) ("mortgagor must, in general, have a present valid title to the estate to be encumbered or to that interest or share therein that the mortgage purports to convey, and one who has no ownership interest in property has no right to mortgage it without the owner's consent").  Consistent with this bedrock principle, Plaintiff did not sign the Mortgage as a mortgagor; rather, his signature is expressly characterized as that of "non vested spouse."  See Whittaker v. Wells Fargo Bank, N.A., No. 6:12-cv-98-Orl-28GJK, 2014 WL 5426497, at *1 (M.D. Fla. Oct. 23, 2014) (wife signed mortgage as "non-vested spouse required to sign" because deed to property remained in husband's name alone); Turner v. Wells Fargo Bank, N.A., 291 P.3d 1082, 1090 n.1 (Mont. 2012) (Cotter, J., dissenting) ("A non-vested spouse is one who does not have an ownership interest in the property").  There is no trial-worthy factual dispute regarding Kenneth Fitch's status in signing the Mortgage – the undisputed fact that he had no ownership interest in the Real Estate, coupled with the unambiguous provision of the Mortgage reflecting that only Dianne L. Fitch as Borrower "convey[ed]" an interest in the Real Estate to Wells Fargo, means that he did not sign the Mortgage as mortgagor.

On the merits, Plaintiff's contractually based notice claim fails because both instruments mandate that notice must be sent to the "Borrower," which Kenneth Fitch undisputedly was not. Because Wells Fargo and its assignees sent all notices to the Borrower named in each instrument (Dianne L. Fitch), Plaintiff's argument regarding the insufficiency of the contractual notices fails as a matter of law.  See Dorothy M. Allegra Revocable Tr.-2001 v. Deutsche Bank Nat'l Tr. Co.

as Tr. for IndyMac INDX Mortg. Loan Tr. 2006-AR 15, Mortg. Pass-Through Certificates Series 2006-15, 225 A.3d 244 (R.I. 2020) (summary judgment granted in favor of mortgagee, which sent notice of intent to foreclose to deceased mortgagors, and not to trust that became property owner before their deaths).

### B.  Statutory Notice of Right of Mediation

Rhode Island's mediation statute creates a standardized process for making pre-foreclosure mediation available to mortgagors before the mortgagee is authorized to proceed with a non-judicial foreclosure.  R.I. Gen. Laws § 34-27-3.2.  The implementation of the mediation requirement is overseen by an "unbiased, impartial, and independent [mediation] coordinator" employed by a "Rhode Island-based, HUD-approved counseling agency," id. § 34-27-3.2(c)(6), in this instance, Rhode Island Housing.  It is the mediation coordinator who makes the determination that a mortgagee's compliance is sufficient and who authorizes the mortgagee to proceed with a foreclosure pursuant to the statutory power of sale.  R.I. Gen. Laws § 34-27-3.2(g), (h), (p).

The mediation statute requires the mortgagee to provide notice of the right to a mediation conference to the mortgagor: "[t]he mortgagee shall . . . provide to the mortgagor written notice at the address of the real estate."  R.I. Gen. Laws § 34-27-3.2(d).  It specifies that notice sent to the mortgagor at the correct address "shall be effective with respect to the mortgagor and any heir or devisee of the mortgagor."  Id.  As defined in the mediation statute,

> "Mortgagor" means the person who has signed a mortgage in order to secure a debt or other duty, or the heir or devisee[18] of such person provided that: (i) The heir or devisee occupies the property as his or her primary residence; and (ii) The heir or devisee has record title to the property, or a representative of the estate of the

---

[18] This alternative reference to "heir or devisee" is not in issue in that the undisputed facts establish that Dianne Fitch's heir was her mother and she died intestate and therefore had no devisees.  Plaintiff has not relied on it.

mortgagor has been appointed with authority to participate in a mediation conference.

R.I. Gen. Laws § 34-27-3.2(c)(9).

Once the initial notice is sent, the mediation coordinator contacts the mortgagor to set up and facilitate the mediation.  Id. at (c)(6).  If the mortgagor twice fails to respond to the mediation coordinator's requests to appear, "the requirements of this section shall be deemed satisfied upon verification by the mediation coordinator that the required notice was sent" and "a certificate will be issued immediately by the mediation coordinator authorizing the mortgagee to proceed with the foreclosure action."  Id. at (g).  A "certificate [issued by the mediation coordinator] authorizing the mortgagee to proceed to foreclosure . . . shall constitute a rebuttable presumption that the notice requirements of subsection (d) have been met in all respects."  Id. at (p); see Nott v. Bank of Am., N.A., C.A. No. 19-663 WES, 2020 WL 3470455, at *2 (D.R.I. June 25, 2020) (dismissing claim that mortgagee failed to engage plaintiff in mediation based on rebuttable presumption arising from certificate issued by neutral mediation coordinator).  The "[f]ailure of the mortgagee to comply with the requirements of [the mediation statute] shall render the foreclosure voidable."  R.I. Gen. Laws § 34-27-3.2(m).

In this case, it is undisputed that a "Certificate of Compliance with Mediation Requirement" was issued by Rhode Island Housing's mediation coordinator authorizing Wells Fargo to proceed with the foreclosure.  Fitch Aff., Ex. A-7 at 25.  It is also undisputed that the mediation coordinator's certificate states that "the Mortgagor" twice failed to respond to the coordinator's requests that he appear for mediation.  Id.  Because the mediation coordinator issued the mediation certificate, which is attached to the Foreclosure Deed, there is a rebuttable presumption that the notice requirement of R.I. Gen. Laws § 34-27-3.2(d) is "deemed satisfied." R.I. Gen. Laws § 34-27-3.2(g), (p).

The problem is that the Rhode Island Housing certificate states that notice was "properly served" on "Dianne L Fitch and KENNETH P FITCH." Fitch Aff., Ex. A-7 at 25 (capitalization in original). In his Affidavit, Kenneth Fitch disputes this fact, averring that "[n]o Notices were ever mailed by Wells Fargo or Rhode Island Housing which were directed to and addressed to me as signer of the mortgage, occupant of the property and owner of the property, which offered me any mediation."[19] Fitch Aff. ¶ 84. Based on this dispute, for purposes of summary judgment, the Court assumes that a fact finder could determine, despite the certificate of Rhode Island Housing, that "KENNETH P FITCH" was omitted from the notice of the right to pre-foreclosure mediation that was sent to the Real Estate. To establish that this dispute is material, Kenneth Fitch argues that he must be deemed to be a "mortgagor" entitled by law to notice in reliance on the statutory definition of "mortgagor" in R.I. Gen. Laws § 34-27-3.2(c)(9) because he signed the Mortgage (albeit as a "non vested" spouse) and the Mortgage secured a debt (albeit one that he did not owe). ECF No. 147-1 at 19-20. Thus, he contends that § 34-27-3.2(d) required that a notice of the right to mediate must have been sent not just to Dianne L. Fitch, but also was required to be sent addressed to him.

I disagree. The statutory language defines "mortgagor" as "the person who has signed a mortgage <u>in order to secure a debt</u>." R.I. Gen. Laws § 34-27-3.2(c)(9) (emphasis added). In this case, it is undisputed that only Dianne L. Fitch owed the debt (reflected in the Note that only she signed) to be secured and only she signed the Mortgage in order to secure that debt; Kenneth Fitch signed merely as a "non vested spouse." His signature does not convert him into a

---

[19] Kenneth Fitch has not disputed the substantive certification by the mediation coordinator that the coordinator made two attempts to request his presence at a mediation but that he failed to respond. Because I find that a notice of mediation sent just to Dianne L. Fitch is sufficient as a matter of law, I have not considered whether Plaintiff's failure to respond to the mediation coordinator means that the requirements of the mediation statute are deemed satisfied as an alternative reason why this claim fails.

mortgagor as defined in the mediation statute because he did not sign "in order to secure a debt." Plaintiff's interpretation – that R.I. Gen. Laws § 34-27-3.2(d) means that every person who signs a mortgage that secures a debt is a "mortgagor" – should be rejected because it requires the Court to ignore the plain and unambiguous meaning of the limiting phrase ("<u>in order to</u>"), which is contrary to Rhode Island's approach to statutory construction.  <u>Powers v. Warwick Pub. Sch.</u>, 204 A.3d 1078, 1086 (R.I. 2019) ("when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings") (internal quotation marks omitted).  It also should be rejected because it would lead to the nonsensical outcome that anyone who signs a mortgage (for example, witnesses and notaries) is arguably a "mortgagor" entitled to notice, which clashes with the bedrock canon of statutory construction that courts should avoid the interpretation that yields an absurd result.  <u>Olsen v. DeMayo</u>, 210 A.3d 431, 435 (R.I. 2019) ("under no circumstances will this Court construe a statute to reach an absurd result") (internal quotation marks omitted). Focusing on the unambiguous language of R.I. Gen. Laws § 34-27-3.2(c)(9) and holistically on the statutory emphasis on closure as reflected in R.I. Gen. Laws § 34-27-3.2(g) (statutory requirements deemed satisfied if mediation coordinator's outreach attempts fail) and R.I. Gen. Laws § 34-27-3.2(p) (mediation coordinator's certificate gives rise to rebuttable presumption that notice was proper) based on the neutral involvement of Rhode Island Housing in the mediation and certification processes, I find that, even if the mediation notice in this case was addressed only to Dianne L. Fitch as mortgagor, the undisputed facts nevertheless establish that it was sufficient to support Rhode Island Housing's certificate authorizing Wells Fargo to proceed with a nonjudicial foreclosure.

Finally, if the Court disagrees with this analysis and determines that the notice of the mediation conference was not adequate, summary judgment still should enter in favor of Putnam because the mediation statute does not provide that an unauthorized foreclosure is void. Rather, it states that the "[f]ailure of the mortgagee to comply with the requirements of this section shall render the foreclosure voidable." R.I. Gen. Laws §§ 34-27-3.2(m) (emphasis added). With the foreclosure merely voidable, Putnam, indisputably an innocent *bona fide* purchaser for value, is entitled to judgment as a matter of law. Shappy v. Downcity Cap. Partners, Ltd., 973 A.2d 40, 44 (R.I. 2009) ("a deed only *voidable* can pass title and be relied upon and enforced by a bona fide purchaser") (internal quotation marks omitted). That is, as to Putnam, the foreclosure sale cannot be set aside even if the Court concludes that proper notice of the right to mediate was not given.

Based on the foregoing, Plaintiff's claim that foreclosure was not authorized because the notice of the mediation conference failed to comply with R.I. Gen. Laws § 34-27-3.2(d) is unavailing; therefore, his contention that the foreclosure is void due to the insufficiency of the statutory notice should be rejected.[20] Alternatively, Plaintiff's argument that the foreclosure is void clashes with R.I. Gen. Laws § 34-27-3.2(m), which provides that the mortgagee's failure to comply with R.I. Gen. Laws § 34-27-3.2 renders it merely voidable; because Putnam is an innocent *bona fide* purchaser, the Court should enter judgment in favor of Putnam and against Plaintiff without regard to whether the notice complied with R.I. Gen. Laws § 34-27-3.2(d).

---

[20] Plaintiff also argues that the notice referenced in the Mediation Certificate was insufficient because it was given by Wells Fargo while it was the mortgagee and Fannie Mae did not provide a new mediation notice after Wells Fargo assigned the Mortgage to it. ECF No. 147-1 at 19-20. There is no need to linger over this contention. This Court has specifically rejected the precise argument, holding that R.I. Gen. Laws § 34-27-3.2 does not provide for multiple opportunities to mediate a single foreclosure action and that the transfer of the mortgage to a new mortgagee does not trigger the mortgagor's right to receive a new mediation notice. Cepeda, 2020 WL 5775900, at *6 (when mortgage was transferred to new mortgagee it acquired all rights and powers of prior mortgagee, "including those relative to the previously sent mediation notice").

4. *Fannie Mae Was the Mortgagee of Record Authorized and With Standing to Proceed with Foreclosure*

It is undisputed that Fannie Mae sold the Note that created the debt secured by the Mortgage two days before the foreclosure pursuant to the Mortgage Loan Sales Agreement. Rushmore's Notice of Sale of Mortgage Loan sent to Dianne Fitch as mortgagor confirmed that the loan had been sold on July 26, 2017.  Fitch Aff. Ex. A-5.  It is also undisputed that no assignment of the Mortgage was recorded in the Cumberland land records and that Fannie Mae continued to be the record holder of the Mortgage until it conveyed the Real Estate by the Foreclosure Deed to Putnam.  Rhode Island law provides that this circumstance – where the Note and Mortgage are not held by the same entity – is not an impediment to a valid foreclosure of the Mortgage.  Lister v. Bank of Am., N.A., 8 F. Supp. 3d 74, 83 (D.R.I. 2014), aff'd on other grounds, 790 F.3d 20 (1st Cir. 2015); Bucci, 68 A.3d at 1086-89.  Nevertheless, Plaintiff argues that the Court should find that he has presented enough to give rise to a disputed issue of fact regarding whether Fannie Mae not only sold the loan, but also prepared and executed an assignment of the Mortgage, even though it was never recorded, and that this factual dispute is sufficient to require a trial regarding whether the foreclosure sale was void because Fannie Mae, the grantor on the Foreclosure Deed, was no longer the mortgagee.

Plaintiff's first problem is that, despite the significant delays during which he was allowed to pursue Fed. R. Civ. P. 56(d) discovery after Putnam's motion for partial summary judgment was filed[21] and before his opposition was due, he has failed to present even a scintilla

---

[21] Based on the undisputed fact that the loan had been sold just before the foreclosure, the Amended Complaint alleges: "Fannie Mae transferred its interest in the Mortgage to [Rushmore] by an assignment before July 26, 2017. . . . This assignment was not recorded."  Compl. ¶¶ 71-72.  Plaintiff did not propound any discovery during the fact phase of the case to explore this allegation.  Instead, he waited until Putnam filed its motion for partial summary judgment.  Then, invoking Fed. R. Civ. P. 56(d), he responded with a sweeping request for discovery.  After a substantial delay for briefing and argument on the appropriateness of such discovery long after the close of the fact discovery phase, the Court allowed limited discovery from Fannie Mae pertaining to the sale of the loan and any assignment of the Mortgage, making clear that Plaintiff could seek more if consistent with Fed. R. Civ. P. 56(d).

of competent evidence that gives rise to an inference that an unrecorded assignment of the

Mortgage was prepared before the foreclosure sale.  Plaintiff's sole basis for continuing to press

this theory now – that "the document under seal[22] clearly conveys the note and the mortgage, not

just the note as suggested by the Defendant" – is simply not accurate.  ECF No. 147-1 at 21

The primary evidence, the authenticated Mortgage Loan Sales Agreement, states that it

conveyed "all of its right, title and interest in and to" certain "Mortgage Loans" including that of

"Dianne L. Fitch."  Ludwig Decl., Ex. A at § 2.01; Ex. B (emphasis added).  As to mortgage

assignments, this Agreement provides that they would be prepared and recorded at a later time.

Id. at § 2.07.  Similarly, the Rushmore Notice of Sale of Loan advised that "your prior creditor

has sold your loan . . . to us, the new creditor"; it makes no mention of an assignment of the

Mortgage.  Fitch Aff. Ex. A-5.  And § 4.01 of the Mortgage Loan Sales Agreement references

the Interim Servicing Agreement, which provides that Wells Fargo was to continue as servicer

for the interim period with the authority to manage foreclosures and to prepare and record any

mortgage assignments.  Hader Aff. ¶ 7 & Ex. A §§ 2.1, 2.1.12, 2.5.  By Affidavit, Rushmore has

confirmed that no assignment of the Mortgage was prepared by Wells Fargo.  Hader Aff. ¶ 8.

Further, the Mortgage Loan Sales Agreement requires that, if an assignment of mortgage was

prepared, it was required to be placed in the "Collateral File."  Ludwig Decl., Ex. A at § 2.03 &

---

Fitch, 2021 WL 1985713, at *1-4.  On Plaintiff's motion to compel more, the Court denied the motion as to Fannie Mae, but supplemented its discovery order by directing Rushmore to supply additional discovery.  Text Order of July 7, 2021.  Plaintiff's objection to this order was overruled on August 26, 2021.  ECF No. 139.

[22] It is unclear what document Plaintiff is referring to.  There are two documents under seal that relate to this issue: the Mortgage Loan Sales Agreement and the Interim Servicing Agreement.  Also pertinent are the sealed Declaration of Erich Ludwig of Fannie Mae and the sealed Affidavits of Geoffrey Hader and Anthony Younger of Rushmore.  The Court assumes Plaintiff is referring to all of this material in presenting his somewhat vague argument.

Ex. A at Ex. C.  Rushmore avers that the Collateral File contains no unrecorded assignment of the Mortgage.  Younger Aff. ¶ 7.

Plaintiff's argument factually fails because Plaintiff has presented no evidence permitting the inference that Fannie Mae prepared an unrecorded assignment of the Mortgage at any time prior to the foreclosure sale, while Fannie Mae and Rushmore have presented substantial unrebutted evidence that it did not.  Despite being permitted Fed. R. Civ. P. 56(d) discovery, Plaintiff's opposition to summary judgment based on Fannie Mae's lack of standing to foreclose rests on pure speculation.  See Conti v. Wells Fargo Bank, N.A., No. 11 MISC 456834 (AHS), 2012 WL 2094375, at *2-3 (Mass. Land Ct. June 11, 2012) (plaintiff's speculation that there might have been assignment insufficient to avoid judgment in favor of defendant because, at the time of foreclosure, it was mortgagee of record and had standing to foreclose).  Therefore, this argument should be disposed of by judgment in favor of Putnam.  See Torres, 2021 WL 4155080, at *3 (summary judgment enters where mortgagee has produced affirmative evidence that it had right to foreclose, and mortgagor countered with "no evidence of any further assignment or other transfer which would deprive [the foreclosing entity] of its status as mortgagee").

Plaintiff's other problem with this argument is that, even if the Court were to accept the foundational proposition despite the absence of any evidence, this claim still fails as a matter of law because it clashes with a fundamental principle of Rhode Island law: "[i]n no case, then, can the unrecorded deed prevail against a subsequent purchaser claiming under the same grantor, unless it appear[s] that the purchaser had notice otherwise of the deed."  Harris v. Arnold, 1 R.I. 125, 134 (1848).  This principle is codified at R.I. Gen. Laws § 34-11-1, which provides in part that "[e]very conveyance . . . shall be void unless made in writing . . . delivered, and recorded in

the records of land evidence in the town or city where the land . . . [is] situated." Id. (emphasis added).  Therefore, even if an assignment of the Mortgage had been prepared, as Plaintiff asks the Court to speculate it might have been, such a conveyance of Fannie Mae's interest in the Real Estate is void and of no effect because it was not recorded.  In particular, it can have no impact on the rights of Putnam, an innocent *bona fide* purchaser for value with no knowledge of any such assignment.  Thus, even if the Court accepts that Plaintiff has demonstrated a trial-worthy factual dispute regarding whether Fannie Mae prepared and delivered an unrecorded assignment of the Mortgage to Rushmore (or any other person or entity) before it gave the Foreclosure Deed conveying the Real Estate to Putnam in consideration for $188,000, such a factual dispute is immaterial in that it does not afford Plaintiff standing to void the foreclosure sale.

I recommend that the Court enter judgment in favor of Putnam and against Plaintiff with respect to this issue.

### B.    Motion for Partial Summary Judgment on Due Process Claim (ECF No. 117)

Count I of the Amended Complaint alleges that, because Fannie Mae was under the conservatorship of FHFA at the time of the foreclosure, and FHFA is undisputedly a federal agency that sometimes acts as the government,[23] Fannie Mae also became a governmental actor such that its use of Rhode Island's non-judicial foreclosure procedure (as permitted by the Mortgage) unconstitutionally deprived Plaintiff of his property (the Real Estate) without due process of law.  Therefore, he contends, the foreclosure is void.  ECF No. 60 ¶ 115.  In support, he relies on a decision of this Court that has since been reversed by our Circuit.  Sisti v. Fed. Hous. Fin. Agency, 324 F. Supp. 3d 273, 283-84 (D.R.I. 2018) (court cannot conclude at

---

[23] For example, as Plaintiff notes in its opposition to the motion, the FHFA temporarily suspended foreclosures and evictions in response to the COVID-19 pandemic.  ECF Nos. 146-2, 146-3.

pleading stage whether FHFA is private actor for purposes of constitutional claims), rev'd sub nom., Boss v. Fed. Hous. Fin. Agency, 998 F.3d 532 (1st Cir. 2021).

As to Putnam, Count IV (declaratory judgment) seeks a declaration that the foreclosure sale to Putman is void and Count V (injunctive relief) seeks to enjoin Putnam from proceeding with Kenneth Fitch's eviction from the Real Estate based on the claim in Count I.  Putnam's second motion for summary judgment asks the Court to enter judgment in its favor on both Counts.  The motion is simple – it relies on the most recent and controlling precedent from the First Circuit, Montilla, which rejects Sisti and holds (a) "FHFA is not acting as the government in its capacity as [Fannie Mae]'s conservator" and that "Appellants' [mortgagors whose property rights were terminated in a non-judicial foreclosure proceeding initiated by Fannie Mae as mortgagee] constitutional claims against it fail for that reason"; and (b) neither Fannie Mae nor Freddie Mac is a "[g]overnmental actor[] [s]ubject to Appellants' [d]ue [p]rocess [c]laims."  999 F.3d at 759, 759-62.  The pending Petition for Certiorari in Montilla is grounded in the argument that Montilla cannot stand in light of the Supreme Court's subsequent decision in Yellen, 141 S. Ct. 1761, which holds that FHFA's statutory structure, preventing the removal of its single director by the President except for good cause during his five-year term, violated constitutional separation of powers.  Id. at 1786-87; see also Petition for Certiorari, Montilla v. Fed. Nat'l Mortg. Ass'n, No. 21-688, 2021 WL 5236210, at *33-37, 43-46 (U.S. Nov. 5, 2021).  Plaintiff asks this Court to disregard Montilla based on Yellen.

The problem with Plaintiff's argument is that Yellen does not overrule Montilla or any of the Circuit court decisions that our Circuit relied on in Montilla.  The only reference to the line of cases addressing whether Fannie Mae, while under FHFA's conservatorship, may avail itself of the state-created non-judicial foreclosure process is in the concurrence written by Justice

31

Sotomayor, who noted with approval the holding in Herron v. Fannie Mae, 861 F.3d 160, 169

(D.C. Cir. 2017), and observed: "[O]ne of the FHFA's main powers is assuming the mantle of

conservatorship or receivership over the GSEs [Fannie Mae and Freddie Mac], which hardly

registers as executive at all.  When acting as a conservator or receiver, an agency like FHFA . . .

largely shed[s] its government character."  Yellen, 141 S. Ct. at 1806 (Sotomayor, J, concurring

in part and dissenting in part) (internal citation and quotation marks omitted).  While the majority

opinion notes that "FHFA clearly exercises executive power," id. at 1786, and that FHFA's

actions have the potential to impact mortgage markets and affect private individuals, id. at 1785,

Yellen does not hold that Fannie Mae and Freddie Mac were converted into governmental actors

because Congress unconstitutionally restricted the President's power to remove FHFA's director;

nor does it hold that a non-judicial foreclosure by Fannie Mae as mortgagee deprives the affected

mortgagor of constitutional due process of law.

The First Circuit's denial of the Montilla Appellants' motion to recall the mandate and to

rehear the case en banc in light of Yellen confirms this conclusion.  Montilla, No. 20-1673,

Order of Court at 1 (1st Cir. Aug. 9, 2021) (Yellen-based argument rejected; "[c]onstruing . . .

[the] petition for rehearing and rehearing en banc as a motion to recall mandate, the motion is

denied").  Because the circuit court opinion has issued and a petition for rehearing or rehearing

en banc has been denied, the issue is now settled unless or until the Supreme Court takes

contrary action.  United States v. Krzyske, 857 F.2d 1089, 1092 (6th Cir. 1988); accord

Alghazouli v. United States, Civil No. 08cv1571 JAH, Criminal Case No. 05cr1148 JAH, 2009

WL 10712953, at *2 (S.D. Cal. Feb. 5, 2009) (court may infer that circuit court determined that

argument of appellant did not warrant recall of mandate when court denied the motion without

opinion because "such determination was necessary to deny the motion") (internal quotation marks omitted).

Montilla stands as the controlling precedent that this Court must follow. Kisor v. Wilkie, 139 S. Ct. 2400, 2422 (2019) ("Adherence to precedent is a foundation stone of the rule of law.") (internal quotation marks omitted); see Sanchez v. United States, 740 F.3d 47, 56 (1st Cir. 2014) (departing from circuit precedent can be justified only by a ruling of the Supreme Court, *en banc* ruling from First Circuit, or in "narrowly construed" "rare instances" where a later decision offers sound reasoning that former panel would change its mind) (internal quotation marks omitted); Wolfen v. United States, 84 Fed. Cl. 662, 666 (2008), aff'd, 374 F. App'x 12 (Fed. Cir. 2009) (lower court may not ignore controlling precedent in its circuit unless the Supreme Court expressly overrules that precedent). Whatever this Court might think of Plaintiff's argument, it must follow Montilla unless and until it is vacated by the Circuit or overruled by the Supreme Court. Agostini v. Felton, 521 U.S. 203, 237-38 (1997) (trial court acted correctly to recognize that motion had to be denied unless and until higher court reinterpreted binding precedent; "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions") (internal quotation marks omitted).

I find that Count I fails as a matter of law based on the Circuit's binding precedent in Montilla and recommend that the Court grant Putnam's motion for summary judgment to the extent that Plaintiff's claim that the foreclosure is void rests on the proposition that the non-judicial proceeding deprived him of his right to due process of law.

## IV.    CONCLUSION

Based on the foregoing analysis, I recommend that Putnam's motion for partial summary judgment (ECF No. 96) and motion for partial summary judgment based on due process (ECF No. 117) both be GRANTED and that the Court enter judgment in favor of Putnam terminating it as a party in this case, and against Plaintiff as to all his claims against Putnam.  Because <u>Montilla</u> is dispositive of all issues pertinent to Count I, I further recommend that the Court enter judgment against Plaintiff and in favor of all Defendants with respect to Count I (due process) of the Amended Complaint.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt.  <u>See</u> Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. <u>See</u> <u>United States v. Lugo Guerrero</u>, 524 F.3d 5, 14 (1st Cir. 2008); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
March 8, 2022